**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **TERI G. GALARDI,** | |
| **Debtor.** | **CASE NO.  22-50035-JPS** |

**DISCLOSURE STATEMENT FOR**
**PLAN OF LIQUIDATION**

**Dated this 28th day of September, 2022**

**Filed by:**

The Official Committee of Unsecured Creditors

Attorneys for the Official Committee of Unsecured Creditors
Leon S. Jones
Thomas T. McClendon
Jones & Walden, LLC
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300

## I.   Introduction and General Information

This disclosure statement ("Disclosure Statement") is submitted by the Official Committee of Unsecured Creditors, as proponent of the Plan ("Committee" or "Plan Proponent") to provide information to parties in interest about the Chapter 11 Plan (the "Plan") filed by the Committee. This introductory section is qualified in its entirety by the detailed explanations which follow and the provisions of the Plan.

This Disclosure Statement sets forth certain information regarding Debtor's prepetition history and events that have occurred during Debtor's Chapter 11 case. This Disclosure Statement also describes the Plan, alternatives to the Plan, effects of confirmation of the Plan, and the manner in which Distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and voting procedures that holders of Claims in Impaired Classes must follow for their votes to be counted.

**Parties voting on the Plan should read both the Plan and this Disclosure Statement.**

### A.   Definitions

Unless otherwise defined, capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan. In the event of an inconsistency between the Disclosure Statement and the Plan, the terms of the Plan shall govern and such inconsistency shall be resolved in favor of the Plan. The Filing Date means January 12, 2022, and the Effective Date, as defined in the Plan, shall mean the date that is 14 days after the entry of a Confirmation Order.

### B.   The Disclosure Statement

The primary purpose of this Disclosure Statement is to provide parties entitled to vote on the Plan with adequate information so that they can make a reasonably informed decision prior to exercising their right to vote to accept or reject the Plan.

The Bankruptcy Court's approval of this Disclosure Statement constitutes neither a guaranty of the accuracy or completeness of the information contained herein, nor an endorsement of the Plan by the Bankruptcy Court.

When and if confirmed by the Bankruptcy Court, the Plan will bind Debtor and all holders of Claims against Debtor and Interests of Debtor, whether or not they are entitled to vote or did vote on the Plan and whether or not they receive or retain any Distributions or property under the Plan. Thus, you are encouraged to read this Disclosure Statement carefully. In particular, holders of Impaired Claims who are entitled to vote on the Plan are encouraged to read this Disclosure Statement, the Plan, and any exhibits to the Plan and Disclosure Statement, carefully and in their entirety before voting to accept or reject the Plan. This Disclosure Statement contains important information about the Plan, the method and manner of distributions under the Plan, considerations pertinent to acceptance or rejection of the Plan, and developments concerning this case.

## II.    Voting on the Plan and Confirmation Process

### A.    Voting Instructions

Accompanying this Disclosure Statement are copies of the following documents: (1) the Plan; and (2) a Ballot to be executed by holders of Claims to accept or reject the Plan. The Ballot contains voting instructions. Please read the instructions carefully to ensure that your vote will count.

The Disclosure Statement, the form of Ballot, and the related materials delivered together herewith (collectively, the "Solicitation Package"), are being furnished to Holders of Claims in Classes 1 through 7 for the purpose of soliciting votes on the Plan.

If you did not receive a Ballot in your Solicitation Package, and believe that you should have received a Ballot, please contact, Jones & Walden, LLC, 699 Piedmont Avenue, NE, Atlanta, Georgia, 30308, (404) 564-9300 (Attn: Thomas T. McClendon, Esq.).

**In order for your Ballot to count, it must be received within the time indicated on the Ballot and the Ballot must clearly indicate your Claim, the Class of your Claim and the amount of your Claim.**

**By enclosing a Ballot, Plan Proponent is not admitting that you are entitled to vote on the Plan, is not admitting that your Claim is allowed as set forth on the Ballot, and is not waiving any right to object to your vote or your Claim.**

### B.    Who May Vote

Only a holder of an Allowed Claim classified in an Impaired Class is entitled to vote on the Plan. As set forth in section 1124 of the Bankruptcy Code, a class is "Impaired" if legal, equitable, or contractual rights attaching to the claims or equity interests of that class are modified or altered.

Any class that is "unimpaired" is not entitled to vote to accept or reject a plan of reorganization and is conclusively presumed to have accepted the Plan.

Plan Proponent and Liquidating Trustee in all events reserve the right through the claim reconciliation process to object to or seek to disallow any claim for distribution purposes under the Plan.

### C.    Requirements of Confirmation

The Committee hopes that the Plan will be approved by all Impaired Classes of Claims entitled to vote. If, however, the Plan has not been approved by all Impaired Classes of Claims, the Court may nevertheless "cram down" the Plan over the objections of a dissenting Class. The Plan may be "crammed down" so long as it does not discriminate unfairly, is fair and equitable with respect to each dissenting Class of Claims, and at least one Impaired Class has voted in favor

of the Plan without regard to any votes of insiders.  If necessary, the Committee will seek to "cram down" the Plan.

### D.     Acceptance or Rejection of the Plan and Cram Down

The Class containing your Claim will have accepted the Plan by the favorable vote of a majority in number and two-thirds in amount of Allowed Claims actually voting.   In the event that any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if an Impaired Class accepts it and if, as to each Impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." If you hold an Allowed Secured Claim, the Plan is fair and equitable if: (a) you retain your lien and receive deferred cash payments totaling the allowed amount of your Allowed Secured Claim, (b) the collateral is sold and your Lien attaches to the proceeds of the sale, or (c) you are otherwise provided with the "indubitable equivalent" of your Allowed Secured Claim.  If you hold a Claim that is not an Allowed Secured Claim, and is not entitled to priority under § 507 of the Bankruptcy Code, the Plan is fair and equitable if you receive property of a value equal to the allowed amount of your Claim or if no junior Class receives or retains any property on account of such junior interest.

### E.     Confirmation Hearing

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan ("Confirmation Hearing") at the time indicated in the Order approving this Disclosure Statement and providing Notice of Confirmation Hearing (the "Solicitation Order").  The Confirmation Hearing may be adjourned from time to time without further notice except for announcement at the Confirmation Hearing or notice to those parties present at the Confirmation Hearing.

### F.     Objections to Confirmation

As will be set forth in the Solicitation Order, any objections to confirmation of the Plan must be in writing, set forth the objector's standing to assert any such objection, and must be filed with the Bankruptcy Court and served on counsel for Debtor and counsel for the Committee. The Solicitation Order contains all relevant procedures relating to the submission of objections to confirmation and should be reviewed in its entirety by any party who has an objection to confirmation.

### G.     Whom to Contact for More Information

If you have any questions about the procedure for voting on your Claim or the packet of materials you received, please contact Thomas T. McClendon at Jones & Walden, LLC at the address indicated below or by telephone at (404) 564-9300.

If you wish to obtain additional copies of the Plan, this Disclosure Statement, or the exhibits to those documents, at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d), please contact Jones & Walden, LLC by one of the following methods:

Via U.S. Mail:       Via Facsimile:       Via Email:
Jones & Walden, LLC    (404) 564-9301     tvuncannon@joneswalden.com
699 Piedmont Avenue, NE  Attn: Tessa Vuncannon
Atlanta, GA 30308
Attn:  Tessa Vuncannon

## III.    Historical Background

### A.    Description of Debtor

Debtor is an individual. The following statements are based on her schedules and statement of financial affairs, disclosures made in this Bankruptcy Case, and the Committee's investigation.

Teri G. Galardi is a Georgia resident. Her father, Jack E. Galardi, Sr. was a successful businessman who owned and operated many different businesses, including gentlemans' clubs in Georgia, Florida, South Carolina, and Nevada. These establishments were financially successful but resulted in numerous lawsuit and arbitrations asserting that the entertainers were employees to which the clubs did not pay minimum wage in violation of the law. Jack Galardi died in December 2012.Teri Galardi inherited seventy-five percent of his estate, including the clubs and other operating entities. Jack E. Galardi, Jr. inherited the other twenty-five percent.

Ms. Galardi and her businesses appear to have been uniformly unsuccessful in defending the lawsuits by the entertainers asserting claims under the Fair Labor Standards Act ("FLSA") and the Florida Minimum Wage Act ("FMWA"). These have included many millions in judgments over the years. For example, a judgment was entered against Debtor on December 2, 2021 for $8,656,000.00 in *Shanice Bain et al v. Fly Low, Inc. et al.* in the Circuit Court in the Eleventh Judicial Circuit in and for Miami Dade County, State of Florida, Case No 2018-029725-CA-01.

Faced with these liabilities, Ms. Galardi filed for bankruptcy.

### B.    Prepetition Assets and Liabilities

Debtor's prepetition assets, their current values as of the filing of this Disclosure Statement, and the source of such valuation are listed in the Liquidation Analysis attached as Exhibit "A" to this Disclosure Statement.

Debtor's prepetition liabilities are likewise summarized on the Liquidation Analysis, as evidenced in detail on Debtor's sworn schedules of liabilities on file with the Court and the proofs of claim filed by the creditors with the Court. Such documents may be accessed by visiting the Clerk's office located at 433 Cherry Street Macon, GA 31201 or by registering with PACER at https://pacer.uscourts.gov/.

## IV.       The Chapter 11 Case

### A.      Professionals

*Debtor's Counsel.* Debtor, pursuant to Court order, retained the law firms of McBryan Law, LLC and Boyer Terry, LLC to serve as bankruptcy counsel.

*Special Counsel.* Debtor, pursuant to Court order, retained or seeks to retain: (a) the law firm of Schulten Ward Turner & Weiss, LLP, as special counsel, to file reports in *Porsche Darden et al. v. Fly Low, Inc. and Teri Galardi*, United States District Court, Southern District of Florida, Case No. 20-cv-20592); (b) Smith & Shapiro, PLLC, as special counsel, for Adversary Proceeding No. 22-5008; and (c) Solomon Dwiggins Freer & Steadman, Ltd., as special counsel, for Adversary Proceeding No. 22-5008.[1]

*Debtor's Certified Public Accountant.* Debtor, pursuant to Court order, retained the accounting firm Whaley Hammonds Tomasello, P.C.

*Committee Counsel.* Committee, pursuant to Court order, retained the law firm of Jones & Walden LLC ("Creditor's Counsel") to serve as bankruptcy counsel.

*Committee Certified Public Accountant.* Committee, pursuant to Court order, retained the accounting firm McNair, McLemore, Middlebrooks & Co., LLC.

## V.      Significant Orders in the Case

The following are some of the more significant orders in the Case.

On March 1, 2022, various creditors objected to Debtor's election to proceed under Subchapter V of Chapter 11. (Doc. No. 48) On March 8, 2022, the United States Trustee likewise filed an objection. On March 30, 2022, the Court entered a consent order under which the Debtor consented to proceed under the applicable provisions of Chapter 11 other than Subchapter V (Doc. No. 64).

On April 25, 2022, Jack E. Galardi, Jr. and Emilita P. Sy, as the trustee of the Jack E. Galardi, Jr. Sub-trust sued Teri G. Galardi in the Bankruptcy Court, asserting that the debt owed to plaintiffs for the "Teri Note" in the amount of $1,688,742 was non-dischargeable. The Court

---

[1] The Committee has objected to the employment of Smith & Shapiro, PLLC and Solomon Dwiggins Freer & Steadman, Ltd.

denied Debtor's motion to dismiss or abstain from such proceeding. Such adversary proceeding has not yet been resolved.

Debtor has been granted approval by the Court to retain real estate brokers in the case. Such orders have approved listing properties in Florida and Nevada for sale.

On July 8, 2022, Debtor filed a motion to approve the sale of 4730 Frontage Road, Forest Park, Georgia and stock in Red Eyed, Inc. for a purchase price of $3,300,000. The Court approved the motion by order dated August 3, 2022 (Doc. No. 158), but Debtor did not serve all parties required to be served. Thus, the Court reaffirmed the order on August 23, 2022 (Doc. No. 173).

On July 11, 2022, the Committee filed a motion for Rule 2004 examination of the Debtor. This was granted by the Court on the same day (Doc. No. 136). As of the filing of this Disclosure Statement, the Committee has filed a motion to compel Debtor to fully respond to such requests.

The deadline to object to Debtor's discharge or dischargeability has been extended several times, including most recently through and including November 28, 2022 (Doc. No. 196).

## VI.    Summary of the Plan

**The following summary of the Plan provides only a brief description of its provisions. The summary is qualified in its entirety by the more detailed descriptions of the Plan in the Disclosure Statement and by the terms of the Plan itself.**

The Plan provides for payments to creditors of Debtor.  The Committee believes that any alternative to confirmation of the Plan, such as a Chapter 7 proceeding, would result in significant delays in and a lower amount of recoveries. **For these reasons, the Committee urges you to return your Ballots accepting Committee's Plan.**

The Plan contemplates the liquidation of Debtor's assets and the resolution of the outstanding Claims against and Interests of Debtor pursuant to sections 1129(b) and 1123 of the Bankruptcy Code.  The Plan classifies all Claims against Debtor into separate Classes.

## VII.    Description of the Plan

### A.    Transfer of all Assets into Liquidating Trust

Upon confirmation, Debtor will transfer into a Liquidating Trust all of the property of the Estate free and clear of liens, claims, and encumbrances not expressly retained: (a) as wholly exempt by Debtor, or (b) by creditors under the Plan. A Liquidating Trustee will be appointed to manage the Liquidating Trust. The Liquidating Trustee will have the rights and powers to assert any and all Causes of Action (defined as all causes of action, choses in action, claims, rights, suits, accounts or remedies belonging to or enforceable by Debtor, including Avoidance Actions, whether or not matured or unmatured, liquidated or unliquidated, contingent or noncontingent, known or unknown, or whether in law or in equity, and whether or not specifically identified in Debtor's schedules, except for Co-Owned Property and Co-Owned Property Avoidance Actions,

which claims shall be prosecuted by the Committee). The Disclosure Statement and Plan are filed with a full reservation of rights.

**B.      Committee Prosecution of Co-Owned Property Avoidance Actions**

Upon Confirmation, the Committee will be authorized to prosecute all Co-Owned Property Avoidance Actions (which consist of all Avoidance Actions involving Co-Owned Property, specifically including but not limited to any action which has been or may be brought to sell Co-Owned Property under Bankruptcy Code § 363(h)).

**C.      Parties Responsible for Implementation of the Plan**

Upon confirmation, the Liquidating Trustee will be charged with administration of the Case.  Liquidating Trustee will be authorized and empowered to take such actions as are required to effectuate the Plan. Liquidating Trustee will file all post-Effective Date reports required by the United States Trustee's office.  Liquidating Trustee will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process.  Liquidating Trustee shall be authorized to reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to the Liquidating Trustee, the Committee or other party-in-interest. Debtor shall be authorized to reopen this case after entry of a Final Decree in order to seek a discharge.

