**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **TERI G. GALARDI,** | |
| Debtor. | **CASE NO.  22-50035-JPS** |

**PLAN OF LIQUIDATION**

**Dated this 28th day of September, 2022**

**Filed by:**

The Official Committee of Unsecured Creditors

Attorneys for the Official Committee of Unsecured Creditors
Leon S. Jones
Thomas T. McClendon
Jones & Walden, LLC
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300

COMES NOW, the Official Committee of Unsecured Creditors ("Committee") in the case of Teri G. Galardi, Debtor and Debtor in possession in the above-captioned case ("Debtor"), and, pursuant to sections 1121 and 1123 of title 11 of the United States Code (the "Bankruptcy Code") and the Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), proposes this Plan of Liquidation (the "Plan") for the resolution of the Claims against Debtor. The Committee is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

## Article 1
## Introduction

**1.1**    Disclosure Statement. Contemporaneously with the filing of the Plan, the Committee filed a Disclosure Statement for the Plan of Liquidation, as required by Bankruptcy Code § 1125 of the Bankruptcy Code. The Disclosure Statement contains Debtor's history, financial information regarding Debtor and her assets, and a solicitation of acceptances of this Plan.

**1.2**    Property and Claims. This Plan deals with all property of Debtor and provides for treatment of all Claims against Debtor and her property.

## Article 2
## Definitions and General Provisions

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article of the Plan. Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

**2.1**    *Definitions.* The following terms, when used in this Plan, shall have the following meaning:

**2.1.1.**    "*Administrative Expense Claim*" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

**2.1.2.**    "*Allowed Claim*" shall mean a Claim or any portion thereof that is enforceable against Debtor or enforceable against the property of Debtor under sections 502 or 503 of the Bankruptcy Code.

**2.1.3.**    "*Allowed Administrative Expense Claim*" means an Administrative Expense Claim that has been allowed pursuant to a Final Order in accordance with Article 7.7 of this Plan.

**2.1.4.**    "*Allowed Secured Claim*" shall mean the amount of the allowed Claim held by parties secured by property of Debtor which is equal to the amount provided by the Plan. Following confirmation, the Holder of such secured claim and the Liquidating Trustee may stipulate to another amount.

2

**2.1.5.** "*Allowed Unsecured Claim*" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

**2.1.6.** "*Assets*" means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of Debtor (including without limitation, all of the assets, property, interests (including without limitation equity Interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such property exists on the Effective Date or thereafter, including property and earnings of the kind specified in section 541 that the debtor acquires after the case was filed as required by section 1115 of the Bankruptcy Code.

**2.1.7.** "*Avoidance Actions*" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law or section of the Bankruptcy Code, regardless of whether such action has been commenced prior to the Effective Date. However, Avoidance Actions shall not include Co-Owned Property Avoidance Actions.

**2.1.8.** "*Ballot*" means each of the ballot forms that are distributed with the Disclosure Statement to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

**2.1.9.** "*Bankruptcy Case*" means the chapter 11 case initiated by Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

**2.1.10.** "*Bankruptcy Code*" means title 11 of the United States Code.

**2.1.11.** "*Bankruptcy Court*" means the United States Bankruptcy Court for the Middle District of Georgia, Macon Division.

**2.1.12.** "*Bankruptcy Rules*" means, collectively, the Federal Rules of Bankruptcy Procedure.

**2.1.13.** "*Bar Date*" means May 17, 2022, the date the Court established as the deadline for nongovernmental entities to file a proof of claim pursuant to docket entry number 71 (the "Bar Notice"). The terms of the Bar Notice will continue in full effect after the Effective Date.

**2.1.14.** "*Beneficiary*" means, with respect to the Liquidating Trust, any Holder of an Allowed Claim that is entitled to receive a Distribution from the Liquidating Trust under the terms of this Plan.

**2.1.15.** "*Beneficial Interests*" means the uncertificated beneficial interests in the Liquidating Trust evidencing the right of each Holder of an Allowed Claim that is entitled to receive a Distribution from the Liquidating Trust under the terms of this Plan.

**2.1.16.** "*Business Day*" means any day on which the commercial banks are required to be open for business in Macon, Georgia and which is not a weekend or legal holiday recognized by the Bankruptcy Court or the Superior Courts of the State of Georgia.

**2.1.17.** "*Cash*" means legal tender of the United States of America and equivalents thereof.

**2.1.18.** "*Cash Trust Assets*" means Trust Assets which have been converted into Cash and readily available to be distributed to Holders of Allowed Claims.

**2.1.19.** "*Causes of Action*" means all Avoidance Actions and any and all of Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise; however, such Avoidance Actions shall not include Co-Owned Property Avoidance Actions.

**2.1.20.** "*Chapter 11*" means chapter 11 of the Bankruptcy Code.

**2.1.21.** "*Claim*" means a claim against Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**2.1.22.** "*Classes*" means a category of Claims described in this Plan.

**2.1.23.** "*Committee*" means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case (Doc. No. 99).

**2.1.24.** "*Committee Counsel*" means Jones & Walden LLC, as attorneys for the Committee approved by the Court (Doc. No. 103).

**2.1.25.** "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order.

**2.1.26.** "*Confirmation Hearing*" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters, including valuation of any collateral securing any secured claim under section 1128 of the Bankruptcy Code, as such hearing may be continued.

**2.1.27.** "*Confirmation Order*" means the order confirming this Plan pursuant to section 1129 of the Bankruptcy Code that the Bankruptcy Court enters, which order shall be in all respects reasonably acceptable to the Committee.

**2.1.28.** "*Co-Owned Property*" shall mean the real estate and Interests owned by the Debtor and at least one other individual or entity, as listed on Exhibit "A"  attached hereto.

**2.1.29.** "*Co-Owned Property Avoidance Actions*" shall mean all Avoidance Actions involving Co-Owned Property.

**2.1.30.** "*Debtor*" shall mean Teri G. Galardi, the debtor in this Bankruptcy Case.

**2.1.31.** "*Debtor's Counsel*" means McBryan Law, LLC and Boyer Terry, LLC, as attorneys for Debtor approved by the Court (Doc. Nos. 53 & 146).

**2.1.32.** "*Disallowed Claim*" means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in any of Debtor's Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtor's Schedules and as to which a proof of claim bar date has been established or as to which the bar date is effective, but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

**2.1.33.** "*Disclosure Statement*" means the Disclosure Statement for the Plan of Liquidation filed by the Committee as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such Disclosure Statement may be amended, modified or supplemented from time to time.

**2.1.34.** "*Disputed Claim*" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

**2.1.35.** "*Disputed Claims Reserve*" means the reserve established by the Liquidating Trustee for the benefit of Holders of Disputed Claims. Such amount shall equal the pro-rata percentage the Holders of Disputed Claims would have received from each Distribution but for the status of such claims as disputed.

**2.1.36.** "*Distribution*" means any distribution by the Liquidating Trustee to a Holder of an Allowed Claim, including but not limited to Administrative Expense Claims.

**2.1.37.** "*Distribution Date*" means the any date on which a Distribution is made.

**2.1.38.** "*District Court*" means the United States District Court for the Middle District of Georgia, Macon Division.

**2.1.39.** "*Effective Date*" means the date that is 14 days after entry of a Confirmation Order.

**2.1.40.** "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

**2.1.41.** "*Estate*" means the estate that was created by the commencement by Debtor of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include,

without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549, 550 or 1115 of the Bankruptcy Code, or otherwise.

**2.1.42.** "*Executory Contract or Unexpired Lease*" means all executory contracts and unexpired leases to which Debtor is a party.

**2.1.43.** "*Filing Date*" means January 12, 2022.

**2.1.44.** "*Final Distribution*" means the Distribution by the Liquidating Trustee that satisfies all Allowed Claims to the extent provided in accordance with the Plan. As set forth in section 9.2, the Bankruptcy Court may further extend the Final Distribution upon application and cause shown by the Liquidating Trustee.

**2.1.45.** "*Final Distribution Date*" means the Distribution Date on which the Final Distribution is made as described and set forth in Section 9.2. As set forth in section 9.2, the Bankruptcy Court may further extend the Final Distribution upon application and cause shown by the Liquidating Trustee.

**2.1.46.** "*Final Order*" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely.  In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

**2.1.47.** "*Government Bar Date*" means, in accordance with section 502 of the Bankruptcy Code, July 11, 2022.

**2.1.48.** "*Holder*" means a holder of a Claim.

**2.1.49.** "*Impaired*" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

**2.1.50.** "*Initial Distribution Date*" means the later of: (i) the Effective Date and (ii) 30 days after the first date Cash Trust Assets total not less than $2,000,000.00.

**2.1.51.** "*Interest*" means ownership interests in an Entity (such as corporate stock or membership interest).

**2.1.52.** "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

**2.1.53.** "*Liquidating Trust Committee*" means the committee composed of Ainsworth G. Dudley, Esq. and Mutepe Akemon, Esq.

**2.1.54.** "*Liquidating Trust*" means the trust that will come into existence on the Effective Date and into which all of the Trust Assets will vest pursuant to the Plan, which trust shall be governed by the terms of this Plan.

**2.1.55.** *"Liquidating Trust Reserve Funds"* shall mean the amount of funds as defined in Section 9.2.2 of the Plan.

**2.1.56.** "*Liquidation Trust Advisors*" means any firm(s) or individual(s) retained by the Liquidating Trustee to serve as Liquidating Trustee's legal counsel, accountants or otherwise provide other professional services in connection with the performance of a Liquidating Trustee's duties and responsibilities under this Plan. For the avoidance of doubt, the Liquidating Trust Advisors can include any firm(s) or individual(s) retained by the Debtor or Committee during the Chapter 11 Case.

**2.1.57.** "*Liquidating Trust Reserve Funds*" means the amount of funds as defined in Section 9.2.2. of the Plan.

**2.1.58.** "*Liquidating Trustee*" means such Person proposed by the Plan Proponent by a pleading filed on the docket in this case or designated by the Bankruptcy Court in the Confirmation Order as Liquidating Trustee for the Bankruptcy Estate.

**2.1.59.** "*Permitted Investments*" means temporary liquid investments such as United States Treasury Bills, short-term interest-bearing certificates of deposits, tax exempt securities, money market or checking accounts, cash-equivalent investments or investments permitted pursuant to section 345 of the Bankruptcy Code or as permitted under a Final Order of the Bankruptcy Court.

**2.1.60.** "*Person*" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

**2.1.61.** "*Plan*" means this Plan as same may hereafter be corrected, amended, supplemented, restated, or modified.

**2.1.62.** *"Plan Expenses"* means (A) fees, expenses, and other compensation of the Liquidating Trustee and any accountants, legal counsel, or other professionals or agents employed by the Liquidating Trustee in connection with the administration of the Plan, (B) legal fees, expenses and other compensation of the Committee in liquidating Co-Owned Property and pursuing the Co-Owned Property Avoidance Actions, (C) expenses associated with the transfer, disposition, and liquidation of the Assets and Trust Assets, (D) taxes, fees, levies, assessments, and other governmental charges, if any, incurred and payable by the Liquidating Trust or Liquidating Trustee, (E) all other costs and expenses of administration of the Plan and Liquidating

Trust; and, (F) costs and expenses, including fees of legal counsel, for litigating, settling, and otherwise resolving of Causes of Action, including but not limited to, resolution of Avoidance Actions, Disputed Claims, and other contested matters relating to the Plan and its consummation.

**2.1.63.** "*Plan Proponent*" means the Committee.

**2.1.64.** "*Priority Claim*" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

**2.1.65.** "*Priority Tax Claim*" means a Claim against Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

**2.1.66.** "*Privilege*" means the attorney client privilege, work product protections or other immunities (including without limitation those related to a common interest or a joint defense with other parties to the extent set forth in such documents), or protections from disclosure of any kind held by the Debtor, the Estate, or any Entity controlled by the Debtor or Debtor's Estate as permitted under the Federal Rule of Evidence 501 and all other applicable law.

**2.1.67.** "*Professional Compensation*" means (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by Debtor and the Committee, and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

**2.1.68.** "*Record Date*" means any date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan.  If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior to the Confirmation Date, then the Record Date shall be the Confirmation Date.

**2.1.69.** "*Record Holder*" means the Holder of a Claim as of the Record Date.

**2.1.70.** Intentionally Omitted

**2.1.71.** "*Retained Actions*" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor' Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtor, (iii) claims and Causes of Action seeking the recovery of Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of Debtor' business, (iv) all claims necessary or desirable to liquidate Co-Owned Property and pursue Co-Owned Property Avoidance Actions; (v) any right

to subordinate Claims under § 510 of the Bankruptcy Code or other applicable law; and (vi) all Causes of Action that are Avoidance Actions.

**2.1.72.** "*Schedules*" means the Schedules of Assets and Liabilities Debtor filed in the Bankruptcy Case as such Schedules are filed as of the date of this Plan.

**2.1.73.** "*Secured Claim*" means a Claim against Debtor to the extent secured by a Lien on any property of Debtor on the Filing Date to the extent of the value of said property as provided in this Plan.

**2.1.74.** "*Subordinated Claim*" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

**2.1.75.** "*Trust Assets*" means all Assets, Avoidance Actions, Causes of Action, Interests held by the Debtor, and all other rights, powers, and privileges of Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or the Estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549, 550 or 1115 of the Bankruptcy Code, or otherwise, regardless of whether scheduled or unscheduled; known or unknown; and whether contingent on the happening of any other event or of the passage of time. Notwithstanding the foregoing and for clarity, Trust Assets shall not include any Co-Owned Property or Co-Owned Property Avoidance Actions.

**2.1.76.** "*Unimpaired*" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

**2.1.77.** "*Unsecured Claim*" means any Claim against Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

**2.2** *Time*.  Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

**2.3** *Events of Default*.      Unless otherwise specifically provided in a class under the Plan, in the event of a default by Liquidating Trustee in payments or otherwise pursuant to the Plan, the Holder must send written notice (the "Default Notice") to Liquidating Trustee at the addresses of record for Liquidating Trustee as reflected on the docket for this Bankruptcy Case, unless Liquidating Trustee has provided the Holder with a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Liquidating Trustee has ten (10) days (in the case of a monetary default) and thirty (30) days (in the case of a

non-monetary default) from receipt by Liquidating Trustee and Liquidating Trustee's counsel of the Default Notice (or the following business day if the 10th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Default Notice to Liquidating Trustee via certified mail or recognized overnight carrier, with a copy via email or facsimile and certified mail to counsel of record for the Committee and Liquidating Trustee (which delivery to counsel shall not constitute notice). Liquidating Trustee shall have ten (10) days or thirty (30) days (as applicable) from Liquidating Trustee's and counsel's receipt of the Default Notice to cure such default. Receipt by Liquidating Trustee's Attorney shall not be deemed receipt by Liquidating Trustee of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example, a default under Class 1 shall not constitute a default under Class 2).   In the event of a default under the Plan as to any creditor or creditors and Liquidating Trustee's cure of any such default, then the terms of the Plan shall remain in effect and Liquidating Trustee shall then be deemed to be in compliance with the Plan, and the injunction as to such creditor or creditors shall be and remain unaffected without further order, action or notice, and without limitation, such creditor or creditors shall be enjoined from taking any actions prohibited by the terms of the Plan (including without limitation Article 11.5 of the Plan). In the event of an uncured default, then such creditor that provided notice of default may take any action provided for by law to enforce the terms of the Plan, but the injunction of the Plan shall remain in place: (a) to prohibit any action other than to enforce the terms of the Plan as to such creditor, and (b) the Plan shall remain in full force and effect as to any creditor that did not provide such notice.

