**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 11** |
| | ) | |
| **TERI G. GALARDI,** | ) | |
| | ) | **CASE NO. 22-50035-JPS** |
| **Debtor,** | ) | |
| | ) | |

**MOTION FOR AUTHORIZATION TO SELL MEMBERSHIP INTEREST OF JGP&P, LLC AND STOCK INTEREST IN RED EYED, INC.**

COMES NOW Teri G. Galardi ("Debtor") and files this *Motion for Authorization to Sell Membership Interest of JGP&P, LLC and Stock Interest in Red Eyed, Inc.* (the "Motion"). In support of the Motion, Debtor shows the Court as follows:

1.

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The Statutory predicate for the relief requested herein is 11 U.S.C. §§ 105 and 363 and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

2.

On January 12, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11, Subchapter V of the United States Bankruptcy Code. On March 31, 2022, a Consent Order was entered by the Court allowing the Debtor to Proceed under other applicable provisions of Chapter 11, other than Subchapter V. The Debtor is continuing to manage her affairs as a Debtor-in-Possession under §§ 1107(a) and 1108 of the Bankruptcy Code.

3.

Debtor is the sole member and owner of JGP&P, LLC (the "LLC") and is the owner of 100% of the stock of Red Eyed, Inc., a Georgia Corporation ("Red Eyed Stock"). The LLC owns real property located at 4730 Frontage Road, Forest Park, Georgia (the "Real Property"). [1]

4.

NTKN Holdings, LLC (the "Buyer") previously made an offer to purchase the Real Property, LLC and Red Eyed Stock, and Debtor filed a Motion to Sell based upon those offers and this Court granted such motion. **[Docket Nos. 158, 173]**. However, both Buyer and Debtor have determined that Buyer would be better served if it owned the entity that owns the Real Property due to the LLC's participation in litigation that resulted in a settlement with the City of Forest Park, Georgia, the municipality in which the Real Property is located. Therefore, the Buyer has provided an amended contract and the Debtor has determined it is in the Estate's best interest. A copy of the Contract for the Purchase and Sale of Membership Interest of Limited Liability Company and Stock (the "Agreement") attached hereto as **Exhibit A.**

5.

As set forth in the Agreement, Buyer's offer encompasses paying $2,800,000.00 for the Debtor's interest in the LLC and $500,000.00 for the Red Eyed Stock for the total purchase price of $3,300,000.00 (the "Purchase Price") to be paid as follows: (1) $50,000.00 earnest money to be paid three (3) business days after the Agreement date and deposited into escrow; (2) an additional $10,000.00 earnest money to be paid ten (10) days after the Agreement date and deposited into escrow; and (3) the remaining balance of $3,240,000.00 shall be paid in full by Buyer at closing.

---

[1]The LLC's only asset on the date of sale of the Debtor's interest shall only be the Real Property as defined herein.

6.

Buyer is the current tenant of the Real Property and Debtor believes that the Agreement represents the highest and best offer available and that the Purchase Price represents the true value of the LLC and Red Eyed Stock.

7.

Upon approval of the sale motion, and payment of the full Purchase Price, Debtor shall transfer her membership interest in the LLC and her stock interest in Red Eyed to Purchaser upon payment of the purchase price, so that the Purchaser shall be a good faith buyer with all protections available to it under 11 U.S.C § 363.

8.

The law firm of Medley & Associates will be acting as the Escrow Agent in this transaction. The Escrow Agent is only authorized to receive and accept earnest money in accordance with the terms and conditions of the Agreement.

9.

The Agreement is contingent on and subject to approval by the Bankruptcy Court. The sale is not authorized unless and until a final order is entered in this bankruptcy case.

10.

Debtor anticipates all holders of security interest, liens, claims, encumbrances, and interest in the property will consent to the sale contemplated herein.

11.

TROP, INC., ASSERTED LIEN. Cohen and Caproni, LLC as Disbursing Agent under the Confirmed Plan of Reorganization of Trop, Inc., asserts a first priority lien against the Real Property as more particularly described in the Deed to Secured Debt executed by JGP&P, LLC as Grantor dated June 23, 2020 and recorded in the real property records of Clayton County, Georgia

in Deed Book 12009 Page 404 (as modified or amended the "Security Deed"), and assigned to Cohen and Caproni, LLC as successor Disbursing Agent under the Confirmed Plan of Reorganization ( the "Disbursing Agent") recorded January 13, 2022 and recorded in the real property records of Clayton County, Georgia in Deed Book 12797 Page 382.

