**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 11** |
| | ) | |
| **TERI G. GALARDI,** | ) | |
| | ) | **CASE NO.  22-50035-JPS** |
| **Debtor,** | ) | |
| _____ | ) | |

**MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY LOCATED AT**
**506 SE 11th CT, FORT LAUDERDALE, FL**

COMES NOW Teri G. Galardi ("Debtor") and files this *Motion for Authorization to Sell Real Property located at 506 SE 11th Ct, Fort Lauderdale, Florida 33313* (the "Motion"). In support of the Motion, Debtor shows the Court as follows:

1.

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The Statutory predicate for the relief requested herein is 11 U.S.C. §§ 105 and 363 and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

2.

On January 12, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11, Subchapter V of the United States Bankruptcy Code. On March 31, 2022, a Consent Order was entered by the Court allowing the Debtor to Proceed under other applicable provisions of Chapter 11, other than Subchapter V. The Debtor is continuing to manage her affairs as a Debtor-in-Possession under §§ 1107(a) and 1108 of the Bankruptcy Code.

3.

Debtor, through her sole ownership interest in 506 Office, LLC, ("Seller") owns real property located at 506 SE 11th Ct, Fort Lauderdale, Florida 33316 (the "Real Property").

4.

VBPS, LLC (the "Buyer") has made an offer to purchase the Real Property.  A copy of

the Contract for the Purchase and Sale Agreement is (the "Agreement") attached hereto as

**Exhibit A**.

5.

As set forth in the Agreement, Buyer's offer encompasses paying $835,000.00 for the

Real Property (the "Purchase Price") to be paid as follows: (1) $167,000.00 earnest money

currently held into escrow; and (2) $668,000.00 to be paid at closing.

6.

Debtor and Seller believe that the Agreement represents the best offer available and that

the Purchase Price represents the true value of the Real Property.

7.

This Motion is for the purposes of Notice and complying with Bankruptcy law and rules,

as the Debtor's interest in the Seller is property of the Estate.

8.

Preferred Title, Inc., c/o Michael Shapiro, will acting as the Escrow Agent in this

transaction.  The Escrow Agent is only authorized to receive and accept earnest money in

accordance with the terms and conditions of the Agreement.

9.

Buyer has informed Seller that the title company and lender for Buyer requires an Order of

the Bankruptcy Court approving the sale because Seller is a single member LLC organized under

the laws of Florida and Florida law allows a judgment creditor to reach the actual interest of the

LLC if a single member LLC.[1] *Pansky v. Barry S. Franklin & Assocs., P.A.*, 264 So.3d 961, 962

(Fla. 4th DCA 2019)   Seller and Debtor therefore seek an Order of the Court.

10.

Debtor is not aware of any secured claims, although real property taxes may be due and

owing at closing and shall be prorated.

11.

The Real Property will be sold to Purchaser "As Is-Where Is" with no warranties or

representations.

12.

The Parties would like to close on the Property on March 15, 2023, or as soon as

practicable.

**RELIEF REQUESTED**

13.

Debtor and Seller requests authority to sell the Real Property as described herein free and

clear of liens, claims, encumbrances, and interests for the Purchase Price. Additionally, Debtor

requests permission to (i) disburse the Purchase Price as provided herein with liens attaching to

the Sales Proceeds to the same validity and priority as existed on the filing date; and (ii) take such

action as necessary to effectuate the terms of the Agreement. Debtor requests that: (a) the Court

---

[1] Florida statute states:

> In the case of a limited liability company that has only one member, if a judgment creditor of a member or member's transferee establishes to the satisfaction of a court of competent jurisdiction that distributions under a charging order will not satisfy the judgment within a reasonable time, a charging order is not the sole and exclusive remedy by which the judgment creditor may satisfy the judgment against a judgment debtor who is the sole member of a limited liability company or the transferee of the sole member, and upon such showing, the court may order the sale of that interest in the limited liability company pursuant to a foreclosure sale. A judgment creditor may make a showing to the court that distributions under a charging order will not satisfy the judgment within a reasonable time at any time after the entry of the judgment and may do so at the same time that the judgment creditor applies for the entry of a charging order.

§ 605.0503(4).

waive any stay pursuant to Bankruptcy Rule 6004 or otherwise; and (b) any order approving the

sale of the Real Property be effective immediately upon entry.

## PROPOSED DISTIBUTION OF SALE PROCEEDS

14.

Debtor requests that it be authorized to use and distribute the Sales Proceeds as follows:

(a) Payment of all customary closing costs, if any, including attorneys fees of Seller; and

(b) Payment of real estate commission, which is 7%, to be paid to Patricia Burnside Realty
("Broker"); and

(c) All net proceeds to be used to fund the Debtor's Chapter 11 Bankruptcy Case and Plan.

## TRANSACTION IS IN THE BEST INTEREST OF THE ESTATE

15.

Buyer has made an offer to purchase the Real Property.  Debtor believes the proposal

represents the highest and best offer submitted at the time the offer was accepted.

16.

Seller received multiple written offers, Buyer's was accepted, and Seller received offers

subsequent to Buyer's that were higher than Buyer's. Written offers (hereinafter the "Other

Offerors") were received from:

| East Broward Dental P/A,<br>1212 E Broward Boulevard Suite 200<br>Fort Lauderdale FL 33301<br><br>Broker:<br>15 Properties<br>1700 NW 64th St #470<br>Fort Lauderdale, FL 33309 | Vyacheslav Borshchukov PA<br>514 SE 11th Court<br>Fort Lauderdale FL 33316<br><br>Broker:<br>Kozin Commercial Properties INC<br>3350 NW 22nd Ter, Ste 100<br>Pompano Beach FL 33068 |

| Paul Lynch | Sandra Perlman and Brian Silber |
|---|---|
| (address unknown) | 3864 Sheridan St |
| Broker: | Hollywood FL 33021 |
| Douglas Elliman C/O | (No broker) |
| Lindsey Way PA | |
| 450 E Las Olas Blvd, #120 | |
| Fort Lauderdale, FL 33301 | |

Notice of this Motion and any hearing shall be served on the Other Offerors.

17.

Additionally, Buyer, through counsel, Vyacheslav Borshchukov, PA, filed on March 3, 2023, a Complaint in the Circuit Court Of The 17th Judicial Circuit In And For Broward County, Florida, styled:  VBPS, LLC v. 506 Office, LLC, Kelly Galardi and Teri Galardi, Case No. CACE 23-002730, asserting various claims, but in essence breach of contract. A copy of the Complaint is attached as **Exhibit B**.  Buyer also filed a Lis Pendens relating to this Complaint. A Copy of that Lis Pendens is attached as **Exhibit C.**

18.

Prior to this Complaint being filed Seller had notified Buyer that the contract had been terminated due to failure to meet deadlines. Buyer's real estate counsel disputed that and sought a formal extension to resolve Buyer's issues. At the request of Buyer's counsel, counsel for VBPS, both its real estate counsel and counsel signing the Complaint, and Debtor conferred on March 2, 2023, during which counsel for VBPS advised that the title company and lender were seeking court order due to Florida law on single member LLCs. During this conference call Debtor's counsel advised that he would recommend waiving any termination and would proceed to file a motion to approve the sale to Buyer, in form and substance similar to the instant motion, so long as Buyer understood such a motion is subject to notice and hearing and possibility of a higher and better offer being received at such hearing. Buyer's real estate counsel understood and admitted such were U.S. Bankruptcy Code requirements. Debtor's counsel understood at the conclusion of the

call, Buyer would advise the next day if it wanted to continue the contract and seek Court approval. Buyer's response was the Complaint. The Complaint has not yet been served on Defendants. In providing notice of such to Seller's agent, counsel for Buyer also demanded all back up offers be terminated. A copy of that email sent to Julie Negovan, Seller's Broker, and Buyer's Counsel is attached as **Exhibit D**.

19.

Notwithstanding the Complaint, and errors of law and fact it contains, Debtor remains committed to the Amended Plan of Reorganization and seeks to sell the Property for the benefit of the creditors. Debtor will seek a hearing on this Motion on an expedited basis.

### **BASIS FOR RELIEF**

20.

A debtor in possession may sell property under Section 363(f) of the Bankruptcy Code "free and clear of any interest in such property of any entity other than the estate" if any one of the following conditions is satisfied: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. §363(f). Debtor anticipates that one or more of these requirements will be satisfied.

21.

Buyer does not have a familial relationship to Debtor. Buyer is not an "affiliate" or "insider" of Debtor. Upon information and belief, Debtor shows that the proposed Buyer is a "good faith" purchaser. Debtor requests that the Court find such Buyer to be a good faith purchaser pursuant to the provisions of Section 363(m) of the Bankruptcy Code.

22.

Buyer has indicated its interest in proceeding under the Agreement as soon as possible.

23.

Debtor requests that the Court waive any stay of the effectiveness of any order granting the

Motion and approving the sale under Bankruptcy Rule 6004.

WHEREFORE, for all of the foregoing reasons, Debtor moves the Court to enter an

Order:

(a) Granting the Motion and approving the sale free and clear of all liens;

(b) Authorizing the distribution of the Sale Proceeds as provided herein;

(c) Waiving the stay of such Order pursuant to Bankruptcy Rule 6004 or any rule of

similar import and making the Order effective upon its entry; and

(d) Granting the Debtor such other and further relief as may be just and proper.

Respectfully submitted,

**McBRYAN, LLC**

/s/Louis G. McBryan
Louis G. McBryan, Georgia Bar No. 480993
6849 Peachtree Dunwoody Rd
Building B-3, Suite 100
Atlanta, GA 30328
Telephone (678) 733-9322
Fax (678)498-2709
lmcbryan@mcbryanlaw.com
**Attorneys for Debtor**

**Exhibit A**

**Commercial Contract**



| 1 | 1. PARTIES AND PROPERTY: _____ VBPS, LLC _____ ("Buyer") |
|---|---|

2 agrees to buy and _____ 506 Office, L L C _____ ("Seller")

3 agrees to sell the property at:

4 Street Address: 506 SE 11th Ct #1-2. Fort Lauderdale, FL 33316-1146

5 _____

6 Legal Description: LAUDERDALE 2-9 D LOT 5,6 E1/2 BLK 6

7 _____

8 and the following Personal Property: all fixtures appurtenant to the land

9 _____

10 (all collectively referred to as the "Property") on the terms and conditions set forth below.

11 **2. PURCHASE PRICE:** $ 835,000.00

12 **(a)** Deposit held in escrow by: _____ Preferred Title , Inc c/o Mchael Shapiro $ 167,000.00
13 ("Escrow Agent") (checks are subject to actual and final collection)

14 Escrow Agent's address: _____ Phone: _____

15 **(b)** Additional deposit to be made to Escrow Agent
16 ☐ within ____ days (3 days, if left blank) after completion of Due Diligence Period or
17 ☐ within ____ days after Effective Date _____ $ _____

18 **(c)** Additional deposit to be made to Escrow Agent
19 ☐ within ____ days (3 days, if left blank) after completion of Due Diligence Period or
20 ☐ within ____ days after Effective Date $ _____

21 **(d)** Total financing (see Paragraph 5) _____ $ 668,000.00 . .

22 **(e)** Other _____ $ _____

23 **(f)** All deposits will be credited to the purchase price at closing.
24 Balance to close, subject to adjustments and prorations, to be paid
25 via wire transfer. $ 0.00

26 For the purposes of this paragraph, "completion" means the end of the Due Diligence Period or upon delivery of
27 Buyer's written notice of acceptability.

28 **3. TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME:** Unless this offer is signed by **Seller**
29 and **Buyer** and an executed copy delivered to all parties on or before _____ January 13, 2023 _____ , this offer
30 will be withdrawn and the **Buyer's** deposit, if any, will be returned. The time for acceptance of any counter offer will be
31 3 days from the date the counter offer is delivered. The **"Effective Date" of this Contract is the date on which the**
32 **last one of the Seller and Buyer has signed or initialed and delivered this offer or the final counter offer or**
33 _____ January 13, 2023 _____ . Calendar days will be used when computing time periods, except time periods of 5
34 days or less. Time periods of 5 days or less will be computed without including Saturday, Sunday, or national legal
35 holidays. Any time period ending on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. of the next
36 business day. **Time is of the essence in this Contract.**

37 **4. CLOSING DATE AND LOCATION:**
38 **(a) Closing Date:** This transaction will be closed on _____ March 15, 2023 _____ (Closing Date), unless
39 specifically extended by other provisions of this Contract. The Closing Date will prevail over all other time periods
40 including, but not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended

Buyer ( ) ( ) and Seller ( ) ( ) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

©2017 Florida Realtors®
Form
Simplicity

41 on Closing Date and **Buyer** is unable to obtain property insurance, **Buyer** may postpone closing up to 5 days after
42 the insurance underwriting suspension is lifted.

43 **(b) Location:** Closing will take place in ___Broward___ County, Florida. (If left blank, closing will take place in the
44 county where the property is located.) Closing may be conducted by mail or electronic means.

45 **5. THIRD PARTY FINANCING:**

46 ~~BUYER'S OBLIGATION:~~ On or before __5__ days (5 days if left blank) after Effective Date, **Buyer** will apply for third
47 party financing in an amount not to exceed ___80~~%~~ of the purchase price or $640,000.00~~, with a fixed~~
48 ~~interest rate not to exceed___5% per year with an initial variable interest rate not to exceed___4%, with points or~~
49 ~~commitment or loan fees not to exceed___4% of the principal amount, for a term of__20__years, and amortized~~
50 ~~over__20__years, with additional terms as follows:~~ See addendum , Paragraph 23 b

51 _____
52 **Buyer** will timely provide any and all credit, employment, financial and other information reasonably required by any
53 lender. **Buyer** will use good faith and reasonable diligence to (i) obtain Loan Approval within __30__ days (45 days if left
54 blank) from Effective Date (Loan Approval Date), (ii) satisfy terms and conditions of the Loan Approval, and (iii) close
55 the loan. **Buyer** will keep **Seller** and Broker fully informed about loan application status and authorizes the mortgage
56 broker and lender to disclose all such information to **Seller** and Broker. **Buyer** will notify **Seller** immediately upon
57 obtaining financing or being rejected by a lender. **CANCELLATION:** If **Buyer**, after using good faith and reasonable
58 diligence, fails to obtain Loan Approval by Loan Approval Date, **Buyer** may within __3__ days (3 days if left blank)
59 deliver written notice to **Seller** stating **Buyer** either waives this financing contingency or cancels this Contract.
60 If **Buyer** does neither, then **Seller** may cancel this Contract by delivering written notice to **Buyer** at any time thereafter.
61 Unless this financing contingency has been waived, this Contract shall remain subject to the satisfaction, by closing, of
62 those conditions of Loan Approval related to the Property. **DEPOSIT(S) (for purposes of Paragraph 5 only):** If **Buyer**
63 has used good faith and reasonable diligence but does not obtain Loan Approval by Loan Approval Date and
64 thereafter either party elects to cancel this Contract as set forth above or the lender fails or refuses to close on or
65 before the Closing Date without fault on **Buyer's** part, the Deposit(s) shall be returned to **Buyer**, whereupon both
66 parties will be released from all further obligations under this Contract, except for obligations stated herein as surviving
67 the termination of this Contract. If neither party elects to terminate this Contract as set forth above or **Buyer** fails to use
68 good faith or reasonable diligence as set forth above, **Seller** will be entitled to retain the Deposit(s) if the transaction
69 does not close. For purposes of this Contract, "Loan Approval" means a statement by the lender setting forth the terms
70 and conditions upon which the lender is willing to make a particular mortgage loan to a particular buyer. Neither a pre-
71 approval letter nor a prequalification letter shall be deemed a Loan Approval for purposes of this Contract.

72 **6. TITLE: Seller** has the legal capacity to and will convey marketable title to the Property by ☒ statutory warranty
73 deed ☐ special warranty deed ☐ other _____, free of liens, easements and
74 encumbrances of record or known to **Seller**, but subject to property taxes for the year of closing; covenants,
75 restrictions and public utility easements of record; existing zoning and governmental regulations; and (list any other
76 matters to which title will be subject) none _____

77 _____;
78 provided there exists at closing no violation of the foregoing and none of them prevents **Buyer's** intended use of the
79 Property as _____commercial office space_____.

80 **(a) Evidence of Title:** The party who pays the premium for the title insurance policy will select the closing agent
81 and pay for the title search and closing services. Buyer will, at (check one) ☐ **Seller's** ☒ **Buyer's** expense and
82 within _____ days after Effective Date or at least __15__ days before Closing Date deliver to **Buyer** (check one)
83 ☒ (i) a title insurance commitment by a Florida licensed title insurer setting forth those matters to be discharged by
84 **Seller** at or before Closing and, upon **Buyer** recording the deed, an owner's policy in the amount of the purchase
85 price for fee simple title subject only to exceptions stated above. If **Buyer** is paying for the evidence of title and
86 **Seller** has an owner's policy, **Seller** will deliver a copy to **Buyer** within 15 days after Effective Date. ☐ (ii.) an
87 abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm.
88 However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable to the proposed
89 insurer as a base for reissuance of coverage may be used. The prior policy will include copies of all policy
90 exceptions and an update in a format acceptable to **Buyer** from the policy effective date and certified to **Buyer** or

**Buyer** (____)(____) and **Seller** (____)(____) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.

91  **Buyer's** closing agent together with copies of all documents recited in the prior policy and in the update. If such
92  an abstract or prior policy is not available to **Seller** then (i.) above will be the evidence of title.

93  **(b) Title Examination: Buyer** will, within 15 days from receipt of the evidence of title deliver written notice to **Seller**
94  of title defects. Title will be deemed acceptable to **Buyer** if (1) **Buyer** fails to deliver proper notice of defects or (2)
95  **Buyer** delivers proper written notice and **Seller** cures the defects within ___5___ days from receipt of the notice
96  ("Curative Period"). Seller shall use good faith efforts to cure the defects. If the defects are cured within the
97  Curative Period, closing will occur on the latter of 10 days after receipt by Buyer of notice of such curing or the
98  scheduled Closing Date. **Seller** may elect not to cure defects if **Seller** reasonably believes any defect cannot be
99  cured within the Curative Period. If the defects are not cured within the Curative Period, **Buyer** will have 10 days
100 from receipt of notice of **Seller's** inability to cure the defects to elect whether to terminate this Contract or accept
101 title subject to existing defects and close the transaction without reduction in purchase price.

102 **(c) Survey:** (check applicable provisions below)
103 ☐ **Seller** will, within _____ days from Effective Date, deliver to **Buyer** copies of prior surveys,
104 plans, specifications, and engineering documents, if any, and the following documents relevant to this
105 transaction:
106 _____
107 prepared for **Seller** or in **Seller's** possession, which show all currently existing structures. In the event this
108 transaction does not close, all documents provided by **Seller** will be returned to **Seller** within 10 days from the
109 date this Contract is terminated.
110 ☒ **Buyer** will, at ☐ **Seller's** ☒ **Buyer's** expense and within the time period allowed to deliver and examine
111 title evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
112 encroachments on the Property or that the improvements encroach on the lands of another, ☒ **Buyer** will
113 accept the Property with existing encroachments ☐ such encroachments will constitute a title defect to be
114 cured within the Curative Period.

115 **(d) Ingress and Egress: Seller** warrants that the Property presently has ingress and egress.

116 **7. PROPERTY CONDITION: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is" condition,
117 ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. **Seller**
118 makes no warranties other than marketability of title. In the event that the condition of the Property has materially
119 changed since the expiration of the Due Diligence Period, **Buyer** may elect to terminate the Contract and receive a
120 refund of any and all deposits paid, plus interest, if applicable, or require Seller to return the Property to the required
121 condition existing as of the end of Due Diligence period, the cost of which is not to exceed $1,000.00 _____ (1.5% of
122 the purchase price, if left blank). By accepting the Property "as is", **Buyer** waives all claims against **Seller** for any
123 defects in the Property. (Check **(a)** or **(b)**)

124 ☐ **(a) As Is: Buyer** has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
125 condition.

126 ☒ **(b) Due Diligence Period: Buyer** will, at **Buyer's** expense and within ___30___ days from Effective Date ("Due
127 Diligence Period"), determine whether the Property is suitable, in **Buyer's** sole and absolute discretion. During the
128 term of this Contract, **Buyer** may conduct any tests, analyses, surveys and investigations ("Inspections") which
129 **Buyer** deems necessary to determine to **Buyer's** satisfaction the Property's engineering, architectural,
130 environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision
131 regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local,
132 state and regional growth management and comprehensive land use plans; availability of permits, government
133 approvals and licenses; compliance with American with Disabilities Act; absence of asbestos, soil and ground
134 water contamination; and other inspections that **Buyer** deems appropriate. **Buyer** will deliver written notice to
135 **Seller** prior to the expiration of the Due Diligence Period of **Buyer's** determination of whether or not the Property
136 is acceptable. **Buyer's** failure to comply with this notice requirement will constitute acceptance of the Property in
137 its present "as is" condition. **Seller** grants to **Buyer**, its agents, contractors and assigns, the right to enter the
138 Property at any time during the term of this Contract for the purpose of conducting Inspections, upon reasonable
139 notice, at a mutually agreed upon time; provided, however, that **Buyer**, its agents, contractors and assigns enter
140 the Property and conduct Inspections at their own risk. **Buyer** will indemnify and hold **Seller** harmless from
141 losses, damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from
142 liability to any person, arising from the conduct of any and all inspections or any work authorized by **Buyer. Buyer**
143 will not engage in any activity that could result in a mechanic's lien being filed against the Property without
144 **Seller's** prior written consent. In the event this transaction does not close, (1) **Buyer** will repair all damages to the

Buyer_____) (____) and Seller_____) (____) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

©2017 Florida Realtors®
Form
Simplicity

145 Property resulting from the Inspections and return the Property to the condition it was in prior to conduct of the
146 Inspections, and (2) **Buyer** will, at **Buyer's** expense release to **Seller** all reports and other work generated as a
147 result of the Inspections. Should **Buyer** deliver timely notice that the Property is not acceptable, **Seller** agrees that
148 **Buyer's** deposit will be immediately returned to **Buyer** and the Contract terminated.

149 **(c) Walk-through Inspection: Buyer** may, on the day prior to closing or any other time mutually agreeable to the
150 parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and
151 to ensure that all Property is on the premises.

152 **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD: Seller** will continue to operate the Property and any
153 business conducted on the Property in the manner operated prior to Contract and will take no action that would
154 adversely impact the Property after closing, as to tenants, lenders or business, if any. Any changes, such as renting
155 vacant space, that materially affect the Property or **Buyer's** intended use of the Property will be permitted ☒ only with
156 **Buyer's** consent ☐ without **Buyer's** consent.

157 **9. CLOSING PROCEDURE:** Unless otherwise agreed or stated herein, closing procedure shall be in accordance with
158 the norms where the Property is located.

159 **(a) Possession and Occupancy: Seller** will deliver possession and occupancy of the Property to **Buyer** at
160 closing. **Seller** will provide keys, remote controls, and any security/access codes necessary to operate all locks,
161 mailboxes, and security systems.

162 **(b) Costs: Buyer** will pay **Buyer's** attorneys' fees, taxes and recording fees on notes, mortgages and financing
163 statements and recording fees for the deed. **Seller** will pay **Seller's** attorneys' fees, taxes on the deed and
164 recording fees for documents needed to cure title defects. If **Seller** is obligated to discharge any encumbrance at or
165 prior to closing and fails to do so, **Buyer** may use purchase proceeds to satisfy the encumbrances.

166 **(c) Documents: Seller** will provide the deed; bill of sale; mechanic's lien affidavit; originals of those assignable
167 service and maintenance contracts that will be assumed by **Buyer** after the Closing Date and letters to each
168 service contractor from **Seller** advising each of them of the sale of the Property and, if applicable, the transfer of its
169 contract, and any assignable warranties or guarantees received or held by **Seller** from any manufacturer,
170 contractor, subcontractor, or material supplier in connection with the Property; current copies of the condominium
171 documents, if applicable; assignments of leases, updated rent roll; tenant and lender estoppels letters (if
172 applicable); tenant subordination, non-disturbance and attornment agreements (SNDAs) required by the **Buyer** or
173 **Buyer's** lender; assignments of permits and licenses; corrective instruments; and letters notifying tenants of the
174 change in ownership/rental agent. If any tenant refuses to execute an estoppels letter, **Seller**, if requested by the
175 **Buyer** in writing, will certify that information regarding the tenant's lease is correct. If **Seller** is an entity, **Seller** will
176 deliver a resolution of its governing authority authorizing the sale and delivery of the deed and certification by the
177 appropriate party certifying the resolution and setting forth facts showing the conveyance conforms to the
178 requirements of local law. **Seller** will transfer security deposits to **Buyer**. **Buyer** will provide the closing statement,
179 mortgages and notes, security agreements, and financing statements.

180 **(d) Taxes and Prorations:** Real estate taxes, personal property taxes on any tangible personal property, bond
181 payments assumed by **Buyer**, interest, rents (based on actual collected rents), association dues, insurance
182 premiums acceptable to **Buyer**, and operating expenses will be prorated through the day before closing. If the
183 amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due
184 allowance being made for improvements and exemptions. Any tax proration based on an estimate will, at request
185 of either party, be readjusted upon receipt of current year's tax bill; this provision will survive closing.

186 **(e) Special Assessment Liens:** Certified, confirmed, and ratified special assessment liens as of the Closing Date
187 will be paid by **Seller**. If a certified, confirmed, and ratified special assessment is payable in installments, **Seller** will
188 pay all installments due and payable on or before the Closing Date, with any installment for any period extending
189 beyond the Closing Date prorated, and **Buyer** will assume all installments that become due and payable after the
190 Closing Date. **Buyer** will be responsible for all assessments of any kind which become due and owing after Closing
191 Date, unless an improvement is substantially completed as of Closing Date. If an improvement is substantially
192 completed as of the Closing Date but has not resulted in a lien before closing, **Seller** will pay the amount of the last
193 estimate of the assessment. This subsection applies to special assessment liens imposed by a public body and
194 does not apply to condominium association special assessments.

195 **(f) Foreign Investment in Real Property Tax Act (FIRPTA):** If **Seller** is a "foreign person" as defined by FIRPTA,
196 **Seller** and **Buyer** agree to comply with Section 1445 of the Internal Revenue Code. **Seller** and **Buyer** will
197 complete, execute, and deliver as directed any instrument, affidavit, or statement reasonably necessary to comply

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.

©2017 Florida Realtors®
Form
Simplicity

198 with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or
199 Social Security Numbers to the closing agent. If **Buyer** does not pay sufficient cash at closing to meet the
200 withholding requirement, **Seller** will deliver to **Buyer** at closing the additional cash necessary to satisfy the
201 requirement.

202 **10. ESCROW AGENT: Seller** and **Buyer** authorize Escrow Agent or Closing Agent (collectively "Agent") to receive,
203 deposit, and hold funds and other property in escrow and, subject to collection, disburse them in accordance with the
204 terms of this Contract. The parties agree that Agent will not be liable to any person for misdelivery of escrowed items to
205 **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful breach of this Contract or gross negligence. If Agent
206 has doubt as to Agent's duties or obligations under this Contract, Agent may, at Agent's option, (a) hold the escrowed
207 items until the parties mutually agree to its disbursement or until a court of competent jurisdiction or arbitrator
208 determines the rights of the parties or (b) deposit the escrowed items with the clerk of the court having jurisdiction over
209 the matter and file an action in interpleader. Upon notifying the parties of such action, Agent will be released from all
210 liability except for the duty to account for items previously delivered out of escrow. If Agent is a licensed real estate
211 broker, Agent will comply with Chapter 475, Florida Statutes. In any suit in which Agent interpleads the escrowed items
212 or is made a party because of acting as Agent hereunder, Agent will recover reasonable attorney's fees and costs
213 incurred, with these amounts to be paid from and out of the escrowed items and charged and awarded as court costs
214 in favor of the prevailing party.

215 **11. CURE PERIOD:** Prior to any claim for default being made, a party will have an opportunity to cure any alleged
216 default. If a party fails to comply with any provision of this Contract, the other party will deliver written notice to the non-
217 complying party specifying the non-compliance. The non-complying party will have _____ days (5 days if left blank) after
218 delivery of such notice to cure the non-compliance. Notice and cure shall not apply to failure to close.

219 **12. FORCE MAJEURE: Buyer** or **Seller** shall not be required to perform any obligation under this Contract or be liable
220 to each other for damages so long as performance or non-performance of the obligation, or the availability of services,
221 insurance, or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force Majeure.
222 "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God, unusual
223 transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the
224 non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will
225 be extended a reasonable time up to 7 days after the Force Majeure no longer prevents performance under this
226 Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than
227 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other
228 and the Deposit shall be refunded to **Buyer**, thereby releasing **Buyer** and **Seller** from all further obligations under this Contract.

229 **13. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is
230 not met and **Buyer** has timely given any required notice regarding the condition having not been met, **Buyer's** deposit
231 will be returned in accordance with applicable Florida Laws and regulations.

232 **14. DEFAULT:**
233 **(a)** In the event the sale is not closed due to any default or failure on the part of **Seller** other than failure to make
234 the title marketable after diligent effort, **Buyer** may elect to receive return of Buyer's deposit without thereby
235 waiving any action for damages resulting from Seller's breach and may seek to recover such damages or seek
236 specific performance. If Buyer elects a deposit refund, Seller may be liable to Broker for the full amount of the
237 brokerage fee.
238 **(b)** In the event the sale is not closed due to any default or failure on the part of **Buyer**, **Seller** may either (1)
239 retain all deposit(s) paid or agreed to be paid by **Buyer** as agreed upon liquidated damages, consideration for the
240 execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek
241 specific performance. If **Buyer** fails to timely place a deposit as required by this Contract, **Seller** may either (1)
242 terminate the Contract and seek the remedy outlined in this subparagraph or (2) proceed with the Contract without
243 waiving any remedy for **Buyer's** default.

244 **15. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the
245 prevailing party, which for purposes of this provision will include **Buyer**, **Seller** and Broker, will be awarded reasonable
246 attorneys' fees, costs, and expenses.

247 **16. NOTICES:** All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or
248 electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice,
249 document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker)
250 representing a party will be ~~as effective~~ as if given by or delivered to that party.

**Buyer** ( ) ( ) and **Seller** ( ) ( ) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.

Serial#: 011414-200167-3461355

©2017 Florida Realtors®



**17. DISCLOSURES:**

(a) **Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of commercial real estate for any commission earned by the broker under a brokerage agreement. The lien upon the owner's net proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not attach to any interest in real property. This lien right cannot be waived before the commission is earned.

(b) **Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such liens, if any, shall be paid as set forth in Paragraph 9(e).

(c) **Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

(d) **Energy-Efficiency Rating Information: Buyer** acknowledges receipt of the information brochure required by Section 553.996, Florida Statutes.