**D.      Liabilities of Debtor**

Debtor will not have any obligations under the Plan except those expressly assumed under the Plan.  The Liquidating Trustee will be responsible for all ongoing expenses and payment of Distributions to creditors from Trust Assets for obligations due and owing under the confirmed Plan. Debtor shall be liable for all ongoing living expenses. The Liquidating Trustee and the Liquidation Trust shall not be liable for any debt incurred by Debtor subsequent to Confirmation of the Plan.

**E.      Funding of the Plan**

The source of funds for the payments pursuant to the Plan will be the Liquidation Trust which shall receive certain of Debtor's assets.

**F.      Post-Petition Management of Debtor**

The Liquidation Trust will be managed by the Liquidating Trustee. The Liquidation Trustee will be subject to the oversight of the Liquidating Trust Committee, which will be composed of the committee's representatives: Ainsworth Dudley, Esq., and Mutepe Akemon, Esq.

### G.        Provisions Regarding Executory Contracts

As of the Effective Date of the Plan, Debtor will reject that certain executory contract with Disney Vacation Club for the timeshare at Copper Creek Villas & Cabins at Disney's Wilderness Lodge Lessee Timeshare. Debtor will be deemed to have assumed and assigned to the Liquidating Trustee all executory contracts regarding, and to the extent related to, liability and property insurance, including without limitation, claims incurred coverage or similar coverage, real and personal property insurance, vehicle insurance, and business liability insurance. Any unexpired leases or executory contracts which are not assumed under the Plan or are the subject of a pending motion to assume as of the Effective Date shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.  Under the terms of the Plan, a proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after the Confirmation Date. Any claims which are not timely filed will be disallowed and discharged.

### H.        Avoidance Actions and Retained Rights

The Plan provides that all rights of action held by Debtor and Debtor's Estate against others shall be transferred to the Liquidating Trust except Co-Owned Property Avoidance Actions which shall be prosecuted by the Committee. Upon information and belief and based on the Committee' due diligence in this case (which remains on-going), Debtor holds claims against various individuals and entities listed on Exhibit "A" to this Disclosure Statement. Such exhibit may not be a complete list of all rights of actions, as the Committee or Liquidating Trustee may discover additional Causes of Action. The Plan also provides that Debtor's "Avoidance Actions" under Chapter 5 of the Bankruptcy Code shall be transferred to the Liquidating Trust as stated above. Debtor and Debtor's Estate may also have Claims against others which are retained and transferred to the Liquidating Trust.

### I.        SUBSTANTIVE CONSOLIDATION OF TERI G. GALARDI AND THE TERI G. GALARDI SEPARATE PROPERTY TRUST U/A/D/9-27-06, AS AMENDED AND RESTATED ON FEBRUARY 9, 2018.

Teri G. Galardi is the Settlor, Trustor, Trustee, and primary Beneficiary of the revokable Trust known as the "Teri G. Galardi Separate Property Trust u/a/d 9-27-06" (the "Separate Property Trust"). Upon information and belief, such trust is a revocable trust, as the trust may be amended or revoked at any time by the Settlor/Trustee (Teri Galardi). Upon information and belief, the Trust instrument specifically provides that its spendthrift provisions do not apply to Galardi's interest in the Trust. Assets in a revocable trust are subject to claims of debtor's creditors. O.C.G.A. § 53-12-82(a)(1) ("During the lifetime of the settlor, the property of a revocable trust shall be subject to claims of the settlor's creditors."); *In re Nichols*, 434 B.R. 906, 909 (Bankr. M.D. Fla. 2010).

As of the Effective Date, the Estate and the Separate Property Trust shall be consolidated and be considered one Person pursuant to 11 U.S.C. § 1123(a)(5)(C) ("Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide adequate means for the plan's implementation, such as . . . merger or consolidation of the debtor with one or more person.").

The following are, without limitation, assets of the Separate Property Trust.

| Parcel Number | Address | Tax Value |
|---|---|---|
| 00510-050-000 | 2146 Hwy 42 S, Flovilla, Butts Co., Ga. | $1,469,617.00 |
| 00510-044-000 (101.79 acres) | Hwy 42 S, Flovilla, Butts Co., Ga. | $305,370.00 |
| 00510-045-000 (9.79 acres) | 245 Mt. Vernon Church Rd, Flovilla, Butts Co., Ga. | $116,007.00 |
| 00510-048-000 (51.71 acres) | Hwy 42 S, Flovilla, Butts Co, Ga | $258,550.00 |
| 00510-049-000 (55.6 acres) | S Highway 42, Flovilla, Butts Co., Ga | $278,000.00 |
| 18-156-01-003 | 1837 Corporate Boulevard, Brookhaven, Georgia 30329 | $1,538,800.00 |

The Plan Proponent continues its investigation. This list shall not be interpreted to mean that these are the only assets of the Separate Property Trust.

Upon the Effective Date, all assets of the Separate Property Trust shall be deemed to be Trust Assets pursuant to the Plan.

**J.     Treatment of Claims and Interests**

A brief summary of the Classes, the treatment of each Class, and the voting rights of each Class is set forth below.  A complete description of the treatment of each Class is set forth in Article 4 of the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. The Committee and the Liquidating Trustee have the right under the Plan to object to any and all Claims.

The Plan provides the Liquidating Trustee the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

**4.1     Class 1: Secured or Priority Claim of the Internal Revenue Service**

Class 1 consists of any Secured Claim or Priority Tax Claim against Debtor held by the Internal Revenue Service (the "IRS") which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) (the "Class 1 IRS Tax Claim"). Debtor scheduled the IRS as holding three priority claims of (i) $555,603.09 for 2018 taxes; (ii) $1,044,235.96 for 2018 taxes and (ii) $12,386,862.37 for estate taxes based on Debtor's status as executor and beneficiary of her father's estate. The IRS filed a claim on February 11, 2022, as amended on March, 24, 2022, (such amendment, the "IRS Proof of Claim") asserting

$541,068.52 in unsecured priority claims under section 507(a)(8) (the "Allowed Class 1 IRS Tax Claim") and a $13,689,913.22 unsecured claim. The Allowed Class 1 IRS Tax Claim shall be treated pursuant to this Class 1 and the $13,689,913.22 unsecured claim shall be treated pursuant to Class 6. The Government Bar Date for filing proofs of claim is fixed by 11 U.S.C. § 502 and was July 11, 2022. Based upon the passage of the Government Bar Date, any claim of the IRS except for the Allowed Class 1 IRS Tax Claim (which is the amount and priority set forth in the IRS proof of claim) assertable by the IRS on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) shall: (i) be time barred and fixed as provided in the Plan, subject to Plan Proponent's and Liquidating Trustee's right to object to the same and (ii) any other, additional, or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged.  Debtor shall pay any claim of the IRS treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i). The IRS shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for all such claims.

The Liquidating Trustee shall pay the Allowed Class 1 IRS Tax Claim as a Priority Claim Distribution as provided in Article IX of the Plan, but in any event the Liquidating Trustee shall pay such Allowed Class 1 IRS Tax Claim in full in equal monthly payments commencing on the 15th day of the 1st full month that is 60 days following the Effective Date and continuing on the 15th day of each subsequent month, with the last payment and the balance of the Class 1 IRS Tax Claim, if any, due on or before January 12, 2027. Interest shall accrue on the principal balance of the Allowed Class 1 IRS Tax Claim at the annual rate of 5% or such rate as may be provided pursuant to 26 U.S.C. § 6621 and 11 U.S.C. § 511 as of the Confirmation Date.  Any third-party payments or payments in excess of the scheduled Distribution pursuant to Class 1 received by IRS after the Filing Date shall be applied to the principal tax obligation of the Allowed Class 1 IRS Tax Claim owed pursuant to Class 1.

Notwithstanding any other provision of the Plan, nothing in the Plan or the Confirmation Order thereon shall discharge a federal tax debt of the kind specified in 11 U.S.C. § 523(a)(1)(B) or (C). Notwithstanding any other provision of the Plan, nothing in the Plan or the Confirmation Order thereon shall bar or enjoin the IRS from assessing or collecting any federal tax liability or penalty against a co-debtor.  Further, nothing in the Plan or the Confirmation Order thereon shall exculpate or limit the liability of any co-debtor who is liable for any federal tax debt. Specifically, nothing in the Plan, the Disclosure Statement, or any other supporting document shall constitute any wavier or relinquishment of any right by the IRS or the Liquidating Trustee against Michael Porter, including but not limited to (i) the right of the IRS to seek to collect all such amounts from Michael Porter, Debtor's husband, and (ii) the right of the Liquidating Trustee to seek contribution, indemnification, or any similar such theory of recovery against Michael Porter for any payment of the Allowed Class 1 IRS Tax Claim. If the IRS recovers any amounts from Michael Porter, the IRS shall notify the Liquidating Trustee and the Liquidating Trustee shall reduce the amount due from the Liquidating Trust to the IRS on the Allowed Class 1 IRS Tax Claim accordingly.

Notwithstanding any other provision of the Plan, if the Liquidating Trustee fails to pay any Distribution to the IRS under Class 1 when due under the Plan, the Liquidating Trustee shall be in default as to the IRS under Class 1. In the event of a default under Class 1, the IRS must send a Default Notice to the Liquidating Trustee in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the

default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries.  Upon failure to cure such default by no later than the tenth (10th) day (if a business day or, if not, the following business day) after the day of such default, the United States of America may avail itself of administrative remedies under the Internal Revenue Code to assess or collect any unpaid Allowed Class 1 IRS Claim liability provided for under the Plan against the Debtor and the Liquidating Trust, including any applicable interest or penalties thereon, up the amounts provided for in the Plan.

The amount of any claim of the IRS that is not assessable prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and the right of the IRS, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of IRS would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code; notwithstanding the foregoing, the Trust Assets shall not be subject to any such claims.  However, the rights and treatment of the IRS and obligations and liability of Debtor or her property regarding any claim of the IRS against Debtor which was assessable prior to the Filing Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable on or prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and not included in the IRS Proof of Claim and therefore deemed the Allowed Class 1 IRS Claim shall be forever barred. Liquidating Trustee reserves the right to pay any tax claim in full at any time.

The Claim of the Class 1 Creditor is unimpaired by the Plan and the holder of the Class 1 Claim is deemed to have accepted the Plan.  *See In re Equitable Dev. Corp.*, 196 B.R. 889, 893 (Bankr. S.D. Ala. 1996) (priority tax claimants treated under § 507(a)(8) and § 1129(a)(9)(C) are not impaired).

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. The Plan Proponent and Liquidating Trustee reserve the right to object to any and all claims.

### 4.2   Class 2: Secured or Priority Tax Claim of Georgia Department of Revenue

Class 2 shall consist of any Secured Claim or Priority Tax Claim against Debtor held by the Georgia Department of Revenue (the "GDR") which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.SC. § 502(i) (the "Class 2 GDR Tax Claim"). The GDR filed Proof of Claim 121 on May 16, 2022, as amended on August 23, 2022, for a total claim of $264,519.33, consisting of (i) $127,513.42 in secured claims, (ii) $126,980.55 in priority claims and (iii) $10,025.36 in unsecured claims. Such amounts arose from Debtor's liability on personal income tax returns jointly filed with her husband, Michael Porter. The secured and priority claims set forth in the GDR proof of claim, totaling $254,493.97, shall be treated pursuant to this Class 2 (the "Allowed Class 2 GDR Tax Claim") and the $10,025.36 set forth in the GDR proof of claim in unsecured claims shall be treated pursuant to Class 6.

The Government Bar Date for filing proofs of claim is fixed by 11 U.SC. § 502 and was July 11, 2022. Based upon the passage of the Government Bar Date, any claim asserted or

assertable by the GDR on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) shall: (i) be time barred and fixed as provided in the Plan, subject to Plan Proponent and Liquidating Trustee's right to object to the same and (ii) any other, additional, or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged. The Debtor shall pay any claim of the GDR treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i). The GDR shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims.

The Liquidating Trustee shall pay the Allowed Class 2 GDR Tax Claim as a Priority Claim Distribution as provided in Article IX of the Plan, but in any event the Liquidating Trustee shall pay such Allowed Class 2 GDR Tax Claim in full in equal monthly payments commencing on the 15th day of the 1st full month that is 60 days following the Effective Date and continuing on the 15th day of each subsequent month, with the last payment and the balance of the Allowed Class 2 GDR Tax Claim, if any, due on or before January 12, 2027.  Interest shall accrue on the principal balance of the Allowed Class 2 GDR Tax Claim at the annual rate of 6.25% or such rate as may be provided pursuant to Georgia law and 11 U.S.C. § 511 as of the Confirmation Date. Any third-party payments or payments in excess of the scheduled Distribution pursuant to Class 2 received by GDR after the Filing Date shall be applied to the principal tax obligation of the Allowed Class 2 GDR Tax Claim owed pursuant to Class 2.

Notwithstanding any other provision of the Plan, nothing in the Plan or the Confirmation Order thereon shall discharge a tax debt of the kind specified in 11 U.S.C. § 523(a)(1)(B) or (C). Notwithstanding any other provision of the Plan, nothing in the Plan or the Confirmation Order thereon shall bar or enjoin the GDR from assessing or collecting any state tax liability or penalty against a co-debtor.  Further, nothing in the Plan or the Confirmation Order thereon shall exculpate or limit the liability of any co-debtor who is liable for any state tax debt. Specifically, nothing in the Plan, the Disclosure Statement, or any other supporting document shall constitute any wavier or relinquishment of any right by the GDR or the Liquidating Trustee against Michael Porter, including but not limited to (i) the right of the GDR to seek to collect all such amounts from Michael Porter, Debtor's husband, and (ii) the right of the Liquidating Trustee to seek contribution, indemnification, or any similar such theory of recovery against Michael Porter for any payment of the Allowed Class 2 GDR Tax Claim. If the GDR recovers any amounts from Michael Porter, the GDR shall notify the Liquidating Trustee and the Liquidating Trustee shall reduce the amount due from the Liquidating Trust to the GDR on the Allowed Class 2 GDR Tax Claim accordingly.

A failure to make a payment under Class 2 to the GDR pursuant to the terms of the Plan shall be an event of default as to the GDR.  In the event of a default under Class 2, the GDR must send a Default Notice in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by any attorney shall not be deemed receipt of the required Default Notice.  In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the GDR may (a) enforce the entire amount of its then outstanding Allowed Class 2 GDR Tax Claim against the Debtor and the Liquidating Trustee; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 2 GDR Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy

Court.