    **2.4**   *Notices*.   All notices under the Plan shall be in writing.   Unless otherwise specifically provided herein, all notices shall be sent to Liquidating Trustee via U.S. Certified Mail Return Receipt or by nationally recognized overnight carrier to the address of record for Liquidating Trustee in this Case, unless Liquidating Trustee has provided such Holder with written notice of change of address for Liquidating Trustee, with a copy via email or fax and certified mail to counsel of record for the Committee and counsel for the Liquidating Trustee at the address reflected in the then current directory of the State Bar of Georgia.  Receipt of notice by counsel of record shall not be deemed receipt by Liquidating Trustee of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Liquidating Trustee after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Liquidating Trustee has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Liquidating Trustee's books and records.

    **2.5 <u>SUBSTANTIVE CONSOLIDATION OF TERI G. GALARDI AND THE TERI G. GALARDI SEPARATE PROPERTY TRUST U/A/D/9-27-06, AS AMENDED AND RESTATED ON FEBRUARY 9, 2018.</u>**

    Teri G. Galardi is the Settlor, Trustor, Trustee, and primary Beneficiary of the revokable Trust known as the "Teri G. Galardi Separate Property Trust u/a/d 9-27-06" (the "Separate

Property Trust"). Upon information and belief, such trust is a revocable trust, as the trust may be amended or revoked at any time by the Settlor/Trustee (Teri Galardi). Upon information and belief, the Trust instrument specifically provides that its spendthrift provisions do not apply to Galardi's interest in the Trust. Assets in a revocable trust are subject to claims of debtor's creditors. O.C.G.A. § 53-12-82(a)(1) ("During the lifetime of the settlor, the property of a revocable trust shall be subject to claims of the settlor's creditors."); *In re Nichols*, 434 B.R. 906, 909 (Bankr. M.D. Fla. 2010).

As of the Effective Date, the Estate and the Separate Property Trust shall be consolidated and be considered one Person pursuant to 11 U.S.C. § 1123(a)(5)(C) ("Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide adequate means for the plan's implementation, such as . . . merger or consolidation of the debtor with one or more person.").

The following are, without limitation, assets of the Separate Property Trust:

| Parcel Number | Address | Tax Value |
|---|---|---|
| 00510-050-000 | 2146 Hwy 42 S, Flovilla, Butts Co., Ga. | $1,469,617.00 |
| 00510-044-000 (101.79 acres) | Hwy 42 S, Flovilla, Butts Co., Ga. | $305,370.00 |
| 00510-045-000 (9.79 acres) | 245 Mt. Vernon Church Rd, Flovilla, Butts Co., Ga. | $116,007.00 |
| 00510-048-000 (51.71 acres) | Hwy 42 S, Flovilla, Butts Co., Ga | $258,550.00 |
| 00510-049-000 (55.6 acres) | S Highway 42, Flovilla, Butts Co., Ga | $278,000.00 |
| 18-156-01-003 | 1837 Corporate Boulevard, Brookhaven, Georgia 30329 | $1,538,800.00 |

The Plan Proponent continues its investigation. This list shall not be interpreted to mean that these are the only assets of the Separate Property Trust.

Upon the Effective Date, all assets of the Separate Property Trust shall be deemed to be Trust Assets pursuant to this Plan, including Article V.

### Article 3
### Classification of Claims

3.1    *Summary*.  The categories of Claims  set forth below classify all Claims against Debtor for all purposes of this Plan.  A Claim shall be deemed classified in a particular Class only to the extent the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  The treatment with respect to each Class of Claims provided for in Article 4 shall be in full and complete satisfaction and release of such Claims.

3.2    Classes:

    3.2.1    Class 1 shall consist of the Secured or Priority Claim of the Internal Revenue Service.

    3.2.2    Class 2 shall consist of the Secured or Priority Claim of the Georgia Department of Revenue.

    3.2.3    Class 3 shall consist of the Secured Claim of Ag South Farm Credit.

    3.2.4    Class 4 shall consist of the Secured Claim of Business First Bank.

    3.2.5    Class 5A shall consist of the Secured Claim of Wells Fargo Bank as to the Southwest Ranches Property.

    Class 5B shall consist of the Secured Claim of Wells Fargo Bank for the Galardi Residence.

    3.2.6    Class 6 shall consist of the Holders of Unsecured Claims.

    3.2.7    Class 7 shall consist of  right of Debtor under the Plan.

**Article 4**
**Treatment of Claims**

The Classes, the treatment of each Class, and the voting rights of each Class is set forth below in this Article 4 of the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Plan Proponent and Liquidating Trustee reserve and shall have the right to object to any and all claims.

Notwithstanding anything elsewhere in the Plan, the Bar Date and Government Bar Date shall continue in full force and effect following Confirmation of the Plan.

Liquidating Trustee may pay any Claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan and including any accrued and unpaid interest due under the Plan, if any) without prepayment penalty.

**4.1    <u>Class 1: Secured or Priority Claim of the Internal Revenue Service</u>**

Class 1 consists of any Secured Claim or Priority Tax Claim against Debtor held by the Internal Revenue Service (the "IRS") which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) (the "Class 1 IRS Tax Claim"). Debtor scheduled the IRS as holding three priority claims of (i) $555,603.09 for 2018

taxes; (ii) $1,044,235.96 for 2018 taxes and (ii) $12,386,862.37 for estate taxes based on Debtor's status as executor and beneficiary of her father's estate. The IRS filed a claim on February 11, 2022, as amended on March, 24, 2022, (such amendment, the "IRS Proof of Claim") asserting $541,068.52 in unsecured priority claims under section 507(a)(8) (the "Allowed Class 1 IRS Tax Claim") and a $13,689,913.22 unsecured claim. The Allowed Class 1 IRS Tax Claim shall be treated pursuant to this Class 1 and the $13,689,913.22 unsecured claim shall be treated pursuant to Class 6. The Government Bar Date for filing proofs of claim is fixed by 11 U.S.C. § 502 and was July 11, 2022. Based upon the passage of the Government Bar Date, any claim of the IRS except for the Allowed Class 1 IRS Tax Claim (which is the amount and priority set forth in the IRS proof of claim) assertable by the IRS on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) shall: (i) be time barred and fixed as provided in the Plan, subject to Liquidating Trustee's right to object to the same and (ii) any other, additional, or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged. Debtor shall pay any claim of the IRS treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i). The IRS shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for all such claims.

The Liquidating Trustee shall pay the Allowed Class 1 IRS Tax Claim as a Priority Claim Distribution as provided in Article IX below, but in any event the Liquidating Trustee shall pay such Allowed Class 1 IRS Tax Claim in full in equal monthly payments commencing on the 15th day of the 1st full month that is 60 days following the Effective Date and continuing on the 15th day of each subsequent month, with the last payment and the balance of the Class 1 IRS Tax Claim, if any, due on or before January 12, 2027. Interest shall accrue on the principal balance of the Allowed Class 1 IRS Tax Claim at the annual rate of 5% or such rate as may be provided pursuant to 26 U.S.C. § 6621 and 11 U.S.C. § 511 as of the Confirmation Date. Any third-party payments or payments in excess of the scheduled Distribution pursuant to Class 1 received by IRS after the Filing Date shall be applied to the principal tax obligation of the Allowed Class 1 IRS Tax Claim owed pursuant to Class 1.

Notwithstanding any other provision of this Plan, nothing in this Plan or the Confirmation Order thereon shall discharge a federal tax debt of the kind specified in 11 U.S.C. § 523(a)(1)(B) or (C). Notwithstanding any other provision of this Plan, nothing in this Plan or the Confirmation Order thereon shall bar or enjoin the IRS from assessing or collecting any federal tax liability or penalty against a co-debtor. Further, nothing in this Plan or the Confirmation Order thereon shall exculpate or limit the liability of any co-debtor for any federal tax debt. Specifically, nothing in this Plan, the Disclosure Statement, or any other supporting document shall constitute any wavier or relinquishment of any right by the IRS or the Liquidating Trustee against any co-debtor, including but not limited to (i) the right of the IRS to seek to collect all such amounts from Michael Porter, Debtor's husband, and (ii) the right of the Liquidating Trustee to seek contribution, indemnification, or any similar such theory of recovery against Michael Porter for any payment of the Allowed Class 1 IRS Tax Claim. If the IRS recovers any amounts from Michael Porter, the IRS shall notify the Liquidating Trustee and the Liquidating Trustee shall reduce the amount due from the Liquidating Trust to the IRS on the Allowed Class 1 IRS Tax Claim accordingly.

Notwithstanding any other provision of this Plan, if the Liquidating Trustee fails to pay any Distribution to the IRS under Class 1 when due under the Plan, the Liquidating Trustee shall be in default as to the IRS under Class 1. In the event of a default under Class 1, the IRS must send a Default Notice to the Liquidating Trustee in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries.  Upon failure to cure such default by no later than the tenth (10th) day (if a business day or, if not, the following business day) after the day of such default, the United States of America may avail itself of administrative remedies under the Internal Revenue Code to assess or collect any unpaid Allowed Class 1 IRS Claim liability provided for under the Plan against the Debtor and the Liquidating Trust, including any applicable interest or penalties thereon, up the amounts provided for in the Plan.

The amount of any claim of the IRS that is not assessable prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and the right of the IRS, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of IRS would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code; notwithstanding the foregoing, the Trust Assets shall not be subject to any such claims.  However, the rights and treatment of the IRS and obligations and liability of Debtor or its property regarding any claim of the IRS against Debtor which was assessable prior to the Filing Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable on or prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and not included in the IRS Proof of Claim and therefore deemed the Allowed Class 1 IRS Claim shall be forever barred. Liquidating Trustee reserves the right to pay any tax claim in full at any time.

The Claim of the Class 1 Creditor is unimpaired by the Plan and the holder of the Class 1 Claim is deemed to have accepted  the Plan. *See In re Equitable Dev. Corp.*, 196 B.R. 889, 893 (Bankr. S.D. Ala. 1996) (priority tax claimants treated under § 507(a)(8) and § 1129(a)(9)(C) are not impaired).

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. The Plan Proponent and Liquidating Trustee reserve the right to object to any and all claims.

### 4.2    Class 2: Secured or Priority Tax Claim of Georgia Department of Revenue

Class 2 shall consist of any Secured Claim or Priority Tax Claim against Debtor held by the Georgia Department of Revenue (the "GDR") which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) (the "Class 2 GDR Tax Claim"). The GDR filed Proof of Claim 121 on May 16, 2022, as amended on August 23, 2022, for a total claim of $264,519.33, consisting of (i) $127,513.42 in secured claims, (ii) $126,980.55 in priority claims and (iii) $10,025.36 in unsecured claims. Such amounts arose from Debtor's liability on personal income tax returns jointly filed with her husband, Michael Porter. The secured and priority claims set forth in the GDR proof of claim, totaling $254,493.97,

shall be treated pursuant to this Class 2 (the "Allowed Class 2 GDR Tax Claim") and the $10,025.36 set forth in the GDR proof of claim in unsecured claims shall be treated pursuant to Class 6.

The Government Bar Date for filing proofs of claim is fixed by 11 U.S.C. § 502 and was July 11, 2022. Based upon the passage of the Government Bar Date, any claim asserted or assertable by the GDR on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) shall: (i) be time barred and fixed as provided in the Plan, subject to Plan Proponent or Liquidating Trustee's right to object to the same and (ii) any other, additional, or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged. The Debtor shall pay any claim of the GDR treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i). The GDR shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims.

The Liquidating Trustee shall pay the Allowed Class 2 GDR Tax Claim as a Priority Claim Distribution as provided in Article IX below, but in any event the Liquidating Trustee shall pay such Allowed Class 2 GDR Tax Claim in full in equal monthly payments commencing on the 15th day of the 1st full month that is 60 days following the Effective Date and continuing on the 15th day of each subsequent month, with the last payment and the balance of the Allowed Class 2 GDR Tax Claim, if any, due on or before January 12, 2027. Interest shall accrue on the principal balance of the Allowed Class 2 GDR Tax Claim at the annual rate of 6.25% or such rate as may be provided pursuant to Georgia law and 11 U.S.C. § 511 as of the Confirmation Date. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 2 received by GDR after the Filing Date shall be applied to the principal tax obligation of the Allowed Class 2 GDR Tax Claim owed pursuant to Class 2.

Notwithstanding any other provision of this Plan, nothing in this Plan or the Confirmation Order thereon shall discharge a tax debt of the kind specified in 11 U.S.C. § 523(a)(1)(B) or (C). Notwithstanding any other provision of this Plan, nothing in this Plan or the Confirmation Order thereon shall bar or enjoin the GDR from assessing or collecting any state tax liability or penalty against a co-debtor. Further, nothing in this Plan or the Confirmation Order thereon shall exculpate or limit the liability of any co-debtor for any state tax debt. Specifically, nothing in this Plan, the Disclosure Statement, or any other supporting document shall constitute any wavier or relinquishment of any right by the GDR or the Liquidating Trustee against any co-debtor, including but not limited to (i) the right of the GDR to seek to collect all such amounts from Michael Porter, Debtor's husband, and (ii) the right of the Liquidating Trustee to seek contribution, indemnification, or any similar such theory of recovery against Michael Porter for any payment of the Allowed Class 2 GDR Tax Claim. If the GDR recovers any amounts from Michael Porter, the GDR shall notify the Liquidating Trustee and the Liquidating Trustee shall reduce the amount due from the Liquidating Trust to the GDR on the Allowed Class 2 GDR Tax Claim accordingly.

A failure to make a payment under Class 2 to the GDR pursuant to the terms of the Plan shall be an event of default as to the GDR. In the event of a default under Class 2, the GDR must send a Default Notice in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount

necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by any attorney shall not be deemed receipt of the required Default Notice. In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the GDR may (a) enforce the entire amount of its then outstanding Allowed Class 2 GDR Tax Claim against the Debtor and the Liquidating Trustee; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 2 GDR Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of GDR that is not assessable prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and the right of GDR, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of GDR would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code; notwithstanding the foregoing, the Trust Assets shall not be subject to any such claims. However, the rights and treatment of GDR and obligations and liability of Debtor or its property regarding any claim of GDR against Debtor which was assessable prior to the Filing Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable on or prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and not included in the GDR proof of claim and therefore deemed the Allowed Class 2 GDR Tax Claim shall be forever barred. Liquidating Trustee reserves the right to pay any tax claim in full at any time.