12.

This Deed to Secure debt secures a Note from Trop, Inc to the Disbursing Agent for the purposes of paying claims pursuant to the Trop Plan of Reorganization. Cohen and Caproni, LLC as Disbursing Agent has filed a claim in this Bankruptcy Case as Debtor has also guaranteed that Note. Additionally, Ainsworth Dudley on behalf of himself and others has filed claims in Debtor's case for the same claims as are being paid by the Disbursing Agent. Payment upon closing of this Real Property will result in payment in full of the claims of the Disbursing Agent and those certain creditors of Trop, Inc. whose claims are guaranteed by the Debtor.

13.

Debtor is not aware of any other or additional secured claims, although real property taxes may be due and owing at closing and shall be prorated.

14.

The Membership interest in the LLC and Debtor's Red Eyed, Inc. stock will be sold to Purchaser "As Is-Where Is" with no warranties or representations, other than Debtor is the current owner of that membership interest and owner of the stock. To the extent licenses may be transferred they will be, but Debtor specifically disclaims alcohol or adult entertainment licenses are transferrable.

## RELIEF REQUESTED

15.

Debtor requests authority to sell the property as described herein free and clear of liens, claims, encumbrances, and interests for the Purchase Price. Additionally, Debtor requests permission to (i) disburse the Purchase Price as provided herein with liens attaching to the Sales Proceeds to the same validity and priority as existed on the filing date; and (ii) take such action as necessary to effectuate the terms of the Agreement. Debtor requests that: (a) the Court waive any stay pursuant to Bankruptcy Rule 6004 or otherwise; and (b) any order approving the sale of the Real Property be effective immediately upon entry.

## PROPOSED DISTIBUTION OF SALE PROCEEDS

16.

Debtor requests that it be authorized to use and distribute the Sales Proceeds as follows:

(a) Payment of all customary closing costs, if any; and

(b) The amount of the Secured Claim shall be paid in full at closing without any escrow hold; and

(c) All net proceeds to be used to fund the Debtor's Chapter 11 Bankruptcy Case and Plan and shall be remitted to Bankruptcy Counsel to be held in an IOLTA trust account.

## TRANSACTION IS IN THE BEST INTEREST OF THE ESTATE

17.

Buyer has made an offer to purchase the membership interest in the LLC and Red Eyed Stock. Debtor believes the proposal represents the highest and best offer.

## BASIS FOR RELIEF

18.

A debtor in possession may sell property under Section 363(f) of the Bankruptcy Code "free and clear of any interest in such property of any entity other than the estate" if any one of the following conditions is satisfied: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. §363(f). Debtor anticipates that one or more of these requirements will be satisfied.

19.

Buyer does not have a familial relationship to Debtor. Buyer is not an "affiliate" or "insider" of Debtor. Upon information and belief, Debtor shows that the proposed Buyer is a "good faith" purchaser. Debtor requests that the Court find such Buyer to be a good faith purchaser pursuant to the provisions of Section 363(m) of the Bankruptcy Code.

20.

Buyer has indicated its interest in proceeding under the Agreement as soon as possible.

21.

Debtor requests that the Court waive any stay of the effectiveness of any order granting the Motion and approving the sale under Bankruptcy Rule 6004.

WHEREFORE, for all of the foregoing reasons, Debtor moves the Court to enter an Order:

(a) Granting the Motion and approving the sale free and clear of all liens;

(b) Authorizing the distribution of the Sale Proceeds as provided herein with liens attaching to the Sale Proceeds to the same validity and priority as existed on the Petition Date;

(c) Waiving the stay of such Order pursuant to Bankruptcy Rule 6004 or any rule of similar import and making the Order effective upon its entry; and

(d) Granting the Debtor such other and further relief as may be just and proper.

Respectfully submitted,

**McBRYAN, LLC**

/s/Louis G. McBryan
Louis G. McBryan, Georgia Bar No. 480993
6849 Peachtree Dunwoody Rd
Building B-3, Suite 100
Atlanta, GA 30328
Telephone (678) 733-9322
Fax (678)498-2709
lmcbryan@mcbryanlaw.com
**Attorneys for Debtor**

EXHIBIT A

**CONTRACT FOR THE PURCHASE**
**AND SALE OF MEMBERSHIP INTEREST OF LIMITED LIABILIYT COMPANY and STOCK**

**THIS CONTRACT FOR THE PURCHASE AND SALE OF REAL PROPERTY** ("Contract") is made and entered into as of this 11 day of October, 2022, by and between TERI GALE GALARDI ("GALARDI") and NTKN HOLDINGS, LLC, a Delaware limited liability company ("Purchaser").