**18. RISK OF LOSS:**

(a) If, after the Effective Date and before closing, the Property is damaged by fire or other casualty, **Seller** will bear the risk of loss and **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing the Property at the agreed upon purchase price and **Seller** will credit the deductible, if any, and transfer to **Buyer** at closing any insurance proceeds, or **Seller's** claim to any insurance proceeds payable for the damage. **Seller** will cooperate with and assist **Buyer** in collecting any such proceeds. **Seller** shall not settle any insurance claim for damage caused by casualty without the consent of the **Buyer**.

(b) If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the right of eminent domain, or proceedings for such taking will be pending or threatened, **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing what is left of the Property at the agreed upon purchase price and **Seller** will transfer to the **Buyer** at closing the proceeds of any award, or **Seller's** claim to any award payable for the taking. **Seller** will cooperate with and assist **Buyer** in collecting any such award.

**19. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☒ is not assignable ☐ is assignable. If this Contract may be assigned, **Buyer** shall deliver a copy of the assignment agreement to the **Seller** at least 5 days prior to Closing. The terms **"Buyer," "Seller"** and "Broker" may be singular or plural. This Contract is binding upon **Buyer, Seller** and their heirs, personal representatives, successors and assigns (if assignment is permitted).

**20. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller**. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records.

**21. BROKERS:** Neither **Seller** nor **Buyer** has used the services of, or for any other reason owes compensation to, a licensed real estate Broker other than:

(a) **Seller's Broker:** _____ Patricia Burnside Realty _____ ,
<br>(Company Name)

2455 Hollywod Blvd. Ste 311, Hollywood,    3055959522    9549620051    (Licensee)    pat@patburnside.com  ,
<br>(Address, Telephone, Fax, E-mail)

who ☐ is a single agent ☒ is a transaction broker ☐ has no brokerage relationship and who will be compensated by ☒ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ a listing agreement ☐ other (specify) _____

(b) **Buyer's Broker:** _____ Kozin Commerical Properties, Inc. _____ Brad Kozin _____ ,
<br>(Company Name)    (Licensee)

3350 NW 22nd Ter, Ste 100,    Pompano Beach    FL, 33069    954-973-2122  ,
<br>— DS (Address, Telephone, Fax, E-mail)

Buyer (____) (____) and Seller (_kG_) (____) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

who ☐ is a single agent ☒ is a transaction broker ☐ has no brokerage relationship and who will be compensated by ☒ **Seller's Broker** ☐ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ an MLS offer of compensation ☐ other (specify)

(collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to inquiries, introductions, consultations, and negotiations resulting in this transaction. **Seller** and **Buyer** agree to indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to Paragraph 10, (3) any duty accepted by Broker at the request of **Seller** or **Buyer**, which is beyond the scope of services regulated by Chapter 475, Florida Statutes, as amended, or (4) recommendations of or services provided and expenses incurred by any third party whom Broker refers, recommends, or retains for or on behalf of **Seller** or **Buyer**.

**22. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to this Contract):

☐ (A) Arbitration                      ☐ (E) Seller Warranty                      ☐ (I) Existing Mortgage
☐ (B) Section 1031 Exchange            ☐ (F) Coastal Construction Control Li      ☐ (J) Buyer's Attorney Approval
☐ (C) Property Inspection and Repair   ☐ (G) Flood Area Hazard Zone              ☐ (K) Seller's Attorney Approval
☐ (D) Seller Representations           ☐ (H) Seller Financing                     ☐ Other _____

**23. ADDITIONAL TERMS:**

The property is being offered as-is with no representations concerning habitability or use.

  b) This transaction shall be contingent upon Buyer obtaining third party financing in an amount not less

  than $640,000.00 on term and conditions acceptable to Buyer in Buyer's reasonable discretion. Buyer shall

  apply for financing within five (5) days after the Effective Date hereof

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER**

Buyer (_____) (_____) and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

348  **ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL**
349  **REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER**
350  **REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF**
351  **THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
352  **GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE AND**
353  **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.**

354  Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
355  party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
356  terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
357  to do so.

358  _(Signature of Buyer)_                                    Date: _1-13-23_

      VBPS LLC
359  Vyacheslav Borshchukov, PA                               Tax ID No.: _38-4100752_
      _(Typed or Printed Name of Buyer)_

360  Title: _____                     Telephone: _305-308-6488_

361  _____                            Date: _____
      _(Signature of Buyer)_

362  _____                            Tax ID No.: _____
      _(Typed or Printed Name of Buyer)_

363  Title: _____                     Telephone: _____

364  Buyer's Address for purpose of notice _____

365  Facsimile: _____                 Email: _____

      DocuSigned by:
366  _kelly Galardi_                                           1/15/2023 | 1:34 PM PST
      _(Signature of Seller)_                                  Date: _____

367  506 Office, LLC by Kelly Galardi, Member                  Tax ID No.: _____
      _(Typed or Printed Name of Seller)_

368  Title: _____ Member _____                         Telephone: _____

369  _____                            Date: _____
      _(Signature of Seller)_

370  _____                            Tax ID No.: _____
      _(Typed or Printed Name of Seller)_

371  Title: _____                     Telephone: _____

372  Seller's Address for purpose of notice: _____   506 SE 11th Court, Fort Lauderdale, FL 33316

373  Facsimile: _____               Email: _____ julie@patburnside.com

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

                                              DS
                                              KG
Buyer _____ ) ( _____ ) and Seller _____ ) ( _____ ) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

CC-5   Rev 9/17                                                              ©2017 Florida Realtors®
Serial#: 011414-200167-3461355                                              ▤ Form
                                                                            ▤ Simplicity

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

VBPS LLC

      Plaintiff,

  v.

506 OFFICE, LLC,
TERI G. GALARDI, and,
KELLY GALARDI

      Defendants,

_____/

CASE NO:  CACE-23-002730

## **COMPLAINT**

Plaintiff, VBPS LLC ("VBPS"), by and through undersigned counsel, sues Defendants,

506 OFFICE, LLC, TERI G. GALARDI, and KELLY GALARDI (the "Defendants") and alleges

as follows:

### **PARTIES, JURISDICTION AND VENUE**

1.     This is an action by Plaintiff in equity for specific performance of a contract for

the sale of an office building located in Fort Lauderdale Florida, and, alternatively, for money

damages that exceed $50,000.00.

2.     VBPS LLC is a Florida registered limited liability company.

3.     Defendant 506 OFFICE, LLC is a Florida registered limited liability company.

4.     Defendant TERI G. GALARDI in an individual, who, upon information and

belief, resides in Flovilla, Georgia.

5.      Defendant Kelly Galardi is an individual, who, upon information and belief, is the manager of 506 Office, LLC incorporated in Florida.

6.      Venue is proper with this court as the real property at issue is located within Broward County and the acts giving rise to this action occurred in Broward County.

7.      All conditions precedent to the filing of this action have been met, have occurred, or have been waived.

## <u>GENERAL ALLEGATIONS</u>

8.      The Plaintiff and Defendant 506 Office LLC entered into a "As Is Commercial contract for Sale and Purchase executed January 15, 2023 (the "Contract"). A copy of the contract is attached as **Exhibit A**.

9.      Pursuant to the Contract, 506 Office LLC is obligated to sell an office building to VBPS LLC specifically, 504-506 SE 11th Court Fort Lauderdale, Florida 33316, ("office building").

10.      506 Office LLC is the entity that owns the office building located at 506 SE 11th Court Fort Lauderdale, Florida 33316.

11.      Kelly Galardi is the manager of 506 Office LLC according to the 2022 Florida Limited Liability Annual Report.

12.      Teri G. Galardi is the sole member and owner of 506 Office LLC.

13.      Teri G. Galardi ("Debtor") is currently in Chapter 11 Bankruptcy in the U.S Bankruptcy Court for the Middle District of Georgia under case number 22-50035-JPS.

14.      VBPS timely raised title defects to Defendant by advising Defendant that because Debtor was in bankruptcy, VBPS's title insurance company required an Order from the Bankruptcy Court authorizing the sale of the property.

15.     Pursuant to the terms of contract, Defendant was required to "use good faith efforts to cure title defects." See line 96 of the Contract.

16.     All that VBPS required of Defendant was to file a motion for authorization to sell the property and to have the necessary language included in the Order authorization the sale of the office building.

17.     The cure sought by VBPS was not novel. Teri G. Galardi ("Debtor") owns many properties. In order to pay her creditors, the Debtor has had to sell many of her properties during the bankruptcy proceedings. In each one of those real estate transactions, the Debtor has filed a motion for authorization to sell property. See motions and Orders attached as **Composite Exhibit 'B'**.

18.     In this case, Defendant refused to cure title and failed to act in good faith by failing to file a motion with the Bankruptcy court authorizing the sale of the property.

19.     Defendant did not want to cure title because there was a higher offer to be had for the same office building. This much was confirmed by Defendant's realtor when Defendant offered VBPS $10,000.00 to walk away from the contract. See email attached as **Exhibit "C".**

20.     Defendant's failure to act in good faith in curing title is a material breach of the contract.

21.     Pursuant to the contract, VBPS notified Defendant that Defendant was in default of the contract terms. Plaintiff provided the good faith opportunity for Defendant to cure their bad faith in their contractual failure to cure title. See notice of default attached as **Exhibit "D"**.

22.     The cure requested by VBPS was not novel but a necessary requirement that Defendant undertook to sell her other properties and is required to be filed with bankruptcy court when the seller of a property is in bankruptcy.

23.     Defendant initially agreed to file such a motion and relief requested by VBPS.

24.     Defendant also agreed to extend the closing period by 30 days to that such a motion could be filed in bankruptcy Court. See emails from Defendant's attorney attached as **Exhibit "E".**

25.     Defendant, however, never filed the motion seeking authorization to sell the property in bankruptcy court because Defendant had secured a backup offer contract for the sale of the office building for a higher amount than agreed to between VBPS and the Defendant.

26.     Defendant outright advised VBPS that Defendant would not cure. See email from Defendant's attorney attached as **Exhibit "F".**

27.     Pursuant to the Contract, the sale of the office building is to close on or before March 15, 2023.

28.     VBPS tendered the purchase price or such tender was executed by Defendants actions.

29.     Despite VBPS having complied with all of their obligations under the Contract, 506 Office has failed to cure title and has failed to act in good faith to cure title as required by the Contract.

30.     VBPS has demanded that Defendants perform its obligations under the Contract, and Defendants have failed to materially respond to such demands.

### <u>COUNT I – BREACH OF CONTRACT –</u>
### (SPECIFIC PERFORMANCE)
### [Against 506 Office, LLC, Teri G. Galardi and Kelly Galardi]

31.     Plaintiff realleges and reaffirms the allegations of Paragraphs 1 through 30.

32.     By failing to act in good faith and refusing to cure title and preventing a timely and proper closing on the sale of the office building, Defendants have breached the Contract.

33.     The Properties are unique and the damage and injury caused to VBPS are of such a nature that they cannot be adequately compensated by monetary damages.

34.     VBPS is entitled to specific performance of the Contract. There is no adequate remedy at law that would grant VBPS the relief being sought in this action.

35.     VBPS has fully performed his obligations under the Contract and applicable law.

36.     Upon information and belief, Defendants currently own the office building that is the subject of this action.

37.     The Contract provides for the recovery of attorneys' fees and costs by the prevailing party.

38.     VBPS has retained attorneys to represent him in this action and must pay a reasonable attorney's fee for, and costs related to those services.

WHEREFORE, Plaintiff respectfully demands (i) a decree directing Defendants to specifically perform its obligations under the Contract including (a) filing a motion with the bankruptcy Court for the authorization of the sale of the office building to VBPS LLC and (b) directing the bankruptcy Court to advise the parties as to where the sale proceeds shall be deposited and closing on the sale of the office building to VBPS within 10 days of the date of the decree, or, in the alternative, if specific performance is deemed unavailable or improper for any reason, entry of a judgement for money damages in an amount to be determined, (ii) his attorney's fees and costs incurred in respect of this action, and (iii) such other or further relief the Court deems proper.

## COUNT II- PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
### [Against 506 Office, LLC, Teri G. Galardi, and Kelly Galardi]

39.     Plaintiff realleges and reaffirms the allegations of Paragraphs 1 through 38.

40.     The office building is unique and the damage and injury caused to VBPS LLC are of such a nature that they cannot be adequately compensated by monetary damages.

41.     Plaintiff has no adequate remedy at law, and has a clear entitlement to specific performance of the Contract.

42.     The requested injunction would not be contrary to the interest of the public generally.

43.     Without an injunction prohibiting the Defendants from selling, transferring, or encumbering the office building in any way until the Court determines VBPS's entitlement to specific performance, VBPS faces the possibility of suffering irreparable damage and injury.

WHEREFORE, Plaintiff respectfully requests that this Court enter a preliminary injunction, thereafter made permanent, precluding the Defendants from selling, transferring, or in any way encumbering the office building until this matter has been resolved, and award Plaintiff his attorney's fees and costs incurred in bringing this action, and for such other and further relief as this Court deems just and proper.

## COUNT III – FRAUDULENT MISREPRESENTATION
### [Against 506 Office LLC, Teri G. Galardi, and Kelly Galardi]

44.      Plaintiff realleges and reaffirms the allegations of Paragraphs 1 through 43.

45.      At all times material prior to the parties into the contract, Defendants represented to VBPS that authorization from the bankruptcy court was not necessary to consummate the transaction because the bankruptcy proceedings had been resolved.

46.      In fact, Defendant did not even request approval from the bankruptcy court as a condition of sale in the contract. See sales contract for reference.

47.      Upon being notified by the Plaintiff's title insurance company that an order was necessary from the bankruptcy court to cure title, Defendants advised they would cure the title defects brought to their attention by seeking an order from the bankruptcy Court authorizing the sale of the property. See email from Defendants' attorney. See again Exhibit "E".

48.      Upon information and belief, the Defendants, despite entering into the Contract, did not perform such a representation, and at such time, did not intend to fulfill Defendant's obligations under the Contract to act in good faith in curing title. Defendants in fact reneged on their representation that they would seek an order from the bankruptcy court authorizing the sale of the office building to VBPS.

49.      The Defendants made the representations, and/or failed to make the disclosures with the intention of inducing VBPS to enter into the Contract.

50.      As a result of the Defendants' representations, and/or failure to make disclosures to VBPS, VBPS has suffered damages.

WHEREFORE, Plaintiff respectfully request entry of a judgement against the Defendants for money damages in the amount to be determined, including his attorney's fees and costs incurred in respect of this matter, and such other or further relief the Court deems proper.

Dated March 2, 2023

Respectfully submitted,

VYACHESLAV BORSHCHUKOV, P.A.
Attorneys for Plaintiff
514 SE 11th Court
Fort Lauderdale, FL 33316
Tel: (305) 503-5985
Fax: (305) 503-5986

By:  ____/s/ Slava Borshchukov____
      Vyacheslav Borshchukov, Esq.
      Florida Bar No.: 68274
      Slava@vb.legal

**Commercial Contract**



| | | | |
|---|---|---|---|
| 1 | 1. PARTIES AND PROPERTY: | VBPS, LLC | ("Buyer") |
| 2 | agrees to buy and | 506 Office, L L C | ("Seller") |

3  agrees to sell the property at:

4  Street Address: 506 SE 11th Ct #1-2, Fort Lauderdale, FL 33316-1146

5

6  Legal Description: LAUDERDALE 2-9 D LOT 5,6 E1/2 BLK 6

7

8  and the following Personal Property: all fixtures appurtenant to the land

9

10  (all collectively referred to as the "Property") on the terms and conditions set forth below.

11  **2. PURCHASE PRICE:**                                                            $        835,000.00

12      **(a)** Deposit held in escrow by: _____ Preferred Title , Inc c/o Mchael Shapiro        $     167,000.00
13                                              ("Escrow Agent") (checks are subject to actual and final collection)

14      Escrow Agent's address: _____ Phone: _____

15      **(b)** Additional deposit to be made to Escrow Agent
16      ☐ within ____ days (3 days, if left blank) after completion of Due Diligence Period or
17      ☐ within ____ days after Effective Date _____        $ _____

18      **(c)** Additional deposit to be made to Escrow Agent
19      ☐ within ____ days (3 days, if left blank) after completion of Due Diligence Period or
20      ☐ within ____ days after Effective Date                            $ _____

21      **(d)** Total financing (see Paragraph 5) _____    $    668,000.00

22      **(e)** Other _____                             $ _____

23      **(f)** All deposits will be credited to the purchase price at closing.
24      Balance to close, subject to adjustments and prorations, to be paid
25      via wire transfer.                                                  $    0.00

26  For the purposes of this paragraph, "completion" means the end of the Due Diligence Period or upon delivery of
27  Buyer's written notice of acceptability.

28  **3. TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME:** Unless this offer is signed by **Seller**
29  and **Buyer** and an executed copy delivered to all parties on or before _____ January 13, 2023 _____, this offer
30  will be withdrawn and the **Buyer's** deposit, if any, will be returned. The time for acceptance of any counter offer will be
31  3 days from the date the counter offer is delivered. **The "Effective Date" of this Contract is the date on which the**
32  **last one of the Seller and Buyer has signed or initialed and delivered this offer or the final counter offer** or
33  _____ January 13, 2023 _____. Calendar days will be used when computing time periods, except time periods of 5
34  days or less. Time periods of 5 days or less will be computed without including Saturday, Sunday, or national legal
35  holidays. Any time period ending on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. of the next
36  business day. **Time is of the essence in this Contract.**

37  **4. CLOSING DATE AND LOCATION:**
38      **(a) Closing Date:** This transaction will be closed on __March 15, 2023__ (Closing Date), unless
39      specifically extended by other provisions of this Contract. The Closing Date will prevail over all other time periods
40      including, but not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

41 on Closing Date and **Buyer** is unable to obtain property insurance, **Buyer** may postpone closing up to 5 days after
42 the insurance underwriting suspension is lifted.

43 **(b) Location:** Closing will take place in _____Broward_____ County, Florida. (If left blank, closing will take place in the
44 county where the property is located.) Closing may be conducted by mail or electronic means.

45 **5. THIRD PARTY FINANCING:**

46 ~~BUYER'S OBLIGATION:~~ On or before ___5___ days (5 days if left blank) after Effective Date, **Buyer** will apply for third
47 ~~party financing in an amount not to exceed~~ ___80%~~ of the purchase price or $640,000.00~~ ____, with a fixed
48 ~~interest rate not to exceed~~ ___5%~~ per year with an initial variable interest rate not to exceed~~ ___4%, with points or
49 ~~commitment or loan fees not to exceed~~ ___4%~~ of the principal amount, for a term of~~ ___20~~ years, and amortized~~
50 ~~over~~ ___20~~ years, with additional terms as follows:~~ See addendum , Paragraph 23 b

51 _____
52 **Buyer** will timely provide any and all credit, employment, financial and other information reasonably required by any
53 lender. **Buyer** will use good faith and reasonable diligence to (i) obtain Loan Approval within ___30___ days (45 days if left
54 blank) from Effective Date (Loan Approval Date), (ii) satisfy terms and conditions of the Loan Approval, and (iii) close
55 the loan. **Buyer** will keep **Seller** and Broker fully informed about loan application status and authorizes the mortgage
56 broker and lender to disclose all such information to **Seller** and Broker. **Buyer** will notify **Seller** immediately upon
57 obtaining financing or being rejected by a lender. **CANCELLATION:** If **Buyer**, after using good faith and reasonable
58 diligence, fails to obtain Loan Approval by Loan Approval Date, **Buyer** may within ___3___ days (3 days if left blank)
59 deliver written notice to **Seller** stating **Buyer** either waives this financing contingency or cancels this Contract.
60 If **Buyer** does neither, then **Seller** may cancel this Contract by delivering written notice to **Buyer** at any time thereafter.
61 Unless this financing contingency has been waived, this Contract shall remain subject to the satisfaction, by closing, of
62 those conditions of Loan Approval related to the Property. **DEPOSIT(S) (for purposes of Paragraph 5 only):** If **Buyer**
63 has used good faith and reasonable diligence but does not obtain Loan Approval by Loan Approval Date and
64 thereafter either party elects to cancel this Contract as set forth above or the lender fails or refuses to close on or
65 before the Closing Date without fault on **Buyer's** part, the Deposit(s) shall be returned to **Buyer**, whereupon both
66 parties will be released from all further obligations under this Contract, except for obligations stated herein as surviving
67 the termination of this Contract. If neither party elects to terminate this Contract as set forth above or **Buyer** fails to use
68 good faith or reasonable diligence as set forth above, **Seller** will be entitled to retain the Deposit(s) if the transaction
69 does not close. For purposes of this Contract, "Loan Approval" means a statement by the lender setting forth the terms
70 and conditions upon which the lender is willing to make a particular mortgage loan to a particular buyer. Neither a pre-
71 approval letter nor a prequalification letter shall be deemed a Loan Approval for purposes of this Contract.

72 **6. TITLE: Seller** has the legal capacity to and will convey marketable title to the Property by ☒ statutory warranty
73 deed ☐ special warranty deed ☐ other _____, free of liens, easements and
74 encumbrances of record or known to **Seller**, but subject to property taxes for the year of closing; covenants,
75 restrictions and public utility easements of record; existing zoning and governmental regulations; and (list any other
76 matters to which title will be subject) none _____

77 _____;
78 provided there exists at closing no violation of the foregoing and none of them prevents **Buyer's** intended use of the
79 Property as _____commercial office space_____.

80 **(a) Evidence of Title:** The party who pays the premium for the title insurance policy will select the closing agent
81 and pay for the title search and closing services. Buyer will, at (check one) ☐ **Seller's** ☒ **Buyer's** expense and
82 within _____ days after Effective Date or at least ___15___ days before Closing Date deliver to **Buyer** (check one)
83 ☒ (i) a title insurance commitment by a Florida licensed title insurer setting forth those matters to be discharged by
84 **Seller** at or before Closing and, upon **Buyer** recording the deed, an owner's policy in the amount of the purchase
85 price for fee simple title subject only to exceptions stated above. If **Buyer** is paying for the evidence of title and
86 **Seller** has an owner's policy, **Seller** will deliver a copy to **Buyer** within 15 days after Effective Date. ☐ (ii.) an
87 abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm.
88 However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable to the proposed
89 insurer as a base for reissuance of coverage may be used. The prior policy will include copies of all policy
90 exceptions and an update in a format acceptable to **Buyer** from the policy effective date and certified to **Buyer** or

**Buyer** (____) (____) and **Seller** (____) (____) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.

91 Buyer's closing agent together with copies of all documents recited in the prior policy and in the update. If such
92 an abstract or prior policy is not available to Seller then (i.) above will be the evidence of title.

93 (b) Title Examination: Buyer will, within 15 days from receipt of the evidence of title deliver written notice to Seller
94 of title defects. Title will be deemed acceptable to Buyer if (1) Buyer fails to deliver proper notice of defects or (2)
95 Buyer delivers proper written notice and Seller cures the defects within __5__ days from receipt of the notice
96 ("Curative Period"). Seller shall use good faith efforts to cure the defects. If the defects are cured within the
97 Curative Period, closing will occur on the latter of 10 days after receipt by Buyer of notice of such curing or the
98 scheduled Closing Date. Seller may elect not to cure defects if Seller reasonably believes any defect cannot be
99 cured within the Curative Period. If the defects are not cured within the Curative Period, Buyer will have 10 days
100 from receipt of notice of Seller's inability to cure the defects to elect whether to terminate this Contract or accept
101 title subject to existing defects and close the transaction without reduction in purchase price.

102 (c) Survey: (check applicable provisions below)
103      ☐ Seller will, within _____ days from Effective Date, deliver to Buyer copies of prior surveys,
104      plans, specifications, and engineering documents, if any, and the following documents relevant to this
105      transaction:
106      _____
107      prepared for Seller or in Seller's possession, which show all currently existing structures. In the event this
108      transaction does not close, all documents provided by Seller will be returned to Seller within 10 days from the
109      date this Contract is terminated.
110      ☒ Buyer will, at ☐ Seller's ☒ Buyer's expense and within the time period allowed to deliver and examine
111      title evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
112      encroachments on the Property or that the improvements encroach on the lands of another, ☒ Buyer will
113      accept the Property with existing encroachments ☐ such encroachments will constitute a title defect to be
114      cured within the Curative Period.

115 (d) Ingress and Egress: Seller warrants that the Property presently has ingress and egress.

116 7. PROPERTY CONDITION: Seller will deliver the Property to Buyer at the time agreed in its present "as is" condition,
117 ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. Seller
118 makes no warranties other than marketability of title. In the event that the condition of the Property has materially
119 changed since the expiration of the Due Diligence Period, Buyer may elect to terminate the Contract and receive a
120 refund of any and all deposits paid, plus interest, if applicable, or require Seller to return the Property to the required
121 condition existing as of the end of Due Diligence period, the cost of which is not to exceed $1,000.00 _____ (1.5% of
122 the purchase price, if left blank). By accepting the Property "as is", Buyer waives all claims against Seller for any
123 defects in the Property. (Check (a) or (b))

124      ☐ (a) As Is: Buyer has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
125      condition.

126      ☒ (b) Due Diligence Period: Buyer will, at Buyer's expense and within __30__ days from Effective Date ("Due
127      Diligence Period"), determine whether the Property is suitable, in Buyer's sole and absolute discretion. During the
128      term of this Contract, Buyer may conduct any tests, analyses, surveys and investigations ("Inspections") which
129      Buyer deems necessary to determine to Buyer's satisfaction the Property's engineering, architectural,
130      environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision
131      regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local,
132      state and regional growth management and comprehensive land use plans; availability of permits, government
133      approvals and licenses; compliance with American with Disabilities Act; absence of asbestos, soil and ground
134      water contamination; and other inspections that Buyer deems appropriate. Buyer will deliver written notice to
135      Seller prior to the expiration of the Due Diligence Period of Buyer's determination of whether or not the Property
136      is acceptable. Buyer's failure to comply with this notice requirement will constitute acceptance of the Property in
137      its present "as is" condition. Seller grants to Buyer, its agents, contractors and assigns, the right to enter the
138      Property at any time during the term of this Contract for the purpose of conducting Inspections, upon reasonable
139      notice, at a mutually agreed upon time; provided, however, that Buyer, its agents, contractors and assigns enter
140      the Property and conduct Inspections at their own risk. Buyer will indemnify and hold Seller harmless from
141      losses, damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from
142      liability to any person, arising from the conduct of any and all inspections or any work authorized by Buyer. Buyer
143      will not engage in any activity that could result in a mechanic's lien being filed against the Property without
144      Seller's prior written consent. In the event this transaction does not close, (1) Buyer will repair all damages to the

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

©2017 Florida Realtors®
Form Simplicity

145 Property resulting from the Inspections and return the Property to the condition it was in prior to conduct of the
146 Inspections, and (2) **Buyer** will, at **Buyer's** expense release to **Seller** all reports and other work generated as a
147 result of the Inspections. Should **Buyer** deliver timely notice that the Property is not acceptable, **Seller** agrees that
148 **Buyer's** deposit will be immediately returned to **Buyer** and the Contract terminated.

149 **(c) Walk-through Inspection: Buyer** may, on the day prior to closing or any other time mutually agreeable to the
150 parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and
151 to ensure that all Property is on the premises.

152 **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD: Seller** will continue to operate the Property and any
153 business conducted on the Property in the manner operated prior to Contract and will take no action that would
154 adversely impact the Property after closing, as to tenants, lenders or business, if any. Any changes, such as renting
155 vacant space, that materially affect the Property or **Buyer's** intended use of the Property will be permitted [x] only with
156 **Buyer's** consent ☐ without **Buyer's** consent.

157 **9. CLOSING PROCEDURE:** Unless otherwise agreed or stated herein, closing procedure shall be in accordance with
158 the norms where the Property is located.

159 **(a) Possession and Occupancy: Seller** will deliver possession and occupancy of the Property to **Buyer** at
160 closing. **Seller** will provide keys, remote controls, and any security/access codes necessary to operate all locks,
161 mailboxes, and security systems.

162 **(b) Costs: Buyer** will pay **Buyer's** attorneys' fees, taxes and recording fees on notes, mortgages and financing
163 statements and recording fees for the deed. **Seller** will pay **Seller's** attorneys' fees, taxes on the deed and
164 recording fees for documents needed to cure title defects. If **Seller** is obligated to discharge any encumbrance at or
165 prior to closing and fails to do so, **Buyer** may use purchase proceeds to satisfy the encumbrances.

166 **(c) Documents: Seller** will provide the deed; bill of sale; mechanic's lien affidavit; originals of those assignable
167 service and maintenance contracts that will be assumed by **Buyer** after the Closing Date and letters to each
168 service contractor from **Seller** advising each of them of the sale of the Property and, if applicable, the transfer of its
169 contract, and any assignable warranties or guarantees received or held by **Seller** from any manufacturer,
170 contractor, subcontractor, or material supplier in connection with the Property; current copies of the condominium
171 documents, if applicable; assignments of leases, updated rent roll; tenant and lender estoppels letters (if
172 applicable); tenant subordination, non-disturbance and attornment agreements (SNDAs) required by the **Buyer** or
173 **Buyer's** lender; assignments of permits and licenses; corrective instruments; and letters notifying tenants of the
174 change in ownership/rental agent. If any tenant refuses to execute an estoppels letter, **Seller**, if requested by the
175 **Buyer** in writing, will certify that information regarding the tenant's lease is correct. If **Seller** is an entity, **Seller** will
176 deliver a resolution of its governing authority authorizing the sale and delivery of the deed and certification by the
177 appropriate party certifying the resolution and setting forth facts showing the conveyance conforms to the
178 requirements of local law. **Seller** will transfer security deposits to **Buyer**. **Buyer** will provide the closing statement,
179 mortgages and notes, security agreements, and financing statements.

180 **(d) Taxes and Prorations:** Real estate taxes, personal property taxes on any tangible personal property, bond
181 payments assumed by **Buyer**, interest, rents (based on actual collected rents), association dues, insurance
182 premiums acceptable to **Buyer**, and operating expenses will be prorated through the day before closing. If the
183 amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due
184 allowance being made for improvements and exemptions. Any tax proration based on an estimate will, at request
185 of either party, be readjusted upon receipt of current year's tax bill; this provision will survive closing.

186 **(e) Special Assessment Liens:** Certified, confirmed, and ratified special assessment liens as of the Closing Date
187 will be paid by **Seller**. If a certified, confirmed, and ratified special assessment is payable in installments, **Seller** will
188 pay all installments due and payable on or before the Closing Date, with any installment for any period extending
189 beyond the Closing Date prorated, and **Buyer** will assume all installments that become due and payable after the
190 Closing Date. **Buyer** will be responsible for all assessments of any kind which become due and owing after Closing
191 Date, unless an improvement is substantially completed as of Closing Date. If an improvement is substantially
192 completed as of the Closing Date but has not resulted in a lien before closing, **Seller** will pay the amount of the last
193 estimate of the assessment. This subsection applies to special assessment liens imposed by a public body and
194 does not apply to condominium association special assessments.