The amount of any claim of the GDR that is not assessable prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and the right of GDR, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of GDR would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code; notwithstanding the foregoing, the Trust Assets shall not be subject to any such claims. However, the rights and treatment of GDR and obligations and liability of Debtor or her property regarding any claim of GDR against Debtor which was assessable prior to the Filing Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable on or prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and not included in the GDR proof of claim and therefore deemed the Allowed Class 2 GDR Tax Claim shall be forever barred. Liquidating Trustee reserves the right to pay any tax claim in full at any time.

The Claim of the Class 2 Creditor is unimpaired by the Plan and the holder of the Class 2 Claim is deemed to have accepted the Plan. *See In re Equitable Dev. Corp.*, 196 B.R. 889, 893 (Bankr. S.D. Ala. 1996) (priority tax claimants treated under § 507(a)(8) and § 1129(a)(9)(C) are not impaired).

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. The Plan Proponent and Liquidating Trustee reserve the right to object to any and all claims.

### 4.3 Class 3: Secured Claim of Ag South Farm Credit

Class 3 consists of the Secured Claim of Ag South Farm Credit, ACA ("Ag South"). On January 20, 2022, Ag South filed proof of claim 1 asserting a secured claim in the amount of $235,854.59 (the "Class 3 Secured Claim"). Ag South's Class 3 Secured Claim is evidenced by the following loan documents (collectively, the "Ag South Loan Documents"): (i) Fixed Rate Note signed by Teri Galardi dated October 15, 2015, (ii) Deed to Secure Debt dated October 15, 2015 between Circle G Ranch Holdings, LLC, Teri G Galardi and Michael Porter naming Ag South as lender, recorded in the real property records of Butts County, Book Number 788, Page 410-416. The Class 3 Secured Claim is secured by three real estate parcels as follows:

| Parcel | Owner | Tax Value |
|---|---|---|
| Parcel No 00510-033-A00 (201 Fawn Rd.) (128.76 acres) | Circle G Ranch Holdings, LLC | $450,660.00 |
| Parcel No. 00520-045-000 (52 acres) | Teri Galardi & Michael Porter | $155,910.00 |
| Parcel No. 00520-017-A00 (13.02 acres) | Teri Galardi & Michael Porter | $78,120.00 |
| Total: | | $684,690.00 |

Such parcels shall be defined as the "Ag South Collateral." The Allowed Class 3 Secured Claim of Ag South shall continue and attach to the Ag South Collateral to the same extent, validity, and priority as existed on the Filing Date.

The Liquidating Trustee shall pay the Allowed Class 3 Secured Claim as a Secured Claim as provided in the Plan. The Liquidating Trustee shall pay interest only payments of $1,267.72, each, beginning on the 15th day of the 1st full month following the 60th day after the Effective Date and continuing monthly until the earlier of (i) the date the Ag South Collateral is sold or (ii) a maturity date that is the Final Distribution Date. Interest shall accrue on the principal balance of the Class 3 Secured Claim at the annual rate of 6.45% commencing on the Effective Date. Ag South shall retain its lien and security interest in the Ag South Collateral to the same priority and validity as existed on the Filing Date notwithstanding the transfer of Ag South Collateral to the Liquidating Trust as a Trust Asset; however, Ag South shall release its lien on and security interest in the Ag South Collateral upon payment as provided in the Plan. Upon request by the Liquidation Trustee, Ag South shall promptly provide a payoff letter including the then outstanding balance of the Class 3 Secured Claim and an accounting including all credits and debits, including all payments received and their application.

The holder of the Class 3 Secured Claim is impaired and entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as the nature, validity, or amount of claim. Plan Proponent and Liquidating Trustee reserve the right to object to any and all claims for any reason.

### 4.4     Class 4: Secured Claim of Business First Bank

Class 4 consists of the first-priority secured claim of Business First Bank ("Business First"). On May 17, 2022, Business First filed proof of claim 122 asserting an unsecured claim in the amount of $717,075.47 (the "Class 4 Secured Claim") consisting of: (i) $714,075.47 in principal and (ii) $3,257.47 in interest.

Such proof of claim is based on Debtor's guaranty of a debt of (a) Teri Gale Galardi, Trustee of JEG Family Trust under the provisions of a Trust Agreement dated November 1, 2006 and (b) Trop, Inc. to Business First Bank secured by that certain property located at 1837 Corporate Boulevard, Brookhaven, Georgia 30329 ("Corporate Boulevard"). By Warranty Deed recorded on June 6, 2015, in the real property records of DeKalb County at Book 24917, Page 49, "Teri Gale Galardi, Successor Trustee of the JEG Family Trust" transferred Corporate Boulevard to "Teri G. Galardi, Trustee of the Teri G. Galardi Separate Property Trust, dated September 27, 2006." Under the Plan, Teri G. Galardi and the Teri G. Galardi Separate Trust are substantively consolidated. Further, Debtor scheduled Business First as a secured creditor and listed Corporate Boulevard as her asset on her schedules (Doc. No. 34 at Sch. A, pg., 6; Sch. D, pg. 2). The Plan thus treats Business First as a secured creditor.

The Liquidating Trustee shall pay the Allowed Class 4 Secured Claim as provided in the Plan. The Liquidating Trustee shall pay interest only payments of $5,058.03, each, beginning on the 15th day of the 1st full month following the 60th day after the Effective Date and continuing

monthly until the earlier of (i) the date the Corporate Boulevard is sold or (ii) a maturity date that is the Final Distribution Date. Interest shall accrue on the principal balance of the Class 4 Secured Claim at the annual rate of 8.5% commencing on the Effective Date. Business First shall retain its lien and security interest in Corporate Boulevard to the same priority and validity as existed on the Filing Date, notwithstanding the transfer of Corporate Boulevard to the Liquidating Trust as a Trust Asset; however, Business First shall release its lien on and security interest in Corporate Boulevard upon payment as provided in the Plan. Upon request by the Liquidation Trustee, Business First shall promptly provide a payoff letter including the then outstanding balance of the Class 4 Secured Claim and an accounting including all credits and debits, including all payments received and their application.

The holder of the Class 4 Secured Claim is impaired and entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as the nature, validity, or amount of claim. Plan Proponent and Liquidating Trustee reserve the right to object to any and all claims for any reason.

### 4.5    Class 5: Secured Claim of Wells Fargo Bank

**Class 5A**

Class 5A consists of the following secured claim of Wells Fargo Bank, N.A. ("Wells Fargo") ("Class 5A Secured Claim"). On March 23, 2022, Wells Fargo filed a proof of claim 111 asserting a secured claim in the amount of $502,384.28, secured by a first priority lien on that certain real estate commonly referred to as 15820 SW 53rd County, Southwest Ranch, Florida 33331 ("Southwest Ranches Property"). The Class 5A Secured Claim is evidenced by the following loan documents (collectively, the "Wells Fargo Class 5A Loan Documents"): (i) Fixed/Adjustable Rate Note dated September 15, 2008, by Teri G. Galardi and Michael A. Porter in favor of Wachovia Mortgage, FSB nka Wells Fargo; (ii) Addendum to Note for Interest Only Payments dated September 15, 2008, by Teri G. Galardi and Michael A. Porter in favor of Wachovia Mortgage, FSB nka Wells Fargo; (iii) Mortgage by Teri G. Galardi and Michael A. Porter, Wife and Husband, dated September 15, 2008, with Wachovia Mortgage, FSB nka Wells Fargo as lender, recorded in the real property records of Broward County, Florida, Book No. 45698, Pages 1915-1937.

However, Debtor and Michael Porter transferred such property to Jackson Galardi Trust & Grace Galardi Trust on November 29, 2017, as evidenced by Warranty Deed on such date and recorded in the real property records of Broward County, Florida, Instr. # 114744796. The Committee shall file an Avoidance Action seeking to recover such transfer.

If such Avoidance Action is successful, the Liquidating Trustee shall pay Wells Fargo interest-only payments of $1,046.63 at the contractual rate of 2.5% from the date Southwest Ranches becomes part of the Liquidating Trust through the earlier of (i) the date the Southwest Ranches Property is sold or (ii) a maturity date that is the Final Distribution Date. The Liquidating Trustee shall pay the Allowed Class 5A Secured Claim as a Secured Claim as provided in the Plan.

Wells Fargo shall retain its lien and security interest in the Southwest Ranches Property to the same priority and validity as existed on the Filing Date; however, Wells Fargo shall release its lien on and security interest in Southwest Ranches upon payment as provided in the Plan. Upon request by the Liquidation Trustee, Wells Fargo shall promptly provide a payoff letter including the then outstanding balance of the Class 5A Secured Claim and an accounting including all credits and debits, including all payments received and their application.

**Class 5B**

Class 5B consists of the following secured claim of Wells Fargo Bank, N.A. ("Wells Fargo") ("Class 5B Secured Claim"). Debtor scheduled Wells Fargo as holding a first-priority secured claim of $549,647.41 in 2146 Highway 42 South, Georgia ("Galardi Residence"). The Class 5B Secured Claim is evidenced by the following loan documents (collectively, the "Wells Fargo Class 5B Loan Documents"): Open-End Deed to Secure Debt by Jack E. Galardi, dated December 27, 2004, with Wachovia Bank, National Association nka Wells Fargo as lender, recorded in the real property records of Butts County, Georgia, Book No. 470, Pages 273-280.

The Liquidating Trustee shall make interest-only payments to Wells Fargo of $1,347.11 until the earlier of (i) the date the Galardi Residence is sold or (ii) a maturity date that is the Final Distribution Date. The Liquidating Trustee shall pay the Allowed Class 5B Secured Claim as a Secured Claim as provided in the Plan.

Wells Fargo shall retain its lien and security interest in the Galardi Residence to the same priority and validity as existed on the Filing Date; however, Wells Fargo shall release its lien on and security interest in the Galardi Residence upon payment as provided in the Plan. Upon request by the Liquidation Trustee, Wells Fargo shall promptly provide a payoff letter including the then outstanding balance of the Class 5B Secured Claim and an accounting including all credits and debits, including all payments received and their application.

Nothing herein shall constitute an admission as the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims for any reason.

The holder of the Class 5 Secured Claims is impaired and entitled to vote to accept or reject the Plan.

### 4.6    Class 6: General Unsecured Claims

Class 6 shall consist of the general unsecured claims. The Plan Proponent projects the following unsecured creditors:

| Name | Claim No. | Date Filed/ Amended | Claim Amount: | Anticipated Allowed Amount | Reasoning to Object |
|------|-----------|---------------------|---------------|----------------------------|---------------------|
| Shanice Bain | 2 | 3/23/2022 | $    338,000.00 | $338,000.00 | |
| Yashica Bain | 3 | 3/23/2022 | $    488,000.00 | $488,000.00 | |
| Netonia Bell | 4 | 3/23/2022 | $    226,000.00 | $226,000.00 | |

17

| Yamilee Bennett | 5 | 3/23/2022 | $ | 346,000.00 | $346,000.00 | |
|---|---|---|---|---|---|---|
| Maria Bush | 6 | 3/23/2022 | $ | 236,000.00 | $236,000.00 | |
| Princess Callahan | 7 | 3/23/2022 | $ | 480,000.00 | $480,000.00 | |
| Jessica Chatman | 8 | 3/23/2022 | $ | 362,000.00 | $362,000.00 | |
| Quina Dopoe | 9 | 3/23/2022 | $ | 516,000.00 | $516,000.00 | |
| Shadana Deleston | 10 | 3/23/2022 | $ | 532,000.00 | $532,000.00 | |
| Shanrika Duhart | 11 | 3/23/2022 | $ | 338,000.00 | $338,000.00 | |
| Belinda Harris | 12 | 3/23/2022 | $ | 340,000.00 | $340,000.00 | |
| Crystyona Hartzog | 13 | 3/23/2022 | $ | 52,000.00 | $52,000.00 | |
| Sasha Hollins | 14 | 3/23/2022 | $ | 228,000.00 | $228,000.00 | |
| Kitrea Jackson | 15 | 3/23/2022 | $ | 308,000.00 | $308,000.00 | |
| Ronika Jones | 16 | 3/23/2022 | $ | 126,000.00 | $126,000.00 | |
| Abri Leahong | 17 | 3/23/2022 | $ | 532,000.00 | $532,000.00 | |
| Queen Lewis | 18 | 3/23/2022 | $ | 244,000.00 | $244,000.00 | |
| Montoyo Minnis | 19 | 3/23/2022 | $ | 432,000.00 | $432,000.00 | |
| Tania Ramessar | 20 | 3/23/2022 | $ | 440,000.00 | $440,000.00 | |
| Jennifer Ridley | 21 | 3/23/2022 | $ | 160,000.00 | $160,000.00 | |
| Aida Simmons | 22 | 3/23/2022 | $ | 516,000.00 | $516,000.00 | |
| Seleta Stanton | 23 | 3/23/2022 | $ | 226,000.00 | $226,000.00 | |
| Aisha Taliaferro | 24 | 3/23/2022 | $ | 40,000.00 | $40,000.00 | |
| Marsha Taylor | 25 | 3/23/2022 | $ | 296,000.00 | $296,000.00 | |
| Brittany Walker | 26 | 3/23/2022 | $ | 268,000.00 | $268,000.00 | |
| Keesha Weems | 27 | 3/23/2022 | $ | 106,000.00 | $106,000.00 | |
| Africa Williams | 28 | 3/23/2022 | $ | 480,000.00 | $480,000.00 | |
| Marquesha Holmes | 29 | 1/31/2022 | $ | 152,053.00 | $152,053.00 | |
| Elliandria Griffin | 30 | 2/1/2022 | $ | 152,053.00 | $152,053.00 | |
| Lakeisha Fenner | 31 | 2/1/2022 | $ | 458,739.84 | $458,739.84 | |
| Lygia Simmons | 32 | 2/1/2022 | $ | 68,622.72 | $68,622.72 | |
| Mutepe Akermon | 33 | 2/1/2022 | $ | 123,011.45 | $123,011.45 | |
| Discover Bank | 34 | 2/7/2022 | $ | 6,868.88 | $6,868.88 | |
| IRS | 35 | 3/24/2022 | $ | 13,689,913.22 | $13,689,913.22 | |
| American Express | 36 | 2/16/2022 | $ | 18,265.84 | $18,265.84 | |
| American Express | 37 | 2/16/2022 | $ | 2,196.97 | $2,196.97 | |
| Angela Milner | 38 | 3/8/2022 | $ | 838,576.00 | $838,576.00 | |
| Marleeka Williams | 39 | 3/10/2022 | $ | 479,791.00 | $479,791.00 | |
| Ebony Mayfield | 40 | 3/10/2022 | $ | 727,542.00 | $727,542.00 | |
| Rasheedah Mays | 41 | 3/10/2022 | $ | 686,578.00 | $686,578.00 | |
| Verizon | 42 | 3/10/2022 | $ | 83.48 | $83.48 | |
| Bank of America | 43 | 3/11/2022 | $ | 19,340.97 | $0.00 | No Prsl. Gty.[2] |
| Diana Smith | 44 | 3/12/2022 | $ | 483,896.00 | $483,896.00 | |