The Claim of the Class 2 Creditor is unimpaired by the Plan and the holder of the Class 2 Claim is deemed to have accepted the Plan. *See In re Equitable Dev. Corp.*, 196 B.R. 889, 893 (Bankr. S.D. Ala. 1996) (priority tax claimants treated under § 507(a)(8) and § 1129(a)(9)(C) are not impaired).

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. The Plan Proponent and Liquidating Trustee reserve the right to object to any and all claims.

### 4.3 Class 3: Secured Claim of Ag South Farm Credit

Class 3 consists of the Secured Claim of Ag South Farm Credit, ACA ("Ag South"). On January 20, 2022, Ag South filed proof of claim 1 asserting a secured claim in the amount of $235,854.59 (the "Class 3 Secured Claim"). Ag South's Secured Claim is evidenced by the following loan documents (collectively, the "Ag South Loan Documents"): (i) Fixed Rate Note signed by Teri Galardi dated October 15, 2015, (ii) Deed to Secure Debt dated October 15, 2015 between Circle G Ranch Holdings, LLC, Teri G Galardi and Michael Porter naming Ag South as lender, recorded in the real property records of Butts County, Book Number 788, Page 410-416. The Class 4 Secured Claim is secured by three real estate parcels as follows:

| Parcel | Owner | Tax Value |
|---|---|---|
| Parcel No 00510-033-A00 (201 Fawn Rd.) (128.76 acres) | Circle G Ranch Holdings, LLC | $450,660.00 |
| Parcel No. 00520-045-000 (52 acres) | Teri Galardi & Michael Porter | $155,910.00 |
| Parcel No. 00520-017-A00 (13.02 acres) | Teri Galardi & Michael Porter | $78,120.00 |
| Total: | | $684,690.00 |

Such parcels shall be defined as the "Ag South Collateral." The Allowed Class 3 Secured Claim of Ag South shall continue and attach to the Ag South Collateral to the same extent, validity, and priority as existed on the Filing Date.

The Liquidating Trustee shall pay the Allowed Class 3 Secured Claim as a Secured Claim as provided in Section 9.3.1 below. The Liquidating Trustee shall pay interest only payments of $1,267.72, each, beginning on the 15th day of the 1st full month following the 60th day after the Effective Date and continuing monthly until the earlier of (i) the date the the Ag South Collateral is sold or (ii) a maturity date of the Final Distribution Date. Interest shall accrue on the principal balance of the Class 3 Secured Claim at the annual rate of 6.45% commencing on the Effective Date. Ag South shall retain its lien and security interest in the Ag South Collateral to the same priority and validity as existed on the Filing Date, notwithstanding the transfer of Ag South Collateral to the Liquidating Trust as a Trust Asset; however, Ag South shall release its lien on and security interest in the Ag South Collateral upon payment as provided in Section 9.3.1. Upon request by the Liquidation Trustee, Ag South shall promptly provide a payoff letter including the then outstanding balance of the Class 3 Secured Claim and an accounting including all credits and debits, including all payments received and their application.

The holder of the Class 3 Secured Claim is impaired and entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as the nature, validity, or amount of claim. Plan Proponent and Liquidating Trustee reserve the right to object to any and all claims for any reason.

### 4.4    Class 4: Secured Claim of Business First Bank

Class 4 consists of the first-priority secured claim of Business First Bank ("Business First"). On May 17, 2022, Business First filed proof of claim 122 asserting an unsecured claim in the amount of $717,075.47 (the "Class 4 Secured Claim") consisting of: (i) $714,075.47 in principal and (ii) $3,257.47 in interest.

Such proof of claim is based on Debtor's guaranty of a debt of (a) Teri Gale Galardi, Trustee of JEG Family Trust under the provisions of a Trust Agreement dated November 1, 2006 and (b) Trop, Inc. to Business First Bank secured by that certain property located at 1837 Corporate Boulevard, Brookhaven, Georgia 30329 ("Corporate Boulevard"). By Warranty Deed recorded on June 6, 2015, in the real property records of DeKalb County at Book 24917, Page 49, "Teri Gale

Galardi, Successor Trustee of the JEG Family Trust" transferred Corporate Boulevard to "Teri G. Galardi, Trustee of the Teri G. Galardi Separate Property Trust, dated September 27, 2006." Under this Plan, Teri G. Galardi and the Teri G. Galardi Separate Trust are substantively consolidated. Further, Debtor scheduled Business First as a secured creditor and listed Corporate Boulevard as her asset on her schedules (Doc. No. 34 at Sch. A, pg., 6; Sch. D, pg. 2). This Plan thus treats Business First as a secured creditor.

The Liquidating Trustee shall pay the Allowed Class 4 Secured Claim as provided in Section 9.3.1 below. The Liquidating Trustee shall pay interest only payments of $5,058.03, each, beginning on the 15th day of the 1st full month following the 60th day after the Effective Date and continuing monthly until the earlier of (i) the date the Corporate Boulevard is sold or (ii) a maturity date of the Final Distribution Date. Interest shall accrue on the principal balance of the Class 4 Secured Claim at the annual rate of 8.5% commencing on the Effective Date. Business First shall retain its lien and security interest in Corporate Boulevard to the same priority and validity as existed on the Filing Date, notwithstanding the transfer of Corporate Boulevard to the Liquidating Trust as a Trust Asset; however, Business First shall release its lien on and security interest in Corporate Boulevard upon payment as provided in Section 9.3.1. Upon request by the Liquidation Trustee, Business First shall promptly provide a payoff letter including the then outstanding balance of the Class 4 Secured Claim and an accounting including all credits and debits, including all payments received and their application.

The holder of the Class 4 Secured Claim is impaired and entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as the nature, validity, or amount of claim. Plan Proponent and Liquidating Trustee reserve the right to object to any and all claims for any reason.

**4.5    Class 5: Secured Claim of Wells Fargo Bank**

**Class 5A**

Class 5A consists of the following secured claim of Wells Fargo Bank, N.A. ("Wells Fargo") ("Class 5A Secured Claim"). On March 23, 2022, Wells Fargo filed a proof of claim 111 asserting a secured claim in the amount of $502,384.28, secured by a first priority lien on that certain real estate commonly referred to as 15820 SW 53rd County, Southwest Ranch, Florida 33331 ("Southwest Ranches Property"). The Class 5A Secured Claim is evidenced by the following loan documents (collectively, the "Wells Fargo Class 5A Loan Documents"): (i) Fixed/Adjustable Rate Note dated September 15, 2008, by Teri G. Galardi and Michael A. Porter in favor of Wachovia Mortgage, FSB nka Wells Fargo; (ii) Addendum to Note for Interest Only Payments dated September 15, 2008, by Teri G. Galardi and Michael A. Porter in favor of Wachovia Mortgage, FSB nka Wells Fargo; (iii) Mortgage by Teri G. Galardi and Michael A. Porter, Wife and Husband, dated September 15, 2008, with Wachovia Mortgage, FSB nka Wells Fargo as lender, recorded in the real property records of Broward County, Florida, Book No. 45698, Pages 1915-1937.

However, Debtor and Michael Porter transferred such property to Jackson Galardi Trust & Grace Galardi Trust on November 29, 2017, as evidenced by Warranty Deed on such date and recorded in the real property records of Broward County, Florida, Instr. # 114744796. The Committee shall file an Avoidance Action seeking to recover such transfer.

If such Avoidance Action is successful, the Liquidating Trustee shall pay Wells Fargo interest-only payments of $1,046.63 at the contractual rate of 2.5% from the date Southwest Ranches becomes part of the Liquidating Trust through the earlier of (i) the date the Southwest Ranches Property is sold or (ii) a maturity date of the Final Distribution Date. The Liquidating Trustee shall pay the Allowed Class 5A Secured Claim as a Secured Claim as provided in Section 9.3.1 below.

Wells Fargo shall retain its lien and security interest in the Southwest Ranches Property to the same priority and validity as existed on the Filing Date; however, Wells Fargo shall release its lien on and security interest in Southwest Ranches upon payment as provided in Section 9.3.1. Upon request by the Liquidation Trustee, Wells Fargo shall promptly provide a payoff letter including the then outstanding balance of the Class 5A Secured Claim and an accounting including all credits and debits, including all payments received and their application.

**Class 5B**

Class 5B consists of the following secured claim of Wells Fargo Bank, N.A. ("Wells Fargo") ("Class 5B Secured Claim"). Debtor scheduled Wells Fargo as holding a first-priority secured claim of $549,647.41 in 2146 Highway 42 South, Georgia ("Galardi Residence"). The Class 5B Secured Claim is evidenced by the following loan documents (collectively, the "Wells Fargo Class 5B Loan Documents"): Open-End Deed to Secure Debt by Jack E. Galardi, dated December 27, 2004, with Wachovia Bank, National Association nka Wells Fargo as lender, recorded in the real property records of Butts County, Georgia, Book No. 470, Pages 273-280.

The Liquidating Trustee shall make interest-only payments to Wells Fargo of $1,347.11 until the earlier of (i) the date the Galardi Residence is sold or (ii) a maturity date of the Final Distribution Date. The Liquidating Trustee shall pay the Allowed Class 5B Secured Claim as a Secured Claim as provided in Section 9.3.1 below.

Wells Fargo shall retain its lien and security interest in the Galardi Residence to the same priority and validity as existed on the Filing Date; however, Wells Fargo shall release its lien on and security interest in the Galardi Residence upon payment as provided in Section 9.3.1. Upon request by the Liquidation Trustee, Wells Fargo shall promptly provide a payoff letter including the then outstanding balance of the Class 5B Secured Claim and an accounting including all credits and debits, including all payments received and their application.

Nothing herein shall constitute an admission as the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims for any reason.

The holder of the Class 5 Secured Claims is impaired and entitled to vote to accept or reject the Plan.

**4.6**    **Class 6: General Unsecured Claims**

Class 6 shall consist of the general unsecured claims. The Plan Proponent projects the following unsecured creditors:

| Name | Claim No. | Date Filed/ Amended | Claim Amount: | Anticipated Allowed Amount | Reasoning to Object |
|------|-----------|---------------------|---------------|----------------------------|---------------------|
| Shanice Bain | 2 | 3/23/2022 | $ 338,000.00 | $338,000.00 | |
| Yashica Bain | 3 | 3/23/2022 | $ 488,000.00 | $488,000.00 | |
| Netonia Bell | 4 | 3/23/2022 | $ 226,000.00 | $226,000.00 | |
| Yamilee Bennett | 5 | 3/23/2022 | $ 346,000.00 | $346,000.00 | |
| Maria Bush | 6 | 3/23/2022 | $ 236,000.00 | $236,000.00 | |
| Princess Callahan | 7 | 3/23/2022 | $ 480,000.00 | $480,000.00 | |
| Jessica Chatman | 8 | 3/23/2022 | $ 362,000.00 | $362,000.00 | |
| Quina Dopoe | 9 | 3/23/2022 | $ 516,000.00 | $516,000.00 | |
| Shadana Deleston | 10 | 3/23/2022 | $ 532,000.00 | $532,000.00 | |
| Shanrika Duhart | 11 | 3/23/2022 | $ 338,000.00 | $338,000.00 | |
| Belinda Harris | 12 | 3/23/2022 | $ 340,000.00 | $340,000.00 | |
| Crystyona Hartzog | 13 | 3/23/2022 | $ 52,000.00 | $52,000.00 | |
| Sasha Hollins | 14 | 3/23/2022 | $ 228,000.00 | $228,000.00 | |
| Kitrea Jackson | 15 | 3/23/2022 | $ 308,000.00 | $308,000.00 | |
| Ronika Jones | 16 | 3/23/2022 | $ 126,000.00 | $126,000.00 | |
| Abri Leahong | 17 | 3/23/2022 | $ 532,000.00 | $532,000.00 | |
| Queen Lewis | 18 | 3/23/2022 | $ 244,000.00 | $244,000.00 | |
| Montoyo Minnis | 19 | 3/23/2022 | $ 432,000.00 | $432,000.00 | |
| Tania Ramessar | 20 | 3/23/2022 | $ 440,000.00 | $440,000.00 | |
| Jennifer Ridley | 21 | 3/23/2022 | $ 160,000.00 | $160,000.00 | |
| Aida Simmons | 22 | 3/23/2022 | $ 516,000.00 | $516,000.00 | |
| Seleta Stanton | 23 | 3/23/2022 | $ 226,000.00 | $226,000.00 | |
| Aisha Taliaferro | 24 | 3/23/2022 | $ 40,000.00 | $40,000.00 | |
| Marsha Taylor | 25 | 3/23/2022 | $ 296,000.00 | $296,000.00 | |
| Brittany Walker | 26 | 3/23/2022 | $ 268,000.00 | $268,000.00 | |
| Keesha Weems | 27 | 3/23/2022 | $ 106,000.00 | $106,000.00 | |
| Africa Williams | 28 | 3/23/2022 | $ 480,000.00 | $480,000.00 | |
| Marquesha Holmes | 29 | 1/31/2022 | $ 152,053.00 | $152,053.00 | |
| Elliandria Griffin | 30 | 2/1/2022 | $ 152,053.00 | $152,053.00 | |
| Lakeisha Fenner | 31 | 2/1/2022 | $ 458,739.84 | $458,739.84 | |
| Lygia Simmons | 32 | 2/1/2022 | $ 68,622.72 | $68,622.72 | |
| Mutepe Akermon | 33 | 2/1/2022 | $ 123,011.45 | $123,011.45 | |

| | | | | | |
|---|---|---|---|---|---|
| Discover Bank | 34 | 2/7/2022 | $ | 6,868.88 | $6,868.88 | |
| IRS | 35 | 3/24/2022 | $ | 13,689,913.22 | $13,689,913.22 | |
| American Express | 36 | 2/16/2022 | $ | 18,265.84 | $18,265.84 | |
| American Express | 37 | 2/16/2022 | $ | 2,196.97 | $2,196.97 | |
| Angela Milner | 38 | 3/8/2022 | $ | 838,576.00 | $838,576.00 | |
| Marleeka Williams | 39 | 3/10/2022 | $ | 479,791.00 | $479,791.00 | |
| Ebony Mayfield | 40 | 3/10/2022 | $ | 727,542.00 | $727,542.00 | |
| Rasheedah Mays | 41 | 3/10/2022 | $ | 686,578.00 | $686,578.00 | |
| Verizon | 42 | 3/10/2022 | $ | 83.48 | $83.48 | |
| Bank of America | 43 | 3/11/2022 | $ | 19,340.97 | $0.00 | No Prsl. Gty.[1] |
| Diana Smith | 44 | 3/12/2022 | $ | 483,896.00 | $483,896.00 | |
| Marei Kahey | 45 | 3/12/2022 | $ | 544,046.16 | $544,046.16 | |
| Angela Coates | 46 | 3/12/2022 | $ | 363,976.00 | $363,976.00 | |
| Desiree Jones | 47 | 3/12/2022 | $ | 365,532.00 | $365,532.00 | |
| Cassandra St. Fluer | 48 | 3/12/2022 | $ | 188,586.00 | $188,586.00 | |
| Brandie Robertson | 49 | 3/12/2022 | $ | 310,720.00 | $310,720.00 | |
| Tramaine Moore | 50 | 3/12/2022 | $ | 432,864.00 | $432,864.00 | |
| Marqueta Ward | 51 | 3/12/2022 | $ | 538,828.00 | $538,828.00 | |
| Brittany Gregory | 52 | 3/12/2022 | $ | 24,652.32 | $24,652.32 | |
| Gabrielle Bates | 53 | 3/12/2022 | $ | 498,228.00 | $498,228.00 | |
| Ashley Armstrong | 54 | 3/12/2022 | $ | 200,739.84 | $200,739.84 | |
| Estate of Harlan Miller | 55 | 3/15/2022 | $ | 170,650.00 | $170,650.00 | |
| Ameera Brewer | 56 | 3/17/2022 | $ | 838,575.20 | $838,575.20 | |
| Astrid Gabbe | 57 | 3/17/2022 | $ | 163,956.32 | $163,956.32 | |
| Ainsworth Dudley | 58 | 3/19/2022 | $ | 480,872.10 | $0.00 | To be paid as Trop Secured Claim[2] |
| Samantha Holdren | 59 | 3/19/2022 | $ | 22,728.09 | $0.00 | To be paid as Trop Secured Claim |
| Rachel Konke | 60 | 3/19/2022 | $ | 12,542.53 | $0.00 | To be paid as Trop Secured Claim |
| Ivelisse Borges | 61 | 3/19/2022 | $ | 22,143.96 | $0.00 | To be paid as |

[1] The primary obligor reflected on the supporting documentation is Galardi Eagle Lakes, LLC. No personal guaranty is attached to the claim.