**WITNESSETH, THAT:**

**WHEREAS,** Galardi is the sole member and owner of JGP&P, LLC (the "LLC") and the LLC is the record owner of a certain tract or parcel of improved real property (the "Land" or "Real Property") lying and being in Clayton County, Georgia, which is more particularly described in Exhibit "A" attached hereto and made a part hereof, and having street addresses of 4730 Frontage Road, Forest Park, GA 30297; and

**WHEREAS,** Galardi is the owner of 100% of the stock of Red Eyed, Inc. a Georgia corporation, which previously operated an adult entertainment business in and on the Land but which maintains a valid alcoholic beverage on site consumption license an adult entertainment license;

**WHEREAS,** Purchaser desires to purchase all of Galardi's right, title, interest, and estate in and to the LLC as the owner of the Land and the Property, as hereinafter defined, and Purchaser desires to purchase Galardi's 100% stock ownership of Red Eye, Inc., and Galardi is willing to sell the same to Purchaser, all subject to and upon the terms and conditions set forth in this Contract.

**NOW, THEREFORE, FOR** and in consideration of the sum of $10.00 cash in hand paid by Purchaser to Seller, the premises, the mutual covenants set forth in this Contract, and other good and valuable consideration, the receipt, adequacy, and sufficiency of which are hereby acknowledged by Seller and Purchaser, Seller and Purchaser hereby covenant and agree as follows:

1. **Bankruptcy Court Approval**. This Agreement is subject to a motion to sell, with a notice and opportunity for a hearing to all creditor and parties in interest, filed in the United States Bankruptcy Court, Middle District of Georgia, Macon Division, case no. 22-50003-jms (the "Bankruptcy Case"), in which Galardi is the Debtor and Debtor in Possession, filed under 11 U.S.C. §363(f). No sale is authorized unless and until a final order is entered in the Bankruptcy Case.

2. **Purchase and Sale of Membership Interest in LLC and Stock of Red Eyed.** Upon the approval of the motion to sell and entry of an Order approving such sale, Galardi will sell in exchange for



the consideration stated herein and Purchaser shall purchase from Galardi, all subject to the terms and conditions of this agreement, the following:

(a) Membership Interest of JGP&P, LLC 100% of Galardi's membership interest in the LLC, being 100% of all membership interest of the LLC. The LLC is the owner of the Land, together with all buildings, improvements, fixtures, and related facilities, such as parking lots and utility fixtures constructed and located upon the Land (collectively, the "Improvements"; the Land and the Building located on the Land being sometimes collectively referred to as the "Real Property"). It is expressly understood and acknowledged that on the date of transfer the LLC shall own only the Land as described herein, the improvements thereon and no other personal property or real property. The LLC is transferred with all assets and liabilities arising after March 1, 2021, except the real property located at and commonly known as 4766 Frontage Rd, Forest Park GA and all of its improvements is specifically exclude and shall be transferred by the LLC to Galardi prior to any sale of Galardi's membership interest in the LLC.

(b) Stock of Red Eyed, Inc. All of Galardi's right, title, and interest in and to the corporate stock of Red Eyed, Inc.. Red Eye is the owner of the furniture, fixtures, equipment, and other articles of personal property attached to or located on and used solely in connection with the operation of the business on the Real Property (collectively, the "Personal Property"), such would also include Galardi's and Red Eyed, Inc.'s right, title, and interest, if any, in any and all licenses, permits, franchises, developmental rights, or other similar rights used in, or pertaining solely to the ownership or operation of the business on the Land (collectively, the "Licenses"). At the time of the stock transfer of Red Eyed to Purchaser, all assets and liabilities are transferred with Red Eyed, except the assets shall not include any money or cash, and all bank accounts shall be terminated. Further, Purchaser shall immediately upon transfer take steps to obtain new sales tax, use tax or other state tax identification as those were previously affiliated with Galardi personally. The LLC membership interest and the Stock of Red Eyed, Inc. are sometimes referred to collectively in this Contract as the "Property."