195 **(f) Foreign Investment in Real Property Tax Act (FIRPTA):** If **Seller** is a "foreign person" as defined by FIRPTA,
196 **Seller** and **Buyer** agree to comply with Section 1445 of the Internal Revenue Code. **Seller** and **Buyer** will
197 complete, execute, and deliver as directed any instrument, affidavit, or statement reasonably necessary to comply

Buyer (    ) (    ) and Seller (    ) (    ) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.

Serial#: 011414-200167-3461355

©2017 Florida Realtors®

Form
Simplicity

198 with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or
199 Social Security Numbers to the closing agent. If **Buyer** does not pay sufficient cash at closing to meet the
200 withholding requirement, **Seller** will deliver to **Buyer** at closing the additional cash necessary to satisfy the
201 requirement.

202 **10. ESCROW AGENT: Seller** and **Buyer** authorize Escrow Agent or Closing Agent (collectively "Agent") to receive,
203 deposit, and hold funds and other property in escrow and, subject to collection, disburse them in accordance with the
204 terms of this Contract. The parties agree that Agent will not be liable to any person for misdelivery of escrowed items to
205 **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful breach of this Contract or gross negligence. If Agent
206 has doubt as to Agent's duties or obligations under this Contract, Agent may, at Agent's option, (a) hold the escrowed
207 items until the parties mutually agree to its disbursement or until a court of competent jurisdiction or arbitrator
208 determines the rights of the parties or (b) deposit the escrowed items with the clerk of the court having jurisdiction over
209 the matter and file an action in interpleader. Upon notifying the parties of such action, Agent will be released from all
210 liability except for the duty to account for items previously delivered out of escrow. If Agent is a licensed real estate
211 broker, Agent will comply with Chapter 475, Florida Statutes. In any suit in which Agent interpleads the escrowed items
212 or is made a party because of acting as Agent hereunder, Agent will recover reasonable attorney's fees and costs
213 incurred, with these amounts to be paid from and out of the escrowed items and charged and awarded as court costs
214 in favor of the prevailing party.

215 **11. CURE PERIOD:** Prior to any claim for default being made, a party will have an opportunity to cure any alleged
216 default. If a party fails to comply with any provision of this Contract, the other party will deliver written notice to the non-
217 complying party specifying the non-compliance. The non-complying party will have _____ days (5 days if left blank) after
218 delivery of such notice to cure the non-compliance. Notice and cure shall not apply to failure to close.

219 **12. FORCE MAJEURE: Buyer** or **Seller** shall not be required to perform any obligation under this Contract or be liable
220 to each other for damages so long as performance or non-performance of the obligation, or the availability of services,
221 insurance, or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force Majeure.
222 "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God, unusual
223 transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the
224 non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will
225 be extended a reasonable time up to 7 days after the Force Majeure no longer prevents performance under this
226 Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than
227 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other
228 and the Deposit shall be refunded to **Buyer**, thereby releasing **Buyer** and **Seller** from all further obligations under this Contract.

229 **13. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is
230 not met and **Buyer** has timely given any required notice regarding the condition having not been met, **Buyer's** deposit
231 will be returned in accordance with applicable Florida Laws and regulations.

232 **14. DEFAULT:**
233 (a) In the event the sale is not closed due to any default or failure on the part of **Seller** other than failure to make
234 the title marketable after diligent effort, **Buyer** may elect to receive return of Buyer's deposit without thereby
235 waiving any action for damages resulting from Seller's breach and may seek to recover such damages or seek
236 specific performance. If Buyer elects a deposit refund, Seller may be liable to Broker for the full amount of the
237 brokerage fee.
238 (b) In the event the sale is not closed due to any default or failure on the part of **Buyer**, **Seller** may either (1)
239 retain all deposit(s) paid or agreed to be paid by **Buyer** as agreed upon liquidated damages, consideration for the
240 execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek
241 specific performance. If **Buyer** fails to timely place a deposit as required by this Contract, **Seller** may either (1)
242 terminate the Contract and seek the remedy outlined in this subparagraph or (2) proceed with the Contract without
243 waiving any remedy for **Buyer's** default.

244 **15. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the
245 prevailing party, which for purposes of this provision will include **Buyer**, **Seller** and Broker, will be awarded reasonable
246 attorneys' fees, costs, and expenses.

247 **16. NOTICES:** All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or
248 electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice,
249 document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker)
250 representing a party will be as effective as if given by or delivered to that party.

**Buyer** (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.

CC-5   Rev 9/17
Serial#: 011414-200167-3461355


©2017 Florida Realtors®

**17. DISCLOSURES:**

**(a) Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of commercial real estate for any commission earned by the broker under a brokerage agreement. The lien upon the owner's net proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not attach to any interest in real property. This lien right cannot be waived before the commission is earned.

**(b) Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such liens, if any, shall be paid as set forth in Paragraph 9(e).

**(c) Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**(d) Energy-Efficiency Rating Information: Buyer** acknowledges receipt of the information brochure required by Section 553.996, Florida Statutes.

**18. RISK OF LOSS:**

**(a)** If, after the Effective Date and before closing, the Property is damaged by fire or other casualty, **Seller** will bear the risk of loss and **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing the Property at the agreed upon purchase price and **Seller** will credit the deductible, if any and transfer to **Buyer** at closing any insurance proceeds, or **Seller's** claim to any insurance proceeds payable for the damage. **Seller** will cooperate with and assist **Buyer** in collecting any such proceeds. **Seller** shall not settle any insurance claim for damage caused by casualty without the consent of the **Buyer**.

**(b)** If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the right of eminent domain, or proceedings for such taking will be pending or threatened, **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing what is left of the Property at the agreed upon purchase price and **Seller** will transfer to the **Buyer** at closing the proceeds of any award, or **Seller's** claim to any award payable for the taking. **Seller** will cooperate with and assist **Buyer** in collecting any such award.

**19. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☒ is not assignable ☐ is assignable. If this Contract may be assigned, **Buyer** shall deliver a copy of the assignment agreement to the **Seller** at least 5 days prior to Closing. The terms **"Buyer, " "Seller"** and "Broker" may be singular or plural. This Contract is binding upon **Buyer, Seller** and their heirs, personal representatives, successors and assigns (if assignment is permitted).

**20. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller**. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records.

**21. BROKERS:** Neither **Seller** nor **Buyer** has used the services of, or for any other reason owes compensation to, a licensed real estate Broker other than:
**(a) Seller's Broker:** _____ Patricia Burnside Realty
_____ (Company Name) _____
2455 Hollywod Blvd. Ste 311, Hollywood,  3055959522  9549620051 (Licensee)  pat@patburnside.com
_____ (Address, Telephone, Fax, E-mail) _____
who ☐ is a single agent ☒ is a transaction broker ☐ has no brokerage relationship and who will be compensated by ☒ Seller ☐ Buyer ☐ both parties pursuant to ☐ a listing agreement ☐ other (specify) _____

**(b) Buyer's Broker:** _____ Kozin Commerical Properties, Inc. _____ Brad Kozin
_____ (Company Name) _____
3350 NW 22nd Ter, Ste 100,  Pompano Beach  FL, 33069 (Licensee)  954-973-2122
_____ DS (Address, Telephone, Fax, E-mail) _____

Buyer ( ) ( ) and Seller ( ) ( ) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

CC-5   Rev 9/17
Serial#: 011414-200167-3461355

©2017 Florida Realtors®
Form
Simplicity

302 who ☐ is a single agent ☒ is a transaction broker ☐ has no brokerage relationship and who will be compensated by
303 ☒ Seller's Broker ☐ Seller ☐ Buyer ☐ both parties pursuant to ☐ an MLS offer of compensation ☐ other (specify)
304

305 (collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to
306 inquiries, introductions, consultations, and negotiations resulting in this transaction. **Seller** and **Buyer** agree to
307 indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including
308 reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is
309 inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to
310 Paragraph 10, (3) any duty accepted by Broker at the request of **Seller** or **Buyer**, which is beyond the scope of
311 services regulated by Chapter 475, Florida Statutes, as amended, or (4) recommendations of or services provided and
312 expenses incurred by any third party whom Broker refers, recommends, or retains for or on behalf of **Seller** or **Buyer**.

313 **22. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to
314 this Contract):
315 ☐ (A) Arbitration            ☐ (E) Seller Warranty                  ☐ (I) Existing Mortgage
316 ☐ (B) Section 1031 Exchange  ☐ (F) Coastal Construction Control Li  ☐ (J) Buyer's Attorney Approval
317 ☐ (C) Property Inspection and Repair ☐ (G) Flood Area Hazard Zone   ☐ (K) Seller's Attorney Approval
318 ☐ (D) Seller Representations  ☐ (H) Seller Financing                ☐ Other _____

319 **23. ADDITIONAL TERMS:**
320 The property is being offered as-is with no representations concerning habitability or use.
321 b) This transaction shall be contingent upon Buyer obtaining third party financing in an amount not less
322 than $640,000.00 on term and conditions acceptable to Buyer in Buyer's reasonable discretion. Buyer shall
323 apply for financing within five (5) days after the Effective Date hereof
324
325
326
327
328
329
330
331
332
333
334
335
336
337
338
339
340
341

342 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
343 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL**
344 **FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE**
345 **PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE**
346 **EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR**
347 **REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER**

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

348 **ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL**
349 **REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER**
350 **REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF**
351 **THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
352 **GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE AND**
353 **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.**

354 Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
355 party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
356 terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
357 to do so.

358 _____ Date: _1-13-23_
(Signature of Buyer)  VBPS LLC

359 _Vyacheslav Borshchukov, PA_ Tax ID No.: _38-4100752_
(Typed or Printed Name of Buyer)

360 Title: _____ Telephone: _305-308-6488_

361 _____ Date: _____
(Signature of Buyer)

362 _____ Tax ID No.: _____
(Typed or Printed Name of Buyer)

363 Title: _____ Telephone: _____

364 Buyer's Address for purpose of notice _____

365 Facsimile: _____ Email: _____

DocuSigned by:
366 _kelly Galardi_ Date: _1/15/2023 | 1:34 PM PST_
(Signature of Seller)

367 _506 Office, LLC by Kelly Galardi, Member_ Tax ID No.: _____
(Typed or Printed Name of Seller)

368 Title: _____ Member _____ Telephone: _____

369 _____ Date: _____
(Signature of Seller)

370 _____ Tax ID No.: _____
(Typed or Printed Name of Seller)

371 Title: _____ Telephone: _____

372 Seller's Address for purpose of notice: _506 SE 11th Court, Fort Lauderdale, FL 33316_

373 Facsimile: _____ Email: _julie@patburnside.com_

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Buyer (____)(____) and Seller (____)(____) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

CC-5   Rev 9/17
Serial#: 011414-200167-3461355

©2017 Florida Realtors®
Form Simplicity

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 11** |
| | ) | |
| **TERI G. GALARDI,** | ) | |
| | ) | **CASE NO.  22-50035-JPS** |
| **Debtor,** | ) | |
| | ) | |

## MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY LOCATED AT ROYAL HAMMOCK, NAPLES, FLORIDA

COMES NOW Teri G. Galardi ("Debtor") and files this *Motion for Authorization to Sell Real Property located at Royal Hammock, Naples, Florida* (the "Motion"). In support of the Motion, Debtor shows the Court as follows:

1.

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The Statutory predicate for the relief requested herein is 11 U.S.C. §§ 105 and 363 and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

2.

On January 12, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11, Subchapter V of the United States Bankruptcy Code. On March 31, 2022, a Consent Order was entered by the Court allowing the Debtor to Proceed under other applicable provisions of Chapter 11, other than Subchapter V. The Debtor is continuing to manage her affairs as a Debtor-in-Possession under §§ 1107(a) and 1108 of the Bankruptcy Code.

3.

Debtor, through her majority ownership interest in Jack E. Galardi, LLC, owns real property located at Royal Palm Golf Estates, Royal Hammock, Naples, Florida (the "Real Property"), specifically Replat #3, Tract B. Jack E. Galardi, LLC is currently owned 60% by the Debtor and 40% by her son Darrell Galardi. Darrell Galardi will receive none of the proceeds from this sale and all net proceeds will be held by Debtor's counsel in the escrow account.

4.

Dieter Huebl and Neal Meade (the "Buyer") have made an offer to purchase the Real Property. A copy of the Contract for the Purchase and Sale Agreement is (the "Agreement") attached hereto as **Exhibit A**.

5.

As set forth in the Agreement, Buyer's offer encompasses paying $830,000.00 for the Real Property (the "Purchase Price") to be paid as follows: (1) $10,000.00 earnest money to be paid seven (7) business days after the Agreement date and deposited into escrow; (2) balance of $820,000.00 to be paid at closing.

6.

Debtor believes that the Agreement represents the highest and best offer available and that the Purchase Price represents the true value of the Real Property.

7.

Upon approval of the sale motion, and consideration paid Jack E. Galardi, LLC shall transfer it to Buyer upon payment of the purchase price.

2

8.

Citizens Title Agency, LLC, will acting as the Escrow Agent in this transaction.  The
Escrow Agent is only authorized to receive and accept earnest money in accordance with the
terms and conditions of the Agreement.

9.

The Agreement is contingent on and subject to approval by the Bankruptcy Court.  The
sale is not authorized unless and until a final order is entered in this bankruptcy case.

10.

The Real Property is subject of a loan and security deed from Jack Galardi, LLC, in favor
of Power Financial Credit Union (the "Credit Union"). The Credit Union has filed a proof of
claim alleging Debtor is a guarantor of this debt, Claim No. 96 in the amount of $2,169,417.26.
The Credit Union has advised through counsel it would release its interest in this Real Property
for a payment of $250,000.00.[1] The loan is current and being paid by Galardi Eagle Lakes, LLC[2]
the operator of a golf course. Jack Galardi, LLC owns the Real Property, the golf course real
property and a residential house situated in the golf course community. Pro rata real estate taxes
and other normal and customary closes costs will be paid at closing along with the real estate
commission of 7% to Pat Burnside Realty.

11.

The Real Property will be sold to Buyer "As Is-Where Is" with no warranties or
representations.

---

[1] James D. Silver represents the Credit Union.
[2] Debtor is the sole member of Galardi Eagle Lakes, LLC.

3

## RELIEF REQUESTED

12.

Debtor requests authority to sell the Real Property as described herein free and clear of liens, claims, encumbrances, and interests for the Purchase Price. Additionally, Debtor requests permission to (i) disburse the Purchase Price as provided herein with liens attaching to the Sales Proceeds to the same validity and priority as existed on the filing date; and (ii) take such action as necessary to effectuate the terms of the Agreement. Debtor requests that: (a) the Court waive any stay pursuant to Bankruptcy Rule 6004 or otherwise; and (b) any order approving the sale of the Real Property be effective immediately upon entry.

## PROPOSED DISTIBUTION OF SALE PROCEEDS

13.

Debtor requests that it be authorized to use and distribute the Sales Proceeds as follows:

(a) Payment of all customary closing costs, if any; and

(b) Payment of real estate commission, which is 7%, to be paid to Patricia Burnside Realty ("Broker"); and

(c) All net proceeds to be used to fund the Debtor's Chapter 11 Bankruptcy Case and Plan[3].

## TRANSACTION IS IN THE BEST INTEREST OF THE ESTATE

14.

Buyer has made an offer to purchase the Real Property. Debtor believes the proposal represents the highest and best offer.

---

[3] Net proceeds of the sale shall be placed into Debtor's counsel's the escrow account.

## BASIS FOR RELIEF

15.

A debtor in possession may sell property under Section 363(f) of the Bankruptcy Code "free and clear of any interest in such property of any entity other than the estate" if any one of the following conditions is satisfied: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  11 U.S.C. §363(f). Debtor anticipates that one or more of these requirements will be satisfied.

16.

Buyer does not have a familial relationship to Debtor.  Buyer is not an "affiliate" or "insider" of Debtor.  Upon information and belief, Debtor shows that the proposed Buyer is a "good faith" purchaser.  Debtor requests that the Court find such Buyer to be a good faith purchaser pursuant to the provisions of Section 363(m) of the Bankruptcy Code.

17.

Buyer has indicated its interest in proceeding under the Agreement as soon as possible.

18.

Debtor requests that the Court waive any stay of the effectiveness of any order granting the Motion and approving the sale under Bankruptcy Rule 6004.

WHEREFORE, for all of the foregoing reasons, Debtor moves the Court to enter an Order:

(a) Granting the Motion and approving the sale free and clear of all liens;

(b) Authorizing the distribution of the Sale Proceeds as provided herein;

    (c) Waiving the stay of such Order pursuant to Bankruptcy Rule 6004 or any rule of

        similar import and making the Order effective upon its entry; and

    (d) Granting the Debtor such other and further relief as may be just and proper.

Respectfully submitted,

**McBRYAN, LLC**

/s/Louis G. McBryan
Louis G. McBryan, Georgia Bar No. 480993
6849 Peachtree Dunwoody Rd
Building B-3, Suite 100
Atlanta, GA 30328
Telephone (678) 733-9322
Fax (678)498-2709
lmcbryan@mcbryanlaw.com
**Attorneys for Debtor**



# SALES CONTRACT
# (RESIDENTIAL VACANT LAND)



SELLER: _____ Jack E Galardi LLC _____

BUYER: _____ Dieter Huebl _____

SELLER: _____

BUYER: _____ Neal Meade _____

ADDRESS: _____ 2555 Chantilly Dr Ne _____

ADDRESS: _____ 2826 SW 39th Ter _____

_____ Atlanta, GA _____

_____ Cape Coral, FL, 33914 _____

1  UPON ACCEPTANCE OF THE OFFER OR COUNTEROFFER. SELLER has agreed to sell and BUYER has agreed to buy. UPON THE
2  FOLLOWING TERMS AND CONDITIONS, the real property legally described as ("Property"): ROYAL PALM GOLF ESTATES
3  REPLAT #3 TRACT B _____ County, Florida.
4  If applicable, SELLER shall convey SELLER's exclusive right to use any common elements and common areas to which SELLER has an
5  exclusive right of use and the right to convey.
6  The address of the Property is: _____  Royal Hammock NAPLES, FL 34114

7  1.  PURCHASE PRICE: The purchase price (U.S. currency) shall be payable as follows: —————$ | **830,000**
8     A.  Initial Deposit to be held in escrow ————————————————————$ | **10,000**
9        [SELECT ONE. IF NO SELECTION IS MADE, ACCOMPANIES OFFER SHALL APPLY.]
10       ☐ accompanies offer  ☐ is due on the Effective Date  ☒ is due not later than   **7**   days after Effective Date.
11    B.  Additional Deposit to be received in escrow not later than _____ days after the
12       Effective Date, in the amount of————————————————————$ 
13    C.  Proceeds of mortgage, if any [See Paragraph 4.B.] ————————————$ 
14    D.  Proceeds of SELLER mortgage, if any [see Paragraph 4.C.] ——————$ 
15    E.  Other: ————————————————————————————— $ 
16    F.  Balance of the purchase price, payable from BUYER to closing agent at closing,
17       subject to adjustments and prorations, of approximately —— ————— $ | **820,000.00**
18       Closing funds and all deposit funds tendered to the closing agent within 15 days prior to closing shall be paid by wire transfer. All
19       international funds shall be paid by wire transfer. All deposits are subject to collection.

20  2.  PERIOD OF OFFER AND COUNTEROFFER; EFFECTIVE DATE: This offer is revoked if not accepted, and the signed offer delivered to
21    offeror, by _____ ☐ AM ☐ PM on _____ **SEE TERMS** _____ {Insert Date}. Any counteroffer is revoked if not accepted
22    and the signed counteroffer delivered to counterofferor not later than _____ days [2 days if left blank] after delivery of the counteroffer. The
23    Effective Date of this Contract shall be the last date either SELLER or BUYER signs or initials this Contract. ALL CHANGES TO THE OFFER
24    OR COUNTEROFFER MUST BE INITIALED AND DATED. THE LATEST DATE SET FORTH ON THIS CONTRACT BY EITHER PARTY'S
25    SIGNATURE OR INITIALS SHALL BE THE EFFECTIVE DATE.

26  3.  CLOSING DATE; TIME OF THE ESSENCE; CLOSING LOCATION; CLOSING AGENT; POSSESSION: Closing shall occur on
27    _____ **2022-12-15** _____ {Insert Date}, (the "Closing Date"). **Time is of the essence as to the Closing Date.** Closing shall
28    occur in the county where the Property is located, at an office designated by the closing agent, who shall be selected by BUYER. BUYER shall
29    be the legal owner of the Property as of the closing, and SELLER shall vacate and give possession of the Property at the closing. SELLER shall
30    leave the entire Property free of debris.

31  4.  METHOD OF PAYMENT [SELECT ONE. IF NO SELECTION IS MADE, A. SHALL APPLY]: ☒ A. CASH/FINANCING WITHOUT
32    CONTINGENCY: BUYER will pay cash, but may obtain a loan for the purchase of the Property; however, there is no financing contingency. If BUYER
33    elects to finance BUYER's purchase of the Property through a creditor/lender, BUYER shall be required to timely perform all BUYER's
34    obligations under the Contract and to close on the Closing Date, notwithstanding any terms and conditions imposed by BUYER's

35 **creditor/lender and/or any applicable disclosure, delivery and compliance requirements of the Consumer Financial Protection Bureau**
36 **Integrated Mortgage Disclosure Rule ("CFPB Rule");** ☐ **B. FINANCING CONTINGENCY:** Subject to the provisions of this paragraph, BUYER's
37 obligation to purchase the Property is contingent upon BUYER obtaining a loan, unless waived by BUYER as set forth below, in the amount shown
38 in 1.C. above, to be secured by a mortgage on the Property at **[IF NO SELECTIONS ARE MADE, (1) SHALL APPLY]:** ☐ (1) Conventional
39 ☐ (2) VA ☐ (3) FHA ☐ (4) Other_____. **[If VA OR FHA, The "Addendum to Sales Contract VA/FHA**
40 **Financing" should be attached hereto and made a part hereof], at** ☐ (1) an initial or ☐ (2) fixed rate of interest not exceeding _____ %
41 per year, for an amortized term of _____ years [30 years if left blank]. BUYER shall make loan application as defined in the CFPB Rule ("Loan
42 Application") not later than _____ days after the Effective Date [5 days if left blank], and shall make a continuing good faith and diligent effort
43 to obtain said loan and comply with all applicable requirements of the creditor/lender and CFPB Rule relating to the loan process. If BUYER fails
44 to waive this financing contingency on or before _____ {Insert Date} [45 days after the Effective Date if left
45 blank], either SELLER or BUYER may terminate this Contract at any time. BUYER's termination under this contingency must be accompanied
46 by either (i) an Equal Credit Opportunity Act statement of adverse credit action issued by a creditor/lender confirming that mortgage financing on
47 the terms set forth in this Contract was denied on grounds that either the Property was unacceptable to the creditor/lender or the BUYER
48 financially failed to qualify for said financing terms, or (ii) other evidence from the creditor/lender that BUYER has made Loan Application and
49 made diligent and good faith efforts to meet all applicable requirements of the creditor/lender and the CFPB Rule, but has received neither loan
50 approval nor loan denial from the creditor/lender. SELLER's right to terminate shall cease to exist if BUYER waives this financing contingency
51 prior to SELLER giving BUYER notice of termination. **IF BUYER WAIVES THIS CONTINGENCY AND IS UNABLE TO CLOSE ON THE**
52 **CLOSING DATE DUE TO A DELAY CAUSED SOLELY BY THE CREDITOR/LENDER AND/OR NECESSITATED BY THE CFPB RULE,**
53 **BUYER MAY EXTEND THE CLOSING DATE UP TO 10 DAYS FOR CFPB RULE COMPLIANCE AND TO ACCOMMODATE RECEIPT AND**
54 **EXECUTION OF THE LOAN PACKAGE AND LOAN FUNDING. Delivery of documentation evidencing loan commitment or loan approval**
55 **shall not constitute a waiver of the financing contingency. BUYER acknowledges that once BUYER waives this financing contingency,**
56 **BUYER's deposit monies are no longer refundable under this Paragraph 4.** ☐ **C. SELLER FINANCING.** The "Addendum to Sales Contract
57 Seller Financing" is attached hereto and made a part hereof.

58 **5.    CDD/MSTU SPECIAL TAX DISTRICTS:** The Property ☐ is ☒ is not located within a Community Development District (CDD) or Municipal
59 Service or Benefit Taxing Unit (MSTU). BUYER will at closing assume any outstanding capital assessment balance. **If the Property is located**
60 **within a CDD or MSTU, and if there is any outstanding capital balance, BUYER should not execute this Contract until BUYER has**
61 **received and signed the "CDD/MSTU Assessments Disclosure" or similar written disclosure from SELLER setting forth the**
62 **approximate outstanding capital assessment balance, which BUYER will assume at closing.**

63 **6.    CONDOMINIUM/HOMEOWNERS' ASSOCIATION AND GOVERNMENTALLY IMPOSED LIENS AND SPECIAL ASSESSMENTS.**
64 SELLER shall pay the full amount of condominium/homeowners' association special assessments and governmentally imposed liens or special
65 assessments (other than CDD/MSTU assessments which are addressed in Paragraph 5), which, on or before the Effective Date, are a lien or a
66 special assessment that is certain as to (a) the identity of the lienor or assessor, and (b) the property subject to the lien or special assessment,
67 and (c) the amount of the lien or special assessment. If, as of the Effective Date, there are any pending liens or special assessments (liens or
68 special assessments other than those described above) which are not SELLER's obligation as set forth above and which were not disclosed in
69 writing to BUYER by SELLER prior to or concurrent with the execution of this Contract, and which exceed 1% of the purchase price, BUYER
70 may terminate this Contract, unless SELLER agrees in writing to pay the portion of such pending liens or special assessments in excess of 1%
71 of the purchase price, and SELLER agrees to pay into escrow at closing a reasonable sum to insure that the excess will be paid.

72 **7.    EXISTING LEASES WITH POST-CLOSING OCCUPANCY.** ☐ If this box is checked, the Property is subject to one or more leases and/or
73 rental agreements (collectively "Leases") in effect as of the Effective Date with occupancy occurring after the closing. SELLER shall deliver
74 complete information regarding the terms of said Leases and copies of all written Leases (collectively the Lease Information") to BUYER not later
75 than 5 days after the Effective Date. BUYER shall have 5 days after receipt of the Lease Information to review the same, and may terminate this
76 Contract not later than 5 days after receipt of the Lease Information, if in BUYER's sole discretion the Lease Information is unacceptable. If
77 SELLER fails to timely deliver the Lease Information, BUYER may terminate this Contract not later than 10 days after the Effective Date.

78 **8.    DUE DILIGENCE; WAIVER: [SELECT ONE. IF NO SELECTION IS MADE, A. SHALL APPLY]:** ☒ **A. DUE DILIGENCE:** BUYER reserves
79 the right to conduct the Inspections provided for in Standard D.2. of this Contract, not later than ___90___ days after the Effective Date [60 days
80 if left blank] (the "Due Diligence Period") to determine whether the Property is suitable, in BUYER's sole discretion, for BUYER's intended use;

81 or ☐ **B. WAIVER OF DUE DILIGENCE:** BUYER has visually inspected the Property and determined that same is suitable for BUYER's intended
82 use, in its current "as is" condition as of the Effective Date, including the conditions disclosed in Standard D.1.a. or in Other Terms and Conditions.
83 BUYER's obligation to purchase the Property is not contingent upon any inspections, tests or studies.

# REAL ESTATE TRANSACTION STANDARDS

85 **THE REAL ESTATE TRANSACTION STANDARDS SHOULD NOT BE REVISED OR MODIFIED EXCEPT IN OTHER TERMS AND**
86 **CONDITIONS AND/OR BY ADDENDUM/ADDENDA.**

87

88 **STANDARD A—TITLE; TITLING INSTRUCTIONS; ASSIGNMENT; TAX DEFERRED EXCHANGE.**

89 **1. MARKETABLE TITLE:** Title to the Property shall be good and marketable according to the Uniform Title Standards promulgated by the
90 Florida Bar, and have legal access, subject only to the following exceptions: (a) ad valorem and non-ad valorem real property taxes for the year
91 of closing and subsequent years; (b) zoning, building code and other use restrictions imposed by governmental authority; (c) outstanding oil, gas
92 and mineral interests of record, if any; and (d) restrictions, reservations and easements common to the subdivision (or condominium, if
93 applicable), provided that none of the foregoing shall prevent use of the Property for residential purposes.

94 **2. TITLING INSTRUCTIONS FROM BUYER; ASSIGNMENT:** Not later than 15 days prior to the Closing Date, BUYER shall deliver to SELLER
95 the name(s), address, manner in which title will be taken, and a copy of any assignment executed by BUYER. No assignment shall release
96 BUYER from the obligations of this Contract unless SELLER consents in writing to such release.

97 **3. TAX DEFERRED EXCHANGE:** If either party intends to treat this transaction as a tax-deferred exchange under I.R.C. Section 1031, the
98 other party shall cooperate in accomplishing the exchange, and consents to the assignment of this Contract to a qualified exchange intermediary
99 for that purpose, provided there is no additional cost or delay in closing and the exchanger is not released from liability under this Contract.

100 **STANDARD B—TITLE EVIDENCE; EXAMINATION; DEFECTS; LEGAL ACCESS; CLEARANCE.** Not later than 10 days after the Effective
101 Date, SELLER shall furnish to BUYER a complete copy of SELLER's owner's title insurance policy. If the Property is located in Collier County
102 and SELLER fails to furnish a copy of the policy within the above time period, SELLER shall give BUYER a $150.00 credit at closing in lieu
103 thereof. BUYER shall have 30 days after the Effective Date ("Examination Period") for examination of title and determination of legal access.
104 BUYER's obligation to purchase is conditioned on the Property having legal access to and from a public right of way sufficient for residential use.
105 If title is found defective or legal access is found to be lacking, BUYER shall, within the Examination Period, notify SELLER specifying the title
106 defect(s) or lack of legal access, and furnish copies of the title evidence and instruments evidencing such title defect(s) or lack of legal access.
107 If the title defect(s) render(s) title unmarketable, or if SELLER cannot deliver possession, or if there is no legal access, SELLER shall have 30
108 days after receipt of said notice and copies from BUYER (the "Clearance Period") to clear or remove such title defect(s), deliver possession,
109 and/or provide legal access, at SELLER's expense. SELLER will use diligent effort to correct the title defect(s), deliver possession, and/or provide
110 legal access within the Clearance Period, including the bringing of necessary suits. If the Closing Date is prior to the expiration of the Clearance
111 Period, then the Closing Date shall be extended until the earlier of (i) 5 days after SELLER corrects the title defect(s), delivers possession, and/or
112 provides legal access or (ii) 5 days after the expiration of the Clearance Period. SELLER shall not be liable to BUYER for damages if SELLER
113 cannot render title marketable, deliver possession and/or provide legal access. If SELLER does not clear or remove the title defect(s), deliver
114 possession or provide legal access within the Clearance Period, BUYER may elect either to accept such title, possession, and/or access as
115 SELLER can provide or to terminate this Contract by giving SELLER notice of such election not later than 5 days after expiration of the Clearance
116 Period. If BUYER makes no such election, BUYER shall be deemed to have accepted such title, possession and access as SELLER can provide
117 and close within the later of (i) 10 days after expiration of the Clearance Period or (ii) the Closing Date. A monetary lien upon the Property shall
118 not constitute a title defect if said lien can be paid and satisfied from SELLER's proceeds at closing.