[2] The primary obligor reflected on the supporting documentation is Galardi Eagle Lakes, LLC. No personal guaranty is attached to the claim.

| | | | | | | |
|---|---|---|---|---|---|---|
| Marei Kahey | 45 | 3/12/2022 | $ | 544,046.16 | $544,046.16 | |
| Angela Coates | 46 | 3/12/2022 | $ | 363,976.00 | $363,976.00 | |
| Desiree Jones | 47 | 3/12/2022 | $ | 365,532.00 | $365,532.00 | |
| Cassandra St. Fluer | 48 | 3/12/2022 | $ | 188,586.00 | $188,586.00 | |
| Brandie Robertson | 49 | 3/12/2022 | $ | 310,720.00 | $310,720.00 | |
| Tramaine Moore | 50 | 3/12/2022 | $ | 432,864.00 | $432,864.00 | |
| Marqueta Ward | 51 | 3/12/2022 | $ | 538,828.00 | $538,828.00 | |
| Brittany Gregory | 52 | 3/12/2022 | $ | 24,652.32 | $24,652.32 | |
| Gabrielle Bates | 53 | 3/12/2022 | $ | 498,228.00 | $498,228.00 | |
| Ashley Armstrong | 54 | 3/12/2022 | $ | 200,739.84 | $200,739.84 | |
| Estate of Harlan Miller | 55 | 3/15/2022 | $ | 170,650.00 | $170,650.00 | |
| Ameera Brewer | 56 | 3/17/2022 | $ | 838,575.20 | $838,575.20 | |
| Astrid Gabbe | 57 | 3/17/2022 | $ | 163,956.32 | $163,956.32 | |
| Ainsworth Dudley | 58 | 3/19/2022 | $ | 480,872.10 | $0.00 | To be paid as Trop Secured Claim[3] |
| Samantha Holdren | 59 | 3/19/2022 | $ | 22,728.09 | $0.00 | To be paid as Trop Secured Claim |
| Rachel Konke | 60 | 3/19/2022 | $ | 12,542.53 | $0.00 | To be paid as Trop Secured Claim |
| Ivelisse Borges | 61 | 3/19/2022 | $ | 22,143.96 | $0.00 | To be paid as Trop Secured Claim |
| Starr Sullivan | 62 | 3/19/2022 | $ | 266.21 | $0.00 | To be paid as Trop Secured Claim |
| Limberly Kelly | 63 | 3/19/2022 | $ | 15,797.96 | $0.00 | To be paid as Trop Secured Claim |
| Andrea Hilley | 64 | 3/19/2022 | $ | 21,660.69 | $0.00 | To be paid as Trop Secured Claim |
| Ashley Johnston | 65 | 3/19/2022 | $ | 266.21 | $0.00 | To be paid as Trop Secured Claim |
| Kaci Phillip | 66 | 3/19/2022 | $ | 12,961.30 | $0.00 | To be paid as |

[3] All such designated claims are claims against Debtor personally for a guaranty of debt owed by Trop, Inc., one of Debtor's entities. Such claims are also secured by a Deed to Secure Debt on property owned by JGP&P, LLC. Such property is scheduled to be sold prior to any hearing on this Plan. To the extent such claims are paid from or by Trop, then such claims would not need to be paid under the Plan. To the extent such claims are not paid by or through Trop (or otherwise) such claims will be paid under the Plan.

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Trop Secured Claim |
| Nikki Simmons | 67 | 3/19/2022 | $ 1,960.73 | $0.00 | To be paid as Trop Secured Claim |
| Rebekah Reschar | 68 | 3/19/2022 | $ 4,991.61 | $0.00 | To be paid as Trop Secured Claim |
| Shelley O'Neill | 69 | 3/19/2022 | $ 71,607.61 | $0.00 | To be paid as Trop Secured Claim |
| Elisha Morrow | 70 | 3/19/2022 | $ 47,397.96 | $0.00 | To be paid as Trop Secured Claim |
| Alexandra Valcourt | 71 | 3/20/2022 | $ 31,713.15 | $0.00 | To be paid as Trop Secured Claim |
| Devonne Washington | 72 | 3/20/2022 | $ 266.21 | $0.00 | To be paid as Trop Secured Claim |
| Sahra Ahmed | 73 | 3/20/2022 | $ 41,351.44 | $0.00 | To be paid as Trop Secured Claim |
| Ashley Langston | 74 | 3/20/2022 | $ 49,033.10 | $0.00 | To be paid as Trop Secured Claim |
| Caroline Smith | 75 | 3/20/2022 | $ 40,289.68 | $0.00 | To be paid as Trop Secured Claim |
| Julie Milburn | 76 | 3/20/2022 | $ 105,460.15 | $0.00 | To be paid as Trop Secured Claim |
| Heather West | 77 | 3/20/2022 | $ 101,400.97 | $0.00 | To be paid as Trop Secured Claim |
| Jessica Harris | 78 | 3/20/2022 | $ 47,873.04 | $0.00 | To be paid as Trop Secured Claim |
| Jessica Ward | 79 | 3/20/2022 | $ 266.21 | $0.00 | To be paid as Trop Secured Claim |
| Natasha Dejesus | 80 | 3/20/2022 | $ 8,550.42 | $0.00 | To be paid as Trop Secured Claim |
| Veronica Frascone | 81 | 3/20/2022 | $ 25,680.96 | $0.00 | To be paid as Trop Secured |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Claim |
| Lindsey Croome | 82 | 3/20/2022 | $ 266.21 | $0.00 | To be paid as Trop Secured Claim |
| Tara Steinberg | 83 | 3/20/2022 | $ 17,851.35 | $0.00 | To be paid as Trop Secured Claim |
| Danielle Kossler | 84 | 3/20/2022 | $ 22,938.49 | $0.00 | To be paid as Trop Secured Claim |
| Mary Alexander | 85 | 3/20/2022 | $ 18,399.12 | $0.00 | To be paid as Trop Secured Claim |
| Arielle Moore | 86 | 3/20/2022 | $ 6,433.04 | $0.00 | To be paid as Trop Secured Claim |
| Samantha Matecka | 87 | 3/21/2022 | $ 10,580.26 | $0.00 | To be paid as Trop Secured Claim |
| Decoda Burke | 88 | 3/21/2022 | $ 826.78 | $0.00 | To be paid as Trop Secured Claim |
| Angelica Andrews | 89 | 3/21/2022 | $ 266.21 | $0.00 | To be paid as Trop Secured Claim |
| Athanasia Angelakis | 90 | 3/21/2022 | $ 1,791.28 | $0.00 | To be paid as Trop Secured Claim |
| Cody Heywood | 91 | 3/21/2022 | $ 42,538.63 | $0.00 | To be paid as Trop Secured Claim |
| Nicolette Groebli | 92 | 3/21/2022 | $ 41,148.71 | $0.00 | To be paid as Trop Secured Claim |
| Hannah Conroy-Philburn | 93 | 3/21/2022 | $ 19,242.29 | $0.00 | To be paid as Trop Secured Claim |
| Holly Paige | 94 | 3/21/2022 | $ 24,565.44 | $0.00 | To be paid as Trop Secured Claim |
| Jammie Parker | 95 | 3/21/2022 | $ 366,475.20 | $0.00 | Unknown.[4] |
| Power Financial Credit Union | 96 | 3/29/2022 | $ 2,169,417.26 | $0.00 | To be paid by third party |

---

[4] See treatment below for Claims 95, 98, and 99.

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | payments[5] |
| Astrid Gabbe | 97 | 3/21/2022 | $ | 346,240.00 | $346,240.00 | |
| Shakir Williams | 98 | 3/21/2022 | $ | 229,137.60 | $0.00 | Unknown[6] |
| Jocelyn Johnson | 99 | 3/21/2022 | $ | 116,644.80 | $0.00 | Unknown[7] |
| Tiffany Thompson | 100 | 3/21/2022 | $ | 184,393.92 | $0.00 | Dup of 114 |
| Alexis King | 101 | 3/21/2022 | $ | 304,490.30 | $0.00 | Dup. of 110 |
| Apeatsiwa Shaw-Taylor | 102 | 3/21/2022 | $ | 300,000.00 | $300,000.00 | |
| Marissa Walker | 103 | 3/21/2022 | $ | 840,296.00 | $840,296.00 | |
| Jenisee Long | 104 | 3/22/2022 | $ | 191,916.48 | $ 191,916.48 | |
| Astrid Gabbe | 105 | 3/22/2022 | $ | 67,170.77 | $ 67,170.77 | |
| Rasheedah Mays | 106 | 3/22/2022 | $ | 686,578.00 | $0.00 | Dup. of 41 |
| Jackie Galardi Torres | 107 | 3/22/2022 | $ | 140,285.00 | $0.00 | No Supp. Docs. |
| Cohen & Caproni | 108 | 3/22/2022 | $ | 1,380,000.00 | $0.00 | To be paid as Trop Secured Claim |
| Elliandria Griffin | 109 | 3/22/2022 | $ | 152,053.00 | $0.00 | Dup. of 30 |
| Alexis King | 110 | 3/22/2022 | $ | 468,446.62 | $468,446.62 | |
| JEG Family Trust | 112 | 3/23/2022 | $ | 843,509.20 | $843,509.20 | |
| JEG Family Trust | 113 | 3/23/2022 | $ | 1,053,191.20 | $1,053,191.20 | |
| Tiffany Thompson | 114 | 3/23/2022 | $ | 368,787.84 | $368,787.84 | |
| Jenisee Long | 115 | 3/23/2022 | $ | 383,832.96 | $383,832.96 | |
| Krystall Wright | 116 | 4/11/2022 | $ | 328,108.00 | $328,108.00 | |
| Latoya Hughes | 117 | 4/11/2022 | $ | 727,560.00 | $727,560.00 | |
| Addie Brooks | 118 | 4/11/2022 | $ | 727,560.00 | $727,560.00 | |
| American Arbitration Association | 119 | 4/12/2022 | $ | 18,780.00 | $18,780.00 | |
| American Arbitration Association | 120 | 4/12/2022 | $ | 18,780.00 | $0.00 | Dup. of 120. |

[5] The Claim of Power Financial Credit Union is secured by property of Jack E. Galardi, Jr., LLC, an entity in which Debtor has an interest. Such LLC owns a golf course and other property in Naples, Florida, which will be sold by the Liquidating Trustee. The Plan Proponent anticipates such claim will be paid in full by such sale(s).

[6] See treatment below for Claims 95, 98, and 99.

[7] See treatment below for Claims 95, 98, and 99.

| Georgia Department of Revenue | 121 | 5/16/2022 | $ 10,025.36[8] | | |
|---|---|---|---|---|---|
| **Totals:** | | | $45,002,495.82 | $37,437,926.10 | |

The Liquidating Trustee shall pay the Holders of Allowed Class 6 General Unsecured Claims Distributions pro-rata with all other Class 6 General Unsecured Claims as provided in Article XI of the Plan.

The claims made in Proof of Claims No. 95, 98, and 99 were dismissed with prejudice by the Southern District of Florida in Case No. 20-cv-23230, Doc. No. 113 on September 9, 2021. Such claimants timely appealed the dismissal and the case is currently before the Eleventh Circuit. Upon the Confirmation Date, the automatic stay shall be lifted and such claimants shall be allowed to prosecute their appeal. If the Eleventh Circuit affirms the dismissal with prejudice, the Liquidating Trustee shall not pay such claims. If the Eleventh Circuit reverses and orders the claims be reinstated, the Liquidating Trustee shall pay such claims, subject to any objections to such claims allowed under the Plan.

Nothing herein, specifically including the amount anticipated to be allowed above, shall constitute an admission as to the nature, validity, or amount of a claim. Plan Proponent and the Liquidating Trustee shall have the right to object to any and all claims.

The Holders of Class 6 Claims are Impaired and entitled to vote to accept or reject the Plan.

### 4.7    Class 7: Rights of the Debtor Under the Plan.

Class 7 consists of the rights of the Debtor under the Plan. Debtor shall be entitled to the value of the exemption which she asserted in certain assets pursuant to Schedule C as follows:

| Asset | Exemption Value Claimed |
|---|---|
| 2146 Highway 42 South | $21,500.00 |
| Household Goods – HHG & Furnishings | $2,500.00 |
| Electronics – TV's; Laptop; iPhone | $2,500.00 |
| Sports & Hobby Equipment – gym equipment | $500.00 |
| Clothing – Clothing | $500.00 |
| Jewelry – wedding ring; various costume jewelry; diamond earrings | $3,000.00 |
| Pets – (4) dogs; (2) barn cats; (10) horses | $1,000.00 |
| Other – ATV (fair condition) | $200.00 |
| Other – electric scooter | $100.00 |
| Other – paddle boat; kayaks | $100.00 |
| New International Properties, LLC | $1.00 |

---

[8] Such amount is the unsecured portion of Claim 121.

| | |
|---|---|
| 2555 Chantilly, LLC | $1.00 |
| Galardi Eagle Lakes, LLC | $1.00 |
| La Fuente, Inc. | $1.00 |
| Tegal, LLC | $1.00 |
| Porgal, Inc. | $1.00 |
| Circle G Ranch Holdings, LLC | $1.00 |
| Trop, Inc. | $1.00 |
| Red Eyed, Inc. | $1.00 |
| 823 Lounge, Inc. | $1.00 |
| Country Club, Inc. (Georgia) | $1.00 |
| Fly Low, Inc. | $1.00 |
| Three Women, Inc. | $1.00 |
| JGP&P, LLC | $1.00 |
| Bella Mia, Inc. | $1.00 |
| Country Club, Inc. (South Carolina) | $1.00 |
| Sugar Mom, LLC | $1.00 |
| LVA Management, Inc. | $1.00 |
| Candy, Inc. | $1.00 |
| GFT Management & Consulting, Inc. | $1.00 |
| Funny Time, Inc. | $1.00 |
| Trinidad Creations, LLC | $1.00 |
| Jack E. Galardi, LLC | $1.00 |
| 3-101-668494 Sociedad Anonima | $1.00 |
| Universal Life Policy (Pacific Life) | $2,000.00 |
| Sheep; pygmy goats; mini donkeys | $500.00 |
| Bobcat Skid Steer; Kamatsu Dozer; Caterpillar Backhoe; Massey Ferguson Farm Tractor; Kubota Tractor; John Deere Tractor | $1,500.00 |

Debtor shall be entitled to payment of the value of her exemptions upon liquidation of the underlying Asset. Nothing herein shall prevent the Assets listed above from becoming Trust Assets on the Effective Date.