[2] All such designated claims are claims against Debtor personally for a guaranty of debt owed by Trop, Inc., one of Debtor's entities. Such claims are also secured by a Deed to Secure Debt on property owned by JGP&P, LLC. Such property is scheduled to be sold prior to any hearing on this Plan. To the extent such claims are paid from or by Trop, then such claims would not need to be paid under this Plan. To the extent such claims are not paid by or through Trop (or otherwise) such claims will be paid under this Plan.

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Trop Secured Claim |
| Starr Sullivan | 62 | 3/19/2022 | $ | 266.21 | $0.00 | To be paid as Trop Secured Claim |
| Limberly Kelly | 63 | 3/19/2022 | $ | 15,797.96 | $0.00 | To be paid as Trop Secured Claim |
| Andrea Hilley | 64 | 3/19/2022 | $ | 21,660.69 | $0.00 | To be paid as Trop Secured Claim |
| Ashley Johnston | 65 | 3/19/2022 | $ | 266.21 | $0.00 | To be paid as Trop Secured Claim |
| Kaci Phillip | 66 | 3/19/2022 | $ | 12,961.30 | $0.00 | To be paid as Trop Secured Claim |
| Nikki Simmons | 67 | 3/19/2022 | $ | 1,960.73 | $0.00 | To be paid as Trop Secured Claim |
| Rebekah Reschar | 68 | 3/19/2022 | $ | 4,991.61 | $0.00 | To be paid as Trop Secured Claim |
| Shelley O'Neill | 69 | 3/19/2022 | $ | 71,607.61 | $0.00 | To be paid as Trop Secured Claim |
| Elisha Morrow | 70 | 3/19/2022 | $ | 47,397.96 | $0.00 | To be paid as Trop Secured Claim |
| Alexandra Valcourt | 71 | 3/20/2022 | $ | 31,713.15 | $0.00 | To be paid as Trop Secured Claim |
| Devonne Washington | 72 | 3/20/2022 | $ | 266.21 | $0.00 | To be paid as Trop Secured Claim |
| Sahra Ahmed | 73 | 3/20/2022 | $ | 41,351.44 | $0.00 | To be paid as Trop Secured Claim |
| Ashley Langston | 74 | 3/20/2022 | $ | 49,033.10 | $0.00 | To be paid as Trop Secured Claim |
| Caroline Smith | 75 | 3/20/2022 | $ | 40,289.68 | $0.00 | To be paid as Trop Secured Claim |
| Julie Milburn | 76 | 3/20/2022 | $ | 105,460.15 | $0.00 | To be paid as |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Trop Secured Claim |
| Heather West | 77 | 3/20/2022 | $ 101,400.97 | $0.00 | To be paid as Trop Secured Claim |
| Jessica Harris | 78 | 3/20/2022 | $ 47,873.04 | $0.00 | To be paid as Trop Secured Claim |
| Jessica Ward | 79 | 3/20/2022 | $ 266.21 | $0.00 | To be paid as Trop Secured Claim |
| Natasha Dejesus | 80 | 3/20/2022 | $ 8,550.42 | $0.00 | To be paid as Trop Secured Claim |
| Veronica Frascone | 81 | 3/20/2022 | $ 25,680.96 | $0.00 | To be paid as Trop Secured Claim |
| Lindsey Croome | 82 | 3/20/2022 | $ 266.21 | $0.00 | To be paid as Trop Secured Claim |
| Tara Steinberg | 83 | 3/20/2022 | $ 17,851.35 | $0.00 | To be paid as Trop Secured Claim |
| Danielle Kossler | 84 | 3/20/2022 | $ 22,938.49 | $0.00 | To be paid as Trop Secured Claim |
| Mary Alexander | 85 | 3/20/2022 | $ 18,399.12 | $0.00 | To be paid as Trop Secured Claim |
| Arielle Moore | 86 | 3/20/2022 | $ 6,433.04 | $0.00 | To be paid as Trop Secured Claim |
| Samantha Matecka | 87 | 3/21/2022 | $ 10,580.26 | $0.00 | To be paid as Trop Secured Claim |
| Decoda Burke | 88 | 3/21/2022 | $ 826.78 | $0.00 | To be paid as Trop Secured Claim |
| Angelica Andrews | 89 | 3/21/2022 | $ 266.21 | $0.00 | To be paid as Trop Secured Claim |
| Athanasia Angelakis | 90 | 3/21/2022 | $ 1,791.28 | $0.00 | To be paid as Trop Secured Claim |
| Cody Heywood | 91 | 3/21/2022 | $ 42,538.63 | $0.00 | To be paid as |

| | | | | | Trop Secured Claim |
|---|---|---|---|---|---|
| Nicolette Groebli | 92 | 3/21/2022 | $ 41,148.71 | $0.00 | To be paid as Trop Secured Claim |
| Hannah Conroy-Philburn | 93 | 3/21/2022 | $ 19,242.29 | $0.00 | To be paid as Trop Secured Claim |
| Holly Paige | 94 | 3/21/2022 | $ 24,565.44 | $0.00 | To be paid as Trop Secured Claim |
| Jammie Parker | 95 | 3/21/2022 | $ 366,475.20 | $0.00 | Unknown.[3] |
| Power Financial Credit Union | 96 | 3/29/2022 | $ 2,169,417.26 | $0.00 | To be paid by third party payments[4] |
| Astrid Gabbe | 97 | 3/21/2022 | $ 346,240.00 | $346,240.00 | |
| Shakir Williams | 98 | 3/21/2022 | $ 229,137.60 | $0.00 | Unknown[5] |
| Jocelyn Johnson | 99 | 3/21/2022 | $ 116,644.80 | $0.00 | Unknown[6] |
| Tiffany Thompson | 100 | 3/21/2022 | $ 184,393.92 | $0.00 | Dup of 114 |
| Alexis King | 101 | 3/21/2022 | $ 304,490.30 | $0.00 | Dup. of 110 |
| Apeatsiwa Shaw-Taylor | 102 | 3/21/2022 | $ 300,000.00 | $300,000.00 | |
| Marissa Walker | 103 | 3/21/2022 | $ 840,296.00 | $840,296.00 | |
| Jenisee Long | 104 | 3/22/2022 | $ 191,916.48 | $ 191,916.48 | |
| Astrid Gabbe | 105 | 3/22/2022 | $ 67,170.77 | $ 67,170.77 | |
| Rasheedah Mays | 106 | 3/22/2022 | $ 686,578.00 | $0.00 | Dup. of 41 |
| Jackie Galardi Torres | 107 | 3/22/2022 | $ 140,285.00 | $0.00 | No Supp. Docs. |
| Cohen & Caproni | 108 | 3/22/2022 | $ 1,380,000.00 | $0.00 | To be paid as Trop Secured Claim |
| Elliandria Griffin | 109 | 3/22/2022 | $ 152,053.00 | $0.00 | Dup. of 30 |

---

[3] See treatment below for Claims 95, 98, and 99.

[4] The Claim of Power Financial Credit Union is secured by property of Jack E. Galardi, Jr., LLC, an entity in which Debtor has an interest. Such LLC owns a golf course and other property in Naples, Florida, which will be sold by the Liquidating Trustee. The Plan Proponent anticipates such claim will be paid in full by such sale(s).

[5] See treatment below for Claims 95, 98, and 99.

[6] See treatment below for Claims 95, 98, and 99.

| | | | | | | |
|---|---|---|---|---|---|---|
| Alexis King | 110 | 3/22/2022 | $ | 468,446.62 | $468,446.62 | |
| JEG Family Trust | 112 | 3/23/2022 | $ | 843,509.20 | $843,509.20 | |
| JEG Family Trust | 113 | 3/23/2022 | $ | 1,053,191.20 | $1,053,191.20 | |
| Tiffany Thompson | 114 | 3/23/2022 | $ | 368,787.84 | $368,787.84 | |
| Jenisee Long | 115 | 3/23/2022 | $ | 383,832.96 | $383,832.96 | |
| Krystall Wright | 116 | 4/11/2022 | $ | 328,108.00 | $328,108.00 | |
| Latoya Hughes | 117 | 4/11/2022 | $ | 727,560.00 | $727,560.00 | |
| Addie Brooks | 118 | 4/11/2022 | $ | 727,560.00 | $727,560.00 | |
| American Arbitration Association | 119 | 4/12/2022 | $ | 18,780.00 | $18,780.00 | |
| American Arbitration Association | 120 | 4/12/2022 | $ | 18,780.00 | $0.00 | Dup. of 120. |
| Georgia Department of Revenue | 121 | 5/16/2022 | $ | 10,025.36[7] | | |
| **Totals:** | | | | $45,002,495.82 | $37,437,926.10 | |

The Liquidating Trustee shall pay the Holders of Allowed Class 6 General Unsecured Claims Distributions pro-rata with all other Class 6 General Unsecured Claims as provided in Article XI.

The claims made in Proof of Claims No. 95, 98, and 99 were dismissed with prejudice by the Southern District of Florida in Case No. 20-cv-23230, Doc. No. 113 on September 9, 2021. Such claimants timely appealed the dismissal and the case is currently before the Eleventh Circuit. Upon the Confirmation Date, the automatic stay shall be lifted and such claimants shall be allowed to prosecute their appeal. If the Eleventh Circuit affirms the dismissal with prejudice, the Liquidating Trustee shall not pay such claims. If the Eleventh Circuit reverses and orders the claims be reinstated, the Liquidating Trustee shall pay such claims, subject to any objections to such claims allowed under this Plan.

Nothing herein, specifically including the amount anticipated to be allowed above, shall constitute an admission as to the nature, validity, or amount of a claim.  Plan Proponent and the Liquidating Trustee shall have the right to object to any and all claims.

The Holders of Class 6 Claims are Impaired and entitled to vote to accept or reject the Plan.

---

[7] Such amount is the unsecured portion of Claim 121.

**4.7**    **Class 7: Rights of the Debtor Under the Plan.**

Class 7 consists of the rights of the Debtor under the Plan. Debtor shall be entitled to the value of the exemption which she asserted in certain assets pursuant to Schedule C as follows:

| Asset | Exemption Value Claimed |
|---|---|
| 2146 Highway 42 South | $21,500.00 |
| Household Goods – HHG & Furnishings | $2,500.00 |
| Electronics – TV's; Laptop; iPhone | $2,500.00 |
| Sports & Hobby Equipment – gym equipment | $500.00 |
| Clothing – Clothing | $500.00 |
| Jewelry – wedding ring; various costume jewelry; diamond earrings | $3,000.00 |
| Pets – (4) dogs; (2) barn cats; (10) horses | $1,000.00 |
| Other – ATV (fair condition) | $200.00 |
| Other – electric scooter | $100.00 |
| Other – paddle boat; kayaks | $100.00 |
| New International Properties, LLC | $1.00 |
| 2555 Chantilly, LLC | $1.00 |
| Galardi Eagle Lakes, LLC | $1.00 |
| La Fuente, Inc. | $1.00 |
| Tegal, LLC | $1.00 |
| Porgal, Inc. | $1.00 |
| Circle G Ranch Holdings, LLC | $1.00 |
| Trop, Inc. | $1.00 |
| Red Eyed, Inc. | $1.00 |
| 823 Lounge, Inc. | $1.00 |
| Country Club, Inc. (Georgia) | $1.00 |
| Fly Low, Inc. | $1.00 |
| Three Women, Inc. | $1.00 |
| JGP&P, LLC | $1.00 |
| Bella Mia, Inc. | $1.00 |
| Country Club, Inc. (South Carolina) | $1.00 |
| Sugar Mom, LLC | $1.00 |
| LVA Management, Inc. | $1.00 |
| Candy, Inc. | $1.00 |
| GFT Management & Consulting, Inc. | $1.00 |
| Funny Time, Inc. | $1.00 |
| Trinidad Creations, LLC | $1.00 |
| Jack E. Galardi, LLC | $1.00 |
| 3-101-668494 Sociedad Anonima | $1.00 |
| Universal Life Policy (Pacific Life) | $2,000.00 |

| Sheep; pygmy goats; mini donkeys | $500.00 |
|---|---|
| Bobcat Skid Steer; Kamatsu Dozer; Caterpillar Backhoe; Massey Ferguson Farm Tractor; Kubota Tractor; John Deere Tractor | $1,500.00 |

Debtor shall be entitled to payment of the value of her exemptions upon liquidation of the underlying Asset. Nothing herein shall prevent the Assets listed above from becoming Trust Assets on the Effective Date.

Debtor's right under Class 7 are Impaired and Debtor is entitled to vote to accept or reject the Plan.

### Article 5
### Liquidation Trust

**5.1**   *Trust Purpose.* On the Effective Date, the Liquidating Trust shall be established for the purpose of, among other things, (i) investigating and, if appropriate, pursuing Causes of Action as defined herein, (ii) administering, monetizing and liquidating the Trust Assets, (iii) resolving all Disputed Claims and (iv) making all Distributions from the Liquidating Trust as provided for in the Plan.