3. **Earnest Money**. No later than 5:00 p.m. on the date being three (3) business days after the Binding Agreement Date, Purchaser shall deposit the sum of Fifty Thousand and no/100 Dollars ($50,000.00) (the "Earnest Money"), in cash or by U.S. Federal Reserve System wire transfer of good funds, with Medley & Associates, ("Escrow Agent"), pursuant to the provisions of Paragraph 27 below, and Escrow Agent, by countersigning this Contract below, acknowledges receipt of the Earnest Money and Escrow Agent agrees to hold and disburse the Earnest Money in





accordance with the terms and conditions of this Contract. The Earnest Money shall be applied to the "Purchase Price" (as defined herein) at the "Closing" (as herein defined) or as otherwise set forth in this Contract. If Purchaser does not deposit the Earnest Money before 5:00 p.m. on the date being three (3) business days after the Binding Agreement Date, this Contract shall become automatically null and void and of no force or effect. In the event Purchaser does not terminate this Contract on or before the expiration of the "Inspection Period," as defined below, pursuant to the provisions of Paragraph 7 below, Purchaser shall deposit an additional sum of Ten Thousand and no/100 Dollars ($10,000.00) no later than ten ( 10) days after the Binding Agreement Date, which sum, upon the deposit thereof, shall also be deemed to be "Earnest Money" under this Contract and treated as such for all purposes.

4. **Purchase Price of LLC Membership Interest and Stock of Red Eyed, Inc.** The purchase price (the "Purchase Price") to be paid by Purchaser to Galardi at the Closing for the conveyance of her membership interest in the LLC and her stock of Red Eyed as set forth herein shall be Three Million Three Hundred Thousand and no/100 Dollars ($3,300,000.00), (allocated as follows: for Galardi's membership interest in the LLC Two Million Eight Hundred Thousand and no/100 Dollars ($2,800,000.00) and to Galardi for the Stock of Red Eyed, Inc., Five Hundred Thousand and no/100 Dollars ($500,000.00) ) which shall be paid in full by Purchaser to Galardi at the Closing, in cash or by U.S. Federal Reserve System wire transfer of good funds to an account designated by Seller, without deduction or setoff. The Earnest Money, upon transfer thereof to Galardi, equally, from Escrow Agent at the "Closing" (as hereinafter defined), shall be applied to and credited in reduction of the Purchase Price.

5. **Operation of Property**. Galardi and Purchaser acknowledge Purchaser through an affiliate currently leases the Real Property owned by the LLC, inclusive of the use of the personal property owned by Red Eyed, Inc., and operates an adult entertainment business (the "Business"). Such lease terminates on December 31, 2022. While Purchaser operates the Business, Purchaser is solely responsible for all expenses of such business, including without limitation and only by way of example utilities, employees, payroll, inventory, security and other claims and liabilities that would or could be asserted against the LLC or Galardi or Red Eyed. In the event Purchaser approves the condition and status of the Property at the expiration of the "Inspection Period" (as defined in Paragraph 7 below), and timely deposits the additional sum of Ten Thousand Dollars ($10,000.00) as "Earnest Money" at the expiration of the Inspection Period as set forth in Paragraph 2 above, RE Seller shall not thereafter enter into any new leases of space at the Property without the prior consent of Purchaser in each case. Purchaser acknowledges that this





Agreement, prior to or subsequent to entry of an Order granting such motion to sell, maybe voided at Seller's discretion if Purchaser is in default of any other agreement relating to its current use of the Land and Property. [1]

6. **Due Diligence; Inspection.**

(a) Upon the proper execution of this Agreement and the deposit of the Earnest Money as set forth above, Seller shall, provide copies of the materials in Seller's possession directly pertaining to the operation of the LLC and Red Eyed, and permit Purchaser to conduct due diligence for Purchaser's purchase of the LLC and Property. Purchaser acknowledges and agrees, that based upon Purchaser's due diligence review of the Property, Purchaser shall ascertain and determine whether the Property is suitable for Purchaser's investment goals, and in satisfactory condition for Purchaser's intended use of the Property, as set forth below in Paragraph 7.

(b) Seller hereby grants Purchaser and its agents the right and privilege to enter upon and inspect the Property during the "Inspection Period," as defined below ( or for as long as this Contract is in full force and effect if terminated sooner), such right to include, without limitation, the right to review the leases, contracts, and records of Seller directly pertaining to the ownership and operation of the Property, and the right to review soil tests, surveys, and other examinations that Purchaser desires to make in planning for its ownership of the Property, all at Purchaser's sole cost and expense. All such work and all such tests performed by or at the request of Purchaser shall be non-destructive and Purchaser shall, immediately upon any request by Seller, restore the Property to the condition thereof existing immediately prior to any such work or tests.