119 **STANDARD C—SURVEY; COASTAL CONSTRUCTION CONTROL LINE.**

120 **1. SURVEY AND SURVEY OBJECTIONS:** Unless the Property is a condominium or cooperative unit, SELLER shall furnish to BUYER, not
121 later than 10 days after the Effective Date, a complete copy of any survey of the Property in SELLER's possession and which has been certified
122 to SELLER (together with flood elevation certificate, if applicable). If to SELLER's knowledge there are no improvements or encroachments
123 currently located upon the Property other than as shown on the SELLER's survey, SELLER shall execute an affidavit of "no change" affirming
124 same to BUYER. BUYER may, at BUYER's expense, have the Property surveyed not later than 5 days prior to the Closing Date ("Survey
125 Period"). If the survey, as certified by a registered Florida surveyor, correctly shows: (a) an encroachment onto the Property; or (b) that an
126 improvement located on the Property projects onto lands of others; or (c) lack of legal access (collectively "Survey Objections"), BUYER may,
127 within the Survey Period, notify SELLER of the Survey Objections and shall furnish a copy of the survey. The Survey Objections shall be treated

128 as a title defect(s). If BUYER fails to obtain a survey within the Survey Period, BUYER waives any right to object to any matters which might
129 have been shown on a survey. If BUYER fails to make any Survey Objections within the Survey Period, BUYER waives any Survey Objections.
130 **2. COASTAL CONSTRUCTION CONTROL LINE:** (a) If any portion of the Property lies seaward of the Coastal Construction Control Line,
131 Florida law requires the following disclosure: The property being purchased may be subject to coastal erosion and to federal, state or local
132 regulations that govern coastal property, including the delineation of the coastal construction control line, rigid coastal protection structures,
133 beach nourishment, and the protection of marine turtles. Additional information can be obtained from the Florida Department of Environmental
134 Protection, including whether there are significant erosion conditions associated with the shoreline of the property being purchased. (b) If any
135 portion of the Property lies seaward of the Coastal Construction Control Line, BUYER waives the right to receive a survey or affidavit from
136 SELLER delineating said line upon the Property.

137 **STANDARD D—DISCLOSURES; ZONING; DUE DILIGENCE AND INSPECTIONS; MAINTENANCE OF PROPERTY; ADVISEMENTS AND**
138 **ACKNOWLEDGMENTS; EXTREME WEATHER CONDITION.**

139 1. **DISCLOSURES:**

140 a. **GENERAL:** SELLER knows of no facts or conditions materially affecting the value of the Property, except those which are readily
141 observable by BUYER, or which have been disclosed to and acknowledged by BUYER prior to BUYER's execution of any offer (or
142 counteroffer, as applicable).

143 b. **WETLANDS; SUITABILITY:** Wetlands are commonly found in Florida and may restrict or increase the cost of construction upon the
144 Property. Except as disclosed to BUYER in the manner set forth in Standard D.1.a., SELLER does not know of any portion of the Property that
145 has been determined to be wetlands, or of any other condition or circumstance adversely affecting the Property which might impair its suitability
146 for residential use or construction.

147 c. **PROPERTY TAXES:** Florida law required disclosure: BUYER should not rely on the SELLER's current property taxes as the amount of
148 property taxes that BUYER may be obligated to pay in the year subsequent to purchase. A change of ownership or property improvements
149 triggers reassessments of the property that could result in higher property taxes. If you have any questions concerning valuation, contact the
150 county property appraiser's office for information.

151 d. **ZONING:** SELLER has not commenced any proceedings to change the current zoning classification of the Property, nor will SELLER
152 initiate any such proceedings. SELLER has not received notice from any third party(ies) of any proceedings which would affect the current zoning
153 classification of the Property. Should SELLER receive any such notice, SELLER will promptly notify BUYER of same, and if the proposed zoning
154 would prevent the current use of the Property, BUYER may terminate this Contract not later than 5 days after receipt of said notice.

155 **2. DUE DILIGENCE AND INSPECTIONS:** If 8 A. was selected, BUYER may, within the Due Diligence Period, determine whether the Property
156 is suitable, in BUYER's sole discretion, for BUYER's intended use. During the Due Diligence Period, BUYER may evaluate, without limitation,
157 the building and zoning laws and restrictions, wetlands determinations, environmental conditions and restrictions, presence of radon, soil and
158 grade, presence of termites and other wood-destroying organisms, availability of water, sewer and other utilities, consistency with local, state
159 and regional growth management plans, availability of permits, government approvals and licenses applicable to the Property, and to conduct,
160 at BUYER's expense, any and all tests, reports, studies, inspections, analyses, surveys and assessments that BUYER deems necessary and
161 appropriate to determine the suitability of the Property for BUYER's intended use (collectively the "Inspections"). BUYER and BUYER's agents,
162 employees and contractors shall have the right to enter the Property at all reasonable times and at their own risk during the Due Diligence Period
163 for the purpose of conducting the Inspections. BUYER will indemnify and hold SELLER harmless from and against all losses, damages, costs,
164 claims and expenses of any nature, including attorney fees (collectively "Losses"), and from and against any liability to any person arising from,
165 out of or in connection with the Inspections, except as to Losses resulting from negligence or intentional acts or omissions of SELLER. BUYER
166 will not cause any construction lien(s) to be placed against the Property as a result of the Inspections. If BUYER determines for any reason that
167 the Property is not suitable for BUYER's intended use, and notifies SELLER of same prior to expiration of the Due Diligence Period, BUYER
168 may terminate this Contract. In that event, BUYER shall repair any and all damage to the Property resulting from or caused by the Inspections,
169 and shall otherwise return the Property to its condition prior to the Inspections. BUYER's failure to so notify SELLER of BUYER's election to
170 terminate this Contract shall constitute BUYER's acceptance of the Property as suitable for BUYER's intended use, in its "as is" condition.
171 BUYER's right to terminate hereunder has been bargained for between the parties, and each party acknowledges full and adequate consideration
172 has been received for this provision.

173 **3. MAINTENANCE OF PROPERTY:** SELLER shall maintain the Property (including without limitation the lawn, shrubbery, and landscaping)
174 in the condition existing on the Effective Date until the Closing Date or date of possession, whichever is earlier, and shall not cause or permit
175 deterioration of the Property, or otherwise take any action to diminish the value of the Property.

176 **4. ADVISEMENTS AND ACKNOWLEDGEMENTS:**

177 a. **MANDATORY/BUNDLED CLUB MEMBERSHIP:** The Property is or may be located in a community with a mandatory or bundled club
178 membership, and BUYER may be required to pay certain initiation and other fees, dues and/or use charges imposed by the club. If BUYER has
179 questions or requires additional information pertaining to applicable club requirements and/or fees, dues and charges, BUYER should contact
180 said club.

181   **b.   COMMUNITY INVESTIGATION:** BUYER is advised that any condominium and/or homeowners' documents received by BUYER may
182   not include important information about the community(ies) where the Property is located, including without limitation pending foreclosures, types
183   and amounts of insurance coverage, current budget and reserve amounts, and status of delinquent assessments; ownership, financial and
184   membership status of private clubs, golf course(s), marina(s), and other amenities; the status of the developer(s) if the community or any portion
185   thereof is developer-controlled; and facts about the surrounding community(ies), school districts and public and government infrastructure plans.
186   SELLER by signing this Contract designates BUYER as SELLER's representative for purposes of obtaining said information.

187   **c.   SQUARE FOOTAGE:** BUYER is aware that any reference to the square footage and size of the Property is approximate and is not
188   warranted and should be independently verified by BUYER prior to execution of this Contract.

189   **d.   FAIR HOUSING BROCHURE:** BUYER and SELLER acknowledge receipt of the Equal Opportunity in Housing brochure provided by
190   the National Association of Realtors advising the parties of their rights under the federal Fair Housing Act as well as other federal, state and local
191   laws.

192   **5.   EXTREME WEATHER CONDITION:** If, due to a pending or threatened hurricane, tropical storm, or other extreme weather condition,
193   services essential for closing are not available, BUYER or SELLER may delay the Closing Date until a date that is not more than 5 days after
194   services essential for closing are restored.  If such services essential for closing remains unavailable for a period of 30 continuous days, then
195   either SELLER or BUYER may terminate the Contract not later than 35 days after such extreme weather condition rendered services essential
196   for closing unavailable.

197   **STANDARD E—SELLER'S INSTRUMENTS AND EXPENSES.** SELLER shall pay for and provide, when applicable: (1) the title evidence or
198   credit specified in Standard B; (2) if the Property is located in Lee or Charlotte County, the premium for the owner's title insurance policy issued
199   by the closing agent selected by BUYER, and the charges for title search and title continuation through the date of deed recording; (3) preparation
200   of statutory warranty deed (or special warranty deed if SELLER is a fiduciary), condominium/homeowners' association estoppel letter(s), broker
201   compensation verifications; tenant estoppel letter(s), copy(ies) and assignment(s) of lease(s), and an affidavit regarding liens, possession, and
202   withholding under FIRPTA, in a form sufficient to allow "gap" coverage by title insurance; (4) mortgage payoff letter from existing
203   creditor/lender(s); (5) documentary stamp tax on deed; (6) real estate brokerage compensation contractually agreed to by SELLER (to be
204   disbursed by closing agent at closing); (7) any condominium/homeowners' association special assessments and governmentally imposed liens
205   or special assessments  which are SELLER's obligation under Paragraph 6; (8) SELLER's attorney fees; and (9) if SELLER is subject to
206   withholding under FIRPTA, reasonable charges associated with withholding, escrowing and/or remitting funds, and/or preparing the
207   withholding certificate application and/or tax return related thereto; (10) reimbursement of prepaid estoppel fees and other costs advanced on
208   behalf of SELLER; and (11) wire fees associated with transfer(s) of SELLER proceeds and payoffs.

209   **STANDARD F—BUYER'S INSTRUMENTS AND EXPENSES.** BUYER shall pay for and provide, when applicable, including any sales tax due
210   thereon: (1) recording fee for deed; (2) all costs of any institutional loan secured by BUYER; (3) the premium for creditor/lender title insurance
211   policy, and if the Property is located in Collier County, the premium for the owner's title insurance policy issued by the closing agent selected by
212   BUYER and the charges for title search and title continuation through the date of deed recording; (4) recording membership approval; (5) survey
213   charges; (6) condominium/homeowners' association membership transfer fee; (7) condominium/homeowners' association resale transfer
214   fee/capital contribution; (8) any pending homeowners'/condominium association special assessments and governmentally imposed liens or
215   special assessments which are not the SELLER's obligation under Paragraph 6; (9) real estate brokerage compensation contractually agreed to
216   by BUYER (to be disbursed by closing agent at closing); (10) BUYER's attorney fees; (11) BUYER shall promptly pay and indemnify and hold
217   SELLER harmless against any claims or liens upon the Property for surveyor or other services furnished to the Property at the request of BUYER;
218   (12) code enforcement/municipal lien search fees; 13) reimbursement of prepaid application fees and other costs advanced on behalf of BUYER;
219   and (14) reimbursement to the closing agent of any deposit and closing funds shortages due to deduction of wire fees.

220   **STANDARD G—PRORATIONS; CREDITS.** These items will be prorated as of the Closing Date, with BUYER charged with and entitled to the
221   Closing Date, or the possession date, whichever is earlier: (1) real and personal property taxes based on the current year, if available. If not
222   available, the taxes shall be based on the TRIM "Your Taxes This Year if PROPOSED Budget is Adopted" amount and current year non-ad
223   valorem amount(s), if available; otherwise the prior year non-ad valorem amounts. If neither the current year tax nor TRIM amounts are available,
224   the taxes shall be based on the prior year's bill (without discount or exemptions no longer available in the year of closing). A tax proration
225   based upon any estimated tax shall, at the request of either party, be re-prorated based on the actual tax bill amount with maximum discount;
226   (2) interest on any assumed indebtedness; (3) rents; and (4) condominium/homeowners' association assessments and CDD/MSTU operating
227   and maintenance assessments. BUYER shall receive from SELLER at closing a credit equivalent to the amount of any security deposit and
228   prepaid rents held by SELLER, and any accrued interest thereon, or alternatively, ownership or an assignment of the account in which the
229   deposits and prepaid rents, and any accrued interest thereon, are held.

230   **STANDARD H—HOMEOWNERS' ASSOCIATION DISCLOSURE.** If the Property is located within and governed by any mandatory
231   homeowners' association, the following provisions are incorporated into this Contract:

232 **IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE**
233 **PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY**
234 **DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL**
235 **WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY**
236 **PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE**
237 **AT CLOSING.**

238 **BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE "HOMEOWNERS' ASSOCIATION**
239 **DISCLOSURE SUMMARY," WHICH IS ATTACHED TO AND MADE A PART OF THIS CONTRACT.**

240 **STANDARD I—CONDOMINIUM RESALE DISCLOSURE; VOIDABILITY RIGHTS.** If the Property is a condominium unit(s), the following
241 provisions are incorporated into this Contract: **THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE**
242 **BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS AND LEGAL HOLIDAYS, AFTER THE DATE**
243 **OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A CURRENT COPY OF THE DECLARATION OF**
244 **CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS, AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST**
245 **RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO**
246 **REQUESTED IN WRITING. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY**
247 **EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS AND LEGAL**
248 **HOLIDAYS, AFTER THE BUYER RECEIVES THE DECLARATION, ARTICLES OF INCORPORATION, BYLAWS, AND RULES OF THE**
249 **ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS**
250 **AND ANSWERS DOCUMENT IF REQUESTED IN WRITING. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT**
251 **CLOSING.** BUYER shall also be entitled to receive a copy of the Condominium Governance Form required by Florida Statutes, and the above
252 stated right of BUYER to cancel this Contract shall apply to BUYER's receipt of said governance form in the same manner as applies to the other
253 above-referenced condominium documents. BUYER, by its execution of this Contract, hereby requests a current copy of the above referenced
254 condominium documents and Condominium Governance Form.

255 **STANDARD J—HOMEOWNERS' ASSOCIATION PROVISIONS; MEMBERSHIP APPROVAL.** Any homeowners' association reserve
256 account(s) is included in the purchase price. If association membership approval is required, BUYER shall, not later than 10 days after the
257 Effective Date, make application for same in the name(s) in which title will be taken, and shall comply with all governing requirements of the
258 association and be responsible for securing membership approval. If no written approval has been obtained from the applicable homeowners'
259 association by the Closing Date, either BUYER or SELLER may terminate this Contract by giving the other party notice of said termination prior
260 to receipt of the approval. SELLER shall obtain a letter(s) from the association(s) which sets forth the amounts, periods and payment status of
261 assessments and transfer fees and resale capital assessments and deliver same to the BUYER not later than 15 days prior to the Closing Date.

262 **STANDARD K—MORTGAGE CREDITOR/LENDER POLICIES.** If BUYER elected to obtain mortgage financing under Paragraph 4.B., the
263 policies of the creditor/lender shall prevail as to the procedures for closing and disbursement of mortgage loan proceeds.

264 **STANDARD L—ESCROW; ESCROW AGENT(S).** The escrow agent who accepts in escrow the deposit(s) paid under this Contract (the "Escrow
265 Agent") shall hold the deposit(s) within the State of Florida in escrow until the earlier of: (1) delivery to another Escrow Agent for closing, who
266 by acceptance agrees to these terms and becomes the Escrow Agent (the Escrow Agent holding the deposit(s) is authorized to so transfer the
267 funds and is relieved of all liability for the funds delivered); (2) delivery of the deed, with payment of the deposit(s) as part of the purchase price
268 of the Property; (3) such time as BUYER may be entitled to return of the deposit(s); or (4) delivery pursuant to written direction of the parties, at
269 which time the Escrow Agent shall pay all of the deposit(s) to the party(ies) entitled thereto. The Escrow Agent shall not be liable for the payment
270 of any interest, damages, attorney fees or court costs in any action brought to recover the deposit(s) held in escrow, or any part thereof, unless
271 the Escrow Agent shall fail or refuse to pay over any such deposit(s) pursuant to a judgment, order or decree that shall be final beyond possibility
272 of appeal. In any proceeding which litigates the disposition of the deposit(s), the Escrow Agent shall be entitled to be paid reasonable attorney
273 fees and court costs, which shall be paid by the non-prevailing party. The Escrow Agent has no duty to collect or attempt to collect any deposit
274 or check given as a deposit, but shall give the parties written notice of: (a) any deposit that is not received, not later than 5 days after its due
275 date, and (b) any deposit check that is not paid on presentation not later than 5 days of learning of its dishonor. If the Escrow Agent is a licensed
276 real estate broker, the Escrow Agent shall comply with the requirements of Chapter 475, Florida Statutes.

277 **STANDARD M—FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT (FIRPTA) WITHHOLDING.** A SELLER who is a U.S. citizen or
278 resident alien and who furnishes BUYER with an affidavit attesting to same, is exempt from FIRPTA withholding. If SELLER is a foreign person
279 or entity, BUYER shall deduct and withhold from the purchase price, or collect from SELLER if the net proceeds are insufficient, 15% of the
280 purchase price (the "Withholding Amount"), and remit same to the Internal Revenue Service ( the "IRS") within 10 days after the Closing Date,
281 unless: (1) the purchase price is not more than $300,000.00 and BUYER executes a sworn certification at closing attesting that BUYER is

282 acquiring the Property for use as a residence; i.e. that BUYER or a member of BUYER's family has definite plans to reside at the Property at
283 least 50% of the number of days the Property is used by any person in each of the first two 12-month periods immediately following the closing,
284 in accordance with the Internal Revenue Code and all applicable regulations (the "BUYER's Residential Use Certification"), in which event the
285 Withholding Amount is $0; or (2) the purchase price is greater than $300,000.00 but not more than $1,000,000.00 and BUYER executes a
286 BUYER's Residential Use Certification, in which event the Withholding Amount is reduced to 10% of the purchase price. If SELLER furnishes to
287 BUYER, not later than the Closing Date, proof of submittal to the IRS of an application for withholding certificate, the closing agent (or other third
288 party mutually designated by SELLER and BUYER) shall hold the applicable Withholding Amount in escrow pending receipt of the withholding
289 certificate, shall remit the sum reflected in the withholding certificate to the IRS within 10 days of receipt of the withholding certificate, and shall
290 promptly refund any remaining balance to SELLER. SELLER shall hold BUYER harmless and indemnify BUYER for not withholding or collecting
291 the applicable Withholding Amount or for withholding and remitting the reduced amount reflected in the withholding certificate. BUYER shall
292 provide to SELLER evidence of remittance of all or any portion of the applicable Withholding Amount to the IRS. The failure of either party to
293 comply or to allow compliance with the requirements of FIRPTA and related regulations shall constitute a breach of this Contract.

294 **STANDARD N—QUICK CLOSING.** Except with respect to the Clearance Period in Standard B or as otherwise set forth in Standard J, if the
295 Closing Date does not allow sufficient time for performances by SELLER and BUYER within the time frames and by the deadlines set forth in
296 this Contract, the parties agree to undertake and complete all performances, inspections, surveys, examinations, delivery of documents, notices,
297 satisfaction of contingencies and all other actions required of or allowed to either party prior to the Closing Date, except that the statutory time
298 period set forth in Standards H and I shall not be affected by this provision.

299 **STANDARD O—DEFAULT AND REMEDIES.** If BUYER does not perform BUYER's obligations hereunder (except as excused by SELLER's
300 default) all deposits made shall be paid to SELLER as liquidated damages, which shall be SELLER's exclusive remedy. If SELLER does not
301 perform SELLER's obligations hereunder (except as excused by BUYER's default), BUYER may enforce this Contract by a suit for specific
302 performance, damages, or may terminate this Contract.

303 **STANDARD P—LITIGATION; ATTORNEY FEES AND COSTS.** In connection with any litigation concerning this Contract, venue shall be in the
304 county where the Property is located, and the prevailing party shall be entitled to recover reasonable attorney fees and court costs, including on
305 any appeals, from the non-prevailing party. The term "prevailing party" shall include SELLER, BUYER, and any broker acting in an agency or
306 non-agency relationship recognized under Chapter 475, Florida Statutes. For purposes of this Standard, any such broker shall be an intended
307 third party beneficiary.

308 **STANDARD Q—NOTICES, DISCLOSURES, ACKNOWLEDGMENTS AND DOCUMENTS.** All notices, disclosures and acknowledgments must
309 be in writing. Unless a party is required by law to deliver notices, disclosures, acknowledgments or documents directly to the other party, all
310 notices, disclosures, acknowledgments and documents required or permitted under this Contract shall be effective when given by a party or that
311 party's broker or attorney to the other party or said other party's broker or attorney. Delivery of homeowners' or condominium documents required
312 under Standards H and I respectively to BUYER's broker or attorney shall not constitute delivery to the BUYER.

313 **STANDARD R—MISCELLANEOUS.** (1) **The parties have agreed to deal in good faith with respect to all provisions of this Contract.** (2)
314 The singular case or tense shall include the plural case or tense. (3) This Contract may only be modified in writing signed by the parties. (4)
315 Except as otherwise specifically provided, all references to days shall mean calendar days. (5) Except as otherwise specifically provided, all
316 deadlines shall expire at 11:59 PM Eastern Time. Except as otherwise expressly provided by law, if the Closing Date, any deadline or the last
317 day of any time period falls on a Saturday, Sunday, or federal legal holiday, said deadline shall be extended to the following business day. (6)
318 As used herein, the terms "real estate broker" or "broker" shall include all real estate brokers, brokerage corporations or business entities, and
319 their respective licensees involved in this transaction. (7) All title evidence and other documents provided to BUYER by or on behalf of SELLER
320 are the property of SELLER until closing and shall be immediately returned to SELLER if this Contract is terminated. (8) If either SELLER or
321 BUYER is permitted to terminate this Contract, said party shall do so by giving notice of said termination to the other party, whereupon all deposits
322 made by BUYER shall be promptly returned to BUYER, this Contract shall be of no further force and effect, and the parties shall have no further
323 liability to one another hereunder except as set forth herein. (9) The headings used in this Contract are for convenience of reference only and
324 shall not be used for interpreting the meaning of any provisions of this Contract. (10) All provisions of this Contract which by their nature or
325 context require performance or provide rights after the Closing Date, including without limitation the provisions of Standard P, shall survive
326 closing. (11) Signatures and initials communicated by electronic or facsimile transmission shall be binding. (12) A facsimile or electronic (including
327 "pdf") copy of this Contract and all related sale documents, and any signatures thereon shall be considered for all purposes as an original. This
328 Contract and all related sale documents may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act
329 and other applicable laws. (13) This Contract and all related sale documents may be signed in counterparts and said counterparts shall
330 collectively constitute the entire agreement of the parties. (14) Upon reasonable notice, SELLER shall provide access to the Property to

331 appraiser(s) and surveyor(s) retained by BUYER. (15) SELLER and BUYER authorize the closing agent to provide copies of the American Land
332 Title Association (ALTA) and other settlement statements to all parties, brokers and attorneys associated with this transaction.

333 **STANDARD S—NEGOTIATED TERMS; REPRESENTATIONS. Any and all terms negotiated between the parties must be written into**
334 **this Contract.** BUYER's decision to buy was based upon BUYER's own investigations of the Property. BUYER holds the broker(s) harmless
335 from all liability or loss caused by SELLER's failure to disclose material facts in accordance with this Contract, or SELLER's representations
336 regarding the Property's condition, or from broker's referral, recommendation, or retention of any vendor. The parties agree that assistance to a
337 party by a broker does not, and will not, make the broker responsible for performance.

338 **STANDARD T—BINDING CONTRACT; LEGAL COUNSEL.** THE PARTIES ARE NOT REQUIRED TO USE ANY PARTICULAR FORM OF
339 CONTRACT. TERMS AND CONDITIONS SHOULD BE NEGOTIATED BASED UPON THE RESPECTIVE INTERESTS, OBJECTIVES AND
340 BARGAINING POSITIONS OF THE PARTIES. APPROVAL OF THIS FORM BY THE COLLIER COUNTY BAR ASSOCIATION AND
341 ASSOCIATIONS OF REALTORS DOES NOT CONSTITUTE AN OPINION THAT ANY OF THE TERMS AND CONDITIONS IN THIS
342 CONTRACT SHOULD BE ACCEPTED BY A PARTY IN A PARTICULAR TRANSACTION. THIS IS A LEGALLY BINDING CONTRACT FORM.
343 EACH PARTY ACKNOWLEDGES THAT PRIOR TO SIGNING THE CONTRACT, THE CLOSING EXPENSES HAVE BEEN EXPLAINED, REAL
344 ESTATE TRANSACTION STANDARDS A THROUGH T HAVE BEEN RECEIVED AND REVIEWED, AND THAT PARTY HAS BEEN ADVISED
345 BY THE REAL ESTATE BROKER TO SEEK LEGAL COUNSEL AND TITLE INSURANCE TO PROTECT THAT PARTY'S INTEREST IN
346 CONNECTION WITH THE TITLE STATUS AND CLOSING OF THIS TRANSACTION. BUYER AND SELLER ARE ADVISED TO CONSULT AN
347 APPROPRIATE PROFESSIONAL FOR LEGAL, TAX, PROPERTY CONDITION, ENVIRONMENTAL, AND OTHER SPECIALIZED ADVICE.
348 THIS CONTRACT SHALL BE BINDING UPON AND INURE TO THE BENEFIT OF THE PARTIES HERETO, THEIR HEIRS,
349 ADMINISTRATORS, PERSONAL REPRESENTATIVES, AND SUCCESSORS IN INTEREST.

350    **OTHER TERMS AND CONDITIONS:**

351    **BUYER UNDERSTANDS PROPERTY REQUIRES COURT APPROVAL IN THE MIDDLE DISTRICT OF**

352    **GEORGIA & RELATED TO CHAPTER 11 BANKRUPTCY PROCEEDING CASE# PRINCIPLE TERI GALARDI #**

353    **22-50035-JPS. DEPOSIT WILL BE HELD IN ESCROW AT CITIZENS TITLE AND ALL PARTIES AGREE THAT**

354    **THE ESCROWED FUNDS WILL BE RELEASED TO THE BUYER IF OFFER IS NOT ACCEPTED AND/OR**

355    **DISCOVERY FROM DUE DILIGENCE IS DETERMINED TO BE NOT SATISFACTORY TO THE BUYER**

356    ADDENDUM: The following Addendum/Addenda is/are attached hereto and incorporated into this Contract:

357    **HOA DISCLOSURE**

358

359    To the extent such Addendum/Addenda terms conflict with the terms of this Contract, the Addendum/Addenda terms shall control.

360 **THE REAL ESTATE TRANSACTION STANDARDS SHOULD NOT BE REVISED OR MODIFIED EXCEPT IN OTHER TERMS AND**
361 **CONDITIONS AND/OR BY ADDENDUM/ADDENDA. WIRE FRAUD ADVISORY. CYBER CRIMINALS ATTEMPTING TO STEAL LARGE**
362 **SUMS OF MONEY ARE TARGETING REAL ESTATE TRANSACTIONS BY INTERCEPTING ELECTRONIC COMMUNICATIONS AND**
363 **SENDING EMAILS THAT APPEAR TO BE FROM REAL ESTATE AGENTS, BROKERS, ATTORNEYS, TITLE COMPANIES, LENDERS AND**
364 **OTHERS INVOLVED IN REAL ESTATE TRANSACTIONS. THESE CRIMINALS HAVE INTERCEPTED WIRE TRANSFER INSTRUCTIONS,**
365 **OBTAINED ACCOUNT INFORMATION, AND, BY ALTERING SOME OF THE DATA, USED EMAILS TO CONVINCE BUYERS, SELLERS**
366 **AND OTHERS TO REDIRECT THE MONEY TO A FRAUDULENT ACCOUNT. THESE EMAILS ARE SOPHISTICATED AND MAY LOOK**
367 **LIKE LEGITIMATE EMAILS FROM PARTIES INVOLVED IN THE TRANSACTION. BUYER AND SELLER ARE STRONGLY ENCOURAGED**
368 **NOT TO SEND PERSONAL INFORMATION, SUCH AS BANK ACCOUNT NUMBERS OR OTHER NON-PUBLIC INFORMATION, VIA**
369 **UNSECURED EMAIL OR OTHER ELECTRONIC COMMUNICATION, AND TO NEVER WIRE TRANSFER MONEY WITHOUT PERSONALLY**
370 **SPEAKING WITH THE INTENDED RECIPIENT OF THE WIRE TRANSFER TO VERIFY THE ROUTING AND ACCOUNT NUMBERS. BUYER**
371 **AND SELLER HEREBY AGREE TO INDEMNIFY AND HOLD HARMLESS ESCROW AGENT, ANY CLOSING AGENT AND ANY BROKER**
372 **ACTING IN AN AGENCY OR NON-AGENCY RELATIONSHIP RECOGNIZED UNDER CHAPTER 475, FLORIDA STATUTES, FROM ALL**
373 **LOSSES, LIABILITIES, CHARGES AND COSTS INCURRED DUE TO ANY WIRE TRANSFERS OR WIRE INSTRUCTIONS WHICH RELATE**
374 **TO THE TRANSFER OR ISSUANCE OF FUNDS. FOR PURPOSES OF THIS PARAGRAPH, ESCROW AGENT, ANY CLOSING AGENT AND**
375 **ANY BROKER SHALL BE INTENDED THIRD-PARTY BENEFICIARIES.**

_____          _____ *Dieter Huebl*   Sep 15, 2022
(Seller's Signature)            (Date)   (Buyer's Signature)                    (Date)
      **Jack E Galardi LLC**                              **Dieter Huebl**
(Seller's Printed Name)                  (Buyer's Printed Name)

_____          *Neal Meade*   Sep 15, 2022
(Seller's Signature)            (Date)   (Buyer's Signature)                    (Date)

                                                          **Neal Meade**
(Seller's Printed Name)                  (Buyer's Printed Name)

376   SELLER rejects BUYER'S offer on _____ {Insert Date}.

377
378   _____                    _____
           (Seller's Signature)                               (Seller's Signature)
379                          **IDENTIFICATION OF BROKERS AND LICENSEES**

380   Listing Brokerage: _____ **Patricia Burnside Realty** _____ Selling Brokerage: _____ **ACHIEVE REALTY LLC**

381   Listing Licensee: _____ **Julie Negovan** _____ Selling Licensee: _____ **JACK J LANNERS**

382                          **IDENTIFICATION OF ESCROW AGENT**

383   Escrow Agent's Name: _____ **Citizens Title Agency, LLC**

384   Escrow Agent Address: _____ **12276 Tamiami Trail East Suite #501 Naples, Florida 34113**

385   Escrow Agent Telephone: _____ **239 261-1650** _____ Fax: _____ **888 691-2700** _____ Email: **Joanne@CitizensTitleAgency.com**

386   **THIS CONTRACT SHALL NOT MODIFY THE LISTING CONTRACT OR ANY MLS OR OTHER OFFER OF COMPENSATION**
387   **MADE BY SELLER OR LISTING BROKER TO COOPERATING BROKERS.**



# HOMEOWNERS' ASSOCIATION DISCLOSURE SUMMARY



**IMPORTANT NOTE: A SEPARATE DISCLOSURE SUMMARY FORM SHOULD BE COMPLETED AND SIGNED FOR EACH HOMEOWNERS' ASSOCIATION GOVERNING THE PROPERTY IN WHICH MEMBERSHIP IS MANDATORY. THIS FORM SHOULD NOT BE USED TO DISCLOSE MEMBERSHIP REQUIREMENTS AND ASSESSMENTS AND OTHER FEES IMPOSED BY CONDOMINIUM/COOPERATIVE ASSOCIATIONS.**

For: _____  **ROYAL PALM GOLF ESTATES HOA**

(Name of Community-- Homeowners' Association)

1.  As a purchaser of property in this community, you will be obligated to be a member of a homeowners' association.

2.  There have been or will be recorded restrictive covenants governing the use and occupancy of properties in this community.