Debtor's right under Class 7 are Impaired and Debtor is entitled to vote to accept or reject the Plan.

6. **Administrative Expenses**

Treatment of administrative expense claims is set forth in Article 7 of the Plan and summarized below.

*Summary*. Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on the Plan. Holders of such Administrative Expense Claims are not entitled to vote on the Plan. All such Claims are instead

treated separately in accordance with Article VII of the Plan and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

6.2    *Debtor's Counsel.* Debtor, pursuant to Court order, retained the law firms of McBryan Law, LLC and Boyer Terry, LLC (collectively Debtor's Counsel") to serve as bankruptcy counsel. As set forth in the employment application and supporting documents, McBryan Law, LLC received a prepetition retainer in the amount of $50,000.00. As of the date hereof, upon information and belief, McBryan Law, LLC retains such retainer. The Liquidating Trustee shall pay any unpaid allowed Claim for Professional Compensation held by Debtor's Counsel on the earlier of (i) the Effective Date or (ii) the date on which the Liquidating Trust holds sufficient funds to pay such claim or (iii) such date as agreed to by Debtor's Counsel. Any claim of Debtor's Counsel for Professional Compensation associated with this Bankruptcy Case shall not be discharged pursuant to the Plan.

6.3    *Special Counsel.* Debtor, Debtor has retained or sought retention of (a) the law firm of Schulten Ward Turner & Weiss, LLP, as special counsel, to file reports in *Porsche Darden et al. v. Fly Low, Inc. and Teri Galardi*, United States District Court, Southern District of Florida, Case No. 20-cv-20592) (Doc. No. 116); (b) Smith & Shapiro, PLLC, as special counsel, for Adversary Proceeding No. 22-5008; and (c) Solomon Dwiggins Freer & Steadman, Ltd., as special counsel, for Adversary Proceeding No. 22-5008 (collectively, "Special Counsel") to serve as special counsel for the Debtor.[9] The Liquidating Trustee shall pay any unpaid allowed Claim for Professional Compensation held by Special Counsel on the earlier of (i) the Effective Date or (ii) the date on which the Liquidating Trust holds sufficient funds to pay such claims unless otherwise agreed to by approved Special Counsel. Any claim of approved Special Counsel for Professional Compensation associated with this Bankruptcy Case shall not be discharged pursuant to the Plan.

6.4    *Debtor's Certified Public Accountant.* Debtor, pursuant to Court order, retained the accounting firm of Whaley Hammonds Tomasello, P.C. ("Debtor's Accountants"). The Liquidating Trustee shall pay any unpaid allowed Claim for Professional Compensation held by Debtor's Accountants on the earlier of (i) the Effective Date or (ii) the date on which the Liquidating Trust holds sufficient funds to pay such claims or (iii) such other date as agreed to by Debtor's Accountants. Any claim of Debtor's Accountants for Professional Compensation associated with this Bankruptcy Case shall not be discharged pursuant to the Plan.

6.5    *Committee Counsel.* Committee, pursuant to Court order, retained the law firm of Jones & Walden LLC ("Committee's Counsel") to serve as bankruptcy counsel to the Committee. The Liquidating Trustee shall pay any unpaid allowed Claim for Professional Compensation held by Committee's Counsel on the earlier of (i) the Effective Date or (ii) the date on which the Liquidating Trust holds sufficient funds to pay such claims or (iii) such other date as agreed to by Committee's Counsel. Any claim of Committee's Counsel for Professional Compensation associated with this Bankruptcy Case shall not be discharged pursuant to the Plan.

---

[9] The Committee has objected to the employment of Smith & Shapiro, PLLC and Solomon Dwiggins Freer & Steadman, Ltd.

6.6     *Committee Certified Public Accountant*. Committee, pursuant to Court order, retained the accounting firm McNair, McLemore, Middlebrooks & Co., LLC ("Committee's Accountants"). The Liquidating Trustee shall pay any unpaid allowed Claim for Professional Compensation held by Committee's Accountants on the earlier of (i) the Effective Date or (ii) the date on which the Liquidating Trust holds sufficient funds to pay such claims or (iii) such other date as agreed to by Committee's Accountants. Any claim of Committee's Accountants for Professional Compensation associated with this Bankruptcy Case shall not be discharged pursuant to the Plan.

6.7     *Allowed Administrative Expense Claims*.

6.7.1     Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim other than a claim for Professional Compensation will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the earliest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and the Liquidating Trustee, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtor in the ordinary course of business after the Filing Date, including any tax obligations arising after the Filing Date, will be paid or performed by Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

6.7.2     *Application for an Allowed Administrative Expense Claim*. Except as otherwise provided in the Plan, any Person holding an Administrative Expense Claim shall file an application for Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Confirmation Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon Committee Counsel, the Liquidating Trustee and the Liquidating Trustee's counsel of record. Any Person who fails to timely file and serve an Administrative Expense Claim by such date shall be forever barred from seeking payment of such Administrative Expense Claims by Debtor, the Estate, or the Liquidating Trust.

6.7.3     *Professional Fees*. Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Confirmation Date.

7.    **Tax Consequences**

**TAX CONSEQUENCES RESULTING FROM CONFIRMATION OF THE PLAN CAN VARY GREATLY AMONG THE VARIOUS CLASSES OF CREDITORS AND HOLDERS OF INTERESTS, OR WITHIN EACH CLASS.   SIGNIFICANT TAX CONSEQUENCES MAY OCCUR AS A RESULT OF CONFIRMATION OF THE PLAN UNDER THE INTERNAL REVENUE CODE AND PURSUANT TO STATE, LOCAL, AND FOREIGN TAX STATUTES.   BECAUSE OF THE VARIOUS TAX ISSUES**

**INVOLVED, THE DIFFERENCES IN THE NATURE OF THE CLAIMS OF VARIOUS CREDITORS, THE TAXPAYER STATUS AND METHODS OF ACCOUNTING AND PRIOR ACTIONS TAKEN BY CREDITORS WITH RESPECT TO THEIR CLAIMS, AS WELL AS THE POSSIBILITY THAT EVENTS SUBSEQUENT TO THE DATE HEREOF COULD CHANGE THE TAX CONSEQUENCES, THIS DISCUSSION IS INTENDED TO BE GENERAL IN NATURE ONLY.  NO SPECIFIC TAX CONSEQUENCES TO ANY CREDITOR OR HOLDER OF AN INTEREST ARE REPRESENTED, IMPLIED, OR WARRANTED.  EACH HOLDER OF A CLAIM OR INTEREST SHOULD SEEK PROFESSIONAL TAX ADVICE.**

**THE PROPONENT ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN HOLDER OF A CLAIM OR INTEREST.  HOLDERS OF CLAIMS OR INTEREST ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS COVERING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION.**

8. **Liquidation Analysis**

If a plan pursuant to Chapter 11 is not confirmed by the Bankruptcy Court, the Chapter 11 Case could be converted to a liquidation case under Chapter 7 of the Bankruptcy Code in which event a Chapter 7 trustee would be elected or appointed, pursuant to applicable provisions of Chapter 7 of the Bankruptcy Code, to liquidate the assets of the Debtor for distribution in accordance with the priorities established by the Bankruptcy Code. The Plan Proponent believes that liquidation under Chapter 7 of the Bankruptcy Code of the Debtor's assets would result in a substantial reduction in the value to be realized by holders of Claims as compared to Distributions contemplated under the Plan. This is so because a Chapter 7 liquidation would require the appointment of a trustee, unfamiliar with the debtor's business operations and the events that transpired during the Chapter 11 Case and who would be likely to close the businesses, thereby reducing the value of the estate. Appointment of a Chapter 7 trustee would require substantial additional expenses (including Trustee fees and the costs associated with the Trustee's retention of attorneys and other professionals) and would delay orderly liquidation of the Estate Assets, thereby lowering recoveries to holders of Claims. Consequently, the Debtor believes that confirmation of the Plan will provide a likely greater return to holders of Claims than would liquidation under Chapter 7 of the Bankruptcy Code. A copy of the Plan Proponent's liquidation analysis is attached to the Disclosure Statement as **Exhibit A**.[10]

---

[10] 11 USC § 326(a) states that a Chapter 7 trustee would incur trustee's fees equal to 25% of the first $5,000 of Liquidation Value of Assets; 10% of amount in excess of $5,000 but not in excess of $50,000 of Liquidation Value of Assets; 5% of any amount in excess of $50,000 but not in excess of $1,000,000; 3% of any amount in excess of $1,000,000 of the Liquidation Value of Asset, and commissions for auctioneers for personal property generally is equivalent to ten (10%) percent of the gross sales price and commissions for real property brokers is generally six percent (6%) of the gross sales price.  In addition, the attorney for the Chapter 7 trustee would incur attorney's fees as would the current Chapter 11 attorneys.

9. **Procedures for Treating and Resolving Disputed Claims**

    a. **Objection To Claims**

The Plan provides that the Committee and/or the Liquidating Trustee shall be entitled to object to Claims, provided, however, that the Committee and/or the Liquidating Trustee shall not be entitled to object to Claims that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date.

    b. **No Distributions Pending Allowance**

Except as otherwise provided in the Plan, no Distributions will be made with respect to any portion of a Claim where an objection to such Claim has been filed, until any such objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

    c. **Estimation of Claims**

The Committee or Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to the Bankruptcy Code regardless of whether the Committee or Liquidating Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Committee or Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

    d. **Resolution of Claims Objections**

On and after the Effective Date, the Liquidating Trustee shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

10. **Conditions Precedent to the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 13.2 of the Plan.

    10.1.1  The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not have been stayed;

10.1.2 All documents and agreements to be executed on the Effective Date or otherwise necessary to implement the Plan shall be in form and substance that is acceptable to the Plan Proponent in its reasonable discretion;

10.1.3 The Plan Proponent shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement the Plan and that is required by law, regulation, or order.

Under the Plan, each of the conditions set forth above may be waived, in whole or in part, by the Committee without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Committee in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Committee in its sole discretion). The failure of the Committee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## 11. Certain Effects of Confirmation

### a. Vesting of Debtor's Assets

Upon Confirmation, a Liquidating Trust shall receive all of the property of the estate free and clear of liens, claims, and encumbrances not expressly retained by the Committee on behalf of the Estate and creditors under the Plan. A Liquidating Trustee will be appointed to manage the Liquidating Trust. The Liquidating Trustee will have the rights and powers to assert any and all Causes of Action (defined as all causes of action, choses in action, claims, rights, suits, accounts or remedies belonging to or enforceable by Debtor, including Avoidance Actions, whether or not matured or unmatured, liquidated or unliquidated, contingent or noncontingent, known or unknown, or whether in law or in equity, and whether or not specifically identified in Debtor's schedules except Co-Owned Property Avoidance Actions, which shall be prosecuted by the Committee). The Disclosure Statement and Plan are filed with a full reservation of rights.

### b. Discharge of Debtor

Notwithstanding any other provision of this Plan, the Plan Proponent will request that the Court find that Debtor is denied a discharge under section 1141(d)(3) of the Bankruptcy Code. Such section provides that "The confirmation of a plan does not discharge a debtor if—(A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title."

This Plan is a liquidating plan, and the Plan Proponent will request that the Court find that section 1141(d)(3)(A) is met in that all or substantially all of the property of the estate will be liquidated.

The Plan Proponent will request that the Court find that section 1141(d)(3)(B) is satisfied. Debtor will not engage in business after consummation of the plan in that her business will be liquidated and she will not continue operating these businesses. "[Section] 1141(d)(3)(B) does not refer to basic employment by an individual debtor but to the *continuation* of *a pre-petition* business. *Grausz v. Sampson (In re Grausz)*, 63 F. App'x 647, 650 (4th Cir. 2003) (emphasis original).

Finally, the Plan Proponent will seek a determination by the Court that Debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title. Rule 4004 provides that "[i]n a chapter 11 case, the complaint shall be filed no later than the first day set for the hearing on confirmation." Federal Rule of Bankruptcy Procedure 4004(a). Additionally, the Plan Proponent and all unsecured creditors have obtained an extension of time to object to Debtor's discharge through and including November 28, 2022. The Plan Proponent anticipates that creditor(s) will bring a complaint seeking a determination that Debtor should be denied a discharge prior to the initial hearing on confirmation.

Only if the Court finds that the requirements of section 1141(d)(3) are <u>not</u> met, then pursuant to section 1141(d)(5) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, then Debtor shall be entitled to a discharge order. Debtor shall be entitled to a discharge under section 1141(d)(5) only after all payments under this Plan have been paid. If this paragraph is applicable and all payments under this plan have been made, Debtor shall be entitled to move to reopen this case to obtain a discharge.

The Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims and Causes of Action against Debtor's Assets and Estate property, whether known or unknown, including any and all liabilities of Debtor, Liens on Debtor's Assets, obligations of Debtor, rights against Debtor, and Interests of Debtor and her Estate or property of the Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

### c.  Setoffs

Liquidating Trustee may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that Debtor or Debtor's estate may have against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Liquidating Trustee of any such claim that Debtor may have against such Holder.

### d.  Injunction.

**The Confirmation Order shall act as a permanent injunction against any Person: (a) commencing or continuing any action, (b) employing any process, or (c) acting to collect, offset, or recover any Claim except as provided for in the Plan against: (1) any property of Debtor, (2) Debtor's Assets, (3) the Liquidating Trustee, (4) the Liquidating Trust, or (5) against Trust Assets. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction.**

### e. Miscellaneous Plan Provisions

### i. Modification of Plan

Plan Proponent shall be allowed to modify the Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits. Subject to the limitations contained in the Plan, pursuant to Article 13.1 of the Plan, Plan Proponent may modify the Plan, before or after Confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto. In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes. Plan Proponent reserves the right in accordance with section 1127 of the Bankruptcy Code to modify the Plan at any time before the Confirmation Date.

### ii. Retention of Jurisdiction

The Plan provides that subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the purposes set forth in the Plan.

### iii. Distributions

*(a) Disbursing Agent*. Unless otherwise provided for herein, all Distributions under the Plan shall be made by Liquidating Trustee or his agent.