**5.2**   *Trust Authority.* Upon the Effective Date, the Liquidating Trustee shall be authorized to take all steps necessary to complete the formation of the Liquidating Trust; provided, that, prior to the Effective Date, the Committee may act as organizers of the Liquidating Trust and take such steps in furtherance thereof as may be necessary, useful or appropriate under applicable law to ensure that the Liquidating Trust shall be formed and in existence as of the Effective Date. The Liquidating Trust shall be administered by the Liquidating Trustee subject to the oversight of the Liquidating Trust Committee.

**5.3**   *Tax Status.* Except for those Trust Assets attributable to the Disputed Claims Reserve, it is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code. In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust and have no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. All Trust Assets held by the Liquidating Trust shall be deemed for federal income tax purposes to have been contributed by the Debtor to the Liquidating Trust on the Effective Date. All Holders of Claims have agreed or shall be deemed to have agreed to use the valuation of the Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes. The Liquidating Trust will be responsible for filing information on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

**5.4** *Beneficiaries of Liquidating Trust.* On the Effective Date, each Holder of an Allowed Unsecured Claim shall, by operation of the Plan and Plan Confirmation Order, receive a Pro Rata Share of the Beneficial Interests. Debtor shall hold no Beneficial Interest. Holders of Disputed Claims or temporarily Allowed Unsecured Claims shall be contingent Beneficiaries and funds for their Distribution shall be held by the Liquidating Trustee in the Disputed Claims Reserve pending allowance or disallowance of such Claims. The Beneficial Interests shall be uncertificated and shall be nontransferable except upon death of the Holder or by operation of law. Beneficiaries shall have no voting rights with respect to such Beneficial Interests. The Liquidating Trust shall have a term of five (5) years from the Effective Date, without prejudice to the rights of the Liquidating Trust and Liquidating Trustee to extend such term by the filing of a motion in the Bankruptcy Court, conditioned upon the Liquidating Trust not becoming subject to the Securities Exchange Act of 1934 (as now in effect or hereafter amended).

**5.5** *Vesting and Transfer of Assets to the Liquidating Trust.* **PURSUANT TO SECTION 1141(B) OF THE BANKRUPTCY CODE, THE TRUST ASSETS SHALL VEST IN THE LIQUIDATING TRUSTEE ON THE EFFECTIVE DATE FREE AND CLEAR OF ALL CLAIMS, LIENS, CHARGES OR OTHER ENCUMBRANCES, EXCEPT THAT THE LIENS OF (I) AG SOUTH (CLASS 3), (II) BUSINESS FIRST (CLASS 4), AND (III) WELLS FARGO (CLASS 5A & 5B) SHALL REMAIN AND SHALL ATTACH TO THEIR RESPECTIVE COLLATERAL IN THE LIQUIDATING TRUST.** The Liquidating Trustee may abandon or otherwise not accept any Trust Assets that the Liquidating Trustee believes, in good faith, has no value or will be unduly burdensome to the Liquidating Trust by filing a notice of abandonment on the Bankruptcy Court's docket in this case or serving a notice of such abandonment upon Debtor. Any Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall cease to be Trust Assets. The Trust Assets shall vest in the Liquidating Trust for the benefit of the Beneficiaries; and the Debtor and the Estate will have no further interest in or with respect to the Trust Assets or the Liquidating Trust. On the Effective Date, the Liquidating Trustee shall be deemed the representative of the Debtor's estate and the Liquidating Trustee shall be vested with the authority and Power of a trustee as set forth in the Bankruptcy Code, without limitation, § 544, subject to the terms of Article VI of the Plan set forth below (except that the Committee shall be deemed the representative of the Debtor's estate as to the Co-Owned Property and Co-Owned Property Avoidance Actions and the Committee shall be deemed to be vested with the authority and Power of a Trustee, subject to the terms of Article VI as set below as to the Co-Owned Property and Co-Owned Property Avoidance Actions). Notwithstanding the foregoing or any other provision of the Plan or the Confirmation Order, the Co-Owned Property shall not vest in the Liquidating Trust and shall remain part of the Estate.

**5.5.1** *Members and Managers.* On the Effective Date, (a) the authority, power and incumbency of Debtor as a manager, officer, director, or any other position of control in any entity (irrespective of the capacity denominated or form taken) shall terminate for all entities in which Debtor holds an interest, including such entities listed below, and Debtor shall be deemed to have resigned, and (b) the Liquidating Trustee shall be deemed to have succeeded to all such rights and powers as would have been previously exercisable by the Debtor, and the Liquidating Trustee shall have the right and authority to control and direct the activities of such entities as the Debtor had immediately prior to the Effective

Date. All officers, employees, or other agents of such entities shall take direction from the Liquidating Trustee as the sole manager, member, or shareholder (as the case may be) of each such entity.

| |
|---|
| Jack E. Galardi, LLC |
| Galardi Eagle Lakes, LLC |
| Circle G Ranch Holdings, LLC |
| JPG&P, Inc. |
| Trinidad Creations, LLC |
| 2555 Chantilly, LLC |
| 506 Office, LLC |
| New International Properties, LLC |
| Trop, Inc. |
| Red Eye, Inc. |
| Country Club, Inc. - Georgia |
| Country Club, Inc. - South Carolina |
| Flylow, Inc. |
| Candy, Inc |
| GFT Management & Consulting, Inc. |
| 3-101-668494 Sociedad Anonima |
| La Fuente, Inc. |
| Tegal, LLC |
| 823 Lounge, Inc. |
| Bella Mia, Inc. |
| Sugar Mom, LLC |
| LVA Management, Inc. |
| Porgal,Inc. |
| Three Women, Inc. |
| Western Property Holdings, LLC |
| Funny Time, Inc. |

**5.5.2** *Trustee*. On the Effective Date, (a) the authority, power and incumbency of Debtor as a trustee or any other similar position of control over any trust (irrespective of the capacity denominated or form taken) shall terminate for all trusts in which Debtor acts as trustee or any other similar position of control and Debtor shall be deemed to have resigned, and (b) the Liquidating Trustee shall be deemed to have succeeded to all such rights and powers as would have been previously exercisable by the Debtor, and the Liquidating Trustee shall have the right and authority to control and direct the activities of such trusts as the Debtor had immediately prior to the Effective Date. All officers, employees, or other agents of such trusts shall take direction from the Liquidating Trustee as the sole trustee, manager, member, or shareholder (as the case may be) of each such entity. Such trusts specifically include, but are not limited to (i) The Teri G. Galardi Separate Property Trust, dated September 27, 2006; and (ii) the JEG Family Trust, dated November 1, 2006.

**5.5.3** *Causes of Action.* As the representative of the Debtor's Estate, and in its capacity as trustee for the benefit of the Beneficiaries, the Liquidating Trustee will succeed to all of the rights and powers of the Debtor and her Estate with respect to all Causes of Action, and the Liquidating Trustee will be substituted and will replace the Debtor and/or Debtor's Estate in all such Causes of Action, whether or not such claims are pending in filed litigation.

**5.5.4** *Bank Accounts.* On the Effective Date, the Debtor shall transfer all funds held in any Bank Account to an account designated by the Liquidating Trustee. The Liquidating Trustee shall be entitled to present a copy of this Plan and the order confirming this Plan to any bank  or financial entity which (i) maintains any account in Debtor's name or in the name of any Entity owned or controlled by the Debtor prior to the Effective Date or (ii) holds any funds attributable to Debtor or any Entity owned or controlled by the Debtor prior to the Effective Date, and such bank or financial entity is directed to comply with the Liquidating Trustee's directions on the transfer or control of such funds. Upon request of the Liquidating Trustee and without notice or hearing, the Bankruptcy Court may issue a "comfort order" directing any such bank or financial entity to comply with this or any other provision of the Plan.

**5.5.5** *Turnover of Documents.* On or prior to the Effective Date, the Debtor shall (i) deliver, cause to be delivered, or provide access to the Liquidating Trustee any and all documents evidencing or relating to the Trust Assets (including those maintained in electronic format and original documents), whether held by Debtor, any entity controlled or owned by Debtor, or any employees, agents, advisors, attorneys, accountants or any other professionals hired by Debtor, and (ii) use commercially reasonable efforts to provide access to the Liquidating Trustee to any such employees, and their respective agents, advisors, attorneys, accountants or any other professionals hired by Debtor, with knowledge of matters relevant to the Trust Assets, subject to the Liquidating Trustee's payment of any reasonable fees and/or expenses related to the foregoing.

**5.5.6** *Privileges.* On the Effective Date, all of Debtor's respective rights, titles and interests in any Privileges (including, without limitation, attorney-client or accountant-client) shall automatically vest in the Liquidation Trustee. The Liquidation Trustee, as trustee for the Liquidation Trust, shall hold those Privileges and shall have the sole power and authority to assert or waive such Privileges.

**5.5.7** *Prior Pending Sales and Offers*. Debtor has listed for sale certain real estate and/or membership interests in the Bankruptcy Case. On the Effective Date, Liquidating Trustee will succeed to all of the rights and powers of the Debtor with regard to such offers and/or sales and will be authorized to act on Debtor's behalf to consummate any transfers. On or prior to the Effective Date, Debtor shall turnover to the Liquidating Trustee all documentation related to any prior or existing offer and/or counteroffer for: (i) any Trust Asset or (ii) Asset previously held by the Debtor, either of which has not yet been sold.

**5.6**   *Marketing and Sale of Assets.*

5.6.1   On and after the Effective Date, the Liquidating Trustee shall have the sole authority to market, liquidate and sell Trust Assets, and the Liquidating Trustee shall pursue the sale and liquidation of all remaining Trust Assets including, without limitation, Trust Assets whether encumbered or unencumbered by Liens. The Liquidating Trustee shall, in its experience and business judgment, use its best efforts to contact parties likely to have an interest in purchasing the Trust Assets and may engage one or more brokers to market and list the Trust Assets for sale.

5.6.2   Intentionally Omitted.

5.6.3   Without Bankruptcy Court approval, the Liquidating Trustee may engage one or more brokers to list, market and sell Trustee Assets and may pay a broker's fee.

5.6.4   The Liquidating Trustee shall have the right in its sole discretion to seek and obtain a "comfort order" or other Bankruptcy Court approval of any sale transaction if the Liquidating Trustee believes it is in the best interests of the Liquidating Trust to do so. However, Bankruptcy Court approval shall not be required with respect to any sale of Trust Assets unless expressly required by the terms of the Plan.

5.6.5   The disposition of intangible Assets (i.e., equity interests in Entities or other non-real estate Assets) shall be conducted in accordance with applicable non-bankruptcy law; and any such intangible Assets may be sold free and clear of all liens, claims, encumbrances and interests without Bankruptcy Court approval.

5.6.6   Notwithstanding anything in this Plan to the contrary, the Liquidating Trustee shall have the power to dissolve, terminate, or wind down Entities vested in the Liquidating Trust and distribute assets from such Entities to the extent the Liquidating Trustee believes it will be in the best interest of the Beneficiaries to do so.

**5.7**   *Retention and Prosecution of Causes of Action.*

5.7.1   *Authority to Prosecute Causes of Action.* The Liquidating Trustee is granted authority and standing, on behalf of the Debtor and her Estate and as a representative of the Debtor and her Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code or otherwise, to initiate, continue, or prosecute any Causes of Action, including but not limited to, Avoidance Actions, in the name of and on behalf of the Debtor and her Estate. The Causes of Action may include, but are not limited to: (i) any and all Causes of Action pursuant to any applicable section of the Bankruptcy Code, including but not limited to, Avoidance Actions; (ii) any and all Causes of Action pursuant to applicable state and federal law; (iii) objections to Claims; (iv) claims that the Estate is entitled to set off or recoupment claims against parties with claims against the Estate; (v) claims against any and all of the Debtor's current or former family members, managers, members, owners, employees, agents, accountants, partners, associates, affiliates of the Debtor or any Insider

of the Debtor or any other Entities related to or controlled by the foregoing parties for conduct, actions, or failures to act prior to the Effective Date, which conduct is actionable under any theory of law or equity, including, but not limited to, breach of fiduciary duty, breach of contract, mismanagement or malfeasance of any kind, self-dealing, abuse of discretion, professional malpractice, fraud, misrepresentation, violations of state or federal securities laws or similar claims, as well as claims that may be recoverable under any applicable insurance policies maintained by the Debtor; (vi) proceedings to subordinate Claims under section 510(b) or (c) of the Bankruptcy Code or otherwise; and (vii) any other litigation or Causes of Action, whether legal, equitable, or statutory in nature, arising out of, or in connection with, the Debtor's actions, businesses, assets, or operations, or otherwise affecting the Debtor or entities owned or controlled by her. As set forth in § 2.1.19 above in this Plan, the Causes of Action provided for in this section of the Plan do not include Co-Owned Property Avoidance Actions. Debtor shall retain claims against her attorneys and advisors. Co-Owned Property Avoidance Actions are retained by the Estate but shall be prosecuted by the Committee. Proceeds of Causes of Action shall be Trust Assets and distributed in accordance with the Plan. The recoveries, if any, from any litigation brought by the Liquidating Trustee will depend on many factors, which cannot be predicted at this time. The Liquidating Trustee may in his sole discretion elect not to pursue any Causes of Action (including but not limited to Avoidance Actions) the pursuit of which the Liquidating Trustee deems not to be in the best interest of the beneficiaries of the Liquidating Trust. For the avoidance of doubt, the Liquidating Trustee shall retain all of the rights of the Debtor as a debtor-in-possession under the Bankruptcy Code as to all Causes of Action.

5.7.2    *Retention of Causes of Action.* Except as specifically provided herein or in the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of all Retained Actions, including but not limited to, any defenses of the Debtor, her Estate, the Committee or the Liquidating Trustee under the Bankruptcy Code or other applicable laws, that the Debtor, its Estate, the Committee or the Liquidating Trustee may have or which the the Committee or Liquidating Trustee may choose to assert, in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, Debtor's Estate or the Liquidating Trustee, (ii) the avoidance of any transfer by or obligation of the Debtor or its Estate under chapter 5 of the Bankruptcy Code or applicable state law or the recovery of the value of such transfer, (iii) the turnover of any property of the Debtor or Debtor's Estate, or (iv) any other Cause of Action or Co-Owned Property Avoidance Action not specifically released pursuant to the Plan.

5.7.3    *Subrogation and Subordination Rights.* The Liquidating Trustee shall acquire and may pursue any rights the Debtor and her Estate might have, obtain or be entitled to with respect to subrogation, subordination (under Bankruptcy Code § 510 or under any other applicable law), assignment, reimbursement or contribution (collectively,

the "Subrogation Claims") against any claimant, co-debtor (or the assets of any co-debtor) relating to any Claim against the Debtor.