(c) Purchaser hereby agrees that Purchaser shall be completely responsible for all acts and omissions of itself, its agents, contractors, employees, and representatives in exercising such right and privilege granted in this Paragraph, and Purchaser hereby indemnifies Seller and agrees to hold Seller free and harmless from and against any and all losses, costs, damages, and expenses (including, without limitation, attorneys' fees and costs of litigation and the cost and expense of removing or bonding any liens affecting the Property) ever suffered or incurred by Seller by reason of the exercise of the rights and privileges granted to Purchaser in this Paragraph, or the breach of Purchaser's covenant to restore contained herein. The indemnity contained in the immediately preceding sentence shall expressly survive the Closing or any termination of this Contract.

---

[1] Purchaser also has separate agreement with Fly Low, Inc, for use of the tradename and trademark "King of Diamonds" , hereinafter the "Marks". The Marks are not included in any sale contemplated herein.



SELLER ____ PURCHASER ____

7. **Inspection Period.** Purchaser shall have a period (the "Inspection Period") commencing on the date of this Contract and expiring at 5:00 p.m. on the date being five (5) days after the Binding Agreement Date, to determine whether the Property is suitable for Purchaser's investment goals and in satisfactory condition for Purchaser's intended use of the Property. In the event Purchaser determines that the Property is not suitable for Purchaser's investment goals or is not in satisfactory condition for Purchaser's intended use of the Property and fails to extend the Inspection Period as provided in (b) below, Purchaser may terminate this Contract by giving written notice thereof to Seller on or before 5:00 p.m. on the date being five (5) days after the Binding Agreement Date, in which event Escrow Agent shall disburse all of the Earnest Money to Purchaser less the sum of $40,000.00 which shall be disbursed to Seller as consideration for entering into this Contract, and, except as expressly provided herein to the contrary, this Contract shall be of no further force or effect and Purchaser and Seller shall have no further rights, liabilities, duties, or obligations hereunder. In the event Purchaser does not so notify Seller that Purchaser is so terminating this Contract, Purchaser shall be deemed to have accepted the Property as suitable for Purchaser's investment goals and in satisfactory condition for Purchaser's intended use of the Property, and, subject only to any destruction or condemnation of the Property covered by Paragraphs 11 or 12 below, this Contract shall be unconditional and Seller shall be obligated to sell, and Purchaser shall be obligated to purchase, the Property as set forth in this Contract.

8. **Closing; Closing Date.** Purchaser and Seller shall consummate the purchase and sale of the Property (the "Closing") at a location approved by Purchaser and Seller, and at a specific time and date (the "Closing Date") designated by Purchaser by written notice thereof to Seller given at least five (5) business days prior to the Closing Date specified in such notice; provided, however, in no event whatsoever shall the Closing Date be later than the date being thirty (30) days after the Binding Agreement Date. In the event Purchaser does not designate an earlier date by proper written notice to Seller, the Closing shall occur at 10:00 a.m. on the date being thirty (30) days after the Binding Agreement Date at a location approved by Purchaser and Seller. Purchaser and Seller each agree to execute and deliver those closing documents necessary to consummate the purchase and sale of the Property as contemplated in this Contract, and Seller shall deliver to Purchaser, against the payment of the Purchase Price, the following documents:

(a) a bill of sale for the membership interest of JGP&P, LLC "AS IS, WHERE IS," in which Seller shall warrant title only against the claims of all parties claiming by, through, or under Seller;





(b) a bill of sale for the Stock of Red Eyed, Inc, "AS IS, WHERE IS," in which Seller shall warrant title only against the claims of all parties claiming by, through, or under Seller;

(c) an assignment of Seller's right, title, and interest, if any, in and to the Licenses,to the extent transferable, and Seller explicitly disclaims such is assignable, and any employment, service and other contracts pertaining to the ownership or operation of the Property, if any, which Purchaser desires to have assigned (to the extent transferable);

(d) an IRS Form 1099;

(e) a Georgia Withholding Affidavit.

9. **Closing Expenses; Prorations.** None

10. **Possession.** At Closing, Seller shall deliver exclusive possession of the Property to Purchaser, subject to the rights of tenants.