3.  You will be obligated to pay assessments to the association. Assessments may be subject to periodic change. If applicable, the current amount is $ _____ **134** _____ per _____ **QUARTER** _____.

    You will also be obligated to pay any special assessments imposed by the association. Such special assessments may be subject to change. If applicable, the current amount is $ _____ per _____.

4.  You may be obligated to pay special assessments to the respective municipality, county or special district. All assessments are subject to periodic change.

5.  Your failure to pay special assessments or assessments levied by a mandatory homeowners' association could result in a lien on your property.

6.  There may be an obligation to pay rent or land use fees for recreational or other commonly used facilities as an obligation of membership in the homeowners' association. If applicable, the current amount is $ _____ per _____.

7.  The developer may have the right to amend the restrictive covenants without the approval of the association membership or the approval of the parcel owners.

8.  The statements contained in this disclosure form are only summary in nature, and, as a prospective purchaser, you should refer to the covenants and the association governing documents before purchasing property.

9.  These documents are either matters of public record and can be obtained from the record office in the county where the property is located, or are not recorded and can be obtained from the developer.

10. Note: SELLER(s) sign below to confirm the accuracy and completeness of the above information and to assume responsibility therefor. BUYER(s) sign and date below to confirm receipt of this Disclosure Summary.

_____          *Dieter Huebl*          **Sep 15, 2022**

(Seller's Signature)          (Date)          (Buyer's Signature)          (Date)

_____          *Neal Meade*          **Sep 15, 2022**

(Seller's Signature)          (Date)          (Buyer's Signature)          (Date)

©2021 Naples Area Board of REALTORS® and Association of Real Estate Professionals, Inc. All Rights Reserved. (NABOR 1/1/2021)

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **IN RE:** ) | **CHAPTER 11** |
| ) | |
| **TERI G. GALARDI,** ) | |
| ) | **CASE NO. 22-50035-JPS** |
| **Debtor,** ) | |
| _____ ) | |

## MOTION FOR AUTHORIZATION TO SELL MEMBERSHIP INTEREST OF JGP&P, LLC AND STOCK INTEREST IN RED EYED, INC.

COMES NOW Teri G. Galardi ("Debtor") and files this *Motion for Authorization to Sell Membership Interest of JGP&P, LLC and Stock Interest in Red Eyed, Inc.* (the "Motion"). In support of the Motion, Debtor shows the Court as follows:

1.

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The Statutory predicate for the relief requested herein is 11 U.S.C. §§ 105 and 363 and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

2.

On January 12, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11, Subchapter V of the United States Bankruptcy Code. On March 31, 2022, a Consent Order was entered by the Court allowing the Debtor to Proceed under other applicable provisions of Chapter 11, other than Subchapter V. The Debtor is continuing to manage her affairs as a Debtor-in-Possession under §§ 1107(a) and 1108 of the Bankruptcy Code.

3.

Debtor is the sole member and owner of JGP&P, LLC (the "LLC") and is the owner of

100% of the stock of Red Eyed, Inc., a Georgia Corporation ("Red Eyed Stock"). The LLC owns

real property located at 4730 Frontage Road, Forest Park, Georgia (the "Real Property"). [1]

4.

NTKN Holdings, LLC (the "Buyer") previously made an offer to purchase the Real

Property, LLC and Red Eyed Stock, and Debtor filed a Motion to Sell based upon those offers

and this Court granted such motion. **[Docket Nos. 158, 173]**. However, both Buyer and Debtor

have determined that Buyer would be better served if it owned the entity that owns the Real

Property due to the LLC's participation in litigation that resulted in a settlement with the City of

Forest Park, Georgia, the municipality in which the Real Property is located. Therefore, the

Buyer has provided an amended contract and the Debtor has determined it is in the Estate's best

interest. A copy of the Contract for the Purchase and Sale of Membership Interest of Limited

Liability Company and Stock (the "Agreement") attached hereto as **Exhibit A**.

5.

As set forth in the Agreement, Buyer's offer encompasses paying $2,800,000.00 for the

Debtor's interest in the LLC and $500,000.00 for the Red Eyed Stock for the total purchase price

of $3,300,000.00 (the "Purchase Price") to be paid as follows: (1) $50,000.00 earnest money to

be paid three (3) business days after the Agreement date and deposited into escrow; (2) an

additional $10,000.00 earnest money to be paid ten (10) days after the Agreement date and

deposited into escrow; and (3) the remaining balance of $3,240,000.00 shall be paid in full by

Buyer at closing.

---

[1]The LLC's only asset on the date of sale of the Debtor's interest shall only be the Real Property
as defined herein.

6.

Buyer is the current tenant of the Real Property and Debtor believes that the Agreement represents the highest and best offer available and that the Purchase Price represents the true value of the LLC and Red Eyed Stock.

7.

Upon approval of the sale motion, and payment of the full Purchase Price, Debtor shall transfer her membership interest in the LLC and her stock interest in Red Eyed to Purchaser upon payment of the purchase price, so that the Purchaser shall be a good faith buyer with all protections available to it under 11 U.S.C § 363.

8.

The law firm of Medley & Associates will be acting as the Escrow Agent in this transaction. The Escrow Agent is only authorized to receive and accept earnest money in accordance with the terms and conditions of the Agreement.

9.

The Agreement is contingent on and subject to approval by the Bankruptcy Court. The sale is not authorized unless and until a final order is entered in this bankruptcy case.

10.

Debtor anticipates all holders of security interest, liens, claims, encumbrances, and interest in the property will consent to the sale contemplated herein.

11.

TROP, INC., ASSERTED LIEN. Cohen and Caproni, LLC as Disbursing Agent under the Confirmed Plan of Reorganization of Trop, Inc., asserts a first priority lien against the Real Property as more particularly described in the Deed to Secured Debt executed by JGP&P, LLC as Grantor dated June 23, 2020 and recorded in the real property records of Clayton County, Georgia

in Deed Book 12009 Page 404 (as modified or amended the "Security Deed"), and assigned to

Cohen and Caproni, LLC as successor Disbursing Agent under the Confirmed Plan of

Reorganization ( the "Disbursing Agent") recorded January 13, 2022 and recorded in the real

property records of Clayton County, Georgia in Deed Book 12797 Page 382.

12.

This Deed to Secure debt secures a Note from Trop, Inc to the Disbursing Agent for the

purposes of paying claims pursuant to the Trop Plan of Reorganization. Cohen and Caproni, LLC

as Disbursing Agent has filed a claim in this Bankruptcy Case as Debtor has also guaranteed that

Note. Additionally, Ainsworth Dudley on behalf of himself and others has filed claims in Debtor's

case for the same claims as are being paid by the Disbursing Agent. Payment upon closing of this

Real Property will result in payment in full of the claims of the Disbursing Agent and those certain

creditors of Trop, Inc. whose claims are guaranteed by the Debtor.

13.

Debtor is not aware of any other or additional secured claims, although real property

taxes may be due and owing at closing and shall be prorated.

14.

The Membership interest in the LLC and Debtor's Red Eyed, Inc. stock will be sold to

Purchaser "As Is Where Is" with no warranties or representations, other than Debtor is the

current owner of that membership interest and owner of the stock. To the extent licenses may be

transferred they will be, but Debtor specifically disclaims alcohol or adult entertainment licenses

are transferrable.

## RELIEF REQUESTED

### 15.

Debtor requests authority to sell the property as described herein free and clear of liens, claims, encumbrances, and interests for the Purchase Price. Additionally, Debtor requests permission to (i) disburse the Purchase Price as provided herein with liens attaching to the Sales Proceeds to the same validity and priority as existed on the filing date; and (ii) take such action as necessary to effectuate the terms of the Agreement. Debtor requests that: (a) the Court waive any stay pursuant to Bankruptcy Rule 6004 or otherwise; and (b) any order approving the sale of the Real Property be effective immediately upon entry.

## PROPOSED DISTIBUTION OF SALE PROCEEDS

### 16.

Debtor requests that it be authorized to use and distribute the Sales Proceeds as follows:

(a) Payment of all customary closing costs, if any; and

(b) The amount of the Secured Claim shall be paid in full at closing without any escrow hold; and

(c) All net proceeds to be used to fund the Debtor's Chapter 11 Bankruptcy Case and Plan and shall be remitted to Bankruptcy Counsel to be held in an IOLTA trust account.

## TRANSACTION IS IN THE BEST INTEREST OF THE ESTATE

### 17.

Buyer has made an offer to purchase the membership interest in the LLC and Red Eyed Stock. Debtor believes the proposal represents the highest and best offer.

## BASIS FOR RELIEF

18.

A debtor in possession may sell property under Section 363(f) of the Bankruptcy Code "free and clear of any interest in such property of any entity other than the estate" if any one of the following conditions is satisfied: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. §363(f). Debtor anticipates that one or more of these requirements will be satisfied.

19.

Buyer does not have a familial relationship to Debtor. Buyer is not an "affiliate" or "insider" of Debtor. Upon information and belief, Debtor shows that the proposed Buyer is a "good faith" purchaser. Debtor requests that the Court find such Buyer to be a good faith purchaser pursuant to the provisions of Section 363(m) of the Bankruptcy Code.

20.

Buyer has indicated its interest in proceeding under the Agreement as soon as possible.

21.

Debtor requests that the Court waive any stay of the effectiveness of any order granting the Motion and approving the sale under Bankruptcy Rule 6004.

WHEREFORE, for all of the foregoing reasons, Debtor moves the Court to enter an Order:

(a) Granting the Motion and approving the sale free and clear of all liens;

(b) Authorizing the distribution of the Sale Proceeds as provided herein with liens

attaching to the Sale Proceeds to the same validity and priority as existed on the

Petition Date;

(c) Waiving the stay of such Order pursuant to Bankruptcy Rule 6004 or any rule of

similar import and making the Order effective upon its entry; and

(d) Granting the Debtor such other and further relief as may be just and proper.

Respectfully submitted,

**McBRYAN, LLC**

/s/Louis G. McBryan
Louis G. McBryan, Georgia Bar No. 480993
6849 Peachtree Dunwoody Rd
Building B-3, Suite 100
Atlanta, GA 30328
Telephone (678) 733-9322
Fax (678)498-2709
lmcbryan@mcbryanlaw.com
**Attorneys for Debtor**

**CONTRACT FOR THE PURCHASE
AND SALE OF MEMBERSHIP INTEREST OF LIMITED LIABILIYT COMPANY and STOCK**

THIS CONTRACT FOR THE PURCHASE AND SALE OF REAL PROPERTY ("Contract") is made
and entered into as of this ‎ 11 ‎ day of ‎ October ‎, 2022, by and between TERI GALE GALARDI
("GALARDI") and NTKN HOLDINGS, LLC, a Delaware  limited liability company ("Purchaser").

**WITNESSETH, THAT:**

WHEREAS, Galardi is the sole member and owner of JGP&P, LLC (the "LLC") and the LLC is the record
owner of a certain tract or parcel of improved real property (the "Land" or "Real Property") lying and being in Clayton
County, Georgia, which is more particularly described in Exhibit "A" attached hereto and made a part hereof, and
having street addresses of 4730 Frontage Road, Forest Park, GA 30297; and

WHEREAS, Galardi is the owner of 100% of the stock of Red Eyed, Inc. a Georgia corporation, which
previously operated an adult entertainment business in and on the Land but which maintains a valid alcoholic beverage
on site consumption license an adult entertainment license;

WHEREAS, Purchaser desires to purchase all of Galardi's right, title, interest, and estate in and to the LLC
as the owner of the Land and the Property, as hereinafter defined, and Purchaser desires to purchase Galardi's 100%
stock ownership of Red Eye, Inc., and Galardi is  willing to sell the same to Purchaser, all subject to and upon the
terms and conditions set forth in this Contract.

NOW, THEREFORE, FOR and in consideration of the sum of $10.00 cash in hand paid by Purchaser to
Seller, the premises, the mutual covenants set forth in this Contract, and other good and valuable consideration, the
receipt, adequacy, and sufficiency of which are hereby acknowledged by Seller and Purchaser, Seller and Purchaser
hereby covenant and agree as follows:

1. **Bankruptcy Court Approval.** This Agreement is subject to a motion to sell, with a notice and
   opportunity for a hearing to all creditor and parties in interest, filed in the United States Bankruptcy
   Court, Middle District of Georgia, Macon Division, case no. 22-50003-jms (the "Bankruptcy Case"), in
   which Galardi is the Debtor and Debtor in Possession, filed under 11 U.S.C. §363(f). No sale is
   authorized unless and until a final order is entered in the Bankruptcy Case.

2. **Purchase and Sale of Membership Interest in LLC and Stock of Red Eyed.** Upon the
   approval of the motion to sell and entry of an Order approving such sale, Galardi will sell in exchange for



the consideration stated herein and Purchaser shall purchase from Galardi, all subject to the terms and conditions of this agreement, the following:

(a)       Membership Interest of JGP&P, LLC  100% of Galardi's membership interest in the LLC, being 100% of all membership interest of the LLC.  The LLC is the owner of the Land, together with all buildings, improvements, fixtures, and related facilities, such as parking lots and utility fixtures constructed and located upon the Land (collectively, the "Improvements"; the Land and the Building located on the Land being sometimes collectively referred to as the "Real Property").  It is expressly understood and acknowledged that on the date of transfer the LLC shall own only the Land as described herein, the improvements thereon and no other personal property or real property. The LLC is transferred with all assets and liabilities arising after March 1, 2021, except the real property located at and commonly known as 4766 Frontage Rd, Forest Park GA and all of its improvements is specifically exclude and shall be transferred by the LLC to Galardi prior to any sale of Galardi's membership interest in the LLC.

(b)       Stock of Red Eyed, Inc.  All of Galardi's  right, title, and interest in and to the corporate stock of Red Eyed, Inc.. Red Eye is the owner of the furniture, fixtures, equipment, and other articles of personal property attached to or located on and used solely in connection with the operation of the business on the Real Property (collectively, the "Personal Property"), such would also include  Galardi's and Red Eyed, Inc.'s right, title, and interest, if any, in any and all licenses, permits, franchises, developmental rights, or other similar rights used in, or pertaining solely to the ownership or operation of the business on the Land (collectively, the "Licenses"). At the time of the stock transfer of Red Eyed to Purchaser, all assets and liabilities are transferred with Red Eyed, except the assets shall not include any money or cash, and all bank accounts shall be terminated. Further, Purchaser shall immediately upon transfer take steps to obtain new sales tax, use tax or other state tax identification as those were previously affiliated with Galardi personally.  The LLC membership interest  and the Stock of Red Eyed, Inc.  are sometimes referred to collectively in this Contract as the "Property."

3.       **Earnest Money**.  No later than 5:00 p.m. on the date being three  (3) business days after the  Binding Agreement Date, Purchaser shall deposit the sum of  Fifty Thousand and no/100 Dollars ($50,000.00) (the "Earnest Money"), in cash or by U.S. Federal Reserve System wire transfer of good funds, with Medley & Associates, ("Escrow Agent"), pursuant to the provisions of Paragraph 27 below, and Escrow Agent, by countersigning this Contract below, acknowledges receipt of the Earnest Money and Escrow Agent agrees to hold and disburse the Earnest Money in



2                                           SELLER _____ PURCHASER _____

accordance with the terms and conditions of this Contract. The Earnest Money shall be applied to the "Purchase Price" (as defined herein) at the "Closing" (as herein defined) or as otherwise set forth in this Contract. If Purchaser does not deposit the Earnest Money before 5:00 p.m. on the date being three (3) business days after the Binding Agreement Date, this Contract shall become automatically null and void and of no force or effect. In the event Purchaser does not terminate this Contract on or before the expiration of the "Inspection Period," as defined below, pursuant to the provisions of Paragraph 7 below, Purchaser shall deposit an additional sum of Ten Thousand and no/100 Dollars ($10,000.00) no later than ten (10) days after the Binding Agreement Date, which sum, upon the deposit thereof, shall also be deemed to be "Earnest Money" under this Contract and treated as such for all purposes.

4.    **Purchase Price of LLC Membership Interest and Stock of Red Eyed, Inc.** The purchase price (the "Purchase Price") to be paid by Purchaser to Galardi at the Closing for the conveyance of her membership interest in the LLC and her stock of Red Eyed as set forth herein shall be Three Million Three Hundred Thousand and no/100 Dollars ($3,300,000.00), (allocated as follows: for Galardi's membership interest in the LLC Two Million Eight Hundred Thousand and no/100 Dollars ($2,800,000.00) and to Galardi for the Stock of Red Eyed, Inc., Five Hundred Thousand and no/100 Dollars ($500,000.00)) which shall be paid in full by Purchaser to Galardi at the Closing, in cash or by U.S. Federal Reserve System wire transfer of good funds to an account designated by Seller, without deduction or setoff. The Earnest Money, upon transfer thereof to Galardi, equally, from Escrow Agent at the "Closing" (as hereinafter defined), shall be applied to and credited in reduction of the Purchase Price.

5.    **Operation of Property.** Galardi and Purchaser acknowledge Purchaser through an affiliate currently leases the Real Property owned by the LLC, inclusive of the use of the personal property owned by Red Eyed, Inc., and operates an adult entertainment business (the "Business"). Such lease terminates on December 31, 2022. While Purchaser operates the Business, Purchaser is solely responsible for all expenses of such business, including without limitation and only by way of example utilities, employees, payroll, inventory, security and other claims and liabilities that would or could be asserted against the LLC or Galardi or Red Eyed. In the event Purchaser approves the condition and status of the Property at the expiration of the "Inspection Period" (as defined in Paragraph 7 below), and timely deposits the additional sum of Ten Thousand Dollars ($10,000.00) as "Earnest Money" at the expiration of the Inspection Period as set forth in Paragraph 2 above, RE Seller shall not thereafter enter into any new leases of space at the Property without the prior consent of Purchaser in each case. Purchaser acknowledges that this



3

Agreement, prior to or subsequent to entry of an Order granting such motion to sell, maybe voided at Seller's discretion if Purchaser is in default of any other agreement relating to its current use of the Land and Property. [1]

6.   **Due Diligence; Inspection.**

(a)   Upon the proper execution of this Agreement and the deposit of the Earnest Money as set forth above, Seller shall, provide copies of the materials in Seller's possession directly pertaining to the operation of the LLC and Red Eyed, and permit Purchaser to conduct due diligence for Purchaser's purchase of the LLC and Property. Purchaser acknowledges and agrees, that based upon Purchaser's due diligence review of the Property, Purchaser shall ascertain and determine whether the Property is suitable for Purchaser's investment goals, and in satisfactory condition for Purchaser's intended use of the Property, as set forth below in Paragraph 7.

(b)   Seller hereby grants Purchaser and its agents the right and privilege to enter upon and inspect the Property during the "Inspection Period," as defined below ( or for as long as this Contract is in full force and effect if terminated sooner), such right to include, without limitation, the right to review the leases, contracts, and records of Seller directly pertaining to the ownership and operation of the Property, and the right to review soil tests, surveys, and other examinations that Purchaser desires to make in planning for its ownership of the Property, all at Purchaser's sole cost and expense. All such work and all such tests performed by or at the request of Purchaser shall be non-destructive and Purchaser shall, immediately upon any request by Seller, restore the Property to the condition thereof existing immediately prior to any such work or tests.

(c)   Purchaser hereby agrees that Purchaser shall be completely responsible for all acts and omissions of itself, its agents, contractors, employees, and representatives in exercising such right and privilege granted in this Paragraph, and Purchaser hereby indemnifies Seller and agrees to hold Seller free and harmless from and against any and all losses, costs, damages, and expenses (including, without limitation, attorneys' fees and costs of litigation and the cost and expense of removing or bonding any liens affecting the Property) ever suffered or incurred by Seller by reason of the exercise of the rights and privileges granted to Purchaser in this Paragraph, or the breach of Purchaser's covenant to restore contained herein. The indemnity contained in the immediately preceding sentence shall expressly survive the Closing or any termination of this Contract.

---

[1] Purchaser also has separate agreement with Fly Low, Inc, for use of the tradename and trademark "King of Diamonds" , hereinafter the "Marks". The Marks are not included in any sale contemplated herein.

4                                                  SELLER _____ PURCHASER _____ .

7.    **Inspection Period.** Purchaser shall have a period (the "Inspection Period") commencing on the date of this Contract and expiring at 5:00 p.m. on the date being five (5) days after the Binding Agreement Date, to determine whether the Property is suitable for Purchaser's investment goals and in satisfactory condition for Purchaser's intended use of the Property. In the event Purchaser determines that the Property is not suitable for Purchaser's investment goals or is not in satisfactory condition for Purchaser's intended use of the Property and fails to extend the Inspection Period as provided in (b) below, Purchaser may terminate this Contract by giving written notice thereof to Seller on or before 5:00 p.m. on the date being five (5) days after the Binding Agreement Date, in which event Escrow Agent shall disburse all of the Earnest Money to Purchaser less the sum of $40,000.00 which shall be disbursed to Seller as consideration for entering into this Contract, and, except as expressly provided herein to the contrary, this Contract shall be of no further force or effect and Purchaser and Seller shall have no further rights, liabilities, duties, or obligations hereunder. In the event Purchaser does not so notify Seller that Purchaser is so terminating this Contract, Purchaser shall be deemed to have accepted the Property as suitable for Purchaser's investment goals and in satisfactory condition for Purchaser's intended use of the Property, and, subject only to any destruction or condemnation of the Property covered by Paragraphs 11 or 12 below, this Contract shall be unconditional and Seller shall be obligated to sell, and Purchaser shall be obligated to purchase, the Property as set forth in this Contract.

8.    **Closing; Closing Date.** Purchaser and Seller shall consummate the purchase and sale of the Property (the "Closing") at a location approved by Purchaser and Seller, and at a specific time and date (the "Closing Date") designated by Purchaser by written notice thereof to Seller given at least five (5) business days prior to the Closing Date specified in such notice; provided, however, in no event whatsoever shall the Closing Date be later than the date being thirty (30) days after the Binding Agreement Date. In the event Purchaser does not designate an earlier date by proper written notice to Seller, the Closing shall occur at 10:00 a.m. on the date being thirty (30) days after the Binding Agreement Date at a location approved by Purchaser and Seller. Purchaser and Seller each agree to execute and deliver those closing documents necessary to consummate the purchase and sale of the Property as contemplated in this Contract, and Seller shall deliver to Purchaser, against the payment of the Purchase Price, the following documents:

(a)    a bill of sale for the membership interest of JGP&P, LLC "AS IS, WHERE IS," in which Seller shall warrant title only against the claims of all parties claiming by, through, or under Seller;

5                                      SELLER  PURCHASER

(b)     a bill of sale for the Stock of Red Eyed, Inc, "AS IS, WHERE IS," in which Seller shall warrant title only against the claims of all parties claiming by, through, or under Seller;

(c)     an assignment of Seller's right, title, and interest, if any, in and to the Licenses,to the extent transferable, and Seller explicitly disclaims such is assignable, and any employment, service and other contracts pertaining to the ownership or operation of the Property, if any, which Purchaser desires to have assigned (to the extent transferable);

(d) an IRS Form 1099;

(e) a Georgia Withholding Affidavit.

9.     **Closing Expenses; Prorations.** None

10.     **Possession.** At Closing, Seller shall deliver exclusive possession of the Property to Purchaser, subject to the rights of tenants.

11.     **Destruction.** In the event the Property or any material portion of the Improvements is damaged or destroyed by fire or any other casualty prior to the Closing Date, Seller shall notify Purchaser thereof and Seller shall have the right, but not the obligation, to undertake the repair or restoration of the Improvements so damaged or destroyed if Seller reasonably expects such repairs can be completed prior to the Closing Date, or is required to do so under any tenant lease or mortgage. If Seller gives Purchaser notice of any such undertaking, such undertaking shall be an obligation of Seller hereunder, and the purchase and sale of the Property shall be consummated in accordance with the terms and provisions of this Contract with no adjustment in the Purchase Price and Seller shall receive all insurance proceeds payable by reason of such damage or destruction. In the event Seller notifies Purchaser that Seller does not elect to undertake such repair or restoration, Purchaser may, at its election, either (a) terminate this Contract by giving written notice thereof to Seller, in which event Escrow Agent shall deliver the Earnest Money to Purchaser and, except as expressly provided herein to the contrary, this Contract shall be of no further force or effect and Purchaser and Seller shall have no further rights, liabilities, duties, or obligations hereunder, or (b) Purchaser may require Seller to (i) convey the Property or the remaining portion thereof as provided herein for the Purchase Price set forth in Paragraph 3 hereof, (ii) transfer and assign all of Seller's right, title, and interest in and to any and all insurance proceeds payable or to be paid in connection with such damage or destruction, and (iii) Seller shall pay the "deductible" applicable under Seller's property insurance policy, and the subject transaction shall otherwise be consummated as provided in this Contract to the extent possible. In the event Seller so notifies Purchaser that Seller does not undertake

6                                        SELLER  PURCHASER

to so repair or restore the Property, Purchaser shall notify Seller in writing of its election pursuant to the immediately preceding sentence within ten (10) days after such notice from Seller, and in the event Purchaser fails to so notify Seller within said 10-day period, Purchaser shall be deemed to have elected to terminate this Contract pursuant to clause (b) immediately above.

13.      **Defaults.** In the event Seller breaches or fails to perform or comply with any its covenants, duties, and obligations under this Contract, including without limitation, its obligation to convey the Property to Purchaser as set forth in this Contract, Purchaser shall, as its sole rights and remedies therefor, be entitled (a) to seek specific performance of this Contract, or (b) to terminate this Contract by giving written notice thereof to Seller, in which event Escrow Agent shall deliver the Earnest Money to Purchaser, and, except as expressly set forth herein to the contrary, this Contract shall be of no further force or effect, and Purchaser and Seller shall not have any further rights, liabilities, duties, or obligations hereunder. In the event Purchaser breaches or fails to perform or comply with any of its covenant, duties, agreements, or obligations as set forth in this Contract, Seller shall, as its only right and remedy therefor, be entitled to retain the Earnest Money as liquidated damages therefor, and upon written notice to Escrow Agent of such occurrence, Escrow Agent shall disburse the Earnest Money to Seller, whereupon, except as expressly provided to the contrary herein, this Contract shall be of no further force or effect, and Seller and Purchaser shall not have any further rights, liabilities, duties, or obligations hereunder. Seller and Purchaser expressly agree that the actual damages for any such breach or default by Purchaser are now and probably in the future will be impossible to ascertain with certainty, and the foregoing liquidated damages provision represents a reasonable estimate of the probable extent of such damages and is not intended as a penalty. Notwithstanding any of the foregoing provisions of this Paragraph 13 to the contrary, nothing contained in this Contract shall in any manner limit the liability of Purchaser or any of Seller's rights and remedies arising by reason of any express indemnification of Seller by Purchaser herein.

14.      **Brokers.** Purchaser and Seller hereby represent to each other that they have not discussed this Contract or the subject matter hereof with any real estate broker, agent, or salesman so as to create any legal right in any such broker, agent, or salesman to claim a real estate commission, fee, or other compensation with respect to the conveyance of the property contemplated by this Contract

7                                                                

15.     **Notices**. All notices and other communications permitted or required hereunder shall be in writing

and shall be personally delivered, sent by overnight or same day courier service providing a return receipt, or mailed,

U. S. certified mail, return receipt requested, postage or delivery fees prepaid, to Seller at the following address:

Teri G. Galardi
2555 Chantilly Road
Atlanta GA 30324

With a copy to

Louis G. McBryan
McBryan, LLC
6849 Peachtree Dunwoody Road
Building B-3 Suite 100
Atlanta GA 30328

or to Purchaser at the following address:

NTKN Holdings, LLC
4730 Frontage Road
Forest Park, GA 30297

With a copy to Escrow Agent at:

Medley & Associates
Attn.: Leonard Medley
2727 Paces Ferry Road, SE
Atlanta GA 30339

or to such other addresses as may be specified from time to time by any party hereto by giving written notice thereof

as provided herein. All such notices shall be deemed given when sent as provided herein, but shall be deemed effective

for purposes of any response or other action when actually received by the addressee, as shown by the return receipt,

if mailed, or by the records of any national delivery company (such as FedEx or UPS) if delivered. Any rejection,

refusal to accept, or inability to deliver any properly sent notice addressed as set forth herein shall be deemed to be a

delivery for purposes of this Contract.

16.     **"AS IS" Sale**. Purchaser acknowledges that Purchaser is experienced in evaluating, inspecting, and

purchasing commercial real estate. Purchaser also acknowledges that the inspection rights contained in this Contract

and the due diligence conducted hereunder of all the matters set forth herein will permit Purchaser sufficient time to

make an informed decision as to whether the Property is suitable for Purchaser's intended uses and purposes and in a

condition satisfactory to Purchaser. Therefore, notwithstanding any other provision of this Contract to the contrary,

Seller shall sell and purchaser shall purchase the Property and any and all rights, titles, estates, and interests under this

8                                                          SELLER  PURCHASER ___.

Contract **"AS IS, WHERE IS,"** and **"WITH ALL FAULTS."** Seller has not made and is not and shall not make any representations or warrantees, express or implied, concerning the Property or the condition, status, ownership, or title of any of the Property, excepting only the limited warranty of title to be given by Seller as set forth above in this Contract. Without limiting the foregoing, Seller is not making and shall not make any representations or warrantees concerning the condition or status of any of the Property, compliance of any portions of the Property with any Federal, State, or local laws or regulations to which the Property or the ownership or operation is subject, such as environmental laws and regulations (such as those governing "hazardous waste" or "hazardous materials"), or zoning or land use laws or regulations. These matters shall be investigated by Purchaser and resolved to Purchaser's satisfaction during Purchaser's due diligence review conducted during the Inspection Period. The provisions of this Paragraph shall be restated and reaffirmed in the closing memorandum executed at the Closing by Seller and Purchaser.