*(b) Schedule of Distributions on Allowed Claims*. The Liquidating Trustee shall make an initial Distribution (other than to Administrative Expense Claims) on the earlier of (i) the date deemed appropriate by the Liquidating Trustee and (ii) 30 days after the first date Cash Trust Assets total not less than $2 million (such date, the "Initial Distribution Date"). The Liquidating Trustee shall thereafter make Distributions on the six month anniversary of the Initial Distribution Date and every six months thereafter (each a "Distribution Date") until the earlier of: (i) the date all Trust Assets have been converted to cash or abandoned, or (ii) five (5) years following the Effective Date (herein the "Final Distribution Date"). The Bankruptcy Court may further extend the Final Distribution Date upon application and cause shown by the Liquidating Trustee. The Liquidating Trustee shall make a Distribution to Administrative Expense Claims on the Effective Date. The Liquidating Trustee will make a Final Distribution under the Plan on or before such Final Distribution Date. Notwithstanding the foregoing, Distributions other than the Final Distribution may be deferred or delayed for a reasonable time in the discretion of the Liquidating Trustee in the event that deferral or additional time is needed to make a proper Distribution or in the event that the receipt of additional funds is necessary to make meaningful payments.

*(i) Sources of Cash*. Except as otherwise provided for in the Plan or the Confirmation Order, all Cash required for the Distributions or other payments to be made under the Plan or the Liquidating Trust shall be funded from Trust Assets. Any Distribution

of Cash made by Liquidating Trustee pursuant to the Plan shall, at Liquidating Trustee's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

*(ii) Liquidating Trust Reserve Funds*. The Liquidating Trustee, in its reasonable discretion, shall retain in the Liquidating Trust a reserve fund to cover, among other things, (a) Disputed Claims Reserves, and (b) expenses of the Liquidating Trust and/or the Liquidating Trustee, including professional fees, accruing on or after the Effective Date (herein the "Liquidation Trust Reserve Funds"). Any funds held as such Liquidation Trust Reserve Funds shall be distributed no later than the Final Distribution Date.

*(iii) Creditors Must Provide Identifying Information*. In order to receive Distributions, all Holders of Allowed Claims shall be required to provide to the Liquidating Trustee, such Holder's name, address, and federal tax identification number.

*(iv) Delivery of Distributions*. The Liquidating Trustee is only required to make a Distribution where the Liquidating Trustee has a current mailing address and tax identification number for the Holder of the Allowed Claim or Interest. The Liquidating Trustee shall use his reasonable efforts to ascertain this information prior to making such Distributions but shall not be required to overcome these or any other barriers which would prevent a Distribution from being made.

*(c) Priority of Distributions*.

(i) The Secured Claims of (i) Ag South Farm Credit, (ii) Business First Bank, and (iii) Wells Fargo Bank shall be paid upon the sale of such Secured Claim's collateral, with interest as provided in the Plan, after payment of all ad valorem property taxes, reasonable broker fees, and other costs of sale. For the avoidance of doubt, the Liquidating Trustee shall pay Secured Claims upon any closing or other means of sale of the underlying collateral and shall not be required to make a Distribution on a Secured Claim on a Distribution Date. Notwithstanding anything to the contrary herein, subsequent to the entry of the Confirmation Order, a secured creditor shall release its respective lien on any property sold by the Liquidating Trustee, in exchange for the lesser of the: (a) the Release Price of the applicable property to be sold; and (b) the then outstanding amount of such creditor's secured claim as provided in the Plan.

The Release Price will be determined as follows: the Liquidating Trustee shall serve the secured creditor, at the address listed on the applicable proof of claim, notice of the proposed sale, with at least (i) the proposed gross price, (ii) anticipated estimated closing costs, and (iii) the estimated net proceeds to such secured creditor not later than fourteen (14) days prior to the proposed closing date (the "Sale Notice"). If the Secured Creditor does not object to such Sale Notice, the amount stated to be paid to the secured creditor in the Sale Notice shall be the Release Price. If the Secured Creditor objects, the fair market value of the property shall be determined by a certified appraiser. The Release Price shall be the fair market value as determined by the certified appraiser less ordinary closing cost and the costs of the appraisal. The Bankruptcy Court shall retain jurisdiction to reopen the Bankruptcy Case, if applicable, and resolve any disputes regarding the selection of the certified appraiser and/or the Release Price. If either party disputes the fair

market value as determined by the certified appraiser, the dispute must be expressed in writing to the non-disputing party within five (5) days after such party's receipt of the appraiser's report. If the parties are unable to resolve the dispute within three (3) business days of the disputing parties written notice to the other party, either party may request the Bankruptcy Court to reopen the Bankruptcy Case and resolve the issue. The disputing party shall be responsible for any fee to the Clerk of Court to reopen the Bankruptcy Case. If the disputing party does not file a motion to re-open the Bankruptcy Case and dispute the appraised valuation within 30 days of its receipt of the disputed appraisal, then such party shall be deemed to have waived any objection and be bound by the certified appraiser's valuation.

(ii) Administrative Claims, comprised of (i) Professional Compensation Claims, and (ii) Allowed Administrative Expense Claims shall be paid at least by the Effective Date of the Plan unless the Holder agrees otherwise.

(iii) Priority Claims, comprised of (i) the IRS Class 1 Claim, and (ii) the GDR Class 2 Claim, shall be paid starting on the Initial Distribution Date according to the priorities provided in § 507(a) of the Bankruptcy Code and as set forth in Classes 1 and 2 of the Plan. Each class of priority also shall be paid pro-rata on each Distribution Date from any available Cash Trust Assets until (a) such class of priority has been paid in full or (b) no additional Cash Trust Assets remain on such Distribution Date (taking into account the Liquidation Trust Reserve Funds).

(iv) Unsecured Claims shall not receive any Distribution until all Administrative and Priority Claims are paid in full. Thereafter, Unsecured Claims shall receive pro-rata Distributions on each Distribution Date until the earlier of (a) the date that all such Allowed Unsecured Claims are paid in full, or (b) the Final Distribution Date.

*(d) No Interest, Fees, Costs or Attorneys Fees on Claims or Interests*. Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a postpetition agreement in writing between the Liquidating Trustee and a Holder, postpetition interest, fees, costs, or attorneys fees shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date through and including the Final Distribution Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Filing Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim. These provisions of the Plan shall include and pertain to, without limitation, any such claim for post-petition interest, fees, costs or attorney fees pursuant to 11 U.S.C. §§ 503, 506 or 507 as if no such claim was Allowed prior to the Confirmation Date.

(e) *Undeliverable Distributions*. The Plan contains terms which govern undeliverable Distributions. Creditors should be advised of such provisions and notify the Liquidating Trustee of any change of address.

(f) *Distributions to Holders as of the Record Date*. All Distributions on Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. Liquidating Trustee shall have no obligation

to recognize any transfer of any Claim occurring after the Record Date. Liquidating Trustee shall instead be entitled to recognize and deal for all purposes under the Plan with the Record Holders as of the Record Date.

## 12. Confirmation and Consummation Procedure

### a. General Information

All creditors whose Claims are Impaired by the Plan may cast their votes for or against the Plan. As a condition to confirmation of the Plan, the Bankruptcy Code requires that one Class of Impaired Claims votes to accept the Plan. Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of Impaired Claims as acceptance by holders of at least two-thirds of the dollar amount of the class <u>and</u> by more than one-half in number of Claims. Holders of Claims who fail to vote are not counted as either accepting or rejecting a plan. Voting is accomplished by completing, dating, signing and filing the ballot form (the "Ballot") by the Voting Deadline. Ballots will be distributed to all creditors entitled to vote on the Plan and is part of the Solicitation Package accompanying the Disclosure Statement. The Ballot indicates (i) where the Ballot is to be filed and (ii) the deadline by which creditors must file their Ballots.

In accordance with Article 2.3 of the Plan, unless otherwise specifically provided in a class under the Plan, in the event of a default by Liquidating Trustee in payments or otherwise pursuant to the Plan, the Holder must send written notice (the "Default Notice") to Liquidating Trustee at the addresses of record for Liquidating Trustee as reflected on the docket for this Bankruptcy Case, unless Liquidating Trustee has provided the Holder with a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Liquidating Trustee has ten (10) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Liquidating Trustee and Liquidating Trustee's counsel of the Default Notice (or the following business day if the 10th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Default Notice to Liquidating Trustee via certified mail or recognized overnight carrier, with a copy via email or facsimile and certified mail to counsel of record for the Committee and Liquidating Trustee (which delivery to counsel shall not constitute notice). Liquidating Trustee shall have ten (10) days or thirty (30) days (as applicable) from Liquidating Trustee's and counsel's receipt of the Default Notice to cure such default. Receipt by Liquidating Trustee's Attorney shall not be deemed receipt by Liquidating Trustee of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example, a default under Class 1 shall not constitute a default under Class 2). In the event of a default under the Plan as to any creditor or creditors and Liquidating Trustee's cure of any such default, then the terms of the Plan shall remain in effect and Liquidating Trustee shall then be deemed to be in compliance with the Plan, and the injunction as to such creditor or creditors shall be and remain unaffected without further order, action or notice, and without limitation, such creditor or creditors shall be enjoined from taking any actions prohibited by the terms of the Plan (including without limitation Article 11.5 of the Plan). In the event of an uncured default, then such creditor that provided notice of default may

take any action provided for by law to enforce the terms of the Plan, but the injunction of the Plan shall remain in place: (a) to prohibit any action other than to enforce the terms of the Plan as to such creditor, and (b) the Plan shall remain in full force and effect as to any creditor that did not provide such notice.

The Plan also contains provisions which govern the manner in which parties must provide notices to other parties. *See* Article 2.4 of the Plan.

### b.  Solicitation of Acceptances

This Disclosure Statement has been approved by the Court as containing "adequate information" to permit creditors to make an informed decision whether to accept or reject the Plan.

### c.  Acceptances Necessary to Confirm the Plan

At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by Debtor's creditors.  Impaired classes will be deemed to accept the Plan if at least two-thirds in amount and more than one-half in number of the Claims in each class vote to accept the Plan.  Furthermore, in such event, unless there is unanimous acceptance of the Plan by the impaired classes, the Court must also determine that any non-accepting Class will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such Class would receive or retain if Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

### d.  Confirmation of Plan Pursuant to Section 1129(b)

The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all Impaired classes.  To confirm the Plan without the requisite number of acceptances of each Impaired Class, the Court must find that at least one Impaired Class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to any Impaired Class that does not accept the Plan.  Accordingly, if any Impaired Class does not vote to accept the Plan, the Committee will seek to confirm the Plan under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

### e.  Considerations Relevant to Acceptance of the Plan

The Committee's recommendation that all Creditors should vote to accept the Plan is premised upon the Committee's view that the Plan is preferable to other alternatives.  It appears unlikely to the Committee that an alternate plan of reorganization or liquidation can be proposed that would provide for payments in an amount equal or greater than the amounts proposed under the Plan.  If the Plan is not accepted, it is likely that the interests of all creditors will be further diminished.

**Disclaimer**

*This Disclosure Statement contains summaries of certain provisions of the Plan, statutory provisions, documents related to the Plan, events in Debtor's Chapter 11 case, and financial information. Although the Committee believes that the Plan and related document summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents or statutory provisions. Factual information contained in this Disclosure Statement has been provided by Debtor or her agents, except where otherwise specifically noted, and may be incomplete or inaccurate. The Committee is unable to warrant or represent that the information contained herein, including the financial information, is without any inaccuracy or omission. The financial data set forth herein, except as otherwise specifically noted, has not been subjected to an independent audit.*

*Nothing contained herein shall (1) constitute an admission of any fact or liability by any party, (2) be admissible in any nonbankruptcy proceeding involving the Committee, the Liquidating Trustee or any other party; provided, however, that in the event the Liquidating Trustee defaults under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the existence of such default, or (3) be deemed conclusive advice on the tax or other legal effects of the Committee's Plan as to holders of Claims or Interests. You should consult your personal counsel or tax advisor on any questions or concerns regarding tax or other legal consequences of the Plan.*

*Except for historical information, all the statements, expectations, and assumptions, including expectations and assumptions contained in this Disclosure Statement, involve a number of risks and uncertainties. Although the Committee has used its best efforts to be accurate in making these statements, it is possible that the assumptions made by the Committee may not materialize. In addition, other important factors could affect the prospect of recovery to Creditors including, but not limited to, the inherent risks of litigation and the amount of Allowed Claims.*

*All Creditors and Interest Holders are advised and encouraged to read this Disclosure Statement and the Plan in their entirety. Plan summaries and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan, any exhibits, and the Disclosure Statement as a whole.*

*This Disclosure Statement has been prepared in accordance with § 1125 of the Bankruptcy Code and Rule 3016(c) of the Federal Rules of Bankruptcy Procedure and not in accordance with federal or state securities laws.*

*As to contested matters, adversary proceedings, and other actions or threatened actions, this Disclosure Statement shall not constitute nor be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations.*

*The information contained in this Disclosure Statement is included herein for the purpose of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to make a judgment with respect to, and how to vote on, the Plan.*

**Any representation or inducement made to secure acceptance of the Plan which are other than as contained in this document should not be relied upon by any Person. The information contained herein has not been subject to a certified audit. Every effort, however, has been made to provide adequate financial information in this Disclosure Statement. The representations by Debtor are not warranted or represent to be without any inaccuracy, although every effort has been made to be accurate. Neither the Plan nor this Disclosure Statement has been designed to forecast consequences which follow from a general rejection of the Plan, although an attempt is made to state the consequences of a liquidation of Debtor.**

Respectfully submitted this 28th day of September, 2022.