5.7.4  ALL CAUSES OF ACTION AND DEFENSES SHALL SURVIVE CONFIRMATION AND THE COMMENCEMENT OR PROSECUTION OF CAUSES OF ACTION SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE, OR OTHERWISE. The Liquidating Trustee's rights on behalf of the Debtor and Debtor's Estate to commence and prosecute Causes of Action (including but not limited to Avoidance Actions, Subordination, and Subrogation Claims) shall not be abridged or materially altered in any manner by reason of confirmation of the Plan. No defendant or other party to any Cause of Action shall be entitled to assert any defense based, in whole or in part, upon confirmation of the Plan, and confirmation of the Plan shall not have any *res judicata* or collateral estoppel effect upon the commencement and prosecution of any Causes of Action (including but not limited to Avoidance Actions, Subordination, and Subrogation Claims). No defendant or other party to any Cause of Action shall be entitled to assert any defense based, in whole or in part, upon confirmation of the Plan, and confirmation of the Plan shall not have any *res judicata* or collateral estoppel effect upon the commencement and prosecution of any Co-Owned Property Avoidance Actions (including but not limited to Avoidance Actions, Subordination, and Subrogation Claims).

**5.8**   *Tax Returns; Tax Obligations.*

5.8.1   The Debtor shall be responsible for filing all required federal, state, and local tax returns and/or informational returns for the Debtor (including but not limited to returns for any period prior to the Effective Date).

5.8.2   The Liquidating Trustee shall be responsible for filing all required federal, state and local tax returns and/or informational returns for the Liquidating Trust and shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Liquidating Trustee shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder.

5.8.3 Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Liquidating

Trustee shall, pending the implementation of such arrangements, be treated as an unclaimed distribution to be held by the Liquidating Trustee, as the case may be, until such time as the Liquidating Trustee is satisfied with the Holder's arrangements for any withholding tax obligations. If the Liquidating Trustee makes such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Liquidation Trust and any Claim or Interest in respect of such Distribution may be disallowed and forever barred from receiving a Distribution under the Plan or Liquidating Trust Agreement at the election of the Liquidating Trustee.

5.8.4   To the extent that the Liquidating Trustee is required by applicable law to withhold or otherwise deduct any taxes, fees, levies, assessments, or other governmental charges in respect of any Distributions made pursuant to the Plan, the Liquidating Trustee shall be entitled in its sole discretion to elect to withhold or deduct the amount of such taxes, fees, levies, assessments, or other governmental charges from the gross amounts of such Distributions and remit such amounts to the applicable taxing or other governmental authorities.

**Article 6**
**Liquidation Trustee**

**6.1**   *Liquidating Trustee*. The Plan Proponent shall designate the Liquidating Trustee by subsequent pleading filed on the docket in this case, subject to approval of the Bankruptcy Court at the Confirmation Hearing or appointment of another person nominated by the Plan Proponent and designated in the Confirmation Order. The Liquidating Trustee shall be compensated as set forth herein. In the event that any person serving as Liquidating Trustee is unwilling or unable to serve or continue to serve as the Liquidating Trustee. The Liquidating Trust Committee may appoint a successor/substitute Liquidating Trustee. In addition, the Liquidating Trust Committee may remove the Liquidating Trustee at its sole election and appoint a successor/substitute Trustee. In the event a Liquidating Trustee is unwilling or unable to continue to serve, or the Liquidating Trust Committee removes the Liquidating Trustee, the Liquidating Trust Committee shall file a notice with the Bankruptcy Court identifying the proposed successor/substitute Liquidating Trustee. If, within ten (10) days from the date of filing said notice no party objects to the proposed successor/substitute Liquidating Trustee, the proposed successor/substitute Liquidating Trustee will become the Liquidating Trustee. If any party timely objects to the proposed successor/substitute Liquidating Trustee, the Bankruptcy Court will hold a hearing on the proposed substitution. The Court shall approve the Liquidation Trust Committee's appointment of a successor Liquidating Trustee absent a finding of abuse of discretion.

**6.2**   *Duties*. The Liquidating Trustee's duties include: (i) gathering, administering, selling and liquidating all Trust Assets; (ii) investigating and pursuing Causes of Action, including Avoidance Actions, and any other potential action to recover or maximize the value of Trust Assets; (iii) asserting objections to any Claims and resolving any such objections; (iv) distributing funds to pay Plan Expenses and to pay Allowed Claims; and (v) such other matters as provided

herein and in the discretion of the Liquidating Trustee, all subject to the advice and consent of the Liquidating Trust Committee.

**6.3** *Powers*. Except as otherwise provided in the Plan, and subject to the advice and consent of the Liquidating Trust Committee, the Liquidating Trustee shall have, without prior or further authorization or further order of the Bankruptcy Court, such powers and authority necessary to fulfill the purpose of the Plan including, but not limited to, the following: (A) to prosecute all actions held by the Debtor and, to compromise or settle any suits, claims, or demands, or waive or release any rights relating to the Debtor and/or Trust Assets; (B) to prosecute, settle, or otherwise resolve Disputed Claims and Causes of Action, including but not limited to Avoidance Actions, and deposit and proceeds therefrom for Distribution pursuant to the provisions of the Plan; (C) to make Permitted Investments; (D) to maintain escrows and other accounts, make Distributions to holders of Allowed Claims and take other actions consistent with the Plan and the implementation thereof; (E) to pay Plan Expenses; (F) to implement and enforce all provisions of the Plan relating to the Assets and Trust Assets; (G) to maintain appropriate books and records, including but not limited to, maintaining a record and account for all proceeds received by the Liquidating Trustee for Distribution in accordance with the Plan; (H) to abandon in any commercially reasonable manner, including abandonment, any Assets and Trust Assets that the Liquidating Trustee concludes are of no benefit; (I) to list, market and sell Assets; and (J) to otherwise engage in all acts that would constitute ordinary course of business in performing the obligations of the Liquidating Trustee.

**6.5** *Liquidating Trust Committee*. The Liquidating Trustee will be overseen by the Liquidating Trust Committee. The Liquidating Trust Committee will oversee the activities of the Liquidating Trustee and Liquidating Trust Advisors to act in the best interest of the Holders of Beneficial Interests.

**6.6** *Payment of Quarterly Fees*. The Debtor and the Liquidating Trustee shall be jointly and severally liable to pay the quarterly fees, pursuant to 28 U.S.C. § 1930(a)(6), to the U.S. Trustee until the Bankruptcy Case has been converted, dismissed or closed by the Bankruptcy Court.

**6.7** *Retention of Professionals; Payment of Fees and Expenses*. The Liquidating Trustee may employ professionals and other persons in connection with the performance of his duties under this Plan upon such terms as the Liquidating Trustee deems reasonable and necessary. The Liquidating Trustee shall be compensated at his standard hourly rate, plus reimbursement of his normal and customary out-of-pocket expenses. The reasonable fees and expenses of the Liquidating Trustee and the professionals representing the Liquidating Trustee for services provided after the Effective Date may be paid by the Liquidating Trustee as provided herein without further Bankruptcy Court approval. Provided available funds exist, payment of the Liquidating Trustee's fees and expenses and any person or professional engaged by the Liquidating Trustee shall be made within thirty (30) days after submission of a detailed invoice to the Liquidating Trustee. If there are insufficient funds available to pay all fees and expenses of professionals and compensation to the Liquidating Trustee in full, such professionals and the Liquidating Trustee shall share Pro Rata in the available funds until payment in full is made.

**6.8**    *Liability; Indemnification*. Unless the Bankruptcy Court orders otherwise, the Liquidating Trustee shall not be required to give any bond for the faithful performance of his duties hereunder. Except for his or their own fraud or willful misconduct, neither the Liquidating Trustee, nor any professional person, representative, employee, attorney, accountant, or agent retained by the Liquidating Trustee (collectively the "*Indemnified Parties*") shall have any liability to the Debtor, her Estate, any Creditor, or any Beneficiary of the Liquidating Trust, or any other Person or Entity for acts or omissions related to the Debtor, Debtor's Estate, or the Liquidating Trust; and the Debtor, her Estate, and the Liquidating Trust shall jointly and severally indemnify the Indemnified Parties against any and all losses, claim, damages, expenses, including attorney's fees, judgments, penalties, fines and amounts paid in settlement incurred or suffered by the Indemnified Parties as a result of their exercise and performance of any powers or duties under this Plan or the Liquidating Trust.

**6.9**    *No Liability for Acts of Predecessor*. No successor Liquidating Trustee shall be in any way responsible for the acts or omissions of any Liquidating Trustee in office prior to the date on which he/she becomes Liquidating Trustee unless a successor Liquidating Trustee expressly assumes such responsibility.

**6.10**    *Reliance on Agents and Professionals*. Except as otherwise provided in this Plan, the Liquidating Trustee may engage and consult with legal counsel and other agents and professionals selected and employed by him pursuant to the Plan or Liquidating Trust and shall not be liable for any action taken or suffered by the Liquidating Trustee in reliance upon the advice of such counsel, agents or advisors unless it shall be proved that such reliance constituted fraud or willful misconduct. The Liquidating Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Assets or Trust Assets.

**6.11**    *Reliance on Documents*. Except as otherwise provided herein, the Liquidating Trustee: (a) may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, and other paper or document believed by the Liquidating Trustee to be genuine and to have been signed or presented by the proper party or parties; and (b) shall have no liability or responsibility with respect to the form, execution, or validity thereof and no duty to inquire as to the identity, authority, or rights of the persons so signing or presenting.

**6.12**    *No Personal Obligation*. None of the provisions of the Plan or the Liquidating Trust shall require the Liquidating Trustee to expend or risk his own personal funds or otherwise incur personal financial liability or expense in the performance of his duties hereunder. Persons dealing with the Liquidating Trustee or seeking to assert claims against him shall look only to the Trust Assets, to the extent permitted by the Plan, the Liquidating Trust, or applicable law, to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of the Plan and Liquidating Trust, and the Liquidating Trustee shall not have any personal, individual obligation to satisfy any such liability.

**6.13**    *Removal of Liquidating Trustee.* The Liquidating Trustee may be removed upon a showing to the Bankruptcy Court of fraud or willful misconduct by the Liquidating Trustee and entry of an appropriate order. As set forth in Section 6.1 of the Plan, the Liquidating Trust Committee may remove the Liquidating Trustee for any reason or no reason; provided that the Liquidating Trustee shall continue to serve as the Liquidating Trustee after his removal until the earlier of: (a) 90 days after his removal by the Liquidating Trust Committee, or (b) the appointment of a successor Liquidating Trustee shall become effective in accordance with the Plan or as the Bankruptcy Court shall otherwise order.

**6.14**    *Resignation of Liquidating Trustee.* The Liquidating Trustee may resign by an instrument in writing signed by the Liquidating Trustee and delivered to the Liquidating Trust Committee, provided that the Liquidating Trustee shall continue to serve as the Liquidating Trustee after his resignation until the earlier: of (a) 90 days after his resignation, or (b) the appointment of a successor Liquidating Trustee by the Liquidating Trust Committee shall become effective in accordance with the Plan or as the Bankruptcy Court shall otherwise order.

## Article 7
## Treatment of Unclassified Claims

7.1    *Summary.* Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on this Plan. Holders of such Administrative Expense Claims are not entitled to vote on this Plan. All such Claims are instead treated separately in accordance with this Article VII and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

7.2    *Debtor's Counsel.* Debtor, pursuant to Court order, retained the law firm of McBryan Law, LLC and Boyer Terry, LLC (collectively Debtor's Counsel") to serve as bankruptcy counsel. As set forth in the employment application and supporting documents, McBryan Law, LLC received a prepetition retainer in the amount of $50,000.00. As of the date hereof, upon information and belief, McBryan Law, LLC retains such retainer. The Liquidating Trustee shall pay any unpaid allowed Claim for Professional Compensation held by Debtor's Counsel on (i) the Effective Date, (ii) upon such other terms as may be agreed upon by such holder and the Liquidating Trustee, or (iii) as otherwise ordered by the Bankruptcy Court. Any claim of Debtor's Counsel for Professional Compensation associated with this Bankruptcy Case shall not be discharged pursuant to this Plan.

7.3    *Special Counsel.* Debtor has retained or sought retention of (a) the law firm of Schulten Ward Turner & Weiss, LLP, as special counsel, to file reports in *Porsche Darden et al. v. Fly Low, Inc. and Teri Galardi*, United States District Court, Southern District of Florida, Case No. 20-cv-20592) (Doc. No. 116); (b) Smith & Shapiro, PLLC, as special counsel, for Adversary Proceeding No. 22-5008; and (c) Solomon Dwiggins Freer & Steadman, Ltd., as special counsel, for Adversary Proceeding No. 22-5008 (collectively, "Special Counsel") to serve as special

counsel for the Debtor.[8] The Liquidating Trustee shall pay any unpaid allowed Claim for Professional Compensation held by Special Counsel on (i) the Effective Date, (ii) upon such other terms as may be agreed upon by such holder and the Liquidating Trustee, or (iii) as otherwise ordered by the Bankruptcy Court. Any claim of approved Special Counsel for Professional Compensation associated with this Bankruptcy Case shall not be discharged pursuant to this Plan.

7.4     *Debtor's Certified Public Accountant.* Debtor, pursuant to Court order, retained the accounting firm of Whaley Hammonds Tomasello, P.C. ("Debtor's Accountants"). The Liquidating Trustee shall pay any unpaid allowed Claim for Professional Compensation held by Debtor's Accountants on (i) the Effective Date, (ii) upon such other terms as may be agreed upon by such holder and the Liquidating Trustee, or (iii) as otherwise ordered by the Bankruptcy Court. Any claim of Debtor's Accountants for Professional Compensation associated with this Bankruptcy Case shall not be discharged pursuant to this Plan.

7.5     *Committee Counsel.*  Committee, pursuant to Court order, retained the law firm of Jones & Walden LLC ("Committee's Counsel") to serve as bankruptcy counsel to the Committee. The Liquidating Trustee shall pay any unpaid allowed Claim for Professional Compensation held by Committee's Counsel on (i) the Effective Date, (ii) upon such other terms as may be agreed upon by such holder and the Liquidating Trustee, or (iii) as otherwise ordered by the Bankruptcy Court. Any claim of Committee's Counsel for Professional Compensation associated with this Bankruptcy Case shall not be discharged pursuant to this Plan.

7.6     *Committee Certified Public Accountant*. Committee, pursuant to Court order, retain the accounting firm McNair, McLemore, Middlebrooks & Co., LLC ("Committee's Accountants"). The Liquidating Trustee shall pay any unpaid allowed Claim for Professional Compensation held by Committee's Accountants on (i) the Effective Date, (ii) upon such other terms as may be agreed upon by such holder and the Liquidating Trustee, or (iii) as otherwise ordered by the Bankruptcy Court. Any claim of Committee's Accountants for Professional Compensation associated with this Bankruptcy Case shall not be discharged pursuant to this Plan.