11. **Destruction**. In the event the Property or any material portion of the Improvements is damaged or destroyed by fire or any other casualty prior to the Closing Date, Seller shall notify Purchaser thereof and Seller shall have the right, but not the obligation, to undertake the repair or restoration of the Improvements so damaged or destroyed if Seller reasonably expects such repairs can be completed prior to the Closing Date, or is required to do so under any tenant lease or mortgage. If Seller gives Purchaser notice of any such undertaking, such undertaking shall be an obligation of Seller hereunder, and the purchase and sale of the Property shall be consummated in accordance with the terms and provisions of this Contract with no adjustment in the Purchase Price and Seller shall receive all insurance proceeds payable by reason of such damage or destruction. In the event Seller notifies Purchaser that Seller does not elect to undertake such repair or restoration, Purchaser may, at its election, either (a) terminate this Contract by giving written notice thereof to Seller, in which event Escrow Agent shall deliver the Earnest Money to Purchaser and, except as expressly provided herein to the contrary, this Contract shall be of no further force or effect and Purchaser and Seller shall have no further rights, liabilities, duties, or obligations hereunder, or (b) Purchaser may require Seller to (i) convey the Property or the remaining portion thereof as provided herein for the Purchase Price set forth in Paragraph 3 hereof, (ii) transfer and assign all of Seller's right, title, and interest in and to any and all insurance proceeds payable or to be paid in connection with such damage or destruction, and (iii) Seller shall pay the "deductible" applicable under Seller's property insurance policy, and the subject transaction shall otherwise be consummated as provided in this Contract to the extent possible. In the event Seller so notifies Purchaser that Seller does not undertake





to so repair or restore the Property, Purchaser shall notify Seller in writing of its election pursuant to the immediately preceding sentence within ten (10) days after such notice from Seller, and in the event Purchaser fails to so notify Seller within said 10-day period, Purchaser shall be deemed to have elected to terminate this Contract pursuant to clause (b) immediately above.

13. **Defaults**. In the event Seller breaches or fails to perform or comply with any its covenants, duties, and obligations under this Contract, including without limitation, its obligation to convey the Property to Purchaser as set forth in this Contract, Purchaser shall, as its sole rights and remedies therefor, be entitled (a) to seek specific performance of this Contract, or (b) to terminate this Contract by giving written notice thereof to Seller, in which event Escrow Agent shall deliver the Earnest Money to Purchaser, and, except as expressly set forth herein to the contrary, this Contract shall be of no further force or effect, and Purchaser and Seller shall not have any further rights, liabilities, duties, or obligations hereunder. In the event Purchaser breaches or fails to perform or comply with any of its covenant, duties, agreements, or obligations as set forth in this Contract, Seller shall, as its only right and remedy therefor, be entitled to retain the Earnest Money as liquidated damages therefor, and upon written notice to Escrow Agent of such occurrence, Escrow Agent shall disburse the Earnest Money to Seller, whereupon, except as expressly provided to the contrary herein, this Contract shall be of no further force or effect, and Seller and Purchaser shall not have any further rights, liabilities, duties, or obligations hereunder. Seller and Purchaser expressly agree that the actual damages for any such breach or default by Purchaser are now and probably in the future will be impossible to ascertain with certainty, and the foregoing liquidated damages provision represents a reasonable estimate of the probable extent of such damages and is not intended as a penalty. Notwithstanding any of the foregoing provisions of this Paragraph 13 to the contrary, nothing contained in this Contract shall in any manner limit the liability of Purchaser or any of Seller's rights and remedies arising by reason of any express indemnification of Seller by Purchaser herein.

14. **Brokers**. Purchaser and Seller hereby represent to each other that they have not discussed this Contract or the subject matter hereof with any real estate broker, agent, or salesman so as to create any legal right in any such broker, agent, or salesman to claim a real estate commission, fee, or other compensation with respect to the conveyance of the property contemplated by this Contract





15. **Notices**. All notices and other communications permitted or required hereunder shall be in writing and shall be personally delivered, sent by overnight or same day courier service providing a return receipt, or mailed, U. S. certified mail, return receipt requested, postage or delivery fees prepaid, to Seller at the following address:

Teri G. Galardi
2555 Chantilly Road
Atlanta GA 30324

With a copy to

Louis G. McBryan
McBryan, LLC
6849 Peachtree Dunwoody Road
Building B-3 Suite 100
Atlanta GA 30328

or to Purchaser at the following address:

NTKN Holdings, LLC
4730 Frontage Road
Forest Park, GA 30297

With a copy to Escrow Agent at:

Medley & Associates
Attn.: Leonard Medley
2727 Paces Ferry Road, SE
Atlanta GA 30339

or to such other addresses as may be specified from time to time by any party hereto by giving written notice thereof as provided herein. All such notices shall be deemed given when sent as provided herein, but shall be deemed effective for purposes of any response or other action when actually received by the addressee, as shown by the return receipt, if mailed, or by the records of any national delivery company (such as FedEx or UPS) if delivered. Any rejection, refusal to accept, or inability to deliver any properly sent notice addressed as set forth herein shall be deemed to be a delivery for purposes of this Contract.