17.     **Entire Agreement.** This document contains the entire agreement between Purchaser and Seller and it shall inure to the benefit of and shall bind the parties hereto, their respective permitted successors or assigns.

18.     **Assignment.** Purchaser may not transfer or assign any of its rights under this Contract without the prior written consent of Seller in each instance. However, Seller agrees that any transfer or assignment by Purchaser of its rights under this Contract to an entity controlled by Purchaser will be permitted so long as prior notice of such transfer is provided to Seller.

19.     **Survival of Indemnifications.** The express indemnities set forth in Paragraphs 6 and 14, and only such indemnities, shall survive the Closing or any termination of this Contract.

20.     **No Oral Modifications.** This Contract may be amended or modified only by written instrument duly executed by Purchaser and Seller, and, only in the event the provisions regarding the holding and disbursement of the Earnest Money are modified, also by Escrow Agent, or only in the event the provisions regarding the brokers' commissions are modified, then also by Brokers. No oral or other modifications shall be valid or effective to amend or modify any of the terms or provisions hereof.

21.     **Counterparts.** This Contract may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute the same agreement. Any fax of an executed signature page sent by the party whose signature is contained thereon may be appended to any counterpart and shall be deemed to be bind such party as an original signature.

9


SELLER _____ PURCHASER _____

22.     **Time of the Essence.** Time is of the essence in this Contract and all dates and times set forth herein have entered into the consideration for this Contract.

23.     **Headings.** Descriptive headings contained in this Contract are for convenience only and shall not control or affect the meaning or construction of any provision of this Contract.

24.     **Governing Law.** This Contract shall be construed and interpreted according to the laws of the State of Georgia.

25.     **Relationships.** Nothing contained in this Contract shall constitute or be construed to be or create a partnership, joint venture or any other relationship between Seller and Purchaser other than the relationship of a buyer and seller of real and personal property as set forth in this Contract.

26.     **Attorneys' Fees.** In any litigation arising out of this Contract, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs of litigation.

27.     **Escrow.** Escrow Agent, as escrow agent hereunder receiving the Earnest Money, is authorized and agrees by acceptance of them to deposit the same promptly, hold same in trust and in escrow and, subject to clearance, disburse the Earnest Money in accordance with the terms and conditions of this Contract. Failure of clearance of funds shall not excuse Purchaser's performance. If in doubt as to Escrow Agent's duties or liabilities under the provisions of this Contract, Escrow Agent may, at its option, continue to hold the Earnest Money until the parties mutually agree to its disbursement, or until a judgment or a court of competent jurisdiction shall determine the rights of the parties, or Escrow Agent may deposit with the clerk of the circuit court having jurisdiction of the dispute pursuant to an interpleader action. Upon notifying all parties concerned of such action, all liability on the part of Escrow Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow to such court. In any suit between Purchaser and Seller where Escrow Agent is made a party because of acting as Escrow Agent hereunder, or in any suit wherein Escrow Agent interpleads the Earnest Money, Escrow Agent shall recover reasonable attorneys' fees and costs incurred with the fees and costs to be charged and assessed as court costs in favor of the prevailing party. Purchaser and Seller agree that Escrow Agent shall not be liable to any party or person for mis-delivery to Purchaser or Seller of the Earnest Money escrowed hereunder, unless such misdelivery is due to willful breach of this Contract or gross negligence of Escrow Agent. Escrow Agent may receive other benefits from the financial institution where the funds are deposited. Based upon the deposit of escrow funds in demand deposit accounts and other relationships with the financial institution, Escrow Agent is eligible to participate in a program

10                                          SELLER  PURCHASER

whereby it may (i) receive favorable terms and earn income from the investment of loan proceeds and (ii) receive other benefits offered by the financial institution.

28.     **No Recordation.** Neither this Contract nor any memorandum thereof may be recorded in any public records, and no such recording in violation hereof shall be deemed to give any notice of the terms hereof to any party or have any other effect.

29.     **Year End Tax Preparation.** Purchaser and Seller agree that Seller's accountants, Whaley Hammond, Tomaselli, PC ("WHT"), shall prepare the tax returns for the LLC and Red Eyed for tax year 2022, and Purchaser shall cooperate and provide WHT all documents requested and reasonably necessary to prepare tax year 2022 tax returns. This provision shall survive the closing of this transaction.

30.     **Binding Agreement Date.** The Binding Agreement Date shall be the date that Seller delivers the fully executed Contract to Purchaser.

IN WITNESS WHEREOF, Seller and Purchaser have each caused this Contract to be properly executed by their duly authorized representatives, as of the day and year first above written; and Escrow Agent has caused this Contract to be signed as a limited joinder to acknowledge receipt of the Earnest Money and agree to the provisions of the Contract pertaining to the escrow and disbursement of the Earnest Money; Brokers are parties to this Contract solely to enforce their commission rights and need not be party to any amendments or modifications hereof that do not directly affect their respective commissions.

TERI GALE GALARDI
Date:

**PURCHASER:**

**NTKN Holdings, LLC**

AKINYELE ADAMS, MANAGING MEMBER
Date:

**ESCROW AGENT:**
**Medley & Associates**
By: _____
         LEONARD MEDLEY
Date:

11                                            SELLER_____ PURCHASER_____

**EXHIBIT "A"**

**Description of Land**

12

SELLER  PURCHASER

# EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot
44 of the 13th District of Clayton County, Georgia, and
being more particularly described as follows:

BEGINNING at an iron bar located on the eastern right-of-way
line of Old U. S. Highway 41 and 19 (now Interstate Highway
75 Access or Service Road), a distance of 522.9 feet north-
erly, as measured along said right-of-way line, and following
the curvature thereof, from an iron bar marking the point of
intersection of said right-of-way line, and the south line
of Land Lot 44, said iron bar at the point of beginning also
being located a distance of 247.93 feet northerly, as measured
along said right-of-way line, and following the curvature
thereof, from the corner of the intersection of the eastern
right-of-way line of Old U. S. Highway 41 and 19 and the
northern right-of-way line of Falcon Drive (50-foot right-
of-way); running thence in a northerly direction along the
arc of a curve to the left in the eastern right-of-way line
of Old U. S. Highway 41 and 19, said arc being subtended by
a chord line having a magnetic bearing of north 03 degrees
39 minutes 17 seconds west and a length of 184.38 feet, a
distance of 184.40 feet to an iron bar; running thence north
08 degrees 03 minutes 04 seconds west along said right-of-
way line, a distance of 59.72 feet to an iron bar; running
thence south 88 degrees 51 minutes 41 seconds east a distance
of 561.56 feet to a steel rod; running thence south 00 degrees
48 minutes 34 seconds west a distance of 240.68 feet to an
iron bar located on the line established by Boundary Line
Agreement by and between R. A. Higgins and Olivie Higgins
and Consolidated Equities Corporation and Standard Oil
Company, dated February, 1967, and recorded in Deed Book
492, page 672, Clayton County, Georgia Records; running
thence north 89 degrees 04 minutes 35 seconds west along the
line established in the aforesaid Boundary Line Agreement, a
distance of 538.00 feet to the iron bar located on the
eastern right-of-way line of Old U. S. Highway 41 and 19 and
the point of beginning, as per survey for "Airline Inn,
Inc.," dated July 17, 1980, prepared by R. L. Rhinehart,
Georgia Registered Land Surveyor No. 1476, and containing
3.039 acres according to said survey.

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

IN RE:                    )       **CHAPTER 11**

                           )

**TERI G. GALARDI,**      )

                           )       **CASE NO. 22-50035-JPS**

       **Debtor,**        )

_____ )

## MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY LOCATED AT 2121 S. HIGHLAND AVENUE, LAS VEGAS, NEVADA

COMES NOW Teri G. Galardi ("Debtor") and files this *Motion for Authorization to Sell Real Property located at 2121 S. Highland Avenue, Las Vegas, Nevada* (the "Motion"). In support of the Motion, Debtor shows the Court as follows:

1.

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The Statutory predicate for the relief requested herein is 11 U.S.C. §§ 105 and 363 and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

2.

On January 12, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11, Subchapter V of the United States Bankruptcy Code. On March 31, 2022, a Consent Order was entered by the Court allowing the Debtor to Proceed under other applicable provisions of Chapter 11, other than Subchapter V. The Debtor is continuing to manage her affairs as a Debtor-in-Possession under §§ 1107(a) and 1108 of the Bankruptcy Code.

3.

Debtor, through her sole ownership interest in New International Properties, LLC, owns real property located at 2121 S. Highland Avenue, Las Vegas, Nevada (the "Real Property").

4.

Roi Zalach (the "Buyer") has made an offer to purchase the Real Property. A copy of the

Contract for the Purchase and Sale Agreement is (the "Agreement") attached hereto as **Exhibit**

**A.**

5.

As set forth in the Agreement, Buyer's offer encompasses paying $800,000.00 for the

Real Property (the "Purchase Price") to be paid as follows: (1) $800,000.00 earnest money to be

paid two (2) business days after the Agreement date and deposited into escrow.

6.

Debtor believes that the Agreement represents the highest and best offer available and

that the Purchase Price represents the true value of the Real Property.

7.

Upon approval of the sale motion, and consideration paid New International Properties,

LLC shall transfer it to Buyer upon payment of the purchase price.

8.

Fidelity National Title, specifically Jennifer Hubbard, will acting as the Escrow Agent in

this transaction. The Escrow Agent is only authorized to receive and accept earnest money in

accordance with the terms and conditions of the Agreement.

9.

The Agreement is contingent on and subject to approval by the Bankruptcy Court. The

sale is not authorized unless and until a final order is entered in this bankruptcy case.

10.

Debtor is not aware of any secured claims, although real property taxes may be due and

owing at closing and shall be prorated.

11.

The Real Property will be sold to Purchaser "As Is-Where Is" with no warranties or representations.

## RELIEF REQUESTED

12.

Debtor requests authority to sell the Real Property as described herein free and clear of liens, claims, encumbrances, and interests for the Purchase Price. Additionally, Debtor requests permission to (i) disburse the Purchase Price as provided herein with liens attaching to the Sales Proceeds to the same validity and priority as existed on the filing date; and (ii) take such action as necessary to effectuate the terms of the Agreement. Debtor requests that: (a) the Court waive any stay pursuant to Bankruptcy Rule 6004 or otherwise; and (b) any order approving the sale of the Real Property be effective immediately upon entry.

## PROPOSED DISTIBUTION OF SALE PROCEEDS

13.

Debtor requests that it be authorized to use and distribute the Sales Proceeds as follows:

(a) Payment of all customary closing costs, if any; and

(b) Payment of real estate commission, which is 6%, to be paid to Nevada Land Commercial Real Estate ("Broker"); and

(c) All net proceeds to be used to fund the Debtor's Chapter 11 Bankruptcy Case and Plan.

## TRANSACTION IS IN THE BEST INTEREST OF THE ESTATE

14.

Buyer has made an offer to purchase the Real Property. Debtor believes the proposal represents the highest and best offer.

## BASIS FOR RELIEF

15.

A debtor in possession may sell property under Section 363(f) of the Bankruptcy Code "free and clear of any interest in such property of any entity other than the estate" if any one of the following conditions is satisfied: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. §363(f). Debtor anticipates that one or more of these requirements will be satisfied.

16.

Buyer does not have a familial relationship to Debtor. Buyer is not an "affiliate" or "insider" of Debtor. Upon information and belief, Debtor shows that the proposed Buyer is a "good faith" purchaser. Debtor requests that the Court find such Buyer to be a good faith purchaser pursuant to the provisions of Section 363(m) of the Bankruptcy Code.

17.

Buyer has indicated its interest in proceeding under the Agreement as soon as possible.

18.

Debtor requests that the Court waive any stay of the effectiveness of any order granting the Motion and approving the sale under Bankruptcy Rule 6004.

WHEREFORE, for all of the foregoing reasons, Debtor moves the Court to enter an Order:

(a) Granting the Motion and approving the sale free and clear of all liens;

(b) Authorizing the distribution of the Sale Proceeds as provided herein;

(c) Waiving the stay of such Order pursuant to Bankruptcy Rule 6004 or any rule of

similar import and making the Order effective upon its entry; and

(d) Granting the Debtor such other and further relief as may be just and proper.

Respectfully submitted,

**McBRYAN, LLC**

/s/Louis G. McBryan

Louis G. McBryan, Georgia Bar No. 480993

6849 Peachtree Dunwoody Rd

Building B-3, Suite 100

Atlanta, GA 30328

Telephone (678) 733-9322

Fax (678)498-2709

lmcbryan@mcbryanlaw.com

**Attorneys for Debtor**

## PURCHASE AND SALE AGREEMENT
## AND ESCROW INSTRUCTIONS

THIS AGREEMENT, made and entered into on this _____ day of _____, 2022, (hereinafter the "Effective Date") by and between Roi Zalach, and/or his successor or assigns (hereafter "Buyer"), and New International Properties LLC , a Nevada limited liability company, (hereinafter "Seller"). When the Buyer and Seller are referred to collectively herein, they are referred to as "Parties." This document shall constitute a Purchase and Sale Agreement and Escrow Instructions between Seller and Buyer based upon the following terms and conditions.

1.    PROPERTY. Seller agrees to sell and Buyer agrees to buy the real property situated in the County of Clark, the State of Nevada, which real property is more particularly identified as APN 162-04-403-002, more commonly known as 2121 S. Highland Avenue, Las Vegas, Nevada 89102 (hereinafter "Property"). Such real property is further identified as shown on Exhibit "1" attached hereto.

**All Parties to this contract acknowledge and understand that this Agreement and prospective sale is subject to the approval of the U.S. Bankruptcy Court sitting in Middle District of Georgia Macon Division**

2.    PURCHASE PRICE. The Purchase Price for said Property is **Eight Hundred Thousand Dollars ($800,000)**, payable as follows:

Within two (2) business days upon the execution of this Agreement by the Seller, the Buyer shall deposit into escrow with the Fidelity National Title, as further identified below, the amount of Eight Hundred Thousand Dollars ($800,000) as an Earnest Money Deposit. Said $800,000 shall be placed into an interest-bearing account by the Escrow Agent and any interest accrued on such account shall be accrued to the Buyer's benefit. Except as provided in ¶s 5 and 8 below, the aforementioned $800,000 shall become non-refundable to the Buyer. After the expiration of the Due Diligence Period, as provided in ¶s 4, 5 and 8 below, such deposit shall then be payable solely to the Seller on the date scheduled for the Close of Escrow, as either a credit towards the purchase price, or as compensation to the Seller for the Buyer's purchase of the Property.

3.    ESCROW AGENT. An escrow will be opened up with Fidelity National Title (hereinafter "Title Company"), with Jennifer Hubbard being the Escrow Agent. The address for the Escrow Agent is 500 North Rainbow Blvd., Suite 100, Las Vegas, Nevada 89107. This Agreement shall constitute Escrow Instructions from both Buyer and Seller to the Escrow Agent. It is also anticipated that the Escrow Agent will require Buyer and Seller to sign their own set of separate instructions. However, in the event of any conflict between the terms of the Title Company's Escrow Instructions and this Agreement, insofar as the contractual rights and duties between the Buyer and Seller are concerned, this Agreement shall control and take precedent over any conflicting language in the Escrow Instructions. Said escrow shall be opened within two (2) business days after execution of this Agreement by the last party to sign this Agreement.

RZ

4. **DUE DILIGENCE PERIOD.** As part of the consideration for entering into this agreement, the Seller hereby grants to Buyer a five (5)-business day due diligence or feasibility period (the "Due Diligence Period"), starting on the day after the opening of escrow. Such feasibility period shall allow the Buyer to conduct its own site investigations of the Property and its potential uses. Buyer shall be entitled to enter upon the Property, with reasonable notice to Seller, to conduct inspections of the Property in the presence of Seller or Seller's agent to consider the feasibility of its intended use of the Property, which could include but not be limited to: any zoning restrictions on the Property, and any environmental concerns and regulations; any draining and engineering matters related to the Property; approval of a Preliminary Title Report issued by the Title Company/Escrow Agent, a copy of which is attached hereto as Exhibit "2"; and any other matters that the Buyer deems of importance in making its decision to purchase the Property. Buyer shall undertake such due diligence studies at no cost to the Seller. Buyer shall also protect and indemnify the Seller against any Mechanic's Liens being placed on the Property as a result of Buyer's activities, as well as any potential property damage that may occur on the Property as a result of the Buyer's inspections. Buyer is being given this 5-day Due Diligence Period as a "free look" in order for the Buyer to investigate any and all issues, if any, the buyer may wish to address before it makes a final commitment to purchase the Property. Buyer also acknowledges that he will be relying upon his own feasibility and due diligence studies in determining whether it will proceed with purchasing the Seller's Property. Copies of any studies or reports that the Buyer obtains during its due diligence investigation of the Property shall be delivered to the Seller on or before the expiration of the due diligence period as a part of the consideration for this Agreement.

4.1 By signing this Agreement, the Buyer acknowledges his approval and acceptance of the aforementioned Preliminary Title Report, other than the monetary encumbrances noted on the title report, which encumbrances must be released at the Close of Escrow between Buyer and Seller, so that such encumbrances are not noted as an exception on the Title Policy that the Buyer shall receive at the Close of Escrow.

4.2 As part of the Seller's grant to the Buyer of this "free look" or Due Diligence Period for Buyer to conduct its own feasibility studies, the Seller acknowledges that the Buyer has the option to cancel this Agreement at any time during such period, without penalty and without providing any reason for the cancelation. In the event that such option is timely exercised, then the entire Earnest Money Deposit shall be returned to the Buyer. The Buyer also acknowledges that prior to the expiration of the Due Diligence Period the Buyer must make a decision as to whether it is committing itself to purchase the Property. If Buyer fails to properly and timely cancel the escrow as provided in this Agreement and within the Due Diligence period, then such failure of cancelation shall be deemed an approval by the Buyer of its commitment to proceed with closing escrow on the purchase of the Property.

5. **REFUNDABLE CONDITIONS ON INITIAL EARNEST MONEY DEPOSIT.** The Buyer's $800,000 Earnest Money Deposit shall be fully refundable within the Due Diligence Period, if Buyer has sent a timely written notice of termination to both Seller and Seller's attorney, and Broker, and Escrow Agent pursuant to the notice provisions in § 19 of this Agreement. Such written notice of termination must also be delivered to the Seller and Seller's attorney on or before the expiration of such Due Diligence Period, with such written notice stating unconditionally that

Buyer's Initials                    Page 2 of 10                    Seller's Initials

the Buyer has elected to exercise its option to cancel this Agreement and the escrow.

6.     AS-IS PROVISIONS. Once Buyer has committed itself to purchasing the Property at the expiration of the feasibility period, Buyer acknowledges that it will be purchasing the Property and all of the improvements thereon in its "AS-IS" condition, without any warranties or representations being given by the Seller to the Buyer, whether express or implied, other than those warranties and representations set forth in 13 below. In this regard, Buyer acknowledges that in making its decision to purchase the Property, it is relying on its own due diligence studies with regard to:

A.     the physical condition of the Property and its surroundings;

B.     the condition of the title to the Property as evidenced by the title policy that Seller will provide to Buyer at the Close of Escrow;

C.     any other conditions or circumstances relating to the Property. Buyer and Seller further acknowledge that this "AS-IS" provision in this Agreement has been factored into the Purchase Price of Eight Hundred Thousand Dollars ($800,000).

7.     CLOSING DATE. The Parties shall close escrow within fifteen (15) calendar days following Bankruptcy Court's approval and confirmation of this sale.

8.     DEFAULT CLAUSE. If Buyer fails to timely close escrow on the purchase of the Property as provided in this Agreement, then the Buyer shall be held in default. As a consequence of the Buyer's breach of this contract, the aforementioned Eight Hundred Thousand Dollars ($800,000) in Earnest Money Deposits shall be immediately payable to Seller in consideration for the Seller taking its Property off the market during the aforementioned Due Diligence Period and the time period necessary to obtain Bankruptcy Court approval for this sale, as provided for in § 25 of this Agreement, allowing Buyer the sole and exclusive opportunity to purchase Seller's Property during such time periods. The Buyer and Seller further agree that such $800,000 shall be fair and reasonable compensation to the Seller for the Seller granting to the Buyer the exclusive option and opportunity to buy the Seller's Property during the aforementioned time periods, and Escrow period. Buyer further acknowledges that this Agreement shall be irrevocable Escrow Instructions to the Escrow Agent to immediately release the $800,000 to the Seller if the Buyer fails to complete its obligation to close escrow on the Property, as provided herein. Buyer and Seller further acknowledge that such payment is fair compensation to the Seller as a bargained for exchange of rights so that if the Buyer fails to close escrow as provided herein, then Seller shall have no other remedy against the Buyer for Buyer's default, other than the right to claim specific performance for receiving the payment of such Earnest Money Deposits. Such remedy shall be regarded as an out-of-court settlement of the Seller's sole and exclusive remedy for damages against the Buyer, because the aforementioned

RZ
_____
Buyer's Initials

Page 3 of 10

_____
Seller's Initials

amount of liquidated damages, as agreed upon by the Parties, is a fair and reasonable amount and any other damage amount could be too cumbersome for the Parties to ascertain.

8.1    If the Seller should default in its obligations as provided in this Agreement so that the Parties fail to close escrow due solely to the fault of the Seller, then the Buyer may elect to receive either: (a) a full refund of its Earnest Money Deposit together with accrued interest; or (b) bring a suit against the Seller for specific performance and any other possible remedies as provided for in law and equity.

8.2    If any litigation is filed by any party to this Agreement, than such litigation must be filed in a court of competent jurisdiction in Clark County, Nevada.

9.    TIME IS OF THE ESSENCE.  All of the time deadlines set forth in this Agreement are to be strictly construed and enforced because they are the essence of this Agreement. Any failure to comply with such deadlines may be construed as a material breach of this Agreement.

10.    TITLE POLICY.  Attached hereto as Exhibit "2" is a Preliminary Title Report issued by the Title Company. The Parties also acknowledge that this Agreement shall instruct the Title Company to timely notify the Buyer and the Seller or any assignee of this Agreement, as to any changes affecting the terms and conditions of the aforementioned Title Report or the subsequent issuance of a title policy at the Close of Escrow that would be different from the Preliminary Title Report attached as Exhibit "2." At the Close of Escrow, Seller shall deliver to Buyer a Grant, Bargain, Sale Deed, together with a CLTA Owner's Policy, insuring that the deed being delivered to the Buyer represents good and marketable title to the Property, without any exceptions for any monetary encumbrances that can be removed at the Close of Escrow by satisfying those encumbrances from the Purchase Money proceeds.

Any other exceptions noted in the title policy that the Title Company issues upon closing shall conform with the aforementioned Preliminary Title Report that has been approved by the Buyer.

11.    ALLOCATION OF CLOSING COSTS. Seller shall provide to Buyer at Seller's sole cost and expense a CLTA policy of title insurance that insures the title to the Property as being conveyed to the Buyer free and clear of all liens and encumbrances other than those liens and encumbrances noted in the Title Company's Preliminary Title Report, with such Report being accepted by the Buyer within the aforementioned Due Diligence Period. The Buyer shall also have the option of requiring that the Title Company provide the Buyer with an ALTA policy of title insurance at the Close of Escrow. If the Buyer exercises such option, then Buyer shall pay for the entire additional premium cost that the Tittle Company will charge for such policy. The Title Company shall also be instructed to prorate any real property taxes, rents, insurance payments, sewer assessments, and any other assessments associated with the Property as of the Close of Escrow. Buyer and Seller shall each pay one-half of any escrow fees required by the Escrow Agent. To the extent that Buyer needs a loan to purchase the Property, Buyer shall pay all of the costs of such loan, including but not limited to providing a lender's title insurance policy to Buyer's intended lender. The real property transfer tax shall be equally borne by both Buyer and Seller.

RZ
Buyer's Initials                    Page 4 of 10                    Seller's Initials

All other closing costs shall be allocated between the Buyer and the Seller as is customary with Fidelity National Title closings in Clark County, Nevada.

12.     TIME OF POSSESSION. Possession shall be given to Buyer at the Close of Escrow.

13.     REPRESENTATIONS AND WARRANTIES OF THE BUYER AND SELLER.

      A.     The Seller represents and warrants to Buyer and the Escrow Agent, that:

           (1)     The Seller is the legal and lawful owner of the Property described in § 1 of this Agreement;

           (2)     Seller is a bona fide limited liability company lawfully registered and operating under the laws of the State of Nevada and is ready, willing and able to perform all of its obligations provided for in this Agreement;

           (3)     Other than the necessary Bankruptcy Court approval for this sale as required by § 25 of this Agreement, there are no restraints, lawsuits, or government regulations that would impede the Seller's performance obligations as set forth in this Agreement, and that the Seller is ready and able to close escrow on the sale of the Property once the Buyer has deposited into escrow all of the Purchase Money proceeds with the Escrow Agent and has authorized the Escrow Agent to release such proceeds to the Seller;

           (4)     To the best of Seller's knowledge, the Property is not contaminated by any hazardous waste, or any other environmental conditions that would adversely affect any of the traditional uses of the Property in accordance with the Property's existing zoning restrictions and regulations;

           (5)     Seller has no knowledge of any current or prior use of the Property or event, wherein the Property has been used in any manner that would be in violation of any zoning law or environmental protection law that would affect the future use of the Property.

           (6)     Seller has not undertaken any environmental studies or any other feasibility studies associated with the Property. Therefore, the Seller has no documents to produce regarding any reports prepared by any professionals who have examined the feasibility or use of the Property. Any documents exchanged between the Parties shall also be held in the strictest of confidence with no disclosures of the contents of such documents to third person or entity without the full consent of both Parties to this Agreement; and

           (7)     The Property is essentially a commercial building that was constructed in 1973 according to public records.

PZ
**Buyer's Initials**

**Seller's Initials**

B.  The Buyer represents and warrants, that:

    (1)  Buyer is ready, willing and able to purchase the Property and perform its obligation on the terms and conditions set forth in this Agreement;

    (2)  There is no legal restraint or governmental restraint or internal dispute within an organization that the Buyer may assign its rights in this contract to that would in any way interfere with the Buyer's ability to close escrow and purchase the Property;

    (3)  Buyer or any intended assignee has the financial ability to close escrow on the Property in a timely manner as set forth in this Agreement; and

    (4)  Buyer acknowledges that it is purchasing the Property and all the improvements thereon in its **"AS-IS"** condition and it is Buyer's responsibility to conduct all of the due diligence that is necessary for the Buyer to satisfy itself that the purchase of the Property will suit Buyer's individual needs, as well as to ascertain for its own decision-making purposes the environmental condition of the Property, the structural condition of the Property, and any other items that are of material importance to the Buyer.

14.  FINAL VESTING. Final vesting at the time of closing shall be determined in Escrow so that the Buyer has the right to assign this contract and escrow to an assignee of the Buyer. Such assignment, however, shall not relieve or discharge the Buyer from any of its obligations set forth in this Agreement.

15.  MUTUAL COOPERATION. Buyer and Seller agree to cooperate with each other in an IRS section 1031 tax-deferred exchange with each party paying the cost of their own exchange.

16.  LEGAL FEES AND COSTS OF ADDRESSING ANY DEFAULTS OR BREACH OF CONTRACT. In the event any action is taken to enforce the terms of this Agreement, either in a court action or preliminary activity prior to filing a court proceeding, the non-defaulting party shall be entitled to recover from the defaulting party any and all costs and attorneys' fees that the non-defaulting party incurs in enforcing the terms of this Agreement.

17.  MERGER CLAUSE. Buyer and Seller further agree that this contract constitutes the full and final Agreement between them and that there are no other warranties, representations, or promises to each other which are not set forth in this Agreement. Thus, Buyer and Seller further acknowledge and warrant to each other that they understand all prior discussions, negotiations, or representations are all merged into this Agreement with this Agreement expressing the full, and final expression of the Parties' contractual intent, along with all of the Parties' obligations, responsibilities and rights.

**Buyer's Initials**

Page 6 of 10

**Seller's Initials**

18. **BINDING CONTRACT UPON SIGNING.** Buyer and Seller further acknowledge and understand that immediately upon signing this Agreement, this document becomes a binding contract between the Buyer and the Seller on all the terms and conditions set forth herein. Buyer and Seller further acknowledge and represent to each other that they have voluntarily entered into this Agreement and that they have had full and ample opportunity to read, review and study this Agreement to determine their rights and liabilities and to seek all the professional help they deem necessary before entering into this binding Agreement.

19. **NOTICES.** All notices or other communications required or permitted pursuant to the terms of this Agreement, shall be in writing, and shall be sent by electronic mail to the email addresses designated below:

| | |
|---|---|
| TO SELLER: | New International Properties, LLC<br>c/o Teri Galardi<br>2121 S. Highland Avenue<br>Las Vegas, Nevada 89102 |
| | _____ |
| With a copy to: | Louis G. McBryan, Esq.<br>McBryan, LLC<br>6849 Peachtree Dunwoody Road<br>Atlanta, Georgia 30328<br>lmcbryan@mcbryanlaw.com |
| With a copy to: | Alberto Jauregui, as Seller's Broker<br>3505 E. Harmon Avenue, Ste. B<br>Las Vegas, Nevada 89121<br>aj@nevadaland.com |
| With a copy to: | Brent Larsen Esq.<br>3505 E. Harmon Avenue, Ste. B<br>Las Vegas, Nevada 89121<br>blarsen@deanerlaw.com |
| TO BUYER: | Roi Zalach<br>376 W. Sahara Avenue<br>Las Vegas, Nevada 89102<br>wepaytop@gmail.com |
| To Escrow Agent: | Jennifer Hubbard<br>Fidelity National Title of Nevada<br>500 N. Rainbow Blvd., Ste. 100<br>Las Vegas, Nevada 89107 |

Any notice sent to either the Buyer or the Seller shall be effective as of the date that an email is

RZ

Buyer's Initials                    Page 7 of 10                    Seller's Initials

sent to Buyer at wepaytop@gmail.com and to Seller at lmcbryan@mcbryan.com and
aj@nevadaland.com.

20.     COUNTERPARTS. This Agreement may be executed in multiple counterparts, each of
which shall be deemed an original, but all of which, together, shall constitute but one and the same
instrument. The Parties' signatures on this Agreement may be delivered by electronic mail. Buyer
and Seller each (a) agree to permit the use of signatures transmitted by email, where appropriate
and consistent with Paragraph 19 above, in order to expedite the transaction contemplated by this
Agreement, (b) intend to be bound by delivery of their respective emailed signature on this
Agreement, (c) are aware that the other party may rely on an emailed signature delivered in
accordance with this Agreement, and (d) acknowledge such reliance and waive any defenses to the
enforcement of the documents and Notices affecting the transaction contemplated by this
Agreement based on the fact that a signature is delivered by email.