**The Official Committee of Unsecured Creditors**

*/s/Shadena Deleston (by Mutepe Akemon as proxy holder)*
Shadana Deleston
By: Mutepe Akemon, as Proxy Holder for Shadana Deleston
Member, Committee of Unsecured Creditors of Teri G. Galardi

*/s/Abrey Leahong (by Mutepe Akemon as proxy holder)*
Abrey Leahong
By: Mutepe Akemon, as Proxy Holder for Abrey Leahong
Member, Committee of Unsecured Creditors of Teri G. Galardi

*/s/Addie Brooks (by Ainsworth Dudley as proxy holder)*
Addie Brooks
By: Ainsworth Dudley, as Proxy Holder for Addie Brooks
Member, Committee of Unsecured Creditors of Teri G. Galardi

**JONES & WALDEN, LLC**

*/s/ Thomas T. McClendon*
Leon S. Jones
Georgia Bar No. 003980
Thomas T. McClendon
Georgia Bar No. 431452
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300
Attorneys for Committee of Unsecured Creditors

# Exhibit "A"

## Liquidation Analysis Summary

**PERSONAL PROPERTY:**

| Asset Description | Liquidation Value | Sources/Notes |
|---|---|---|
| Personal Bank Accounts | $ 229,679.09 | August MOR (DN 189) |
| Stocks | $ 170,700.00 | |
| Whole Life Insurance | $ 6,109.79 | |
| Personal Effects | $ - | |
| Farm Equipment | $ 50,500.00 | |
| Note Receivable - Joe Galardi | $ - | Included in avoidance actions |
| | **$ 456,988.88** | |

**REAL PROPERTY (Owned by Teri Galardi):**

| Property Description | Type | Liquidation Value |
|---|---|---|
| 263 N. Mulberry, Jackson, GA 30233 | House | $ 131,600.00 |
| 414 Hwy 87 South, Flovilla, GA 30216 | House | $ 43,260.50 |
| 567 Fawn Road, Flovilla, GA 30216 | Land | $ 8,502.30 |
| Fawn Road, Flovilla, GA 30216 | Land | $ 36,716.40 |
| Fawn Road, Flovilla, GA 30216 | Land | $ 8,121.60 |
| Fawn Road, Flovilla, GA 30216 | Land | $ 18,048.00 |
| Fawn Road, Flovilla, GA 30216 | Land | $ 31,208.94 |
| 2470 HWY 42 South, Flovilla, Ga 30216 | Land | $ 8,502.30 |
| 2147 HWY 42 South, Flovilla, GA 30216 | Land | $ 39,613.95 |
| Mt. Vernon Church Road, Flovilla, GA 30216 | Land | $ 43,714.23 |
| 2460 HWY 42 South, Flovilla GA 30216 | House | $ 57,443.40 |
| Land Locked Parcel, Flovilla, GA 30216 | Land | $ 73,277.70 |
| S Highway 42, Flovilla, GA 30216 | Land | $ 176,250.00 |
| 2146 HWY 42 South, Flovilla, GA 30216 | Ranch | $ 927,439.98 |
| Highway 42 South Behind House, Flovilla, GA | Land | $ 287,047.80 |
| S Highway 42, Flovilla, GA 30216 | Land | $ 243,037.00 |
| S Highway 42, Flovilla, GA 30216 | Land | $ 261,320.00 |
| 245 Mt Vernon Church Road, Flovilla, GA | House | $ 109,046.58 |
| 1837 Corporate Blvd. NE, Brookhaven, GA 30329 | Building | $ 729,396.53 |
| | | **$ 3,233,547.21** |

**BUSINESS ASSETS:**

| Business Description | Type | Liquidation Value |
|---|---|---|
| Jack E. Galardi, LLC (70%) | LLC | $ 795,434.55 |
| Galardi Eagles Lakes, LLC | LLC | $ 788,374.68 |
| Circle G Ranch Holdings, LLC | LLC | $ 2,708,635.59 |
| JPG&P, Inc. | Corp | $ 1,128,940.00 |
| Trinidad Creations, LLC | LLC | $ 1,638,377.74 |
| 2555 Chantilly, LLC (30%) | LLC | $ 131,052.78 |
| 506 Office, LLC | LLC | $ 675,495.00 |
| New International Properties, LLC | LLC | $ 990,000.00 |
| Trop, Inc. (Pink Pony) | Corp | $ 2,475,978.71 |
| Red Eye, Inc. (Club Onyx) | Corp | $ 500,000.00 |
| Country Club, Inc. - Georgia (GoldRush) | Corp | $ 804,292.81 |
| Country Club, Inc. - South Carolina (Masters Club) | Corp | $ 361,233.18 |
| Flylow, Inc. (King of Diamonds) | Corp | $ - |
| Candy, Inc. (ATM Machines) | Corp | $ 121,994.18 |
| GFT Management & Consulting, Inc. | Corp | $ 3,825.27 |
| 3-101-668494 Sociedad Anonima | Foreign Corp | $ 90,000.00 |
| | | **$ 13,213,634.49** |

**AVOIDANCE ACTIONS:**

| Avoidance Action Description | Type | Liquidation Value |
|---|---|---|
| 1901 Mr. Joe White Ave, Myrtle Beach, SC 29577 | Fraud Trans. | $ 3,753,960.00 |
| 4 2nd St, Jackson, GA, 30233 | Fraud Trans. | $ 183,833.00 |
| 30 Harriette Dr, Stockbridge, GA 30281 | Fraud Trans. | $ 179,100.00 |
| 2211 Edgewood Ave., Las Vegas, NV | Fraud Trans. | $ 735,400.00 |

| | | | |
|---|---|---|---:|
| 15820 SW 53 Ctm, Southwest Ranches, FL 33331 | Fraud Trans. | $ | 588,357.86 |
| 1979 Chevrolet El Camino | Fraud Trans. | $ | 17,985.71 |
| 2001 Mercedes Benz S Class | Fraud Trans. | $ | 26,335.71 |
| 2010 Volkswagen New Beetle | Fraud Trans. | $ | 9,285.71 |
| 2007 Lexus LS 460 | Fraud Trans. | $ | 10,735.71 |
| 2002 Dodge Ram 1500 | Fraud Trans. | $ | 9,285.71 |
| 2015 Chrysler Van | Fraud Trans. | $ | 9,285.71 |
| M1980 Toyota FJ Cruiser | Fraud Trans. | $ | 58,135.71 |
| 1969 Chevrolet El Camino | Fraud Trans. | $ | 35,685.71 |
| 2002 Jaguar XJR | Fraud Trans. | $ | 8,285.71 |
| 2016 Ford Explorer XLT | Fraud Trans. | $ | 19,285.71 |
| 2004 Mercedes CL600 | Fraud Trans. | $ | 9,285.71 |
| 1966 Lincoln | Fraud Trans. | $ | 19,285.71 |
| 2013 Hyundai Azera | Fraud Trans. | $ | 14,285.71 |
| 1966 Mustang | Fraud Trans. | $ | 19,285.71 |
| 70% Interest in 2555 Chantilly, LLC | Fraud Trans. | $ | 295,789.81 |
| 30% Interest in County Club, Inc. (SC) | Fraud Trans. | $ | 144,814.22 |
| 30% Interest Jack E. Galardi, LLC | Fraud Trans. | $ | 305,443.38 |
| Payments to Jackie Galardi Torres | Preference | $ | 9,500.00 |
| Grace Gigi Galardi Trust and Jackson Galardi Trust | Preference | $ | 54,514.04 |
| Payments to Jack Galardi, Jr. Sub-Trust (promissory note) | Preference | $ | 86,600.00 |
| Payments to Jack Galardi, Jr. Sub-Trust (house payment) | Preference | $ | 83,045.36 |
| | | **$** | **6,686,807.67** |

| | | |
|---|---|---:|
| **Liquidation Value of Bankruptcy Estate:** | **$** | **23,590,978.25** |

**Administration Costs**

| | | | |
|---|---:|---|---|
| Chapter 7 Trustee's Commission | $ | 733,979.35 | |
| Chapter 7 Attorney's Fees (General Admin) | $ | 25,000.00 | |
| Chapter 7 Attorney's Fees (Specific Litigation) | $ | - | Addressed in Specific Assets |
| CPA to Chapter 7 Trustee | $ | 25,000.00 | |
| **Total Chapter 7 Admin Fees** | **$** | **783,979.35** | |
| | | | |
| Chapter 11 Debtor Counsel | $ | 200,000.00 | |
| Chapter 11 Debtor CPA | $ | 40,000.00 | |
| Chapter 11 Special Counsel (Shulton Ward) | $ | 2,500.00 | |
| Chapter 11 Creditors Committee Counsel | $ | 100,000.00 | |
| Chapter 11 Creditors Committee CPA | $ | 40,000.00 | |
| **Total Chapter 11 Admin Fees** | **$** | **382,500.00** | |
| | | | |
| Internal Revenue Service | $ | 541,068.52 | POC 35 |
| Georgia Department of Revenue | $ | 126,980.55 | POC 121 |
| **Total Priority Creditors** | **$** | **668,049.07** | |
| | | | |
| **Total Available for Unsecured Creditors** | **$** | **21,756,449.83** | |

## REAL PROPERTY:

| Property Description | Parcel Id | Title | Debtor's Interest | Sale Price | Method | Liens | Broker Fee | Non-Exempt Equity |
|---|---|---|---|---|---|---|---|---|
| 263 N. Mulberry, Jackson, GA 30233 | J0120-024-000 | Teri Galardi & Michael Porter | 50% | $ 280,000.00 | Zillow | $ - | $ (16,800.00) | $ 131,600.00 |
| 414 Hwy 87 South, Flovilla, GA 30216 | F0030-045-000 | Teri Galardi & Michael Porter | 50% | $ 220,000.00 | Zillow | $ (120,279.00) | $ (13,200.00) | $ 43,260.50 |
| 567 Fawn Road, Flovilla, GA 30216 | 00520-026-L00 | Teri Galardi & Michael Porter | 50% | $ 18,090.00 | Tax Value | $ - | $ (1,085.40) | $ 8,502.30 |
| Fawn Road, Flovilla, GA 30216 | 00520-017-A00 | Teri Galardi & Michael Porter | 50% | $ 78,120.00 | Tax Value | $ - | $ (4,687.20) | $ 36,716.40 |
| Fawn Road, Flovilla, GA 30216 | 00520-026-E00 | Teri Galardi & Michael Porter | 50% | $ 17,280.00 | Tax Value | $ - | $ (1,036.80) | $ 8,121.60 |
| Fawn Road, Flovilla, GA 30216 | 00520-026-F00 | Teri Galardi & Michael Porter | 50% | $ 38,400.00 | Tax Value | $ - | $ (2,304.00) | $ 18,048.00 |
| Fawn Road, Flovilla, GA 30216 | 00520-017-A01 | Teri Galardi & Michael Porter | 50% | $ 66,402.00 | Tax Value | $ - | $ (3,984.12) | $ 31,208.94 |
| 2470 HWY 42 South, Flovilla, Ga 30216 | 00520-026-D00 | Teri Galardi & Michael Porter | 50% | $ 18,090.00 | Tax Value | $ - | $ (1,085.40) | $ 8,502.30 |
| 2147 HWY 42 South, Flovilla, GA 30216 | 00660-036-P00 | Teri Galardi & Michael Porter | 50% | $ 84,285.00 | Tax Value | $ - | $ (5,057.10) | $ 39,613.95 |
| Mt. Vernon Church Road, Flovilla, GA 30216 | 00660-001-000 | Teri Galardi & Michael Porter | 50% | $ 93,009.00 | Tax Value | $ - | $ (5,580.54) | $ 43,714.23 |
| 2460 HWY 42 South, Flovilla GA 30216 | 00520-026-B00 | Teri Galardi & Michael Porter | 50% | $ 122,220.00 | Tax Value | $ - | $ (7,333.20) | $ 57,443.40 |
| Land Locked Parcel, Flovilla, GA 30216 | 00520-045-000 | Michael Porter | 50% | $ 155,910.00 | Tax Value | $ - | $ (9,354.60) | $ 73,277.70 |
| S Highway 42, Flovilla, GA 30216 | 00520-044-C00 | SPT | 100% | $ 187,500.00 | Tax Value | $ - | $ (11,250.00) | $ 176,250.00 |
| 2146 HWY 42 South, Flovilla, GA 30216 | 00510-050-000 | SPT | 100% | $ 1,469,617.00 | Tax Value | $ (454,000.00) | $ (88,177.02) | $ 927,439.98 |
| Highway 42 South Behind House, Flovilla, GA | 00510-044-000 | SPT | 100% | $ 305,370.00 | Tax Value | $ - | $ (18,322.20) | $ 287,047.80 |
| S Highway 42, Flovilla, GA 30216 | 00510-048-000 | SPT | 100% | $ 258,550.00 | Tax Value | $ - | $ (15,513.00) | $ 243,037.00 |
| S Highway 42, Flovilla, GA 30216 | 00510-049-000 | SPT | 100% | $ 278,000.00 | Tax Value | $ - | $ (16,680.00) | $ 261,320.00 |
| 245 Mt Vernon Church Road, Flovilla, GA | 00510-045-000 | SPT | 100% | $ 116,007.00 | Tax Value | $ - | $ (6,960.42) | $ 109,046.58 |
| 1837 Corporate Blvd. NE, Brookhaven, GA 30329 | 18-156-01-003 | SPT | 100% | $ 1,538,800.00 | Tax Value | $ (717,075.47) | $ (92,328.00) | $ 729,396.53 |
| | | | | $ 5,345,650.00 | | $ (1,291,354.47) | $ (320,739.00) | $ 3,233,547.21 |