7.7     *Allowed Administrative Expense Claims*.

7.7.1     Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim other than a claim for Professional Compensation will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on (i) the Effective Date, (ii) upon such other terms as may be agreed upon by such holder and the Liquidating Trustee, or (iii) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtor in the ordinary course of business after the Filing Date,  including any tax obligations arising after the Filing Date, will be paid or performed by Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

---

[8] The Committee has objected to the employment of Smith & Shapiro, PLLC and Solomon Dwiggins Freer & Steadman, Ltd.

7.7.2    *Application for an Allowed Administrative Expense Claim.* Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim shall file an application for Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Confirmation Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon Committee Counsel, the Liquidating Trustee and the Liquidating Trustee's counsel of record. Any Person who fails to timely file and serve an Administrative Expense Claim by such date shall be forever barred from seeking payment of such Administrative Expense Claims by Debtor, the Estate, or the Liquidating Trust.

7.7.3    *Professional Fees.* Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Confirmation Date.

**Article 8**
**Means for the Implementation of the Plan**

8.1    *Parties Responsible for Implementation of the Plan*.  Upon Confirmation, the Liquidation Trustee will be charged with administration of the Case.  Liquidating Trustee will be authorized and empowered to take such actions as are required to effectuate the Plan. Liquidating Trustee will file all post-confirmation reports required by the United States Trustee's office. Liquidating Trustee will also file the necessary final reports and may apply for a final decree after substantial consummation of the Plan.  Liquidating Trustee shall be authorized to reopen this case after the entry of a Final Decree to: (a) enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt, (b) enforce the confirmation order, the discharge injunction, or Plan injunction or (c) otherwise afford relief to the Liquidating Trust.

8.2    *Sources of Cash for Distribution*.

The source of funds for the payments pursuant to the Plan will be: (a) the liquidation of Debtor's Assets as set forth in the Plan, (b) without limitation, all Trust Assets, and (c) from any other Assets which shall become property owned by the Liquidating Trustee in such capacity.

The Liquidating Trustee shall act as the Disbursing Agent to make payments under the Plan.

8.3    *Bank Accounts*. The Liquidating Trustee may maintain bank accounts under the confirmed Plan or under the Liquidating Trust. The Liquidating Trustee shall be entitled to maintain depository accounts at such banks or financial institutions as the Trustee deems appropriate, and the balances maintained by the Liquidating Trustee in such accounts may be in excess of amounts insured by the F.D.I.C. in such accounts.

8.4    *Co-Owned Property.* The Committee shall be authorized to liquidate Debtor's estate's interest in Co-Owned Property and prosecute all Co-Owned Property Avoidance Actions. For the avoidance of doubt, the Committee's appointment shall not be terminated by the Confirmation Order, the occurrence of the Effective Date, or any other event until the earlier of (i) the termination of all litigation, wind-down work, and any other actions necessary or desirable to resolve the Co-Owned Property Avoidance Actions, or (ii) the fifth anniversary of the Effective Date, unless further extended by order of the Court.

8.4.1.   The Committee shall distribute all amounts obtained by the Committee in (i) liquidating Co-Owned Property or (ii) avoiding or otherwise resolving Co-Owned Property Avoidance Actions to the Liquidating Trust for distribution by the Liquidating Trustee in a reasonably prompt manner as the Committee obtains such funds.

8.4.2.   For the avoidance of doubt, the Committee shall retain all of the power of a trustee as set forth in the Bankruptcy Code, without limitation, § 544 as to all the Co-Owned Property and Co-Owned Property Avoidance Actions, specifically included but not limited to (i) any action which has been or may be brought to sell Co-Owned Property as property of the estate under Bankruptcy Code § 363(h) and (ii) any right or power of a trustee to avoid transfers pursuant to section 544 of the Bankruptcy Code.

8.5    *Effectuating Documents, Further Transactions*.  Liquidating Trustee is authorized to execute, deliver, file, or record such contracts, deeds, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan, the Liquidating Trust, or to otherwise comply with applicable law.

8.6    *Exemption from Certain Transfer Taxes and Recording Fees*.  Pursuant to 11 U.S.C. §1146(a), O.C.G.A. §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other applicable laws, codes or regulations, any transfers from Debtor or the Liquidation Trust to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order or subsequent Bankruptcy Court order may direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Notwithstanding the foregoing, the Liquidating Trustee may pay any such taxes or fees at its election.

8.7    *Further Authorization*.  The Liquidating Trustee shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions of this Plan or the Liquidating Trust.

**Article 9**
**Distributions**

9.1     *Disbursing Agent*.  Unless otherwise provided for herein, all Distributions under this Plan shall be made by Liquidating Trustee or his agent.

9.2 *Schedule of Distributions on Allowed Claims*. The Liquidating Trustee shall make an initial Distribution (other than to Administrative Expense Claims) on the earlier of (i) the date deemed appropriate by the Liquidating Trustee and (ii) 30 days after the first date Cash Trust Assets total not less than $2 million (such date, the "Initial Distribution Date"). The Liquidating Trustee shall thereafter make Distributions on the six month anniversary of the Initial Distribution Date and every six months thereafter (each a "Distribution Date") until the earlier of: (i) the date all Trust Assets have been converted to cash or abandoned, or (ii) five (5) years following the Effective Date (herein the "Final Distribution Date"). The Bankruptcy Court may further extend the Final Distribution Date upon application and cause shown by the Liquidating Trustee. The Liquidating Trustee shall make a distribution to Administrative Expense Claims on the Effective Date. The Liquidating Trustee will make a Final Distribution under the Plan on or before such Final Distribution Date. Notwithstanding the foregoing, Distributions other than the Final Distribution may be deferred or delayed for a reasonable time in the discretion of the Liquidating Trustee in the event that deferral or additional time is needed to make a proper Distribution or in the event that the receipt of additional funds is necessary to make meaningful payments.

9.2.1 *Sources of Cash*. Except as otherwise provided for in this Plan or the Confirmation Order, all Cash required for the Distributions or other payments to be made under the Plan or the Liquidating Trust shall be funded from Trust Assets. Any Distribution of Cash made by Liquidating Trustee pursuant to this Plan shall, at Liquidating Trustee's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

9.2.2 *Liquidating Trust Reserve Funds*. The Liquidating Trustee, in its reasonable discretion, shall retain in the Liquidating Trust a reserve fund to cover, among other things, (a) Disputed Claims Reserves, and (b) expenses of the Liquidating Trust and/or the Liquidating Trustee, including Plan expenses and professional fees, accruing on or after the Effective Date (herein the "Liquidation Trust Reserve Funds"). Any funds held as such Liquidation Trust Reserve Funds shall be distributed no later than the Final Distribution Date.

9.2.3 *Creditors Must Provide Identifying Information*. In order to receive Distributions, all Holders of Allowed Claims shall be required to provide to the Liquidating Trustee, such Holder's name, address, and federal tax identification number.

9.2.4 *Delivery of Distributions*. The Liquidating Trustee is only required to make a Distribution where the Liquidating Trustee has a current mailing address and tax identification number for the Holder of the Allowed Claim or Interest. The Liquidating Trustee shall use his reasonable efforts to ascertain this information prior to making such

Distributions but shall not be required to overcome these or any other barriers which would prevent a Distribution from being made.

9.3     *Priority of Distributions*.

9.3.1    The Secured Claims of (i) Ag South Farm Credit, (ii) Business First Bank, and (iii) Wells Fargo Bank shall be paid upon the sale of such Secured Claim's collateral, with interest as provided in this Plan, after payment of all ad valorem property taxes, reasonable broker fees, and other costs of sale. For the avoidance of doubt, the Liquidating Trustee shall pay Secured Claims upon any closing or other means of sale of the underlying collateral and shall not be required to make a Distribution on a Secured Claim on a Distribution Date. Notwithstanding anything to the contrary herein, subsequent to the entry of the Confirmation Order, a secured creditor shall release its respective lien on any property sold by the Liquidating Trustee, in exchange for the lesser of the: (a) the Release Price of the applicable property to be sold; and (b) the then outstanding amount of such creditor's secured claim as provided in this Plan.

The Release Price will be determined as follows: the Liquidating Trustee shall serve the secured creditor, at the address listed on the applicable proof of claim, notice of the proposed sale, with at least (i) the proposed gross price, (ii) anticipated estimated closing costs, and (iii) the estimated net proceeds to such secured creditor not later than fourteen (14) days prior to the proposed closing date (the "Sale Notice"). If the Secured Creditor does not object to such Sale Notice, the amount stated to be paid to the secured creditor in the Sale Notice shall be the Release Price. If the Secured Creditor objects, the fair market value of the property shall be determined by a certified appraiser.  The Release Price shall be the fair market value as determined by the certified appraiser less ordinary closing cost and the costs of the appraisal. The Bankruptcy Court shall retain jurisdiction to reopen the Bankruptcy Case, if applicable, and resolve any disputes regarding the selection of the certified appraiser and/or the Release Price.  If either party disputes the fair market value as determined by the certified appraiser, the dispute must be expressed in writing to the non-disputing party within five (5) days after such party's receipt of the appraiser's report.  If the parties are unable to resolve the dispute within three (3) business days of the disputing parties written notice to the other party, either party may request the Bankruptcy Court to reopen the Bankruptcy Case and resolve the issue.  The disputing party shall be responsible for any fee to the Clerk of Court to reopen the Bankruptcy Case.  If the disputing party does not file a motion to re-open the Bankruptcy Case and dispute the appraised valuation within 30 days of its receipt of the disputed appraisal, then such party shall be deemed to have waived any objection and be bound by the certified appraiser's valuation.[9]

9.3.2    Administrative Claims, comprised of (i) Professional Compensation Claims, and (ii) Allowed Administrative Expense Claims shall be paid at least by the Effective Date of the Plan unless the Holder agrees otherwise.

---

[9] In the event a Secured Claim is not paid in full upon liquidation of its Collateral, the Claimant shall hold an unsecured claim for any deficiency balance.

9.3.3    Priority Claims, comprised of (i) the IRS Class 1 Claim, and (ii) the GDR Class 2 Claim, shall be paid starting on the Initial Distribution Date according to the priorities provided in § 507(a) of the Bankruptcy Code and as set forth in Classes 1 and 2 of the Plan. Each class of priority shall also be paid pro-rata on each Distribution Date from any available Cash Trust Assets until (a) such class of priority has been paid in full or (b) no additional Cash Trust Assets remain on such Distribution Date (taking into account the Liquidation Trust Reserve Funds).

9.3.4 Unsecured Claims shall not receive any Distribution until all Administrative and Priority Claims are paid in full. Thereafter, Unsecured Claims shall receive pro-rata Distributions on each Distribution Date until the earlier of (a) the date that all such Allowed Unsecured Claims are paid in full, or (b) the Final Distribution Date.

9.4    *No Interest, Fees, Costs or Attorneys Fees on Claims or Interests.*  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Liquidating Trustee and a Holder, postpetition interest, fees, costs, or attorneys fees shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date through and including the Final Distribution Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Filing Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim. The provisions of this section of the Plan shall include and pertain to, without limitation, any such claim for post-petition interest, fees, costs or attorney fees pursuant to 11 U.S.C. §§ 503, 506 or 507 as if no such claim was Allowed prior to the Confirmation Date.

9.5    *Undeliverable Distributions.*    If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Liquidating Trustee is notified by such Holder in writing of such Holder's then-current address, at which time Liquidating Trustee shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within 6 months of return shall be irrevocably retained by Liquidating Trustee and (ii) such Holder shall waive its right to such Distributions. All Distributions returned to Liquidating Trustee and not claimed within six (6) months of return shall be irrevocably retained by Liquidating Trustee notwithstanding any federal or state escheat laws to the contrary.

If any Distribution on an Unsecured Claim ("Unsecured Distribution") is tendered by Liquidating Trustee to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned ("Unsecured Distribution Refusal"), Liquidating Trustee shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim. Accordingly, in the event of an Unsecured Distribution Refusal, Liquidating Trustee shall be relieved of any obligation to make said payment or Distribution to such creditor and Liquidating Trustee is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("Secured or Priority Distribution") is tendered by Liquidating Trustee to a Holder of a Secured Claim or Priority Claim

and returned, refused or otherwise improperly returned ("Secured or Priority Distribution Refusal"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied.  In the event of a Secured or Priority Distribution Refusal, any obligation of Liquidating Trustee to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to Liquidating Trustee that the Holder of such Secured Claim or Priority Claim seeks to receive payments from Liquidating Trustee on the Secured Claim or Priority Claim or otherwise seeks to enforce Liquidating Trustee's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "Tolling Period").  Only in the event of such notice to Liquidating Trustee shall Liquidating Trustee's obligations to perform as to the applicable Secured Claim or Priority Claim resume.  The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the court.  Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Liquidating Trustee or the Liquidating Trust's property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved. For purposes of clarification, Liquidating Trustee shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and Liquidating Trustee shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

    9.6    *Distributions to Holders as of the Record Date*.  All Distributions on Allowed Claims shall be made to the Record Holders of such Claims.  As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim.  Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  Liquidating Trustee shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

    9.7    *Fractional Dollars; De Minimus Distributions*.  Any other provision of this Plan notwithstanding, the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, at Liquidating Trustee's option the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down. The Liquidating Trustee shall have no obligation to make a Distribution on account of an Allowed Claim or Interest if the amount to be distributed to the Holder of an Allowed Claim or Interest on the Distribution Date has a value of less than $15.00.

    9.8    *Withholding Taxes*.  Liquidating Trustee shall make reasonable efforts to comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign

taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## Article 10
## Procedures for Treating and Resolving Disputed Claims

10.1   *Objections to Claims*.  The Liquidating Trustee and the Committee shall be entitled to object to Claims, provided, however, that the Liquidating Trustee and the Committee shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan.

10.2   *No Distributions Pending Allowance*.  Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

10.3   *Resolution of Claims Objections*.  On and after the Effective Date, the Liquidating Trustee shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## Article 11
## Provision for Assumption of Unexpired
## Leases and Executory Contracts

11.1   *Provisions Regarding Executory Contracts*.

As of the Effective Date of the Plan, Debtor will reject that certain executory contract with Disney Vacation Club for the timeshare at Copper Creek Villas & Cabins at Disney's Wilderness Lodge Lessee Timeshare. Debtor will be deemed to have assumed and assigned to the Liquidating Trustee all executory contracts regarding, and to the extent related to, contracts for the sale of real or personal property or contracts for the listing of the same as provided in Section 5.5.7, liability and property insurance, including without limitation, claims incurred coverage or similar coverage, real and personal property insurance, vehicle insurance, and business liability insurance.  Any unexpired leases or executory contracts which are not assumed under the Plan or are the subject of a pending motion to assume as of the Effective Date shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.  Under the terms of the Plan, a proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after the Confirmation Date.  Any claims which are not timely filed will be disallowed and discharged.