16. **"AS IS" Sale**. Purchaser acknowledges that Purchaser is experienced in evaluating, inspecting, and purchasing commercial real estate. Purchaser also acknowledges that the inspection rights contained in this Contract and the due diligence conducted hereunder of all the matters set forth herein will permit Purchaser sufficient time to make an informed decision as to whether the Property is suitable for Purchaser's intended uses and purposes and in a condition satisfactory to Purchaser. Therefore, notwithstanding any other provision of this Contract to the contrary, Seller shall sell and purchaser shall purchase the Property and any and all rights, titles, estates, and interests under this





Contract "**AS IS, WHERE IS,**" and "**WITH ALL FAULTS.**" Seller has not made and is not and shall not make any representations or warrantees, express or implied, concerning the Property or the condition, status, ownership, or title of any of the Property, excepting only the limited warranty of title to be given by Seller as set forth above in this Contract. Without limiting the foregoing, Seller is not making and shall not make any representations or warrantees concerning the condition or status of any of the Property, compliance of any portions of the Property with any Federal, State, or local laws or regulations to which the Property or the ownership or operation is subject, such as environmental laws and regulations (such as those governing "hazardous waste" or "hazardous materials"), or zoning or land use laws or regulations. These matters shall be investigated by Purchaser and resolved to Purchaser's satisfaction during Purchaser's due diligence review conducted during the Inspection Period. The provisions of this Paragraph shall be restated and reaffirmed in the closing memorandum executed at the Closing by Seller and Purchaser.

17. **Entire Agreement**. This document contains the entire agreement between Purchaser and Seller and it shall inure to the benefit of and shall bind the parties hereto, their respective permitted successors or assigns.

18. **Assignment.** Purchaser may not transfer or assign any of its rights under this Contract without the prior written consent of Seller in each instance. However, Seller agrees that any transfer or assignment by Purchaser of its rights under this Contract to an entity controlled by Purchaser will be permitted so long as prior notice of such transfer is provided to Seller.

19. **Survival of Indemnifications**. The express indemnities set forth in Paragraphs 6 and 14, and only such indemnities, shall survive the Closing or any termination of this Contract.

20. **No Oral Modifications**. This Contract may be amended or modified only by written instrument duly executed by Purchaser and Seller, and, only in the event the provisions regarding the holding and disbursement of the Earnest Money are modified, also by Escrow Agent, or only in the event the provisions regarding the brokers' commissions are modified, then also by Brokers. No oral or other modifications shall be valid or effective to amend or modify any of the terms or provisions hereof.

21. **Counterparts.** This Contract may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute the same agreement. Any fax of an executed signature page sent by the party whose signature is contained thereon may be appended to any counterpart and shall be deemed to be bind such party as an original signature.





22. **Time of the Essence**. Time is of the essence in this Contract and all dates and times set forth herein have entered into the consideration for this Contract.

23. **Headings.** Descriptive headings contained in this Contract are for convenience only and shall not control or affect the meaning or construction of any provision of this Contract.

24. **Governing Law**. This Contract shall be construed and interpreted according to the laws of the State of Georgia.

25. **Relationships**. Nothing contained in this Contract shall constitute or be construed to be or create a partnership, joint venture or any other relationship between Seller and Purchaser other than the relationship of a buyer and seller of real and personal property as set forth in this Contract.

26. **Attorneys' Fees.** In any litigation arising out of this Contract, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs of litigation.

27. **Escrow.** Escrow Agent, as escrow agent hereunder receiving the Earnest Money, is authorized and agrees by acceptance of them to deposit the same promptly, hold same in trust and in escrow and, subject to clearance, disburse the Earnest Money in accordance with the terms and conditions of this Contract. Failure of clearance of funds shall not excuse Purchaser's performance. If in doubt as to Escrow Agent's duties or liabilities under the provisions of this Contract, Escrow Agent may, at its option, continue to hold the Earnest Money until the parties mutually agree to its disbursement, or until a judgment or a court of competent jurisdiction shall determine the rights of the parties, or Escrow Agent may deposit with the clerk of the circuit court having jurisdiction of the dispute pursuant to an interpleader action. Upon notifying all parties concerned of such action, all liability on the part of Escrow Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow to such court. In any suit between Purchaser and Seller where Escrow Agent is made a party because of acting as Escrow Agent hereunder, or in any suit wherein Escrow Agent interpleads the Earnest Money, Escrow Agent shall recover reasonable attorneys' fees and costs incurred with the fees and costs to be charged and assessed as court costs in favor of the prevailing party. Purchaser and Seller agree that Escrow Agent shall not be liable to any party or person for mis-delivery to Purchaser or Seller of the Earnest Money escrowed hereunder, unless such misdelivery is due to willful breach of this Contract or gross negligence of Escrow Agent. Escrow Agent may receive other benefits from the financial institution where the funds are deposited. Based upon the deposit of escrow funds in demand deposit accounts and other relationships with the financial institution, Escrow Agent is eligible to participate in a program