21.     RULE OF CONSTRUCTION. The Parties hereto hereby acknowledge and agree that (a)
each party hereto is of equal bargaining strength, (b) each such party has actively participated in
the drafting, preparation, and negotiation of this Agreement, (c) each such party has been
represented by and consulted with each party's own independent advisor, and such other
professional advisors as such party has deemed appropriate, relating to any and all matters
contemplated under this Agreement, (d) each party's advisor has reviewed this Agreement, (e)
each party has agreed to enter into this Agreement following such review and the rendering of such
advice, and (f) any rule of construction to the effect that ambiguities are to be resolved against the
drafting party shall not apply in the interpretation of this Agreement, or any portions hereof, or
any amendments hereto. This Contract shall also be construed in accordance with Nevada Law.

22.     AMENDMENT TO THIS AGREEMENT. The terms of this Agreement may not be
modified or amended except by an instrument in writing executed by all of the Parties hereto. No
subsequent agreement, representation, or promise made by either party hereto, or by or to an
employee, officer, agent or representative of either party hereto shall be of any effect unless it is
in writing and executed by the party to be bound thereby.

23.     WAIVER. The waiver or failure to enforce any provision of this Agreement shall not
operate as a waiver of any future breach of any such provision or any other provision hereof.

24.     BROKERS. Both Parties represent and warrant to each other that Nevada Land
Commercial Development, through its principal, Alberto Jauregui, is the only broker involved in
this transaction. Accordingly, Seller represents and warrants to Buyer that the Buyer has no
responsibility for payment of any fees that may be claimed by any broker who claims to have been
hired by the Seller, including Alberto Jauregui. Buyer represents and warrants to Seller that the
Seller has no responsibility for payment of any fees that may be claimed by any broker who claims
to have been hired by the Buyer. Both Buyer and Seller further agree to hold each other harmless
and to indemnify each other regarding any claim that is made to a commission by any broker who
claims to have represented either Party to this Agreement, other than Alberto Jauregui.

Buyer's Initials                    Page 8 of 10                    Seller's Initials

25. CONDITIONS OF CLOSING.

A. *All Parties' Conditions on Court Approval.* All Parties to this Agreement understand that each Party's obligation to close escrow is contingent upon the Bankruptcy Court, located in Middle District of Georgia Macon Division, giving its full and final approval to this sale pursuant to the terms of this Agreement. The Parties further understand that the sale cannot go forward without such Bankruptcy Court approval, and that the appropriate notices of the Bankruptcy Court hearing have been given to all interested parties. The Parties further understand that during the court confirmation process, the court may open up the sale of the Property to open competitive bidding that could be presented by other potential buyers in order to achieve a higher and better price. Thus, if the Buyer's current purchase price of EIGHT Nine Hundred Thousand Dollars ($800,000) is outbid by any prospective buyer, the Buyer may need to be prepared to offer its own competitive bids in order to continue as the purchaser of the Property. If the Bankruptcy Court should refuse to give approval to the sale, then this Agreement shall be cancelled and become null and void and unenforceable by either Party to his Agreement, in which case the Buyer's entire Earnest Money Deposit shall be refunded to the Buyer.

B. *Buyer's Conditions.*

(1) The Seller has deposited with the Escrow Agent prior to the scheduled Close of Escrow date the Grant Bargain Sale Deed that is necessary to close this transaction, as well as all of the fully executed documents that the Escrow Agent requires from the Seller to close the sale; and

(2) The Title Company is prepared and ready to issue a title policy to the Buyer at the Close of Escrow, as provided under the terms of this Agreement.

(3) The only excuse or condition that would excuse the Buyer from performing its obligations to tender the full Purchase Price into escrow is if the Seller has refused to tender the Grant Bargain Sale Deed into Escrow as provided herein, or if the Escrow Agent is unable to provide to the Buyer, on the date of Closing, with the title policy as provided for in this Agreement.

C. *Seller's Conditions.*

(1) The Seller's obligation to close escrow on the sale of the Property is conditioned on the Escrow Agent being able to deliver to the Seller the full $800,000 of the Buyer's Earnest Money Deposit.

**Buyer's Initials**

Page 9 of 10

**Seller's Initials**

26.     ASSIGNMENT.  Buyer may assign its interest in this Agreement, either in whole or in part, to any third party without the prior written consent of Seller after the expiration of the Due Diligence Period, but Buyer shall provide written notice thereof. No such assignment, however, shall excuse the Buyer from any of its responsibilities and duties contained in this agreement.

27.     SELLER'S RIGHT TO PURSUE BACK-UP OFFERS.  As part of the consideration for this Agreement, Buyer also grants to Seller the right to entertain and pursue back-up offers, so that such offers will be held on a stand-by basis if the Buyer should fail to perform its obligation of closing escrow in this matter.  In the event the Seller does obtain a back-up offer, that offer shall be subordinate to the Buyer's contract rights as provided herein.

**"BUYER"**

_____     Dated: __9-23-22__

ROI ZALACH

**"SELLER"**
NEW INTERNATIONAL PROPERTIES, LLC

By:_____     Dated:_____
   Its:_____

Buyer's Initials          Page 10 of 10          Seller's Initials



**SO ORDERED.**

**SIGNED this 3 day of August, 2022.**



_____
James P. Smith
**James P. Smith**
**Chief United States Bankruptcy Judge**

### IN THE UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

IN RE:

**TERI G. GALARDI,**

      **Debtors.**

**CHAPTER 11**

**CASE NO.  22-50035-JPS**

### ORDER GRANTING MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY LOCATED AT 4730 FRONTAGE ROAD, FOREST PARK, GA AND STOCK INTEREST IN RED EYED, INC.

This matter is before the Court on Debtor's *Motion for Authorization to Sell Real Property Located at 4730 Frontage Road, Forest Park, GA and Stock Interest in Red Eyed, Inc.,* filed on July 8, 2022 (the "Sale Motion") (Dkt. No. 132), for entry of an order authorizing the Contract for the Purchase and Sale of Real Property and Stock (the "Agreement"), between Debtor, as sole owner of 100% stock of Red Eye, Inc. and 100% membership interest of JGP&P, LLC, ("Seller") and NTKN Holdings, LLC ("Buyer").

The Court having granted Debtor's Motion to Expedite Hearing on the Sale Motion (Dkt.

1

No. 133) and having issued an Order and Notice of Hearing scheduling a hearing for August 2, 2022, at 11:00 A.M. (the "Sale Hearing") (Dkt. No. 138).

The Sale Hearing having been held as scheduled.  Appearing at the hearing were Christopher W. Terry (counsel for the Debtor) and Leon S. Jones and Thomas T. McClendon (counsel for the Unsecured Creditor Committee); based upon the Court's review of the record in this case, including without limitation the Sale Motion, and upon consideration of the statements and arguments of counsel presented at the Sale Hearing, and there being good, sufficient and timely notice of the Sale Motion and the related hearings to all parties in interest, and after due deliberation and there being good cause for the relief sought through the Sale Motion, the Court hereby FINDS and ORDERS as follows:

The Court hereby FINDS as follows:

A.  The Court has jurisdiction over the Sale Motion and the transactions contemplated pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) (2) (A) and (N). Venue of this case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.  The statutory predicates for the relief sought in the Sale Motion are Sections 105, 363, and 1146(c) of 11 U.S.C. §§ 101 et. seq. (as amended, modified or supplemented, the "Bankruptcy Code"), and Bankruptcy Rules 2002, 6004, 6006, and 9014.

C.  A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

D.  Debtor and NTKN Holdings, LLC (such entity or its permitted assignee, the "Buyer")

2

entered into a Contract for the Purchase and Sale of Real Estate and Stock (the "Agreement") for $2,800,000.00 for the real estate located at 4730 Frontage Road, Forest Park, Georgia, as further described in the Agreement (the "Real Property"), and $500,000.00 for the stock of Red Eyed, Inc. (the "Stock" and such Real Property and Stock collectively, the "Property") (such transaction, the "Sale").

E.  The Debtor has all of the power and authority necessary to consummate the Sale of the Property to Buyer.

F.  The Debtor has demonstrated and proven to the satisfaction of this Court good, sufficient, and sound business purpose and justification for the Sale and the other transactions contemplated by the related documents necessary to consummate the Sale, including without limitation a bill of sale for the personal assets related to the Property pursuant to Section 363(b) of the Bankruptcy Code, and the Sale and associated transactions are in the best interests of the Debtor, its estate and its creditors.

G.  The consideration provided by the Buyer for the Property (i) is fair and reasonable, and (ii) is the highest and best offer for the Property.

H.  The entry of this Sale Order and the approval of the Sale of the Property to the Buyer are necessary and appropriate to maximize the value of the Debtor's estate.

I.  Cohen and Caproni, LLC, as Disbursing Agent under the Confirmed Plan of Reorganization of Trop, Inc. ("Cohen"), holds a first-priority properly perfected secured claim on behalf of certain claims as provided in Trop, Inc.'s confirmed plan of reorganization (Case No. 18-65726-JWC, Bankr. N.D. Ga.) (the "Trop

Plan of Reorganization"), which is secured by the Real Property to be sold (the "Trop Secured Claims"). The Trop Secured Claims are guaranteed by the Debtor.

J.   Proof of claims for the Trop Secured Claims are filed in this Bankruptcy Case in the approximate amount of $1,373,930.10 by both Ainsworth Dudley and Cohen. A true and correct accounting of the outstanding balance due for the Trop Secured Claims shall be submitted by Cohen to the Debtor and Creditors Committee, at least three (3) days prior to closing, to allow time for the parties to confirm the outstanding balance due.  The balance due on the Trop Secured Claims shall be disbursed to Cohen at closing in exchange for a full and final release of the Trop Secured Claims.  In the event the parties are unable to agree on the outstanding balance due on the Trop Secured Claims, the amount of $1,373,930.10 shall be placed in escrow, along with the remaining Net Proceeds, identified below, until the parties reach an agreement on the balance due or upon the Court entering an order establishing the remaining amount of the Trop Secured Claims.

K.   The transfer of the Property to the Buyer pursuant to the Agreement will be a legal, valid, and effective transfer of the Property, and will vest the Buyer with all right, title, and interest of the Debtor to the Property free and clear of the following (hereinafter "Interest"): all liens, claims, rights, interests and encumbrances of any kind or nature whatsoever, including but not limited to, those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's interest in the Property, or any similar rights; (ii) relating to taxes arising under, out of, in connection with, or in any way relating to the Property prior

to the Closing; and (iii) (A) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any, including, but not limited to, any restriction of the use, transfer, receipt of income or other exercise of any attributes of ownership, and (B) all debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtor, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests, and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of this case pursuant to Chapter 11 of the Bankruptcy Code, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise arising under doctrines of successor liability (collectively, the "Interests").

L.  The Debtor may sell the Property to Buyer under the terms of the Sale Motion free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Section 363(b)(1)-(5) of the Bankruptcy Code has been satisfied;

M.  Non-debtor parties with claims or Interests in the Property who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented to the Sale, pursuant to Sections 363(b)(2) of the Bankruptcy Code.

N.  The transfer of the Property (including, without limitation, both real and personal property) to the Buyer, and related transactions, are exempt under Section l146(c) of the Bankruptcy Code from any documentary, transfer, stamp, sales, use or

similar tax or any "bulk-sale" law in all necessary jurisdictions related to the Sale and transfer of the Property to the Buyer.

O.  Time is of the essence in closing the Sale.

For all of the foregoing reasons, and after due deliberation, the Court ORDERS, ADJUDGES, AND DECREES THAT:

1.      The Sale Motion is GRANTED, as further described herein.

2.      The Sale and all of the terms and conditions thereof and all related transactions are hereby approved in all respects.

3.       Pursuant to Section 363(b) of the Bankruptcy Code, the Debtor is authorized to perform its obligations under, and comply with the terms of the Sale and consummate the Sale and the related transactions, pursuant to, and in accordance with, the terms and conditions of the Agreement.

4.      In consideration of the Property, and upon the terms of the Agreement, the Buyer shall pay the purchase price as contemplated in the Agreement.

5.      Pursuant to the terms of this Sale Order, the Sale must close no later than the date that falls forty-five (45) days after the Binding Agreement Date, as defined in the Agreement, such date being August 22, 2022 (the "Closing Deadline"), unless extended by agreement of the Debtor and Purchaser, with appropriate prior notice and opportunity to object by the Creditors' Committee.

6.       The Debtor is authorized to execute and deliver, and empowered to perform under, consummate, and implement under the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale and to take all further actions as may be reasonably requested by the Buyer for the

purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or

reducing to possession, the Property, or as may reasonably be necessary or appropriate to the

performance of the obligations as contemplated by the Sale as consummated through the

Agreement, specifically including the execution of documentation by JGP&P, LLC vesting

the Real Property in Debtor and thereafter transferring the Real Estate from Debtor to Buyer.

7.      This Sale Order shall be binding in all respects upon all creditors (whether

known or unknown) of the Debtor, all successors and assigns of the Buyer, the Debtor, its

members, officers, agents, affiliates, and subsidiaries including any individuals or entities

asserting a right to such interest or status, (collectively, "the Debtor Parties"), the Property,

and any subsequent trustee(s) appointed in the Debtor's Chapter 11 case or upon a

conversion thereof to Chapter 7 under the Bankruptcy Code and shall not be subject to

rejection.

8.      Nothing contained in any Chapter 11 plan confirmed in this bankruptcy case

or in the confirmation order confirming any such Chapter 11 plan shall conflict with or

derogate from the provisions of the Sale or this Sale Order.

9.      Except as expressly permitted or otherwise specifically provided for in this

Sale Order, pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Property

shall be transferred to the Buyer at, and subject to and conditioned upon, the Closing, and

upon Closing shall be, free and clear of all Interests of any kind or nature whatsoever.

10.     Except as expressly permitted or otherwise specifically provided by this Sale

Order, all persons and entities, including, but not limited to, all debt security holders,

governmental, tax, and regulatory authorities, lenders, employees, trade, and other creditors

holding Interests of any kind or nature whatsoever against or in the Debtor or the Property

7

(whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under, out of, in connection with, or in any way relating to, the Debtor, the Property, or the transfer of the Property to the Buyer, are forever barred, estopped, and permanently enjoined from asserting any such claims against the Buyer, its successors or assigns, its property, or the Property.

11.     The consideration provided by the Buyer for the Property, pursuant to the Agreement, shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

12.     This Sale Order shall be: (a) effective as a determination that, on the Closing, all Interests of any kind or nature whatsoever existing as to the Property, prior to the Closing, have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected; and (b) binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property.

13.     This Court retains sole jurisdiction to enforce and implement the terms and provisions of this Sale Order and the Agreement, along with any amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection

8

therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel

delivery of the Property to the Buyer or performance of other obligations of Debtor under the

Agreement; (b) resolve any disputes arising under or related to the Agreement, and (c)

interpret, implement, and enforce the provisions of this Sale Order, however, in the event the

Court abstains from exercising or declines to exercise such jurisdiction with respect to the

Agreement or this Sale Order, such abstention, refusal, or lack of jurisdiction shall have no

effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other

court having competent jurisdiction with respect to any such matter.

14.     The consideration provided by the Buyer for the Property under the

Agreement is fair and reasonable and may not be avoided under Section 363(n) of the

Bankruptcy Code.

15.     The transactions contemplated by the Sale and by the Agreement are

undertaken by Buyer in good faith, as that term is used in Section 363(m) of the

Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization

provided herein to consummate the Sale shall not affect the validity of the Sale of the Property to

Buyer, unless such authorization is duly stayed pending such appeal. Accordingly, Buyer is a

purchaser in good faith of the Property and is entitled to all of the protections afforded by Section

363(m) of the Bankruptcy Code.

16.     The Agreement and any related agreements, documents, or other instruments

may be modified, amended, or supplemented by the parties thereto, in a writing signed by both

parties, and in accordance with the terms thereof, without further order of the Court, provided that

any such modification, amendment, or supplement does not have any adverse effect on the

Debtor's estate or Buyer.

17.     The transfer of the Property is a transfer pursuant to Section 1146(c) of the Bankruptcy Code, and accordingly, the transfer of the Property (including without limitation, both real and personal property) to Buyer does not and will not subject the Debtor or Buyer, their respective affiliates, or designees to any liability for any documentary, transfer, stamp, sales, use or similar tax or any "bulk-sale" laws to the fullest extent permitted by Section 1146(c) of the Bankruptcy Code. Each and every federal, state, and local government agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transfer of any of the Property, all without imposition or payment of any stamp tax, transfer tax, or similar tax.

18.     The stay of orders authorizing the use, sale, or lease of property as provided for in Bankruptcy Rule 6004(g) shall not apply to this Sale Order, and this Sale Order is immediately effective and enforceable.

19.     As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately upon entry. Time is of the essence in closing the transactions contemplated by the Agreement, and the Debtor and Buyer intend to close the Sale and related transactions as soon as possible (but in any event, no later than the Closing Deadline). Therefore, any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot.

20.     At Closing, Debtor shall pay all customary closing costs, if any, and the amount of the confirmed outstanding balance due on the Trop Secured Claims. All other proceeds after payment of the customary closing costs and allowed Trop Secured Claims shall be referred to as the "Net Proceeds".

21.     Debtor shall open a separate Debtor-in-Possession escrow account and deposit

10

the Net Proceeds in such account or, in the alternative, deposit  all Net Proceeds in the IOLTA account of either McBryan, LLC or Boyer Terry LLC.

22.     Except for the payment of professional fees, approved by an order of this Court, the Debtor shall not disburse any of the Net Proceeds without further order of the Court or pursuant to a confirmed and final Plan of Reorganization.

23.     Within three (3) days of the Closing, Debtor shall file a notice of sale with the Court, via the Court's CM/ECF electronic filing system, which shall include a copy of the final closing statement, itemize all closing costs and disbursements, and identify the recipients of any disbursements, including the account where the Net Proceeds and disputed amount of Trop Secured Claims, if any, are deposited.

END OF ORDER

*Order presented by:*

*/s/ Louis G. McBryan*
Louis G. McBryan
Georgia Bar No. 480993
6849 Peachtree Dunwoody Rd
Building B-3, Suite 100
Atlanta, GA 30328
Telephone (678) 733-9322
lmcbryan@mcbryanlaw.com
*Attorney for Debtor*

*/s/ Christopher W. Terry*
Christopher W. Terry
Georgia Bar No. 702484
BOYER TERRY LLC
348 Cotton Avenue, Suite 200
Macon, Georgia 31201
(478) 742-6481
chris@boyerterry.com
*Attorney for Debtor*

*Consented to by:*

*/s/ Thomas T. McClendon*
Thomas T. McClendon
Georgia Bar No. 431452
Jones & Walden, LLC
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300
tmcmclendon@joneswalden.com
*Attorney for Unsecured Creditor Committee*

**SO ORDERED.**

**SIGNED this 31 day of January, 2023.**



_James P. Smith_

**James P. Smith**

**Chief United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

IN RE:

                                                   CHAPTER 11

TERI G. GALARDI,

Debtor.                                     CASE NO. 22-50035-JPS

_____/

### ORDER GRANTING DEBTOR'S MOTION FOR AUTHORIZATION TO SELL
### REAL PROPERTY LOCATED AT ROYAL HAMMOCK, NAPLES, FLORIDA

This matter is before the Court on the Debtor's _Motion for Authorization to Sell Real
Property Located at Royal Hammock, Naples, Florida_, [Dkt. No. 211] (the "Motion to Sell"). The
Court has reviewed the Motion and has determined that it must be denied since the Court does not
have jurisdiction to authorize the sale of property of a non-debtor since it does not have jurisdiction
over the non-debtor or its property.

However, the Court has been advised that Power Financial Credit Union ("Power
Financial), the first mortgagee on the property, which is the subject of the Motion to Sell (the
property, which compromises only part of Power Financial's collateral, is described in more detail

in the documents with Power Financial discussed in this Order and such property is referred to herein as the "Property"), and Jack E. Galardi, LLC, the non-Debtor owner/mortgagor, have reached agreement that would permit the sale of the Property and a partial release of the mortgage as to the specific Property being sold.  The foregoing agreement is subject to a number of terms and conditions, including the requirement that the Debtor, as the individual guarantor of the subject loan, execute certain documents individually, and that this Court, through entry of final, non-appealable order, authorize the Debtor to execute such documents individually.  Such documents also include, among other things, agreement and consent of the Debtor individually to the release of the Property from the Lien of Power Financial's mortgage, and an acknowledgement and agreement by the Debtor that her Guaranty and the other loan documents are valid and enforceable, that the Debtor's obligations under her personal guaranty will remain in full force and effect, and that the Loan Documents, including the personal guaranty of the Debtor, are not subject to any defenses, claims or counterclaims, and further, waiving and releasing any such defenses, claims, and counterclaims.

The Court, by this Order, is authorizing the Debtor to execute the foregoing documents with Power Financial in her individual capacity since the foregoing will facilitate a potential sale transaction that will result in the Debtor's estate receiving a portion of the net sale proceeds.  The Court has jurisdiction to provide such authorization since it specifically relates to execution of documents by the Debtor in her individual capacity.

For all the foregoing reasons, and after due deliberation, the Court ORDERS, ADJUDGES, and DECREES THAT:

1.     The Motion to Sell as proposed is DENIED in part and GRANTED in part.

2.     The Court lacks jurisdiction to approve a sale by a non-Debtor.

3.      The Motion is Granted for the limited purpose of allowing the Debtor to reaffirm her obligations under the Guaranty and other related documents issued to Power Financial Credit Union, and to execute the documents allowing the Partial Release as necessary to effectuate the same.

4.      The foregoing is without prejudice to Jack E. Galardi, LLC selling the Property subject to the terms and conditions set forth in an agreement with Power Financial.

END OF ORDER

Order presented by:

*/s/ James D. Silver*
James D. Silver (admitted *pro hac vice*)
Fla. Bar No.: 373702
Kelley Kronenberg, P.A.
Attorney for Power Financial Credit Union
10360 W. State Road 84
Ft. Lauderdale, FL 33324
Telephone: 954-370-9970
jsilver@kklaw.com
*Attorney for Power Financial Credit Union*


Consented to by:

*/s/ Louis G. McBryan*
Georgia Bar No. 480993
6849 Peachtree Dunwoody Rd
Building B-3, Suite 100
Atlanta, GA 30328
Telephone (678) 733-9322
lmcbryan@mcbryanlaw.com

**SO ORDERED.**

**SIGNED this 1 day of December, 2022.**



_____
**James P. Smith**
**Chief United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

IN RE:

TERI G. GALARDI,

       Debtors.

**CHAPTER 11**

**CASE NO. 22-50035-JPS**

### CONSENT ORDER GRANTING MOTION FOR AUTHORIZATION TO
### SELL MEMBERSHIP INTEREST OF JGP&P, LLC
### AND STOCK INTEREST IN RED EYED, INC.

This matter is before the Court on Debtor's *Motion for Authorization to Sell Membership Interest of JGP&P, LLC and Stock Interest in Red Eyed, Inc.* filed on October 20, 2022 (the "Sale Motion") [Docket. No. 219] for entry of an order authorizing the Contract for the Purchase and Sale of the Debtor's membership interest in JGP&P, LLC and Stock in Red Eyed, Inc. (the "Agreement"), between Debtor ("Seller") and NTKN Holdings, LLC ("Buyer").

The Official Committee of Unsecured Creditors filed their Committee's Response to Debtor's Motion for Authorization to Sell Membership Interest of JGP&P, LLC and Stock Interest

in Red Eyed, Inc. (the "Response") [Docket No. 253]. The Committee does not object to the sales as contemplated but seek that the sales be conditioned by 1) Debtor providing proof of transfer of real property located at 4766 Frontage Rd, Forest Park GA be transferred from JGP&P, LLC to the Debtor prior to the sale of her membership interest in the LLC; 2) the proceeds of the sale of the membership interest in JGP&P, LLC., be used to pay the Trop, Inc. lien in full; and 3) the net proceeds from the sale, after customary closing costs and the Trop, Inc. lien are paid, be placed into a separate escrow account, along with the proceeds of the sale of the stock in Red Eyed, Inc., and not be disbursed without further Order of the Court or pursuant to a confirmed Chapter 11 plan.

The Sale Hearing having been held as scheduled; present at the hearing were Christopher W. Terry (counsel for the Debtor) and Thomas T. McClendon (counsel for the Unsecured Creditor Committee); based upon the Court's review of the record in this case, including without limitation the Sale Motion, and upon consideration of the statements and arguments of counsel presented at the Sale Hearing, and there being good, sufficient and timely notice of the Sale Motion and the related hearings to all parties in interest, and after due deliberation and there being good cause for the relief sought through the Sale Motion, the Court hereby **FINDS** and **ORDERS** as follows:

The Court hereby **FINDS** as follows:

A. The Court has jurisdiction over the Sale Motion and the transactions contemplated pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) (2) (A) and (N). Venue of this case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief sought in the Sale Motion are Sections 105, 363, and 1146(c) of 11 U.S.C. §§ 101 et. seq. (as amended, modified or supplemented, the "Bankruptcy Code"), and Bankruptcy Rules 2002, 6004, 6006, and 9014.

C. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

D. Debtor and NTKN Holdings, LLC (such entity or its permitted assignee, the "Buyer") entered into a Contract for the Purchase and Sale of Membership Interest in JGP& P, LLC and Stock in Red Eyed, Inc. (the "Agreement"). The purchase price for both is $3,300,000.00. $2,800,000.00 shall be allocated for the purchase of the Debtor's membership interest in JGP& P, LLC, as further described in the Agreement (the "Membership Interest"), and $500,000.00 shall be allocated for the stock of Red Eyed, Inc. (the "Stock" and such Membership Interest and Stock collectively, the "Property") (such transaction, the "Sale"). Debtor has represented that the only substantial asset being transferred pursuant to the Membership Interest is 4730 Frontage Road, Forest Park, Georgia.

E. The Debtor has the power and authority necessary to consummate the Sale of the Property to Buyer.

F. The Debtor has demonstrated and proven to the satisfaction of this Court good, sufficient, and sound business purpose and justification for the Sale and the other transactions contemplated by the related documents necessary to consummate the Sale, including without limitation a bill of sale for the personal assets related to the Property pursuant to Section 363(b) of the Bankruptcy Code, and the Sale and associated transactions are in the best interests of the Debtor, its estate and its creditors.

G. The consideration provided by the Buyer for the Property (i) is fair and reasonable, and (ii) is the highest and best offer for the Property.

H. The entry of this Sale Order and the approval of the Sale of the Property to the Buyer

3

are necessary and appropriate to maximize the value of the Debtor's estate.

I.   Cohen and Caproni, LLC, as Disbursing Agent under the Confirmed Plan of Reorganization of Trop, Inc. ("Cohen"), holds a first priority properly perfected secured claim on behalf of certain claims as provided in Trop, Inc.'s confirmed plan of reorganization (Case No. 18-65726-JWC, Bankr. N.D. Ga.) (the "Trop Plan of Reorganization") in the approximate amount of $1,253,748.19, which is secured by the Real Property owned by JGP& P, LLC, (the "Trop Secured Claims"). The Trop Secured Claims are guaranteed by the Debtor.

J.   Proof of claims for the Trop Secured Claims are filed in this Bankruptcy Case.

K.   The transfer of the Property to the Buyer pursuant to the Agreement will be a legal, valid, and effective transfer of the Property, and will vest the Buyer with all right, title, and interest of the Debtor to the Property free and clear of the following (hereinafter "Interest"): all liens, claims, rights, interests and encumbrances of any kind or nature whatsoever, including but not limited to, those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's interest in the Property, or any similar rights; (ii) relating to taxes arising under, out of, in connection with, or in any way relating to the Property prior to the Closing; and (iii) (A) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any, including, but not limited to, any restriction of the use, transfer, receipt of income or other exercise of any attributes of ownership, and (B) all debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtor, obligations, liabilities, demands,

guaranties, options, rights, contractual or other commitments, restrictions, interests, and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of this case pursuant to Chapter 11 of the Bankruptcy Code, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise arising under doctrines of successor liability (collectively, the "Interests").

L.  The Debtor may sell the Property to Buyer under the terms of the Sale Motion free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Section 363(b)(1)-(5) of the Bankruptcy Code has been satisfied;

M.  Non-debtor parties with claims or Interests in the Property who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented to the Sale, pursuant to Sections 363(b)(2) of the Bankruptcy Code.

N.  The transfer of the Property (including, without limitation, both real and personal property) to the Buyer, and related transactions, are exempt under Section 1146(c) of the Bankruptcy Code from any documentary, transfer, stamp, sales, use or similar tax or any "bulk-sale" law in all necessary jurisdictions related to the Sale and transfer of the Property to the Buyer.

O.  Time is of the essence in closing the Sale.

For all of the foregoing reasons, and after due deliberation, the Court **ORDERS**, **ADJUDGES**, **AND DECREES THAT:**

1.      The Sale Motion is **GRANTED**, as further described herein.

2.      The Sale and all terms and conditions thereof and all related transactions are hereby

approved in all respects.

  3.  Pursuant to Section 363(b) of the Bankruptcy Code, the Debtor is authorized to perform its obligations under, and comply with the terms of the Sale and consummate the Sale and the related transactions, pursuant to, and in accordance with, the terms and conditions of the Agreement.

  4.  A true and correct accounting of the outstanding balance due for the Trop Secured Claims shall be submitted to the Debtor and Creditors Committee, at least three (3) days prior to closing, to allow time for the parties to approve and agree on the outstanding balance due. The balance due on the Trop Secured Claims shall be disbursed to Cohen at closing in exchange for a full and final release of the Trop Secured Claims.

  5.  Debtor is authorized and directed to execute all necessary documents, including, but not limited to, a bill of sale, transfer of membership interest, and warranty or quitclaim deed, on behalf of JGP&P, LLC, transferring her Membership Interest and all assets owned by JGP& P, LLC, except for 4730 Frontage Road, Forest Park, Georgia, to Buyer. JGP& P, LLC, shall convey and transfer the property located at 4730 Frontage Road, Forest Park, Georgia to the Debtor via warranty deed or quitclaim deed prior to closing the sale of her Membership Interest and provide proof of such transfer to counsel to the Committee not less than three (3) days prior to closing and obtain the Committee's approval prior to closing.

  6.  Debtor is authorized and directed to execute all necessary documents, including, but not limited to, a bill of sale, on behalf of Red Eyed, Inc. transferring the stock of Red Eyed, Inc. to Buyer.

  7.  For the avoidance of doubt, Property to be sold to Buyer does not include cash or cash equivalents held by Debtor, JPG& P, LLC or Red Eyed, Inc. Any cash or cash equivalents

shall not be transferred to Buyer and any such cash held by JPG&P, LLC or Red Eyed, Inc shall be transferred to the escrow fund into which the purchase price shall be paid.