## ENTITIES

| Name | Assets | | Sale Value | Method of Value | Estimated Cost of Sale | Liens | Net Proceeds | Debtor Equity | SOURCES/NOTES |
|---|---|---|---|---|---|---|---|---|---|
| **Jack E. Galardi, LLC (70%)** | | | | | | | | | |
| | Bank Account(s) | | $ 106,894.93 | | | | $ 106,894.93 | $ 74,826.45 | |
| | 18047 Royal Hammock Blvd, Naples, FL (Retaining Pond) | | | | | | | | |
| | 18100 Royal Tree Pkwy, Naples, FL (GC - 97 Acres) | | $ 2,800,000.00 | Appraisal | $ (280,000.00) | $ (2,169,417.00) | $ 350,583.00 | $ 245,408.10 | 2021 Appraisal of Golf Course Property |
| | 18100 Royal Tree Pkwy, Naples, FL (GC - 54 Acres) | | | | | | | | |
| | Tract B, Golf Course Frontage, Naples FL (6.45 Acres) | | | | | | | | |
| | 18511 Royal Hammock, Blvd, Naples, FL (House) | | $ 660,000.00 | Listing | $ (66,000.00) | | $ 594,000.00 | $ 475,200.00 | |
| | | | | | | **Jack E. Galardi, LLC Net Value:** | | $ 795,434.55 | |
| **Circle G Ranch Holdings, LLC** | | | | | | | | | |
| | Bank Account(s) | | $ 33,255.99 | | | | $ 33,255.99 | $ 33,255.99 | |
| | 760 Piedmont Avenue, Atl, GA (Rental Prop/Condos) | | $ 976,700.00 | Tax Value | $ (97,670.00) | | $ 879,030.00 | $ 879,030.00 | |
| | 201 Fawn Road | 129.76 | $ 450,660.00 | Tax Value | $ (45,066.00) | $ (235,854.00) | $ 169,740.00 | $ 169,740.00 | |
| | Mt Vernon Church Road | 100 | $ 300,000.00 | Tax Value | $ (30,000.00) | | $ 270,000.00 | $ 270,000.00 | AgSouth Loan cross collaterized with Landlocked Parcel and 13 Acres owned by TG. |
| | 309 Fawn Road | 53.09 | $ 425,189.00 | Tax Value | $ (42,518.90) | | $ 382,670.10 | $ 382,670.10 | |
| | Fawn Road | 43.91 | $ 153,685.00 | Tax Value | $ (15,368.50) | | $ 138,316.50 | $ 138,316.50 | |
| | Mt Vernon Church Road | 40.33 | $ 181,485.00 | Tax Value | $ (18,148.50) | | $ 163,336.50 | $ 163,336.50 | |
| | 2366 S Highway 42 | 25 | $ 125,000.00 | Tax Value | $ (12,500.00) | | $ 112,500.00 | $ 112,500.00 | |
| | 2366 S Highway 42 | 30 | $ 253,333.00 | Tax Value | $ (25,333.30) | | $ 227,999.70 | $ 227,999.70 | |
| | 2236 S Highway 42 | 3.48 | $ 160,796.00 | Tax Value | $ (16,079.60) | | $ 144,716.40 | $ 144,716.40 | |
| | S Highway 42 | 32.08 | $ 160,400.00 | Tax Value | $ (16,040.00) | | $ 144,360.00 | $ 144,360.00 | |
| | S Highway 42 | 2.16 | $ 19,440.00 | Tax Value | $ (1,944.00) | | $ 17,496.00 | $ 17,496.00 | |
| | Fawn Road (Land) | 4.12 | $ 28,016.00 | Tax Value | $ (2,801.60) | | $ 25,214.40 | $ 25,214.40 | |
| | | 463.93 | | | | **Circle G Ranch Holdings, LLC Net Value:** | | $ 2,708,635.59 | |
| **JPG&P, LLC** | | | | | | | | | |
| | 4730 Frontage Road, Forest Park, GA | | $ 2,800,000.00 | Pending Sale | $ (560,000.00) | $ (1,378,000.00) | $ 862,000.00 | $ 862,000.00 | Pending sale |
| | 4760 Frontage Road, Forest Park, GA | | $ 296,600.00 | Tax Value | $ (29,660.00) | | $ 266,940.00 | $ 266,940.00 | |
| | | | | | | **JPG&P, LLC Net Value:** | | $ 1,128,940.00 | |
| **Trinidad Creations, LLC** | | | | | | | | | Periodic Report (Doc. # 192) |
| | Bank Account(s) | | $ 113,015.65 | | | | $ 113,015.65 | $ 113,015.65 | |
| | 2608 Metropolitan Parkway (Goldrush) | | $ 2,000,000.00 | Appraisal | $ (200,000.00) | $ (274,637.91) | $ 1,525,362.09 | $ 1,525,362.09 | 2/2021 Appraisal |
| | | | | | | **Trinidad Creations, LLC Net Value:** | | $ 1,638,377.74 | |
| **2555 Chantilly, LLC (30%)** | | | | | | | | | Periodic Report (Doc. # 192) |
| | 2555 Chantilly Drive, Atlanta, GA (Office) | | $ 703,100.00 | Tax Value | $ (70,310.00) | $ (378,393.15) | $ 254,396.85 | $ 76,319.06 | |
| | FF&E and Cash | | $ 182,445.74 | Book | | | $ 182,445.74 | $ 54,733.72 | |
| | | | | | | **2555 Chantilly, LLC Net Value:** | | $ 131,052.78 | |

| Name | Assets | Sale Value | | Method of Value | Estimated Cost of Sale | | Liens | Net Proceeds | | Debtor Equity | | NOTES |
|------|--------|------------|---|-----------------|-----------------------|---|-------|-------------|---|--------------|---|-------|
| **506 Office, LLC** | | | | | | | | | | | | |
| | Bank Account(s) | $ | 495.00 | Book | $ | - | | $ | 495.00 | $ | 495.00 | Periodic Report (Doc. # 192) |
| | 504-506 SE 11 Court, Fort Lauderdale, FL | $ | 750,000.00 | Offer | $ | (75,000.00) | | $ | 675,000.00 | $ | 675,000.00 | |
| | | | | | | | **506 Office, LLC Net Value:** | | **$** | | **675,495.00** | |
| **New International Properties, LLC** | | | | | | | | | | | | |
| | 2121 Highland Avenue, Las Vegas | $ | 1,100,000.00 | Listing | $ | (110,000.00) | | $ | 990,000.00 | **$** | **990,000.00** | Periodic Report (Doc. # 192) |
| **3-101-668494 Sociedad Anonima** | | | | | | | | | | | | |
| | House in Costa Rica | $ | 200,000.00 | Estimate | $ | (20,000.00) | | $ | 180,000.00 | **$** | **90,000.00** | |

## Operating Entities (No Real Estate):

| Name | Assets | Sale Value | | Method of Value | Estimated Cost of Sale | | Liens | Net Proceeds | | Debtor Equity | | NOTES |
|------|--------|------------|---|-----------------|-----------------------|---|-------|-------------|---|--------------|---|-------|
| **Galardi Eagle Lakes, LLC** | | | | | | | | | | | | Periodic Report (Doc. # 192) |
| | Bank Account(s) | $ | 769,563.19 | Book | | | | $ | 769,563.19 | $ | 769,563.19 | |
| | FF&E (Book Value Less Debt) | $ | 20,901.65 | Book | $ | (2,090.17) | | $ | 18,811.49 | $ | 18,811.49 | |
| | | | | | | | **Galardi Eagle Lakes, LLC Net Value** | | **$** | | **788,374.68** | |
| **Trop, Inc. (Pink Pony)** | | | | | | | | | | | | |
| | Bank Account(s) | $ | 1,443,611.67 | Book | $ | - | | $ | 1,443,611.67 | $ | 1,443,611.67 | Periodic Report (Doc. # 192) |
| | FF&E (Book Value Less Debt) | $ | 1,147,074.49 | Book | $ | (114,707.45) | | $ | 1,032,367.04 | $ | 1,032,367.04 | Operates Pink Pony |
| | | | | | | | **Trop, Inc. Net Value** | | **$** | | **2,475,978.71** | |
| **Red Eye, Inc. (Onyx Club)** | | | | | | | | | | | | |
| | Net Value (per pending sale) | $ | 500,000.00 | Pending Sale | $ | - | | $ | 500,000.00 | $ | 500,000.00 | Periodic Report (Doc. # 192) |
| | | | | | | | **Red Eye, Inc. Net Value** | | **$** | | **500,000.00** | |
| **Country Club, Inc. - Georgia (GoldRush)** | | | | | | | | | | | | Periodic Report (Doc. # 192) |
| | Bank Account(s) | $ | 660,618.35 | Book | $ | - | | $ | 660,618.35 | $ | 660,618.35 | Operates GoldRush |
| | FF&E, Inventory | $ | 159,638.29 | Book | $ | (15,963.83) | | $ | 143,674.46 | $ | 143,674.46 | |
| | | | | | | | **County Club (GA) Net Value:** | | **$** | | **804,292.81** | |
| **Country Club, Inc. - S.C. (Masters Club) (70%)** | | | | | | | | | | | | Periodic Report (Doc. # 192) |
| | Bank Account(s) | Not provided | | Book | | | | | | | | Operates Masters Club. |
| | Operating Entity - Furniture, Fixtures & Equipment | $ | 573,386.00 | Book | $ | (57,338.60) | | $ | 516,047.40 | $ | 361,233.18 | |
| | | | | | | | **Country Club (SC) Net Value:** | | **$** | | **361,233.18** | |

| Name | Assets | Sale Value | | Method of | | Estimated | | Liens | Net Proceeds | | Debtor Equity | | NOTES |
|------|--------|------------|---|-----------|---|-----------|---|-------|-------------|---|--------------|---|-------|
| **Flylow, Inc. (King of Diamonds)** | | | | | | | | | | | | | Periodic Report (Doc. # 192) |
| | $2,650,000 Judgment against AK Eli LLC | $ | - | Book | | $ | - | | $ | - | **$** | **-** | |
| **Candy, Inc.** | | | | | | | | | | | | | Periodic Report (Doc. # 192) |
| | Bank Account(s) | $ | 121,994.18 | Book | | $ | - | | $ | 121,994.18 | **$** | **121,994.18** | ATM Operator |
| **GFT Management & Consulting, Inc.** | | | | | | | | | | | | | |
| | Bank Account(s) | $ | 3,825.27 | Book | | $ | - | | $ | 3,825.27 | **$** | **3,825.27** | Bank Statements |
| | | | | | | | | | | | | | Former Management Co |

| | | | | | |
|---|---|---|---|---|---|
| | | | | **$** | **13,213,634.49** |

## AVOIDANCE ACTIONS:

**Real Estate Transfers**

| Address | Date | Value | Value Method | Cause of Action | Owners | Secured Claim | Secured Creditors | Litigation Costs | | Estimated Value To Estate |
|---|---|---|---|---|---|---|---|---|---|---|
| 1901 Mr. Joe White Ave, Myrtle Beach, SC 29577 | 9/18/2020 | $ 4,843,960.00 | Tax Value | Fraudulent Transfer | NIK LLC/Mike Kap | $(1,050,000.00) | Mike Kap (equitable lien) | $ | (40,000.00) | $ 3,753,960.00 |
| 4 2nd St, Jackson, GA, 30233 | 10/31/2019 | $193,833.00 | Tax Value | Fraudulent Transfer | Michael Porter | $0.00 | United Bank | $ | (10,000.00) | $ 183,833.00 |
| 30 Harriette Dr, Stockbridge, GA 30281 | 6/26/2019 | $268,100.00 | Zillow | Fraudulent Transfer | Joseph A. Galardi | $ (79,000.00) | Joseph A. Galardi (equitable lien) | $ | (10,000.00) | $ 179,100.00 |
| 2211 Edgewood Ave., Las Vegas, NV | 10/5/2017 | $755,400.00 | Zillow | Fraudulent Transfer | Royce G. Vandever Trust | $0.00 | None | $ | (20,000.00) | $ 735,400.00 |
| 15820 SW 53 Ctm, Southwest Ranches, FL 33331 | 11/29/2017 | $ 1,699,100.00 | Zillow | Fraudulent Transfer | Jackson Galardi Trust & Grace Galardi Trust | $ (502,384.28) | Wells Fargo Bank, N.A. [POC 111] | $ | (20,000.00) | $ 588,357.86 |

**Personal Property Transfers**

| | Date | Value | Method of Value | Cause of Action | Defendant | Secured Claim | Secured Creditors | Litigation Costs | Estimated Value To Estate |
|---|---|---|---|---|---|---|---|---|---|
| 1979 Chevrolet El Camino | 10/25/2021 | $18,700.00 | Schedules | Fraudulent Transfer | Michael Porter | $ - | None | $ (714.29) | $17,985.71 |
| 2001 Mercedes Benz S Class | 10/25/2021 | $27,050.00 | Schedules | Fraudulent Transfer | Michael Porter | $ - | None | $ (714.29) | $26,335.71 |
| 2010 Volkswagen New Beetle | 10/25/2021 | $10,000.00 | Comparables | Fraudulent Transfer | Michael Porter | $ - | None | $ (714.29) | $9,285.71 |
| 2007 Lexus LS 460 | 10/25/2021 | $11,450.00 | Schedules | Fraudulent Transfer | Michael Porter | $ - | None | $ (714.29) | $10,735.71 |
| 2002 Dodge Ram 1500 | 10/25/2021 | $10,000.00 | Comparables | Fraudulent Transfer | Michael Porter | $ - | None | $ (714.29) | $9,285.71 |
| 2015 Chrysler Van | 10/25/2021 | $10,000.00 | Schedules | Fraudulent Transfer | Michael Porter | $ - | None | $ (714.29) | $9,285.71 |
| M1980 Toyota FJ Cruiser | 10/25/2021 | $58,850.00 | Schedules | Fraudulent Transfer | Michael Porter | $ - | None | $ (714.29) | $58,135.71 |
| 1969 Chevrolet El Camino | 10/25/2021 | $36,400.00 | Schedules | Fraudulent Transfer | Michael Porter | $ - | None | $ (714.29) | $35,685.71 |
| 2002 Jaguar XJR | 10/25/2021 | $9,000.00 | Schedules | Fraudulent Transfer | Michael Porter | $ - | None | $ (714.29) | $8,285.71 |
| 2016 Ford Explorer XLT | 10/25/2021 | $20,000.00 | Comparables | Fraudulent Transfer | Michael Porter | $ - | None | $ (714.29) | $19,285.71 |
| 2004 Mercedes CL600 | 11/21/2021 | $10,000.00 | Comparables | Fraudulent Transfer | Megan Galardi | $ - | None | $ (714.29) | $9,285.71 |
| 1966 Lincoln | 11/21/2021 | $20,000.00 | Comparables | Fraudulent Transfer | Megan Galardi | $ - | None | $ (714.29) | $19,285.71 |
| 2013 Hyundai Azera | 11/21/2021 | $15,000.00 | Comparables | Fraudulent Transfer | Megan Galardi | $ - | None | $ (714.29) | $14,285.71 |
| 1966 Mustang | 11/21/2021 | $20,000.00 | Comparables | Fraudulent Transfer | Megan Galardi | $ - | None | $ (714.29) | $19,285.71 |

**Entity Transfers**

| Asset | Date | Value | Method of Value | Cause of Action | Defendant | Secured Claim | Secured Creditors | Litigation Costs | Estimated Value To Estate |
|---|---|---|---|---|---|---|---|---|---|
| 70% Interest in 2555 Chantilly, LLC | Unknown | $ 305,789.81 | Book | Fraudulent Transfer | Kelly Galardi, Gigi Galardi, Michael Porter | $ - | None | $ (10,000.00) | $295,789.81 |
| 30% Interest in County Club, Inc. (SC) | 9/18/2020 | $ 154,814.22 | Book | Fraudulent Transfer | Mike Kap | $ - | None | $ (10,000.00) | $144,814.22 |
| 30% Interest Jack E. Galardi, LLC | Unknown | $ 315,443.38 | Book | Fraudulent Transfer | Darell Galardi | $ - | None | $ (10,000.00) | $305,443.38 |

**Preferences**

| | Dates | Value | | | Defendant | Secured Claim | Secured Creditors | Litigation Costs | Estimated Value To Estate |
|---|---|---|---|---|---|---|---|---|---|
| Payments to Jackie Galardi Torres | See Notes | $10,500.00 | Schedules | Preference | Jackie Galardi Torres | $ - | None | $ (1,000.00) | $9,500.00 |
| Grace Gigi Galardi Trust and Jackson Galardi Trust | See Notes | $57,014.04 | Schedules | Preference | Grace Gigi Galardi Trust and Jackson Galardi Trust | $ - | None | $ (2,500.00) | $54,514.04 |
| Payments to Jack Galardi, Jr. Sub-Trust (promissory note) | See Notes | $89,100.00 | Schedules | Preference | Jack Galardi, Jr. Sub-Trust | $ - | None | $ (2,500.00) | $86,600.00 |
| Payments to Jack Galardi, Jr. Sub-Trust (house payment) | See Notes | $85,545.36 | Schedules | Preference | Jack Galardi, Jr. Sub-Trust | $ - | None | $ (2,500.00) | $83,045.36 |