**Article 12**
**Effect of Plan on Claims and Interests**

12.1    Intentionally Omitted.

12.2.    *Discharge of Debtor.*  Notwithstanding any other provision of this Plan, the Plan Proponent will request that the Court find that Debtor is denied a discharge under section 1141(d)(3) of the Bankruptcy Code. Such section provides that "The confirmation of a plan does not discharge a debtor if—(A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title."

This Plan is a liquidating plan, and the Plan Proponent will request that the Court find that section 1141(d)(3)(A) is met in that all or substantially all of the property of the estate will be liquidated.

The Plan Proponent will request that the Court find that section 1141(d)(3)(B) is satisfied. Debtor will not engage in business after consummation of the plan in that her business will be liquidated and she will not continue operating these businesses. "[Section] 1141(d)(3)(B) does not refer to basic employment by an individual debtor but to the *continuation* of *a pre-petition* business. *Grausz v. Sampson (In re Grausz)*, 63 F. App'x 647, 650 (4th Cir. 2003) (emphasis original).

Finally, the Plan Proponent will seek a determination by the Court that Debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title. Rule 4004 provides that "[i]n a chapter 11 case, the complaint shall be filed no later than the first day set for the hearing on confirmation." Federal Rule of Bankruptcy Procedure 4004(a). Additionally, the Plan Proponent and all unsecured creditors have obtained an extension of time to object to Debtor's discharge through and including November 28, 2022. The Plan Proponent anticipates that creditor(s) will bring a complaint seeking a determination that Debtor should be denied a discharge prior to the initial hearing on confirmation.

Only if the Court finds that the requirements of section 1141(d)(3) are <u>not</u> met, then pursuant to section 1141(d)(5) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, then Debtor shall be entitled to a discharge order. Debtor shall be entitled to a discharge under section 1141(d)(5) only after all payments under this Plan have been paid. If this paragraph is applicable and all payments under this plan have been made, Debtor shall be entitled to move to reopen this case to obtain a discharge.

The Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims and Causes of Action against Debtor's Assets and Estate property, whether known or unknown, including any and all liabilities of Debtor, Liens on Debtor's Assets, obligations of Debtor, rights against Debtor, and Interests of Debtor and her Estate or property of

the Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

12.3    *Setoffs*. Liquidating Trustee may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Debtor or Debtor's estate may have against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Liquidating Trustee of any such claim that Debtor may have against such Holder.

12.4    *Intentionally Omitted.*

**12.5    *Injunction*.    The Confirmation Order shall act as a permanent injunction against any Person: (a) commencing or continuing any action, (b) employing any process, or (c) any acting to collect, offset, or recover any Claim except as provided for in this Plan against: (1) against any property of Debtor, (2) against Debtor's Assets, (3) the Liquidating Trustee, (4) the Liquidating Trust, or (5) against Trust Assets. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction.**

12.6    *Effect of Confirmation*.

12.6.1    *Binding Effect*.    On the Confirmation Date, the provisions of this Plan shall be binding on Debtor, the Estate, all Holders of Claims against or Interests in Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan. Creditors shall have no right to enforce a Claim against Debtor, Debtor's Assets, the Liquidating Trustee, or Trust Assets, even following a default under the Plan, except to the extent and amount that any Claim of such creditor is provided for and then due under the Plan.

12.6.2    *Effect of Confirmation on Automatic Stay*.    Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate.

12.6.3    *Filing of Reports*.    Debtor shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court through and including the Effective Date. After the Effective Date, the Liquidating Trustee shall file all such reports.

12.6.4    *Post-Effective Date Retention of Professionals*.    Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Liquidating Trustee and the Committee (to the extent applicable) may employ and pay professionals in their ordinary course of business.

## Article 13
## Conditions Precedent

13.1    *Conditions to the Effective Date*.  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 13.3 of this Plan.

13.1.1  The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not have been stayed;

13.1.2  All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to the Plan Proponent in its reasonable discretion;

13.1.3  The Plan Proponent shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

13.2    *Waiver of Conditions to Confirmation or Consummation*.  The conditions set forth in Article 13.1 of this Plan may be waived, in whole or in part, by the Plan Proponent without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Plan Proponent in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor).  The failure of Plan Proponent to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## Article 14
## Retention and Scope of Jurisdiction of the Bankruptcy Court

14.1    *Retention of Jurisdiction*.  Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

14.1.1  To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof;

14.1.2  To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim (to any extent the Court's determination is requested at the election of the Liquidating Trustee);

14.1.3  To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

14.1.4  To hear and rule upon all Retained Actions, Avoidance Actions, motions to sell Co-Owned Property, Co-Owned Property Avoidance Actions, and other Causes of Action, whether commenced prior to or after the Effective Date;

14.1.5  To hear and rule upon all applications for Professional Compensation;

14.1.6  To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

14.1.7  To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan;

14.1.8  To adjudicate controversies arising out of the administration of the Estate or the implementation of the Liquidating Trust as provided by this Plan;

14.1.9  To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and Liquidating Trust and the payment of claims by the Liquidating Trustee;

14.1.10  To determine any suit or proceeding brought to recover property of the Liquidating Trust, Debtor's Assets, Co-Owned Property Avoidance Actions, and Avoidance Actions under any provisions of the Bankruptcy Code;

14.1.11  To hear and determine any tax disputes concerning Debtor's Estate or the Liquidating Trust and to determine and declare any tax effects under this Plan;

14.1.12  To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

14.1.13  To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan including but not limited to enforcement under the exculpation provision set forth in Section 12.4 of the Plan;

14.1.14  To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement regarding the sale of Assets or Trust Assets; and

14.1.15  To enter a final decree.

14.1.16  To enter an order of discharge; and

14.1.17  To enforce and interpret any order or injunctions entered pursuant to the Plan or otherwise in this Bankruptcy Case.

14.2   *Alternative Jurisdiction*.  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter.  If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.  Notwithstanding anything to the contrary herein, the Liquidating Trustee or Committee (as appropriate) shall be authorized to bring any action related to a lease, contract or account (including any account receivable due to Debtor) to which Debtor is a party in any state or local court having jurisdiction over such action.

14.3 *Final Decree*.  If the Plan is confirmed, the Bankruptcy Court may, upon application of Liquidating Trustee, at any time after "substantial consummation" of the Plan as defined in section 1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing this case pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) the Liquidating Trustee and Committee (as appropriate) shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required except as otherwise ordered by the Bankruptcy Court; (c) the Bankruptcy Court may retain jurisdiction over any pending Adversary Proceeding; and (d) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate under applicable law, including without limitation any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications the Liquidating Trustee or Committee (as appropriate) has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action or otherwise administering the Plan; (3) enforcing or interpreting this Plan or supervising its implementation; (4) to adjudicate any adversary proceeding or claim dispute (whether as a contested matter or adversary proceeding); (5) granting Debtor a discharge, and (6) for other cause. Any fee associated with a motion to reopen this Bankruptcy Case (if necessary) may be waived upon order of this Court.

## Article 15
## Miscellaneous Provisions

15.1   *Modification of the Plan*.  Plan Proponent shall be allowed to modify this Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits.  Subject to the limitations contained in this Plan, pursuant to Article 15.1 of this Plan, Plan Proponent may modify this Plan, before or after Confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  In the event of any modification on or before confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject this Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes.  Plan Proponent reserves the right in accordance with section 1127 of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date.

15.2    *Force Majeure.* Without limitation of any other provisions of the Plan, the laws of force majeure shall apply to the Plan and Liquidating Trustee's compliance with the Plan. Any Person with any obligation under this Plan will not be required to perform any obligation under this Plan or be liable for damages to any other Person to whom performance is otherwise owed under this Plan so long as the performance or non-performance of the obligation is delayed, caused, or prevented by an act of God or force majeure. An "act of God" or "force majeure" is defined as hurricanes, earthquakes, floods, fire (or any substantial natural event), pandemics, laws, orders of government, and any other cause not reasonably within the control of such Person with obligations under the Plan and which by the exercise of due diligence the non-performing Party is unable in whole or in part to prevent or overcome. All time periods for such performance will be extended for the period that the act of God or force majeure is in place. The Plan Proponent further expressly reserves the right to modify this Plan pursuant to Article 14 of the Plan upon the occurrence of an act of God or force majeure. The Liquidating Trustee and Committee as Plan Proponent shall retain the right to reopen this Bankruptcy Case and seek other relief pursuant to 11 U.S.C. § 305(a) for any reason, so long as the Bankruptcy Court finds that such relief is in the interests of creditors or the Liquidating Trustee, or the Liquidating Trust Committee.

15.3    *Allocation of Plan Distributions Between Principal and Interest*.  To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

15.4    *Applicable Law*.  Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

15.5    *Headings*.  The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

15.6    *Revocation of Plan*.   Plan Proponent reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

15.7    *No Admissions; Objection to Claims*.   Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity or person as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of the Committee to object to or examine any Claim for purposes of voting shall not be deemed a waiver of the Committee's or Liquidating Trustee's rights to object to or reexamine such Claim in whole or in part.

15.8    *No Bar to Suits*.  Except as otherwise provided in Article 5 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop the Committee or the Liquidating Trustee

from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any document filed by Debtor in connection with this Bankruptcy Case or whether or not any payment was made or is made on account of any Claim. Without limitation, Plan Proponent and Liquidating Trustee retain and reserve the right to prosecute Retained Actions and Co-Debtor Property Avoidance Actions.

      15.9    *Exhibits/Schedules*.  All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

      15.10    *Conflicts*.  In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

### Article 16
### Tax Consequences

**TAX CONSEQUENCES RESULTING FROM CONFIRMATION OF THE PLAN CAN VARY GREATLY AMONG THE VARIOUS CLASSES OF CREDITORS AND HOLDERS OF INTERESTS, OR WITHIN EACH CLASS.  SIGNIFICANT TAX CONSEQUENCES MAY OCCUR AS A RESULT OF CONFIRMATION OF THE PLAN UNDER THE INTERNAL REVENUE CODE AND PURSUANT TO STATE, LOCAL, AND FOREIGN TAX STATUTES.  BECAUSE OF THE VARIOUS TAX ISSUES INVOLVED, THE DIFFERENCES IN THE NATURE OF THE CLAIMS OF VARIOUS CREDITORS, THE TAXPAYER STATUS AND METHODS OF ACCOUNTING AND PRIOR ACTIONS TAKEN BY CREDITORS WITH RESPECT TO THEIR CLAIMS, AS WELL AS THE POSSIBILITY THAT EVENTS SUBSEQUENT TO THE DATE HEREOF COULD CHANGE THE TAX CONSEQUENCES, THIS DISCUSSION IS INTENDED TO BE GENERAL IN NATURE ONLY.  NO SPECIFIC TAX CONSEQUENCES TO ANY CREDITOR OR HOLDER OF AN INTEREST ARE REPRESENTED, IMPLIED, OR WARRANTED.  EACH HOLDER OF A CLAIM OR INTEREST SHOULD SEEK PROFESSIONAL TAX ADVICE.**

**THE PROPONENT ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN HOLDER OF A CLAIM OR INTEREST.  HOLDERS OF CLAIMS OR INTEREST ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS COVERING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION.**

[signatures below]

Respectfully submitted this 28th day of September, 2022.

**The Official Committee of Unsecured Creditors**

*/s/Shadena Deleston (by Mutepe Akemon as proxy holder)*
Shadana Deleston
By: Mutepe Akemon, as Proxy Holder for Shadana Deleston
Member, Committee of Unsecured Creditors of Teri G.
Galardi

*/s/Abrey Leahong (by Mutepe Akemon as proxy holder)*
Abrey Leahong
By: Mutepe Akemon, as Proxy Holder for Abrey Leahong
Member, Committee of Unsecured Creditors of Teri G.
Galardi

*/s/Addie Brooks (by Ainsworth Dudley as proxy holder)*
Addie Brooks
By: Ainsworth Dudley, as Proxy Holder for Addie Brooks
Member, Committee of Unsecured Creditors of Teri G.
Galardi

**JONES & WALDEN LLC**

*/s/ Thomas T. McClendon*
Leon S. Jones
Georgia Bar No. 003980
Thomas T. McClendon
Georgia Bar No. 431452
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300
Attorneys for Committee of Unsecured Creditors

## EXHIBIT A

## "Co-Owned Property"

| Real Estate | | | |
|---|---|---|---|
| **Property Description** | **Parcel Id** | **Title** | **Debtor's Interest** |
| 263 N. Mulberry, Jackson, GA 30233 | J0120-024-000 | Teri Galardi & Michael Porter | 50% |
| 414 Hwy 87 South, Flovilla, GA 30216 | F0030-045-000 | Teri Galardi & Michael Porter | 50% |
| 567 Fawn Road, Flovilla, GA 30216 | 00520-026-L00 | Teri Galardi & Michael Porter | 50% |
| Fawn Road, Flovilla, GA 30216 | 00520-017-A00 | Teri Galardi & Michael Porter | 50% |
| Fawn Road, Flovilla, GA 30216 | 00520-026-E00 | Teri Galardi & Michael Porter | 50% |
| Fawn Road, Flovilla, GA 30216 | 00520-026-F00 | Teri Galardi & Michael Porter | 50% |
| Fawn Road, Flovilla, GA 30216 | 00520-017-A01 | Teri Galardi & Michael Porter | 50% |
| 2470 HWY 42 South, Flovilla, Ga 30216 | 00520-026-D00 | Teri Galardi & Michael Porter | 50% |
| 2147 HWY 42 South, Flovilla, GA 30216 | 00660-036-P00 | Teri Galardi & Michael Porter | 50% |
| Mt. Vernon Church Road, Flovilla, GA 30216 | 00660-001-000 | Teri Galardi & Michael Porter | 50% |
| 2460 HWY 42 South, Flovilla GA 30216 | 00520-026-B00 | Teri Galardi & Michael Porter | 50% |
| Land Locked Parcel, Flovilla, GA 30216 | 00520-045-000 | Teri Galardi & Michael Porter | 50% |

| Personal Property | | | |
|---|---|---|---|
| Property | Entity Type | Owners | Debtor's Interest |
| Jack E. Galardi, LLC | LLC | Debtor & Darrell Galardi | 70% |
| 2555 Chantilly, LLC | LLC | Debtor, Kelly Galardi, Michael Porter, Gigi Galardi & Joseph Galardi | 30% |

| Avoidance Actions | | | |
|---|---|---|---|
| **Property** | **Current Owners** | **Prior Owners** | **Debtor's Interest** |
| 15820 SW 53 Ctm, Southwest Ranches, FL 33331 | Jackson Galardi Trust & Grace Galardi Trust | Debtor & Michael Porter | 50% |
| 4 2nd St, Jackson, GA, 30233 | Michael Porter | Debtor & Michael Porter | 50% |