whereby it may (i) receive favorable terms and earn income from the investment of loan proceeds and (ii) receive other benefits offered by the financial institution.

**28.** <u>**No Recordation**</u>. Neither this Contract nor any memorandum thereof may be recorded in any public records, and no such recording in violation hereof shall be deemed to give any notice of the terms hereof to any party or have any other effect.

**29.** **Year End Tax Preparation.** Purchaser and Seller agree that Seller's accountants, Whaley Hammond, Tomaselli, PC ("WHT"), shall prepare the tax returns for the LLC and Red Eyed for tax year 2022, and Purchaser shall cooperate and provide WHT all documents requested and reasonably necessary to prepare tax year 2022 tax returns. This provision shall survive the closing of this transaction.

30. <u>Binding Agreement Date</u>. The Binding Agreement Date shall be the date that Seller delivers the fully executed Contract to Purchaser.

IN WITNESS WHEREOF, Seller and Purchaser have each caused this Contract to be properly executed by their duly authorized representatives, as of the day and year first above written; and Escrow Agent has caused this Contract to be signed as a limited joinder to acknowledge receipt of the Earnest Money and agree to the provisions of the Contract pertaining to the escrow and disbursement of the Earnest Money; Brokers are parties to this Contract solely to enforce their commission rights and need not be party to any amendments or modifications hereof that do not directly affect their respective commissions.

TERI GALE GALARDI
Date:

**PURCHASER:**

**NTKN Holdings, LLC**

AKINYELE ADAMS, MANAGING MEMBER
Date:

**ESCROW AGENT:**
**Medley & Associates**
By: ______________________
LEONARD MEDLEY
Date:



SELLER____ PURCHASER____

**EXHIBIT "A"**

**Description of Land**





# EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 44 of the 13th District of Clayton County, Georgia, and being more particularly described as follows:

BEGINNING at an iron bar located on the eastern right-of-way line of Old U. S. Highway 41 and 19 (now Interstate Highway 75 Access or Service Road), a distance of 522.9 feet northerly, as measured along said right-of-way line, and following the curvature thereof, from an iron bar marking the point of intersection of said right-of-way line, and the south line of Land Lot 44, said iron bar at the point of beginning also being located a distance of 247.93 feet northerly, as measured along said right-of-way line, and following the curvature thereof, from the corner of the intersection of the eastern right-of-way line of Old U. S. Highway 41 and 19 and the northern right-of-way line of Falcon Drive (50-foot right-of-way); running thence in a northerly direction along the arc of a curve to the left in the eastern right-of-way line of Old U. S. Highway 41 and 19, said arc being subtended by a chord line having a magnetic bearing of north 03 degrees 39 minutes 17 seconds west and a length of 184.38 feet, a distance of 184.40 feet to an iron bar; running thence north 08 degrees 03 minutes 04 seconds west along said right-of-way line, a distance of 59.72 feet to an iron bar; running thence south 88 degrees 51 minutes 41 seconds east a distance of 561.56 feet to a steel rod; running thence south 00 degrees 48 minutes 34 seconds west a distance of 240.68 feet to an iron bar located on the line established by Boundary Line Agreement by and between R. A. Higgins and Olivie Higgins and Consolidated Equities Corporation and Standard Oil Company, dated February, 1967, and recorded in Deed Book 492, page 672, Clayton County, Georgia Records; running thence north 89 degrees 04 minutes 35 seconds west along the line established in the aforesaid Boundary Line Agreement, a distance of 538.00 feet to the iron bar located on the eastern right-of-way line of Old U. S. Highway 41 and 19 and the point of beginning; as per survey for "Airline Inn, Inc.," dated July 17, 1980, prepared by R. L. Rhinehart, Georgia Registered Land Surveyor No. 1476, and containing 3.039 acres according to said survey.