8.      In consideration of the Property, and upon the terms of the Agreement, the Buyer shall pay the purchase price as contemplated in the Agreement.

9.      Pursuant to the terms of this Sale Order, the Sale must close no later than the date that falls thirty (30) days after the Binding Agreement Date, as defined in the Agreement, such date being November 3, 2022 (the "Closing Deadline"), unless extended by agreement of the Debtor and Purchaser, with appropriate notice provided to the Creditors' Committee, the parties have agreed the Closing date shall be December 5, 2022 or three (3) business days after this Order is entered whichever is later;

10.     The Debtor is authorized to execute and deliver, and empowered to perform under, consummate, and implement under the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession, the Property, or as may reasonably be necessary or appropriate to the performance of the obligations as contemplated by the Sale as consummated through the Agreement.

11.     This Sale Order shall be binding in all respects upon all creditors (whether known or unknown) of the Debtor, all successors and assigns of the Buyer, the Debtor, its members, officers, agents, affiliates, and subsidiaries including any individuals or entities asserting a right to such interest or status, (collectively, "the Debtor Parties"), the Property, and any subsequent trustee(s) appointed in the Debtor's Chapter 11 case or upon a conversion thereof to Chapter 7 under the Bankruptcy Code and shall not be subject to rejection.

12.     Nothing contained in any Chapter 11 plan confirmed in this bankruptcy case or in the confirmation order confirming any such Chapter 11 plan shall conflict with or derogate from the provisions of the Sale or this Sale Order.

13.     Except as expressly permitted or otherwise specifically provided for in this Sale Order, pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Property shall be transferred to the Buyer at, and subject to and conditioned upon, the Closing, and upon Closing shall be, free and clear of all Interests of any kind or nature whatsoever.

14.     Except as expressly permitted or otherwise specifically provided by this Sale Order, all persons and entities, including, but not limited to, all debt security holders, governmental, tax, and regulatory authorities, lenders, employees, trade, and other creditors holding Interests of any kind or nature whatsoever against or in the Debtor or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under, out of, in connection with, or in any way relating to, the Debtor, the Property, or the transfer of the Property to the Buyer, are forever barred, estopped, and permanently enjoined from asserting any such claims against the Buyer, its successors or assigns, its property, or the Property.

15.     The consideration provided by the Buyer for the Property, pursuant to the Agreement, shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

16.     This Sale Order shall be: (a) effective as a determination that, on the Closing, all Interests of any kind or nature whatsoever existing as to the Property, prior to the Closing, have been unconditionally released, discharged, and terminated, and that the conveyances described

8

herein have been effected; and (b) binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property.

17. This Court retains sole jurisdiction to enforce and implement the terms and provisions of this Sale Order and the Agreement, along with any amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Property to the Buyer or performance of other obligations of Debtor under the Agreement; (b) resolve any disputes arising under or related to the Agreement, and (c) interpret, implement, and enforce the provisions of this Sale Order, however, in the event the Court abstains from exercising or declines to exercise such jurisdiction with respect to the Agreement or this Sale Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

18. The consideration provided by the Buyer for the Property under the Agreement is fair and reasonable and may not be avoided under Section 363(n) of the Bankruptcy Code.

19. The transactions contemplated by the Sale and by the Agreement are undertaken by Buyer in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to

9

consummate the Sale shall not affect the validity of the Sale of the Property to Buyer, unless such authorization is duly stayed pending such appeal. Accordingly, Buyer is a purchaser in good faith of the Property and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

20.     The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have any adverse effect on the Debtor's estate or Buyer.

21.     The transfer of the Property is a transfer pursuant to Section 1146(c) of the Bankruptcy Code, and accordingly, the transfer of the Property (including without limitation, both real and personal property) to Buyer does not and will not subject the Debtor or Buyer, their respective affiliates, or designees to any liability for any documentary, transfer, stamp, sales, use or similar tax or any "bulk-sale" laws to the fullest extent permitted by Section 1146(c) of the Bankruptcy Code. Each and every federal, state, and local government agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transfer of any of the Property, all without imposition or payment of any stamp tax, transfer tax, or similar tax.

22.     The stay of orders authorizing the use, sale, or lease of property as provided for in Bankruptcy Rule 6004(g) shall not apply to this Sale Order, and this Sale Order is immediately effective and enforceable.

23.     As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately upon entry. Time is of the essence in closing the transactions

contemplated by the Agreement, and the Debtor and Buyer intend to close the Sale and related

transactions as soon as possible (but in any event, no later than the Closing Deadline). Therefore,

any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing

a stay or risk their appeal being foreclosed as moot.

24.     At Closing, Debtor shall pay all customary closing costs, if any, and the amount of

the confirmed outstanding balance due on the Trop Secured Claims without any escrow hold. All

other proceeds after payment of the customary closing costs and allowed Trop Secured Claims shall

be referred to as the "Net Proceeds".

25.     Debtor shall open a separate Debtor-in-Possession escrow account and deposit the

Net Proceeds in such account or, in the alternative, deposit all Net Proceeds in the IOLTA account

of either McBryan, LLC or Boyer Terry LLC.

26.     Except for the payment of professional fees, approved by an order of this Court,

the Debtor shall not disburse any of the Net Proceeds without further order of the Court or pursuant

to a confirmed and final Plan of Reorganization.

Within three (3) days of the Closing, Debtor shall file a notice of sale with the Court, via

the Court's CM/ECF electronic filing system, which shall include a copy of the final closing

statement, itemize all closing costs and disbursements, and identify the recipients of any

disbursements, including the account where the Net Proceeds are deposited.

**[END OF ORDER]**

**ORDER PRESENTED BY:**

*/s/Louis G. McBryan*
Louis G. McBryan, Georgia Bar No. 480993
6849 Peachtree Dunwoody Rd
Building B-3, Suite 100
Atlanta, GA 30328
Telephone (678) 733-9322
lmcbryan@mcbryanlaw.com
***Attorney for Debtor***

**CONSENTED TO BY:**

*/s/Thomas T. McClendon*
Thomas T. McClendon
Georgia Bar No. 431452
Jones & Walden, LLC
699 Piedmont Ave NE
Atlanta, Georgia 30308
Telephone (404) 564-9300
tmcclendon@joneswalden.com
***Attorney for Unsecured Creditor Committee***

 Exhibit "C"

Vyacheslav Borshchukov <slava@vb.legal>

---

## Proposed contract for 506 SE 11th Court

---

**Julie Negovan** <julie@patburnside.com>                                    Wed, Mar 1, 2023 at 5:55 PM
To: Brad Kozin <kozin@kozincom.com>, Vyacheslav Borshchukov <slava@vb.legal>

Brad and Slava,

This deal has become very complicated. As I mentioned to Slava, we do have a backup contract. That backup buyer is willing to offer you $10,000 to withdraw your contract and allow him to move forward. Is that something that you would be willing to consider.

Julie Negovan

Patricia Burnside Realty

C: 215-431-9295

Julie@patburnside.com

[Quoted text hidden]

VYACHESLAV BORSHCHUKOV, P.A.
514 SE 11th Court
Fort Lauderdale, Florida 33316
T: 305-503-5985 F: 305-503-5986
E: <u>Slava@VB.Legal</u>

**Exhibit "D"**

Via Email, Certified U.S Mail, and U.S. Mail and Return Receipt

george@aslanianlaw.com

Tracking number 7022 2410 0003 4930 5796

George H. Aslanian, Jr., Esq.
Law Offices of Aslanian & Aslanian
2929 E. Commercial Blvd. Suite 208
Fort Lauderdale, Florida 33308

February 21, 2023

# NOTICE OF DEFAULT

Re:     VBPS, LLC purchase from 506 Office, LLC | 506 11th Court #1-2, Fort Lauderdale, FL

Dear Mr. Aslanian:

Please allow this letter to serve as formal notice of your client's, 506 Office LLC's default of the commercial contract entered into between your client and VBPS LLC on January 15, 2023 for the purchase of real estate located at 506 SE 11th Court Fort Lauderdale, Florida 33316. Your client has defaulted in the following manner:

(1)     Seller's failure to use good faith efforts to cure title defects.

Pursuant to Paragraph 6, section (b) of the agreement, seller is required to use good faith effort to cure defects in title. You were presented with the defects in title raised by our client. The means to cure the defects in title required you to file a motion to authorize sale of the subject property in the bankruptcy court. You have advised our client that your client will not cure title. To date, your client has made no effort to cure title based on the deficiencies presented by our title company. To meet the good faith requirement of the contract, your client was required to seek leave from the bankruptcy. As of this filing your client has made no effort to cure title. A cursory review of the bankruptcy court docket demonstrates that 506 Office LLC and all assets owned by 506 Office LLC are subject to the bankruptcy proceedings in the Georgia Federal Middle District under case number 22-50035-JPS. Furthermore, the Federal docket demonstrates the good faith efforts your client has made in other transactions to seek leave of the bankruptcy court and what you have failed to do in this transaction.

Pursuant to the contract, your client has five (5) days to cure the issues raised on the subject default. You are instructed that to cure your default your client must do the following:

1. Stipulate to a reasonable extension of time to give Teri G. Galardi's ("Debtor") bankruptcy attorney an opportunity to file a motion for the authorization of sale of property located at 506 SE 11th Court Fort Lauderdale, Florida 33316. Our client proposes a 30 day extension. If you believe more time is needed, then we demand that your advise us within five days of receipt of this letter a specific period of time that you will need to cure your conduct.

2. Have the Debtor file with the bankruptcy court a motion authorizing sale of the subject property.

3. Withdraw your cancellation of the contract on the basis of your misrepresentation that our client failed to timely provide a loan commitment. As you will note from the loan commitment that was provided to you back on February 9, 2023, our client's lender placed no conditions or requirements on the issue of title and/or title commitment.

4. Proceed with the good faith closing of the subject property resulting in the transfer and sale of the subject property from your client to VBPS LLC.

(2) To cure your client's default, our client has elected the remedy of specific performance. As such, in order to avoid a lawsuit being filed against your client for specific performance, your client must agree by February 27, 2023 to the conditions set forth above. Should we not hear from you by February 27, 2023, we will presume that your client does not wish to cure their breach and we will move forward with our action. Our client stands ready, able, and willing to meet their contractual obligations and to close on this property in a timely manner upon your client coming into compliance by acting in good faith on the issues raised, by curing the title commitment issues raised, and curing your client default breach in the course of this transaction.

Very Truly Yours,

Slava Borshchukov, Esq.
VB/sb

This electronic mail message contains information from the law firm of Czarnomski, Wass, Damaria Hart from PA 1222 confidential and/or privileged. This information is intended only for the use of the individual or entity named as the recipient. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this electronic mail in error, please so indicate by replying to the sender and then please permanently delete this electronic mail message. Thank you.

As of March 22, 2020, US Secretary of the Treasury issued a Memorandum affirming that the type of financial services Preferred Title, Inc. conducts is considered an *essential critical infrastructure service*. This means that under this federal guidance, we will remain open during the COVID-19 crisis.

# Exhibit "E"

From: George Aslanian <george@aslanianlaw.com>
Sent: Monday, February 13, 2023 9:49 AM
To: Linley B. Schatzman <lschatzman@sbwh.law>
Cc: Julie Negovan <julie@patburnside.com>; Kymberly D. Singleton <ksingleton@sbwh.law>; Debbie Bitner <debbie@aslanianlaw.com>
Subject: RE: VBPS, LLC purchase from 506 Office, LLC | 506 11th Court #1-2, Fort Lauderdale, FL 33316-1146 (PT-4528)

Linley,

I already advised you that we would obtain an order approving the sale and have everyone associated with the entity would sign an entity resolution. A 30-day deadline on that is fine. Provide me with a proposed addendum limited strictly to that issue.

You did not respond to my question regarding the loan commitment conditions. You need to or to give the bank authorization to disclose that information to me per the contract. Also, why not have your client properly sign the commitment? That condition will be waived in any event if he does not terminate the contract in accordance with the financing provisions.

George H. Aslanian, Jr., Esquire

*Law Offices of Aslanian & Aslanian*

2929 E. Commercial Blvd.

Suite 208

Fort Lauderdale, FL 33308

(954) 779-3611 (Telephone)

(954) 779-3606 (Telefax)

[The information contained in this transmission may be privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail or by telephone at (954) 779-3611, and delete the original message. Thank you.]

From: Linley B. Schatzman <lschatzman@sbwh.law>
Sent: Friday, February 10, 2023 1:31 PM
To: George Aslanian <george@aslanianlaw.com>
Cc: Julie Negovan <julie@patburnside.com>; Kymberly D. Singleton <ksingleton@sbwh.law>; Debbie Bitner <debbie@aslanianlaw.com>
Subject: RE: VBPS, LLC purchase from 506 Office, LLC | 506 11th Court #1-2, Fort Lauderdale, FL 33316-1146 (PT-4528)

George:

There needs to be an extension to the Inspection Period, or at a minimum, an Addendum that provides an extension to the Buyer's right to cancel if the Seller doesn't provide the Buyer with copies of a Motion and an Order of the Bankruptcy Court Approving this specific sale within 30 days, or however many days you anticipate is required to file the Motion and obtain such Order.

As previously requested, we still have not received any documentation regarding the realtor being approval by the Bankruptcy Court to sell this specific property, nor have we received any documentation regarding the settlement or Bankruptcy Court's approval of the same.

Best regards,

Linley B. Schatzman
Attorney & Counselor at Law
lschatzman@sbwh.law
7777 Glades Road | Suite 400
Boca Raton, Florida 33434

3/1/23, 10:08 PM    I/XXOHESLAVBORSHCHUKOV PAXMAL JR63/BIP53C purchaser form 0300/0023 L16:530:119 Counsels from rt Lauderdale...

Case 22-50035-JPS    Doc 318    Filed 03/10/23    Entered 03/10/23 16:30:19    Desc Main
Document    Page 116 of 122

b) This transaction shall be contingent upon Buyer obtaining third party financing in an amount not less  than $640,000.00 on term and conditions acceptable to Buyer in Buyer's reasonable discretion. Buyer shall apply for financing within five (5) days after the Effective Date hereof

The Buyer satisfied the condition of applying for the loan within the 5 days of the Effective Date, however, the lender has not provided a clear approval, so the contingency has not yet been satisfied.

[Quoted text hidden]
[Quoted text hidden]

---

**Linley B. Schatzman** <lschatzman@sbwh.law>                                                Tue, Feb 14, 2023 at 4:45 PM
To: George Aslanian <george@aslanianlaw.com>, "Kymberly D. Singleton" <ksingleton@sbwh.law>
Cc: Julie Negovan <julie@patburnside.com>, Debbie Bitner <debbie@aslanianlaw.com>, "slava@vb.legal" <slava@vb.legal>

George:

Please find attached the revised Title Commitment.

Now that we are aware that the company is a disregarded entity, owned solely by Teri Galardi, a debtor in bankruptcy, please allow this email to serve as further notice or our objection to title to the extent that the Seller is unable to convey marketable title.

I am also attaching the proposed Addendum to the Contract extending the Inspection Period for 30 days to allow the Seller time to obtain the bankruptcy order approving the sale, as was previously agreed upon.  Please have the Seller execute the same.

Best regards,

Linley B. Schatzman
Attorney & Counselor at Law
lschatzman@sbwh.law
7777 Glades Road | Suite 400
Boca Raton, Florida 33434
Telephone: (561) 477-7800
Facsimile: (561) 477-7722



 **WE DO NOT ACCEPT OR REQUEST**
CHANGES TO WIRING INSTRUCTIONS VIA EMAIL OR FAX.
**Always call to verify.**

 Trusted & Verified.

     

*Please note my new email address and our firm's new web address, www.sbwh.law.*

This electronic mail message contains information from the law firm of Shapiro, Blasi, Wasserman & Hermann, P.A. and is confidential and/or privileged. This information is intended to be for the use of the individual or entity named as the recipient. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this electronic mail in error, please so indicate by replying to the sender and then please permanently delete this electronic mail message. Thank you.

As of March 22, 2020, US Secretary of the Treasury issued a Memorandum affirming that the type of financial services Preferred Title, Inc. conducts is considered an *essential critical infrastructure service*.  This means that under this federal guidance, we will remain open during the COVID-19 crisis.





**WE DO NOT ACCEPT OR REQUEST**
CHANGES TO WIRING INSTRUCTIONS VIA EMAIL OR FAX.
Always call to verify.



     

*Please note my new email address and our firm's new web address, www.sbwh.law.*

This electronic mail message contains information from the law firm of Shapiro, Blasi, Wasserman & Hermann, P.A. and is confidential and/or privileged. This information is intended to be for the use of the individual or entity named as the recipient. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this electronic mail in error, please so indicate by replying to the sender and then please permanently delete this electronic mail message. Thank you.

**As of March 22, 2020, US Secretary of the Treasury issued a Memorandum affirming that the type of financial services Preferred Title, Inc. conducts is considered an *essential critical infrastructure service*. This means that under this federal guidance, we will remain open during the COVID-19 crisis.**

**From:** George Aslanian <george@aslanianlaw.com>
**Sent:** Wednesday, February 8, 2023 12:46 PM
**To:** Kymberly D. Singleton <ksingleton@sbwh.law>
**Cc:** Linley B. Schatzman <lschatzman@sbwh.law>; Julie Negovan <julie@patburnside.com>; Debbie Bitner <debbie@aslanianlaw.com>
**Subject:** VBPS, LLC purchase from 506 Office, LLC | 506 11th Court #1-2, Fort Lauderdale, FL 33316-1146 (PT-4528)
**Importance:** High

Kimberly/Linley,

The OA and CGS are attached. Once the diligence period expires and you provide us with timely notice that Buyer has received Loan Approval, along with copies of pertinent conditions, we will have bankruptcy counsel obtain an order authorizing the sale. As I believe you know, the court has already entered an order authorizing the hiring of a broker for this purpose. We anticipate that approval will be given without objection.

Although Teri is reflected as the sole owner of 506 Office LLC in the OA and certain bankruptcy filings, her ownership interest was previously transferred to Kelly Galardi. I believe this happened in 2019. I do not believe that we have supporting documents other than Kelly was named as manager in 2019 (as reflected in sunbiz). Teri was listed as manager every prior year. You will note that this is a member managed company (see the OA). It appears that the unrepresented parties conflated management with membership and ownership.

I propose to include a provision in the entity resolution required by the contract that Kelly is the owner of the selling entity and have Teri join/sign to confirm Kelly's ownership and disclaimer of interest. I presume the net proceeds will be controlled by the bankruptcy court and you will have an order in any event, so this should be of no consequence to you. You will have the signature of all interested parties and bankruptcy court approval prior to closing. I will provide seller's documents in a timely fashion but not before the expiration and satisfaction of diligence and financing contingencies.

Let me know if you have any questions or concerns. Otherwise, I will assume you agree to the above procedure. Thank you.

George H. Aslanian, Jr., Esquire

*Law Offices of Aslanian & Aslanian*

2929 E. Commercial Blvd.

Suite 208

Fort Lauderdale, FL 33308

(954) 779-3611 (Telephone)

3/1/23, 10:12 PM                VYACHESLAV BORSHCHUKOV PA Mail - FW: VBPS, LLC purchase from 506 Office, LLC | 506 11th Court #1-2, Fort Lauderdale...

Case 22-50035-JPS    Doc 518    Filed 03/10/23    Entered 03/10/23 18:30:15    Desc Main
                      Document        Page 118 of 122

# Exhibit "F"

From: George Aslanian <george@aslanianlaw.com>
Sent: Thursday, February 16, 2023 12:14 PM
To: Linley B. Schatzman <lschatzman@sbwh.law>
Cc: Julie Negovan <julie@patburnside.com>; Debbie Bitner <debbie@aslanianlaw.com>; Kymberly D. Singleton <ksingleton@sbwh.law>
Subject: VBPS, LLC purchase from 506 Office, LLC | 506 11th Court #1-2, Fort Lauderdale, FL


Linley,


This shall serve as notice under section 6 (b) of the Commercial Contract that Seller has elected not to cure. The title defects reflected in title commitment schedule B-I, 19, 20, and 22 cannot be cured in the Curative Period, if at all.


Furthermore, the proposed First Addendum to Commercial Contract is not in accord with any communication we have had. As previously indicated, the Due Diligence Period has now lapsed. Seller never agreed to extend that or to waive Buyer defaults.


Please advise me how your client wishes to proceed under section 6 (b) of the Commercial Contract. Thank you.


George H. Aslanian, Jr., Esquire

*Law Offices of Aslanian & Aslanian*

2929 E. Commercial Blvd.

Suite 208

Fort Lauderdale, FL 33308

(954) 779-3611 (Telephone)

(954) 779-3606 (Telefax)


[The information contained in this transmission may be privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail or by telephone at (954) 779-3611, and delete the original message. Thank you.]


———— Forwarded message ————
From: George Aslanian <george@aslanianlaw.com>
To: "Linley B. Schatzman" <lschatzman@sbwh.law>
Cc: Julie Negovan <julie@patburnside.com>, "Kymberly D. Singleton" <ksingleton@sbwh.law>, Debbie Bitner <debbie@aslanianlaw.com>
Bcc:
Date: Mon, 13 Feb 2023 14:48:36 +0000
Subject: RE: VBPS, LLC purchase from 506 Office, LLC | 506 11th Court #1-2, Fort Lauderdale, FL 33316-1146 (PT-4528)

Linley,


I already advised you that we would obtain an order approving the sale and have everyone associated with the entity would sign an entity resolution. A 30-day deadline on that is fine. Provide me with a proposed addendum limited strictly to that issue.


You did not respond to my question regarding the loan commitment conditions. You need to or to give the bank authorization to disclose that information to me per the contract. Also, why not have your client properly sign the commitment? That condition will be waived in any event if he does not terminate the contract in accordance with the financing provisions.


George H. Aslanian, Jr., Esquire

*Law Offices of Aslanian & Aslanian*

2929 E. Commercial Blvd.

Suite 208

Fort Lauderdale, FL 33308

(954) 779-3611 (Telephone)

(954) 779-3606 (Telefax)


[The information contained in this transmission may be privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail or by telephone at (954) 779-3611, and delete the original message. Thank you.]

IN THE CIRCUIT COURT  IN AND FOR BROWARD COUNTY, FLORIDA

VBPS LLC,

                Plaintiff,

vs.

506 OFFICE LLC, TERI G. GALARDI, and
KELLY GALARDI,

                Defendants.

CASE NO.  CACE-23-002730

## NOTICE OF LIS PENDENS
Florida Bar #68274

1.      TO: The above named Defendants, AND ALL OTHERS WHOM IT MAY CONCERN:

2.      YOU ARE NOTIFIED of the institution of this action by the above-named Plaintiff, against

you seeking specific performance for the sale of a property located at 504-506 SE 11th Court

Fort Lauderdale, Florida 33316 with the legal description of:

> Lot 5 and the East one-half (½) of Lot 6, Block 6, of Lauderdale,
> according to the Plat thereof, as recorded in Plat Book 2, Page 9 of
> the Public Records of Broward County, Florida; said lands now lying,
> being, and situated in Broward County, Florida.

Dated this 3rd day of March, 2023.

## CERTIFICATE OF SERVICE

     WE HEREBY CERTIFY that on this 3rd day of March, 2023, a true and correct copy of the

foregoing was emailed electronically filed and served through the Florida Court's E-Filing Portal

for e-service on all parties of record herein.

VYACHESLAV BORSHCHUKOV, P.A.
ATTORNEYS FOR PLAINTIFF
514 SE 11TH COURT
FORT LAUDERDALE, FLORIDA 33316
TELEPHONE   (305) 503-5985
FAX NO.       (305) 503-5986
EMAIL         SERVICE@VB.LEGAL

BY:   */S/ SLAVA BORSHCHUKOV*
        VYACHESLAV BORSHCHUKOV

From: **Julie Negovan** <julie@patburnside.com>
Date: Sat, Mar 4, 2023 at 11:03 AM
Subject  FW  Propo ed contract for 506 SE 11th Court
To: Teri Galardi ▐▐▐▐▐▐▐▐▐▐▐▐▐, Lou McBryan <lmcbryan@mcbryanlaw.com>, Chris Terry <chris@boyerterry.com>
Cc: George Aslanian <george@aslanianlaw.com>


Just wanted to make sure everyone saw this.

Julie Negovan

Patricia Burnside Realty

C:  215-431-9295

Julie@patburnside.com

**EXHIBIT**

**D**

---

**From:** Vyacheslav Borshchukov <slava@vb.legal>
**Sent:** Friday, March 3, 2023 3:05 PM
**To:** Julie Negovan <julie@patburnside.com>; George Aslanian <george@aslanianlaw.com>
**Cc**  Brad Kozin  kozin@kozincom com
**Subject:** Re: Proposed contract for 506 SE 11th Court

Good afternoon Julie and George,

We have filed suit against your client. See attached complaint and notice of lis pendens. The relief sought in our lawsuit is straightforward. To cure your breach, you must do what the lawsuit states:

1  File a motion with the bankruptcy court that request  to the extent that the Court has  jurisdiction over the transaction, that the sale of the real property described as: Lot 5 and the East one-half of Lot 6, Block 6, LAUDERDALE, according to the map or plat thereof as recorded in Plat Book 2, Page 9, Public Records of Broward County, Florida, said lands lying, situated and being in Broward County, Florida, is approved, and that the proceeds of such sale shall be disbursed to the Bankruptcy Trustee/Account on behalf of the Creditor  of the Bankruptcy Estate;
2. Extend the closing deadline until such order is entered by the bankruptcy court; and
3. Advise all buyers who have a backup contract on this property of the pending action and cancel all back up contracts.

Slava Borshchukov, Esq.
Vyacheslav Borshchukov, P.A.
514 SE 11th Court
Fort Lauderdale, Florida 33316
T: 305.503.5985
F: 305.503.5986
E: Slava@VB.Legal


On Wed, Mar 1, 2023 at 5 55 PM Julie Negovan  julie@patburn ide com  wrote

> Brad and Slava,
>
> This deal has become very complicated.  As I mentioned to Slava, we do have a backup contract.  That backup buyer is willing to offer you $10,000 to withdraw your contract and allow him to move forward.  Is that something that you would be willing to con ider
>
> Julie Negovan
>
> Patricia Burnside Realty
>
> C  215 431 9295
>
> Julie@patburnside.com

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 11** |
| | ) | |
| **TERI G. GALARDI,** | ) | |
| | ) | **CASE NO. 22-50035-JPS** |
| Debtor, | ) | |
| _____ | ) | |

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have on this day electronically filed the foregoing **MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY LOCATED AT 506 SE 11th CT, FORT LAUDERDALE, FL** using the Bankruptcy Court's Electronic Case Filing program, and served the following parties via electronic notice and/or U.S. Mail as indicated below:

The following parties were served by electronic notice:

| | |
|---|---|
| **Evan Owens Durkovic** | ecfgamb@aldridgepite.com, edurkovic@ecf.courtdrive.com |
| **Robert G. Fenimore** | robert.g.fenimore@usdoj.gov, Ustp.region21.mc.ecf@usdoj.gov |
| **Elizabeth A. Hardy** | elizabeth.a.hardy@usdoj.gov, Ustp.region21.mc.ecf@usdoj.gov, elizabeth.hardy.collins@usdoj.gov |
| **Leon Strickland Jones** | ljones@joneswalden.com, arich@joneswalden.com, lpitts@joneswalden.com, ewooden@joneswalden.com, cparker@joneswalden.com, jwdistribution@joneswalden.com |
| **Roy E. Manoll, III** | kdd@fbglaw.com |
| **Robert M. Matson** | GA69@ecfcbis.com, rmtrusteenotices@akin-webster.com |
| **Thomas McClendon** | tmcclendon@joneswalden.com |
| **U.S. Trustee – MAC** | Ustp.region21.mc.ecf@usdoj.gov |
| **Ward Stone, Jr.** | wstone@stoneandbaxter.com, mbelflower@stoneandbaxter.com, lford-faherty@stoneandbaxter.com, mcathey@stoneandbaxter.com, dbury@stoneandbaxter.com |
| **James D. Silver** | jsilver@kklaw.com |
| **Ainsworth G. Dudley** | adudleylaw@gmail.com |
| **Mutepe Akemon** | mutepe.akemon@richardslegal.com |
| **William Bussell Geer** | wgeer@geerlawgroup.com, notices@nextchapterbk.com; willgeer@ecf.courtdrive.com |
| **Garrett A. Nail** | gnail@pgnlaw.com |
| **Christopher W. Terry** | chris@boyerterry.com, terrycr40028@notify.bestcase.com |
| **Whitney Groff** | wgroff@law.ga.gov |
| **Jonathan D. Loegel** | jloegel@law.ga.gov |

**Creditors Committee:**
**Shadana Deleston c/o Mutepe Akemon, Esq., as Proxy Holder**
mutepe.akemon@richardslegal.com
**Abrey Leahong c/o Mutepe Akemon, Esq., as Proxy Holder**
mutepe.akemon@richardslegal.com
**Addie Brooks c/o Ainsworth Dudley, Esq., as Proxy Holder**
adudleylaw@gmail.com

The following parties were served with a copy of the **MOTION** via Federal Express and e-mail as indicated below:

| | | |
|---|---|---|
| Sandra Perlman and Brian Silber<br>3864 Sheridan St<br>Hollywood FL 33021 | VBPS, LLC<br>c/o Slava Borshchukov<br>514 SE 11th Court<br>Fort Lauderdale, FL 33316<br>Via E-mail:  Slava@VB.Legal | East Broward Dental P/A,<br>1212 E Broward Boulevard<br>Suite 200<br>Fort Lauderdale FL 33301 |
| 15 Properties<br>1700 NW 64th St #470<br>Fort Lauderdale, FL 33309 | Vyacheslav Borshchukov, PA<br>514 SE 11th Court<br>Fort Lauderdale FL 33316 | Kozin Commercial Properties Inc.<br>3350 NW 22nd Ter, Ste 100<br>Pompano Beach FL 33068 |
| Douglas Elliman C/O<br>Lindsey Way PA<br>450 E Las Olas Blvd, #120<br>Fort Lauderdale, FL 33301 | Creditors Committee:<br>Shadana Deleston c/o Mutepe<br>Akemon, Esq., as Proxy Holder<br>PO Box 360295<br>Decatur, GA 30036 | Creditors Committee:<br>Abrey Leahong c/o Mutepe<br>Akemon, Esq., as Proxy Holder<br>PO Box 360295<br>Decatur, GA 30036 |
| Creditors Committee:<br>Addie Brooks c/o Ainsworth<br>Dudley, Esq., as Proxy Holder<br>4200 Northside Parkway<br>Building 1, Suite 200<br>Atlanta, GA 30327 | | |

This 10th day of March 2023.

Respectfully submitted,

**McBRYAN, LLC**

/s/Louis G. McBryan
Louis G. McBryan, Georgia Bar No. 480993
lmcbryan@mcbryanlaw.com
**Attorneys for Debtor**