**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| **TERI G. GALARDI,** | CASE NO.  22-50035-JPS |
| Reorganized Debtor. | |
| **THOMAS T. MCCLENDON, AS LIQUIDATING TRUSTEE OF THE GALARDI CREDITORS TRUST,** | |
| Movant, | |
| v. | CONTESTED MATTER |
| **ELLIANDRIA GRIFFIN,** | |
| Respondent. | |

**NOTICE OF OBJECTION TO CLAIM**

THOMAS T. MCCLENDON, AS LIQUIDATING TRUSTEE OF THE GALARDI CREDITORS TRUST ("LIQUIDATING TRUSTEE") HAS FILED AN OBJECTION TO YOUR CLAIM IN THIS BANKRUPTCY CASE.

**Your claim may be reduced, modified, or eliminated. You should read these documents carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the court to eliminate or change your claim, then you or your attorney shall file with the court a written response to the objection on or before **June 2, 2023.** If you are receiving this notice by mail, you may add 3 days to the response date, in accordance with FRBP 9006(f). The objection or response should be sent to:

> Clerk, U.S. Bankruptcy Court
> Middle District of Georgia
> P.O. Box 1957
> Macon, Georgia 31202
> 478-752-3506

**If a response if filed, a hearing on the objection to your claim shall be held on: June 21, 2023, at 11:00 a.m. in Courtroom A at the U.S. Courthouse, 433 Cherry Street, Macon, Georgia 31201.** *Parties should consult the Court's website (www.gamb.uscourts.gov)*

*concerning whether the hearing will be in-person, telephonic, or virtual. Please refer to Administrative Order #145 for more guidance.*

If you mail your response to the Court for filing, you shall send it early enough so that the court will **receive** the response on or before the response date stated above.

Any response shall also be served on the Liquidating Trustee.

**If you or your attorneys do not take these steps, the court may decide you do not oppose the objection to your claim.**

This notice is sent by the undersigned pursuant to LBR 9004-1.

This 3rd day of May, 2023.

<div style="margin-left: 40%;">

*/s/ Thomas T. McClendon*
Thomas T. McClendon
Georgia Bar. No. 431452
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300
tmcclendon@joneswalden.com
Liquidating Trustee

</div>

## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| TERI G. GALARDI, | CASE NO.  22-50035-JPS |
| Reorganized Debtor. | |
| THOMAS T. MCCLENDON, AS LIQUIDATING TRUSTEE OF THE GALARDI CREDITORS TRUST, | |
| Movant, | CONTESTED MATTER |
| v. | |
| ELLIANDRIA GRIFFIN, | |
| Respondent. | |

## LIQUIDATING TRUSTEE'S OBJECTION TO
## CLAIM NO. 109 OF ELLIANDRIA GRIFFIN

Thomas T. McClendon, as liquidating trustee of the Galardi Creditors Trust ("Liquidating Trustee"), Liquidating Trustee in the above-captioned case, files this objection ("Objection") to the claim asserted by Elliandria Griffin ("Respondent") and respectfully shows this Court as follows:

## BACKGROUND

1.     On January 12, 2022 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101 et seq. ("Bankruptcy Code"), in the United States Bankruptcy Court for the Middle District of Georgia, Macon Division ("Court").

2.     On April 14, 2023, the Court entered an Order Confirming the Joint Plan of Reorganization (Doc. No. 410) (the "Confirmation Order").

3.      The Effective Date of the Plan under the Confirmation Order is April 28, 2023.

4.      Pursuant to the Confirmation Order, any objection to a proof of claim classified in Class 8 shall be filed by the Liquidating Trustee on or before the 120th day after the Effective Date.

5.      On February 1, 2022, Mutepe Akemon on behalf of Elliandria Griffin filed proof of claim number 30, asserting a claim for $152,053.00 as an unsecured claim ("Claim No. 30"). Attached as exhibits to Claim No. 30 were the Final Award in the arbitration of Griffin and Holmes v. Galardi, American Arbitration Association Employment Arbitration Tribunal Case No: 01-20-005-4874, and an Order Adopting Magistrate Judge's Report and Recommendation in *Darden, Griffin, and King et al v. Fly Low, Inc. and Teri Galardi*, Case No 20-cv-20592 (S.D. Fla. 2020). Proof of Claim No. 30 is attached as "Exhibit A."

6.      On March 22, 2022 Mutepe Akemon on behalf of Elliandria Griffin filed proof of claim number 109, asserting the claim for $152,053.00 as an unsecured claim ("Claim No. 109"). Attached as exhibits to Claim No. 109 are the same Final Award in the arbitration of Griffin and Holmes v. Galardi, American Arbitration Association Employment Arbitration Tribunal Case No: 01-20-005-4874, and the Order Adopting Magistrate Judge's Report and Recommendation in *Darden, Griffin, and King et al v. Fly Low, Inc. and Teri Galardi*, Case No 20-cv-20592 (S.D. Fla. 2020). Proof of Claim No. 109 is attached as "Exhibit B."

7.      Both Claim No. 30 and Claim No. 109 were classified in Class 8 of the Plan.

## DISCUSSION

8.      Claim No. 109 is duplicative of Claim No. 30 as in the exact same amount and based on the same supporting documents.

**WHEREFOR,** the Liquidating Trustee requests the following relief:

(a)  That this Objection be sustained;

(b) That Claim No. 109 be disallowed; and

(c) That the Court awards the Liquidating Trustee such other and further relief as is just and proper.

Respectfully submitted this 3rd day of May, 2023.

_/s/ Thomas T. McClendon_
Thomas T. McClendon
Georgia Bar. No. 431452
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300
tmcclendon@joneswalden.com
Liquidating Trustee

# Exhibit "A"

<table>
<tr><td colspan="2">

**Fill in this information to identify the case:**

Debtor 1    Teri Galardi

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    **Middle District of Georgia**

Case number:   **22–50035**

</td>
<td>

FILED

**U.S. Bankruptcy Court**
**Middle District of Georgia**

2/1/2022

**Kyle George, Clerk**

</td></tr>
</table>

Official Form 410
# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Elliandria Griffin
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| Elliandria Griffin | The Richards Law Group |
| Name | Name |
| c/o Astrid Evelyn Gabbe, Esq. P.O. Box 4216 Hollywood, FL 33083 | P. Box 360295 <br><br> Decatur, GA 30036 |
| Contact phone    4042896816 | Contact phone    4042896816 |
| Contact email mutepe.akemon@richardslegal.com | Contact email mutepe.akemon@richardslegal.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known)    Filed on      MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing?

Official Form 410        Proof of Claim        page 1

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| **7. How much is the claim?** | $ 152053.00    **Does this amount include interest or other charges?**<br>☒ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

FMWA Arbitration Award Darden et al. v. Teri Galardi Case No:
01–20–0005–4874; Case No. 20–cv–20592– _____

**9. Is all or part of the claim secured?**

☒ No
☐ Yes. The claim is secured by a lien on property.
  **Nature of property:**
  ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
  ☐ Motor vehicle
  ☐ Other. Describe: _____

  **Basis for perfection:** _____

  Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

  **Value of property:**   $ _____

  **Amount of the claim that is secured:**   $ _____

  **Amount of the claim that is unsecured:**   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

  **Amount necessary to cure any default as of the date of the petition:**   $ _____

  **Annual Interest Rate** (when case was filed)   _____ %

  ☐ Fixed
  ☐ Variable

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☒ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☒ No<br>☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | | $ _____ |
| | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3: Sign Below

| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**<br>**18 U.S.C. §§ 152, 157 and 3571.** | Check the appropriate box:<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |
|---|---|

Executed on date    2/1/2022

         MM / DD / YYYY

/s/ Mutepe Akemon

Signature

Print the name of the person who is completing and signing this claim:

| Name | Mutepe Akemon |
|---|---|
| | First name     Middle name     Last name |
| Title | Attorney |
| Company | The Richards Law Group |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | P.O. Box 360295 |
| | Number   Street |
| | Decatur, GA 30036 |
| | City   State   ZIP Code |
| Contact phone | 4042896816     Email   mutepe.akemon@richardslegal.com |



**American Arbitration Association**
**Employment Arbitration Tribunal**
**Case No: 01-20-0005-4874**

ELLIANDRIA GRIFFIN AND MARQUESHA HOLMES

      Claimants

v.

TERI GALARDI,

      Respondent

_____/

# FINAL AWARD

The final hearing in this matter was held on March 19, 2021 under the Employment Arbitration Rules of the American Arbitration Association, as provided for in the applicable Arbitration Agreement.[1] There were three witnesses. Claimants, Elliandria Griffin and Marquesha Holmes, testified on their behalf. Respondent, Teri Galardi, testified on her behalf. There were also numerous exhibits submitted by Claimants. Following the hearing, counsel for Claimants and Respondent submitted post-hearing briefs. Claimants also submitted a request for attorneys' fees, supported by an affidavit of counsel and an attached invoice summary of time entries and costs incurred. Respondent presented a Declaration of Dean R. Fuchs, Esq. in response to the request for attorneys' fees.

**Background**

Claimants were exotic dancers at the King of Diamonds club (KOD). They paid a fee to dance at the KOD and received whatever tips patrons provided to them. They have brought claims against Respondent under Article X, Section 24 of the Florida Constitution and the Florida Minimum Wage Law claiming that they were "employees" and Respondent was an "employer," and that they did not receive the compensation they were entitled to under Florida law.

---

[1] The agreement appears as Exhibit 6 in the Final Hearing. Ms. Griffin signed the agreement on May 25, 2014. Ms. Holmes signed the agreement on April 20, 2014.

Claimants sent pre-suit notice letters to Respondent's counsel under Section 448.110, stating that Claimants worked at the KOD within the period 2010-2014. KOD was owned by Fly Low, Inc. (Fly Low), a Florida corporation. Based on annual reports filed with the Florida Secretary of State, Respondent was the President, Secretary, and Treasurer of Fly Low, Inc. in this same time period.

In *Espinoza et al. v. Fly Low, Inc. and Teri Galardi*, Case No. 14-CV-21244-JG (S.D. Fla June 27, 2018), a jury determined that Respondent was an "Employer" under the Fair Labor Standards Act. There were nine plaintiffs in the action. All were exotic dancers at KOD within the relevant time period of this arbitration. As such, all were situated similarly to Claimants in this arbitration on the question of whether Respondent was an "employer." In a special interrogatory, the jury provided the simple answer, "Yes," to the following simple question:

> Do you find that Defendants Fly Low, Inc. and/or Teri Galardi were employers as defined by the Fair Labor Standards Act ("FLSA")?

> Fly Low, Inc.                    Teri Galardi

> _X_ Yes ___ No              _X_ Yes ___ No

Ms. Galardi appealed the judgment entered on the jury verdict. In a *per curiam* opinion dated May 7, 2019, the Court of Appeals affirmed. One of the arguments on appeal was that the evidence was not sufficient to support the jury's finding that Ms. Galardi was an "employer" under the FLSA. The Court of Appeals did not review this claim because Ms. Galardi failed to file motions for judgment as a matter of law under Fed. R. Civ. P. 50(a) and 50(b) and failed to file a motion for a new trial under Rule 59. In such a circumstances, under well-established precedent, a party may not challenge the sufficiency of the evidence before a jury. The Court of Appeals then awarded Plaintiffs "double costs and reasonable attorneys' fees incurred as a result of having to defend this appeal, to be assessed against Galardi and her lawyer, jointly and severally" because

> Galardi's appellate arguments are entirely without merit – and because Galardi's lawyer failed to bring to this Court's attention binding precedent that forecloses plainly two of Galardi's arguments and failed to brief adequately Galardi's remaining argument.

*Espinoza v. Galardi South Enterprises Inc. et al.*, 772 Fed. Appx. 768, 769-70, 771 (11th Cir. May 7, 2019).

On February 4, 2021, I issued an Order granting Claimants' motion for summary disposition and denying Respondent's cross-motion for summary disposition. I carefully reviewed the *Espinoza* trial transcript and confirmed that Respondent had the opportunity to make her case that she was not an "employer." Thus, based on the doctrine of offensive collateral estoppel, I determined that the jury's determination in *Espinoza* is controlling here, and that Respondent

4835-8226-3536 v1

was an "employer" under Article X, Section 24 of the Florida Constitution and the Florida Minimum Wage Act, as least after December 1, 2012, when Respondent's father passed away. This Order meant that Claimants would be entitled to some amount of damages unless there was a basis for any set-offs, leaving the issue of set-offs, liquidated damages, and the starting point of damages for the final hearing.

More specifically, for the final hearing, these were the remaining questions.

1. Article X, Section 24 provides that, "Persons aggrieved by a violation of this amendment may bring a civil action in a court of competent jurisdiction against an Employer or person violating this amendment and, upon prevailing, shall recover the full amount of any back wages unlawfully withheld plus the same amount as liquidated damages, and shall be awarded reasonable attorney's fees and costs."  It further provides that, "Implementing legislation is not required in order to enforce this amendment. The state legislature may by statute establish additional remedies or fines for violations of this amendment . . . ."  Section 448.110(c)(1) provides: "Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs. As provided under the federal Fair Labor Standards Act, pursuant to s. 11 of the Portal-to-Portal Act of 1947, 29 U.S.C. s. 260, if the employer proves by a preponderance of the evidence that the act or omission giving rise to such action was in good faith and that the employer had reasonable grounds for believing that his or her act or omission was not a violation of s. 24, Art. X of the State Constitution, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed an amount equal to the amount of unpaid minimum wages."  There appears to be a conflict in the language above on the issue of liquidated damages.  Does Article X, Section 24 allow an employer to avoid liquidated damages if the employer can prove that the acts or omissions giving rise to the action were in good faith?  If the answer to this question is yes, Respondent, if she so elects, has the burden of proof at the hearing on this issue.  If the answer is no, is the defense allowed under Section 448.110(c)(1) material to the outcome?

2. Claimants' pre-suit notice letters under Section 448.110 seek damages dating back to 2010.  The jury verdict in *Espinoza* went back to April 8, 2011.  What is the time period for which damages are being sought in this matter?  The answer to that question may impact my decision on the time period for which the estoppel is applicable.  It is clearly applicable after the death of Respondent's father.  It may be applicable before that, but I have not yet made that determination.

3. The pre-suit letters make reference to "illegal kickbacks." Assuming such kickbacks were made, what is the basis for an award of kickbacks under Article X, Section 24 or Section 448.110?

4. The pre-suit letters seek recovery of minimum wages.  Assuming Claimants received tips from patrons, are claimants required to set off any monies received while working at the KOD against their claims for minimum wages?

3

I address the resolution of these issues below.

**Issue No. 1**

Respondent does not present any analysis of the remedy provided by Article X, Section 24, which does not contain a good faith defense to a claim for liquidated damages, in contrast with Section 448.110(c)(1), which does allow for a good faith defense. After restating the text of both provisions, Respondent pithily writes in Paragraph 11 of her post-hearing brief the following analysis: "Obviously, the Florida legislature through its authority given to it by article X, §24 has seen fit to give an employer a good faith defense as it relates to the imposition of liquidated damages."

For their part, Claimants argue that liquidated damages under Article 10, Section 24 are mandatory but do not directly address the legal question of whether Article 10, Section 24 allows for a good faith defense to a claim for liquidated damages. Instead, they argue, that the defense has not been proven even under Section 448.110(c)(1).

Under Article X, Section 24(c), "Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida." Under Article X, Section 24(b), "the terms 'Employer,' 'Employee' and 'Wage' shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations."

Article X, Section 24(e) provides that, "Persons aggrieved by a violation of this amendment may bring a civil action in a court of competent jurisdiction against an Employer or person violating this amendment and, upon prevailing, shall recover the full amount of any back wages unlawfully withheld plus the same amount as liquidated damages, and shall be awarded reasonable attorney's fees and costs."

Under Article 10, Section 24(f),

> Implementing legislation is not required in order to enforce this amendment. The state legislature may by statute establish additional remedies or fines for violations of this amendment, raise the applicable Minimum Wage rate, reduce the tip credit, or extend coverage of the Minimum Wage to employers or employees not covered by this amendment.

To interpret this text, one should always look first to the meaning of the words of the Constitution. They state unequivocally that a prevailing employee "shall" recover from the employer the "full amount of any back wages unlawfully withheld" "plus the same amount as liquidated damages." There is no limitation on, or qualification of, the liquidated damages required to be awarded under Article 10, Section 24.

Nor is implementing legislation required by the specific terms of Article 10, Section 24(f). Phrased another way, if Section 448.110 had never been adopted by the Florida Legislature, an employee would still be able to bring a claim for failure to pay minimum wages and automatically receive an equal amount as liquidated damages upon prevailing.

In this case, the result would be same, however, even if I reached a different conclusion. Section 448.110(c)1 requires Respondent to prove "by a preponderance of the evidence that that the act or omission giving rise" to the minimum wage claim "was in good faith *and* "that the employer had reasonable grounds for believing that his or her act or omission was not a violation of s. 24, Art. X of the State Constitution." Respondent has failed to carry that burden. The evidence showed that she was aware before her father's death that the business model under which the King of Diamonds operated violated the Fair Labor Standards Act, the federal equivalent of Article 10, Section 24 and Section 448.110(c)(1), and that Respondent made no changes in the way she operated the KOD after her father's death, even though she had the sole authority to do so. Final Hearing Transcript (March 19, 2012), p. 189-249; Exhibit 4, *Espinoza* Trial Transcript, Day 2, p. 50-52; Exhibit 14 (Deposition Testimony of Dennis Williams), p. 51. Thus, Respondent is liable for liquidated damages.

**Issue 2**

The question presented by Issue 2 is whether Respondent can be classified as an "employer" before her father's death on December 1, 2012. Claimants argue that she should be classified as their employer back to 2011 (relating to the date from which the jury awarded damages in *Espinoza*) or back to 2010 since the limitations period under Florida law allows for recovery back to 2010.

They make two arguments. First, offensive collateral estoppel should apply based on the jury verdict in *Espinoza*. Second, Respondent was the President, Secretary, and Treasurer of Fly Low, Inc., according to the Fly Low annual reports filed with the Florida Secretary of State in 2010, 2011, and 2012.

In my Order on Claimants' motion for summary disposition, I did not apply offensive collateral estoppel before December 1, 2012, when Respondent's father passed away, because the jury verdict in *Espinoza* did not present the question of how far back Respondent was an "employer." The Special Interrogatories appear as Exhibit 3 in the Final Hearing. The first question asked was whether Respondent and Fly Low were an employer. The jury answered, "Yes" as to both. The second question asked was whether plaintiffs were employees of Respondent and Fly Low. The jury again answered, "Yes." The third question asked if Respondent and Fly Low knew or showed reckless disregard for whether the FLSA prohibited their conduct. Again, the jury answered, "Yes." The fourth question asked if Respondent and Fly Low failed to pay the minimum wage to the plaintiffs, and again the answer was, "Yes." There were no time components to any of these questions or answers.

5

When it came to the amount of the award, the question asked the jury to state the amount, "if any, to award to each Plaintiff as minimum wage damages from April 8, 2011 until July 15, 2014." The jury then listed the amounts due each of the plaintiffs in *Espinoza.*

I could not tell from the jury verdict how the amounts awarded the plaintiffs in *Espinoza* were calculated or whether they embraced a period prior to the death of Respondent's father. The question used the phrase "if any" to describe the amount within a time window that began before December 1, 2012, when Respondent's father died. But I cannot tell from the jury verdict form whether the amounts awarded were limited to the period after December 1, 2012 or included any part of the period before December 1, 2012.

I also read the transcript of Ms. Galardi's testimony during the trial, which is part of Exhibit 4 of the Hearing Exhibits. The only evidence I could identify to relate Respondent to the status of "employer" before her father's death is the same evidence relied on by Claimants here: the annual reports filed with the State of Florida Secretary of State that listed Ms. Galardi as the president, secretary, and treasurer of Fly Low. She told the jury she did not know she was listed as an officer. Did they fail to believe her? I really could not tell from the jury verdict. Since offensive collateral estoppel has a fairness component to it, as I discussed in my Order on the cross-motions for summary disposition, I wanted to hear Respondent's testimony myself before deciding.

I have now heard Respondent's testimony. Based on that testimony, I have decided that it would not be fair to apply the doctrine of offensive collateral estoppel to the period prior to December 1, 2012 and that the evidence otherwise is not sufficient to label her an "employer" prior to that date.

As she had testified in the *Espinoza* trial, Respondent testified in the Final Hearing that she was not aware she had been listed on these Annual Reports. Final Hearing Transcript, p. 187-188. While she acknowledged that as president, secretary, and treasurer of Fly Low she "probably" had the authority and ability to sign checks, *id.*, at 234, that testimony was not tied to a date before December 1, 2012, and, in any event, there is no evidence that she signed any checks. And while her father would have fallen into the category of "employer" before his death on December 1, 2012, there is insufficient evidence in this record of Respondent's involvement in the KOD to conclude that she was in a position to change the business model, despite her being listed as president, secretary, and treasurer in the Annual Report. As best I can determine from the evidence, her father was in charge until he died. Exhibit 14 (Deposition Testimony of Dennis Williams), p. 51.

Hence, Claimants' are entitled to a recovery beginning on December 1, 2012.

**Issues No. 3 and 4**

Claimants testified that they were required to pay house fees to KOD before every shift, and 10% of nightly earnings to KOD. They were also required to "tip out" the Disc Jockey (DJ),

house mom, and security.  On average, they each paid $150 per shift in house fees and about $100.00 in tip-outs to the house mom, DJ, and security per shift.

Claimant Griffin testified that the approximate amount of house fees and tip outs (or what she called "kickbacks") that she paid were as follows:

<div align="center">

2012:  $55,000
2013:  $60,000
2014:  $32,500

</div>

Claimant Holmes testified that the approximate amount of house fees and tip outs or "kickbacks" that she paid were the same:

<div align="center">

2012:  $55,000
2013:  $60,000
2014:  $32,500

</div>

Neither Claimant broke down the 2012 figure by month.  Based on the testimony I heard, I will pro-rate 2012.  One-twelfth of $55,000 is $4,583.  Hence, the total amount being claimed by each respondent for "house fees and tip outs" is $4,583 plus $60,000 plus $32,500, or $97,083.

Respondent presented no evidence to refute these amounts. Therefore, I credit this testimony insofar as the amounts are concerned.  The question is whether Florida law permits their recovery.

The full extent of Respondent's argument on the scope of recovery under Article X, Section 24 and Section 448.110 with respect to kickbacks is contained in Respondent's Post-Hearing Brief, Paragraph 20.  She writes that because Article X, Section 24 and Section 448.110 make no reference to "illegal kickbacks," Claimants "should be awarded nothing for illegal kickbacks."

With respect to tips, Respondent argued only that the amount of money earned in tips by each Claimant exceeded minimum wages owed and therefore neither Claimant should recover minimum wages. Respondent's Post-Hearing Brief, Paragraphs 22, 24. Respondent, however, presented no cases or regulations that state that tips of the kind involved here can be set off against wages.[2]

I conclude that Florida law permits recovery of these sums.  In addressing minimum wage claims, Florida courts looks to FLSA case law for guidance.   Article X, Section 24(f) ("It is

---

[2] In a footnote, Respondent argues that neither Respondent should receive the benefit of any doubts about what they earned because neither Claimant reported earnings to the Internal Revenue Service.  "Had they followed the law and declared their income, what they warned would be known."  Respondent's Post-Hearing Brief, p. 11, n. 1. Had Respondent followed the law, however, by withholding taxes, taking out social security, and issuing Form 1099s to Claimants, all of the parties would know what the earnings were.  Respondent testified she did not do so. Exhibit 4, Espinoza Trial Transcript, Day 1, p. 58-59.  Therefore, I reject Respondent's footnote suggestion.

intended that case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations.")

I will address the tip set-off argument first. Under 29 C.F.R. § 531.55, "service charges", but not "tips," may be used to satisfy an employer's wage payment obligations under the FLSA. However, for a fee to be a "service charge," it "must be (1) recorded in a company's gross receipts, and (2) distributed by the company to the employee." 29 C.F.R. § 531.55. The evidence showed that Respondent did not keep records of "service charges" or "tips"; hence they cannot be used as a set off.  Cf. *Dean v. 1715 Northside Drive, Inc*., 224 F. Supp. 3d 1302, (N.D. Ga. 2016):

> Here, the club did not keep track of amounts paid to the plaintiff for glass-room dances, table dances, stage dances, and floor dances. The plaintiff and other dancers were compensated in cash for these efforts, and the club did not record these earnings in its gross receipts. *Thus, monies collected for these dances were "tips" and cannot be applied to satisfy the defendants' FLSA obligations.*

*Id*. at 1324-25. (Emphasis added.)

As for "kickbacks," under 29 CFR § 531.35, wages must be paid "free and clear":

> "[W]ages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash.

In addition, courts in FLSA cases have required defendants to return tip out fees to entertainers like Claimants.  Thus, in *Reich v. Priba Corp*., 890 F. Supp. 586 (N.D. Tex. 1995), the district court ordered the operator of a Cabaret Royale to reimburse entertainers for tip-out fees they were required to pay.

> To fully compensate the entertainers in the amounts required by the FLSA, Cabaret Royale must pay them the full minimum wage for all time worked during the limitations period. In addition, the club must return all tip out fees collected from the entertainers.

*Id*. at 595.  In *Reich v. Circle C Invs*., 998 F.2d 324 (5th Cir. 1993), the Secretary of Labor was successful in obtaining a remand where the district court's calculation of back wages failed, among other things, to take into account the tip-outs paid by dancers and waitresses.

> In his cross-appeal, the Secretary contends that the district court's calculation of back wages is incorrect because it fails to take into account (1) the "tip-outs" paid by the dancers and waitresses (2) expenditures for costumes and uniforms worn by the dancers, disc jockeys, and waitresses; and (3) fines imposed on employees.
>
> The district court failed to address in its order the Secretary's request for reimbursement of these costs and fines, despite the fact that the Secretary raised this issue during pretrial proceedings, during trial, and in post-trial documents. These costs and fines were specifically included in the compliance officer's back-wage calculation, which the Secretary presented during trial and in his proposed findings of fact and conclusions of law. We remand to the district court for specific findings of fact and conclusions of law on whether reimbursement for these costs and fines should be included in the calculation for back wages and, if so, the proper amount to be included.

The court in *Dean* also required the club to reimburse a fee charged to a dancer amounting to one-tenth of her credit-card tips to the club for services rendered in the VIP rooms.  The club claimed this was a "merchant service fee." The club did not pay a cash wage.  It did not make a disclosure required under 29 U.S.C. § 203(m) to claim a tip credit.  As the *Dean* court noted in citing *Reich*, *supra*, 890 F. Supp. at 596 (which cited 29 C.F.R. § 531.3(d)(2), 531.32(c)), the FLSA does not allow an employer to transfer to its employees the responsibility for the expenses of carrying on an enterprise."  Thus, the court held, "the club must return all withheld merchant service fees to the plaintiff." 224 F. Supp. 3d at 1327.

Hence, I award each Claimant the amount of $97,083, which was unlawfully charged to them by Respondent in operating the KOD.

**Minimum Wages**

Claimants Griffin and Holmes each claim the following minimum wages.

<div align="center">

2012:  $16,567.00
2013:  $16,826.00
2014:  $ 9,278.00

</div>

They do not break down the 2012 figure of $16,567.00 by month.  I will pro-rate this figure by one-twelfth, which equals $1,381.  Hence, the total amount of wages being claimed by each Claimant is:  $1,381.00 plus $16,826.00 plus $9,278.00, or a total of $27,485.00.

<div align="center">9</div>

Having hearing the direct and cross examination of both witnesses and heard the testimony of Respondent, who was unable to refute these amounts, I accept the testimony of Claimants and award them each minimum wages of $27,485.00.

Because of my conclusions with respect to liquidated damages above, I also award them liquidated damages in the amount of $27,485.00.

**Arbitration Costs**

Rule 39(d) of the AAA's Employment Arbitration Rules provides in pertinent part that the arbitrator may "grant any relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law." It also provides that the arbitrator "shall, in the award assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party." Rule 43 relates to the administrative fee charged by the Association. Rule 44 relates to the arbitrator's compensation. Rule 45 relates to the expenses of the arbitrator as well as the costs relating to proof and witnesses produced at the direction of the arbitrator. It also provides that unless otherwise agreed by the parties or as provided under applicable law, "the expenses of witnesses for either side shall be borne by the party producing such witnesses."

According to the Claimants' submission, Claimants each paid a filing fee of $300.00 to AAA. Respondent paid a filing fee of $1,900 per claimant and a $750 case management fee. Based on the AAA fee schedule, these costs shall be borne as incurred. In other words, they are not being reallocated.

Claimants seek $347.29 in ground transportation, $768.66 in hotel charges, and $106.79 for a flight for "client." The parties' arbitration agreement does not provide for payment of these expenses, and, applicable law does not provide for reimbursement of these expenses otherwise. They must be borne by Claimants.

Claimants seek reimbursement of $250.00 as the "pro hac vice" fee for the appearance of Claimants' counsel in the Southern District of Florida with respect to a motion to compel arbitration. I do not see where I have the authority to award this amount under Rule 39(d). Claimants must bear this cost. See also *Lane v. Accredited Collection Agency, Inc.,* 2014 WL 1685677, at *10 (M.D. Fla. 2014) ("As other courts have recognized, the *pro hac vice* fee is an expense of counsel, not the client, and is thus not properly recoverable.") quoting *Hernandez v. Motorola Mobility, Inc.,* 2013 WL 4773263, at *5 (S.D. Fla. 2013).

Claimants incurred $450.00 to copy exhibits, and paid court reporter fees in the amounts of $300.00, $1,423.50, and $244.65. I will tax these costs to Respondent under Rule 39(d). See 28 U. S. C §1920(3) and (4) (allowing as taxable costs fees for printing or electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing, and the costs of making copies of materials necessarily obtained for use in the case).

10

Claimant's counsel also incurred a fee of $130.80 to change a flight because of a change in the hearing date made at the request of Respondent. I changed the hearing date with the understanding that I would award Claimant this cost differential.

Finally, I am assessing the entirely of the Arbitrator's compensation to the Respondent. That amount is $38,940.00 plus $28.80 in costs, for a total of $38,968.80, which includes arbitrator compensation through the completion of this Final Award. Under the Employment Arbitration Rules, Respondent bears this cost. It will not be reallocated.

**Attorneys' Fees**

There is no dispute that Claimants are entitled to an award of attorneys' fees. Claimants' counsel has sought fees at an hourly rate of $300.00 per hour. Respondent agrees that this is a reasonable hourly rate.

Claimant submitted a time sheet showing 193 hours of time to arbitrate this matter. Respondent submitted the Declaration of Dean R. Fuchs in response to the amount of attorneys' fees claimed. Mr. Fuchs is not a neutral declarant. He was counsel for Respondent in the *Espinoza* trial. Nonetheless, I have considered his Declaration.

According to Claimant's counsel's submission, 18.1 hours of time were incurred in the district court in connection with the motion to compel arbitration. The parties' arbitration agreement provides that each party will bear their own attorneys' fees "except as may be ordered by the arbitrator pursuant to arbitration rules." The AAA's Employment Rules do not expressly provide for recovery of fees incurred to compel arbitration. And Claimants have not cited applicable law that would support the argument that this relief that would have been available to the parties had the matter been heard in court. The fees associated with these time entries must be borne by Claimants.

With respect to the prosecution of the arbitration, Mr. Fuchs complains about the time spent by Claimants' counsel to review the transcript of the *Espinoza* trial. Claimants' counsel recorded 31 hours to review seven days' of transcripts—or about four eight-hour days. Claimants' counsel also had time entries of 1.2 hours to review "A. Adams Depo.," 1.1 hours to review "T. Galardi Trial Transcript," and 3.7 hours to review "Depo transcripts and trial transcripts, Gaeter, Espinoza." The total amount of time for these entries comes to 37 hours. Mr. Fuchs declared under oath that Claimant's counsel sought 31 hours in time for reviewing the Espinoza transcript in a separate arbitration against Respondent brought by a similarly situated claimant, Lygia Simmons.[3] I am not necessarily troubled by the time spent dissecting a transcript for use in related adjudicatory proceedings, particularly in order to make a claim of offensive collateral estoppel. But I am troubled by seeking fees for the same amount of time in

---

[3] Claimants' counsel did not ask for an opportunity to respond to Mr. Fuchs' Declaration. Therefore, I take Mr. Fuchs' statement to be true in this regard.

two separate arbitrations addressing the same issues. I will allow one-half of this amount of time, or 18.5 hours for this work.

I am also subtracting 0.5 hours for entries relating to a bounced check and "consolidation."

Mr. Fuchs also believes that Claimants' counsel spent an inordinate amount of time on the motions for summary disposition and quibbles about other minor time entries. I am not going to put Claimants' counsel under a microscope. Some lawyers might be faster than other lawyers. Taking into account the rate, I find that the dollars sought for the pre-hearing work are reasonable. I also find that the dollars sought for time spent on preparing for the hearing, conducting the hearing, and post-hearing briefing are reasonable.

Hence, based on my analysis of the time entries, Claimants' counsel incurred $46,770.00 (155.9 hours times $300 per hour).

In his Declaration, Mr. Fuchs cited *Gordis v. Ocean Drive Limousines, Inc.*, Case No. 12-24358-CV- Case No. 12-24358, 2017 U. S. Dist. LEXIS 53045 (S.D. Fla. Apr. 4, 2017), in which the Magistrate Judge addressed the standards for awarding attorneys' fees under the FLSA.

> The Supreme Court has explained that the starting point for determining what constitutes a "reasonable fee" is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." [*Hensley v. Eckerhart*, 461 U.S. 424 (1983)]. These numbers are then multiplied together, with the resulting monetary figure representing what is known as the "lodestar." *Pennsylvania v. Delaware Valley Citizens' Council II*, 483 U.S. 711, 745, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987). The lodestar can be enhanced or reduced depending on the circumstances presented by each case. *Id.* The overall result obtained by the prevailing party is one consideration that may lead the district court to adjust the fee upward or downward, and a court may "simply reduce the award to account for the limited success" of a party. *Hensley*, 461 U.S. at 434. However, "[t]here is no precise rule or formula for making [such] determinations." *Id.* at 436-37.

*Id.* at *8-9. In that case, the Magistrate judge found that $350/hour was a reasonable rate for the lead attorney. The plaintiffs employed four other lawyers. In total, they spent 886.25 hours on the matter. The Magistrate Judge determined that this amount of time was reasonable. When he multiplied the hourly rate times the hours of each lawyer, the total came to $277,905.00. However, because the plaintiffs sought over $150,000 in unpaid overtime damages, and recovered only $20,000, the Magistrate adjusted the lodestar amount downward by 75% and awarded plaintiffs $69,476.25.

Here, Claimants have been awarded a total of just over $284,000. Claimants' counsel handled the matter by himself. His hourly rate is lower ($300) than the rate the Magistrate found

reasonable for the lead attorney in *Gordis* ($350).  And while Claimants sought more than what I have awarded, the recoverability of house fees and tip outs and wages before December 1, 2012, was a fairly contested issue, and Claimants still recovered a sizable sum.  Taking into account all of the circumstances of this case, I am enhancing the lodestar amount by 25%.  Thus Claimants are also entitled to an attorney's fee award of $58,462.50 ($46,770.00 plus $11,692.50 representing 20% of $46,770.00).

**Summary**

The total award of damages to Claimants is as follows.

| Description | Elliandria Griffin | Marquesha Holmes |
|---|---|---|
| Reimbursement of House Fees and Tip-outs | $97,083.00 | $97,083.00 |
| Minimum Wages 2012-2014 | $27,485.00 | $27,485.00 |
| Liquidated Damages | $27,485.00 | $27,485.00 |
| **Total** | **$152,053.00** | **$152,053.00** |

The total award of costs to Claimants is as follows.

| Description | Amount |
|---|---|
| Printing costs | $450.00 |
| Court Reporter Fees | $1,968.15 |
| Flight change fee | $130.80 |
| **Total** | **$2,548.95** |

The Arbitrator's compensation of $38,968.80 shall be borne as incurred by Respondent.

Finally, Claimants are awarded $58,462.50 in attorneys' fees.

DONE AND ORDERED this 21st day of July 2021.

/s/ John M. Barkett
John M. Barkett
Arbitrator

13

4835-8226-3536 v1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 20-cv-20592-COOKE/O'SULLIVAN

PORSCHE DARDEN,
ELLIDRIA GRIFFIN, and
ALEXIS KING, et al.,

      Plaintiffs,

vs.

FLY LOW, INC., and TERI GALARDI,

      Defendants.

_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Reports and Recommendations of the Honorable John J. O'Sullivan, Chief U.S. Magistrate Judge, ECF Nos. 69 & 71, on various pending Motions in this case.

Judge O'Sullivan recommends granting the Motions to Confirm Arbitration Award (ECF Nos. 46, 47, & 59). Judge O'Sullivan also recommends granting the Motions for Judgment (ECF Nos. 48 & 49). None of the Parties have filed objections to the Reports and the time to do so has passed. Accordingly, Judge O'Sullivan's Reports and Recommendations (ECF Nos. 69 & 71) are **AFFIRMED and ADOPTED** as the Orders of this Court. The Motions to Confirm Arbitration Award (ECF Nos. 46, 47, & 59) are **GRANTED**. The Motions for Judgment (ECF Nos. 48 & 49) are also **GRANTED**. The Parties are to submit proposed final judgements to the Court.

**DONE and ORDERED** in chambers, at Miami, Florida, this 30th day of November 2021.

_____
MARCIA G. COOKE
United States District Judge

# Exhibit "B"

**Fill in this information to identify the case:**

Debtor 1   Teri Galardi

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Middle District of Georgia**

Case number:   **22–50035**

FILED

**U.S. Bankruptcy Court**
**Middle District of Georgia**

3/22/2022

**Kyle George, Clerk**

Official Form 410
# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Elliandria Griffin

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| Elliandria Griffin | |
| Name | Name |
| c/o Astrid Evelyn Gabbe, Esq. P.O. Box 4216 Hollywood, FL 33083 | |
| Contact phone   4042896816 | Contact phone |
| Contact email   mutepe.akemon@richardslegal.com | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)      Filed on               
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                         Proof of Claim                        page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | | |
|---|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No | |
| | ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ | |

| | | |
|---|---|---|
| **7. How much is the claim?** | $ 152053.00 | **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Darden et al. v Teri Galardi Arbitration Award _____

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

| | |
|---|---|
| **Value of property:** | $ _____ |
| **Amount of the claim that is secured:** | $ _____ |
| **Amount of the claim that is unsecured:** | $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.) |

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed
☐ Variable

| | | |
|---|---|---|
| **10. Is this claim based on a lease?** | ☑ No | |
| | ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | | |
|---|---|---|
| **11. Is this claim subject to a right of setoff?** | ☑ No | |
| | ☐ Yes. Identify the property: _____ | |

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies  $ _____

\* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    3/22/2022

MM / DD / YYYY

/s/  Mutepe Akemon

Signature

Print the name of the person who is completing and signing this claim:

| Name | Mutepe Akemon |
|---|---|
| | First name    Middle name    Last name |
| Title | |
| Company | The Richards Law Group |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | P.O. Box 360295 |
| | Number    Street |
| | Decatur, GA 30036 |
| | City  State  ZIP Code |
| Contact phone | 4042896816  Email  mutepe.akemon@richardslegal.com |

Official Form 410    Proof of Claim    page 3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 20-cv-20592-COOKE/O'SULLIVAN

PORSCHE DARDEN,
ELLIDRIA GRIFFIN, and
ALEXIS KING, et al.,

      Plaintiffs,

vs.

FLY LOW, INC., and TERI GALARDI,

      Defendants.

_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Reports and Recommendations of the Honorable John J. O'Sullivan, Chief U.S. Magistrate Judge, ECF Nos. 69 & 71, on various pending Motions in this case.

Judge O'Sullivan recommends granting the Motions to Confirm Arbitration Award (ECF Nos. 46, 47, & 59). Judge O'Sullivan also recommends granting the Motions for Judgment (ECF Nos. 48 & 49). None of the Parties have filed objections to the Reports and the time to do so has passed. Accordingly, Judge O'Sullivan's Reports and Recommendations (ECF Nos. 69 & 71) are **AFFIRMED and ADOPTED** as the Orders of this Court. The Motions to Confirm Arbitration Award (ECF Nos. 46, 47, & 59) are **GRANTED**. The Motions for Judgment (ECF Nos. 48 & 49) are also **GRANTED**. The Parties are to submit proposed final judgements to the Court.

**DONE and ORDERED** in chambers, at Miami, Florida, this 30th day of November 2021.

_Marcia G. Cooke_
_____
MARCIA G. COOKE
United States District Judge



**American Arbitration Association**
**Employment Arbitration Tribunal**
**Case No: 01-20-0005-4874**


ELLIANDRIA GRIFFIN AND MARQUESHA HOLMES

      Claimants

v.

TERI GALARDI,

      Respondent

_____/


# FINAL AWARD

The final hearing in this matter was held on March 19, 2021 under the Employment Arbitration Rules of the American Arbitration Association, as provided for in the applicable Arbitration Agreement.[1] There were three witnesses. Claimants, Elliandria Griffin and Marquesha Holmes, testified on their behalf. Respondent, Teri Galardi, testified on her behalf. There were also numerous exhibits submitted by Claimants. Following the hearing, counsel for Claimants and Respondent submitted post-hearing briefs. Claimants also submitted a request for attorneys' fees, supported by an affidavit of counsel and an attached invoice summary of time entries and costs incurred. Respondent presented a Declaration of Dean R. Fuchs, Esq. in response to the request for attorneys' fees.

**Background**

Claimants were exotic dancers at the King of Diamonds club (KOD). They paid a fee to dance at the KOD and received whatever tips patrons provided to them. They have brought claims against Respondent under Article X, Section 24 of the Florida Constitution and the Florida Minimum Wage Law claiming that they were "employees" and Respondent was an "employer," and that they did not receive the compensation they were entitled to under Florida law.

---

[1] The agreement appears as Exhibit 6 in the Final Hearing. Ms. Griffin signed the agreement on May 25, 2014. Ms. Holmes signed the agreement on April 20, 2014.

Claimants sent pre-suit notice letters to Respondent's counsel under Section 448.110, stating that Claimants worked at the KOD within the period 2010-2014. KOD was owned by Fly Low, Inc. (Fly Low), a Florida corporation. Based on annual reports filed with the Florida Secretary of State, Respondent was the President, Secretary, and Treasurer of Fly Low, Inc. in this same time period.

In *Espinoza et al. v. Fly Low, Inc. and Teri Galardi*, Case No. 14-CV-21244-JG (S.D. Fla June 27, 2018), a jury determined that Respondent was an "Employer" under the Fair Labor Standards Act. There were nine plaintiffs in the action. All were exotic dancers at KOD within the relevant time period of this arbitration. As such, all were situated similarly to Claimants in this arbitration on the question of whether Respondent was an "employer." In a special interrogatory, the jury provided the simple answer, "Yes," to the following simple question:

> Do you find that Defendants Fly Low, Inc. and/or Teri Galardi were employers as defined by the Fair Labor Standards Act ("FLSA")?

| Fly Low, Inc. | Teri Galardi |
|---|---|
| _X_ Yes ___ No | _X_ Yes ___ No |

Ms. Galardi appealed the judgment entered on the jury verdict. In a *per curiam* opinion dated May 7, 2019, the Court of Appeals affirmed. One of the arguments on appeal was that the evidence was not sufficient to support the jury's finding that Ms. Galardi was an "employer" under the FLSA. The Court of Appeals did not review this claim because Ms. Galardi failed to file motions for judgment as a matter of law under Fed. R. Civ. P. 50(a) and 50(b) and failed to file a motion for a new trial under Rule 59. In such a circumstances, under well-established precedent, a party may not challenge the sufficiency of the evidence before a jury. The Court of Appeals then awarded Plaintiffs "double costs and reasonable attorneys' fees incurred as a result of having to defend this appeal, to be assessed against Galardi and her lawyer, jointly and severally" because

> Galardi's appellate arguments are entirely without merit – and because Galardi's lawyer failed to bring to this Court's attention binding precedent that forecloses plainly two of Galardi's arguments and failed to brief adequately Galardi's remaining argument.

*Espinoza v. Galardi South Enterprises Inc. et al.*, 772 Fed. Appx. 768, 769-70, 771 (11th Cir. May 7, 2019).

On February 4, 2021, I issued an Order granting Claimants' motion for summary disposition and denying Respondent's cross-motion for summary disposition. I carefully reviewed the *Espinoza* trial transcript and confirmed that Respondent had the opportunity to make her case that she was not an "employer." Thus, based on the doctrine of offensive collateral estoppel, I determined that the jury's determination in *Espinoza* is controlling here, and that Respondent

4835-8226-3536 v1

was an "employer" under Article X, Section 24 of the Florida Constitution and the Florida Minimum Wage Act, as least after December 1, 2012, when Respondent's father passed away. This Order meant that Claimants would be entitled to some amount of damages unless there was a basis for any set-offs, leaving the issue of set-offs, liquidated damages, and the starting point of damages for the final hearing.

More specifically, for the final hearing, these were the remaining questions.

1. Article X, Section 24 provides that, "Persons aggrieved by a violation of this amendment may bring a civil action in a court of competent jurisdiction against an Employer or person violating this amendment and, upon prevailing, shall recover the full amount of any back wages unlawfully withheld plus the same amount as liquidated damages, and shall be awarded reasonable attorney's fees and costs." It further provides that, "Implementing legislation is not required in order to enforce this amendment. The state legislature may by statute establish additional remedies or fines for violations of this amendment . . . ." Section 448.110(c)(1) provides: "Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs. As provided under the federal Fair Labor Standards Act, pursuant to s. 11 of the Portal-to-Portal Act of 1947, 29 U.S.C. s. 260, if the employer proves by a preponderance of the evidence that the act or omission giving rise to such action was in good faith and that the employer had reasonable grounds for believing that his or her act or omission was not a violation of s. 24, Art. X of the State Constitution, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed an amount equal to the amount of unpaid minimum wages." There appears to be a conflict in the language above on the issue of liquidated damages. Does Article X, Section 24 allow an employer to avoid liquidated damages if the employer can prove that the acts or omissions giving rise to the action were in good faith? If the answer to this question is yes, Respondent, if she so elects, has the burden of proof at the hearing on this issue. If the answer is no, is the defense allowed under Section 448.110(c)(1) material to the outcome?

2. Claimants' pre-suit notice letters under Section 448.110 seek damages dating back to 2010. The jury verdict in *Espinoza* went back to April 8, 2011. What is the time period for which damages are being sought in this matter? The answer to that question may impact my decision on the time period for which the estoppel is applicable. It is clearly applicable after the death of Respondent's father. It may be applicable before that, but I have not yet made that determination.

3. The pre-suit letters make reference to "illegal kickbacks." Assuming such kickbacks were made, what is the basis for an award of kickbacks under Article X, Section 24 or Section 448.110?

4. The pre-suit letters seek recovery of minimum wages. Assuming Claimants received tips from patrons, are claimants required to set off any monies received while working at the KOD against their claims for minimum wages?

3

I address the resolution of these issues below.

**Issue No. 1**

Respondent does not present any analysis of the remedy provided by Article X, Section 24, which does not contain a good faith defense to a claim for liquidated damages, in contrast with Section 448.110(c)(1), which does allow for a good faith defense.  After restating the text of both provisions, Respondent pithily writes in Paragraph 11 of her post-hearing brief the following analysis: "Obviously, the Florida legislature through its authority given to it by article X, §24 has seen fit to give an employer a good faith defense as it relates to the imposition of liquidated damages."

For their part, Claimants argue that liquidated damages under Article 10, Section 24 are mandatory but do not directly address the legal question of whether Article 10, Section 24 allows for a good faith defense to a claim for liquidated damages.  Instead, they argue, that the defense has not been proven even under Section 448.110(c)(1).

Under Article X, Section 24(c), "Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida."  Under Article X, Section 24(b), "the terms 'Employer,' 'Employee' and 'Wage' shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations."

Article X, Section 24(e) provides that, "Persons aggrieved by a violation of this amendment may bring a civil action in a court of competent jurisdiction against an Employer or person violating this amendment and, upon prevailing, shall recover the full amount of any back wages unlawfully withheld plus the same amount as liquidated damages, and shall be awarded reasonable attorney's fees and costs."

Under Article 10, Section 24(f),

> Implementing legislation is not required in order to enforce this amendment. The state legislature may by statute establish additional remedies or fines for violations of this amendment, raise the applicable Minimum Wage rate, reduce the tip credit, or extend coverage of the Minimum Wage to employers or employees not covered by this amendment.

To interpret this text, one should always look first to the meaning of the words of the Constitution.  They state unequivocally that a prevailing employee "shall" recover from the employer the "full amount of any back wages unlawfully withheld" "plus the same amount as liquidated damages."  There is no limitation on, or qualification of, the liquidated damages required to be awarded under Article 10, Section 24.

4

Nor is implementing legislation required by the specific terms of Article 10, Section 24(f). Phrased another way, if Section 448.110 had never been adopted by the Florida Legislature, an employee would still be able to bring a claim for failure to pay minimum wages and automatically receive an equal amount as liquidated damages upon prevailing.

In this case, the result would be same, however, even if I reached a different conclusion. Section 448.110(c)1 requires Respondent to prove "by a preponderance of the evidence that that the act or omission giving rise" to the minimum wage claim "was in good faith *and* "that the employer had reasonable grounds for believing that his or her act or omission was not a violation of s. 24, Art. X of the State Constitution."  Respondent has failed to carry that burden.  The evidence showed that she was aware before her father's death that the business model under which the King of Diamonds operated violated the Fair Labor Standards Act, the federal equivalent of Article 10, Section 24 and Section 448.110(c)(1), and that Respondent made no changes in the way she operated the KOD after her father's death, even though she had the sole authority to do so.  Final Hearing Transcript (March 19, 2012), p. 189-249; Exhibit 4, *Espinoza* Trial Transcript, Day 2, p. 50-52; Exhibit 14 (Deposition Testimony of Dennis Williams), p. 51.  Thus, Respondent is liable for liquidated damages.

**Issue 2**

The question presented by Issue 2 is whether Respondent can be classified as an "employer" before her father's death on December 1, 2012.  Claimants argue that she should be classified as their employer back to 2011 (relating to the date from which the jury awarded damages in *Espinoza*) or back to 2010 since the limitations period under Florida law allows for recovery back to 2010.

They make two arguments.  First, offensive collateral estoppel should apply based on the jury verdict in *Espinoza*.  Second, Respondent was the President, Secretary, and Treasurer of Fly Low, Inc., according to the Fly Low annual reports filed with the Florida Secretary of State in 2010, 2011, and 2012.

In my Order on Claimants' motion for summary disposition, I did not apply offensive collateral estoppel before December 1, 2012, when Respondent's father passed away, because the jury verdict in *Espinoza* did not present the question of how far back Respondent was an "employer."  The Special Interrogatories appear as Exhibit 3 in the Final Hearing.  The first question asked was whether Respondent and Fly Low were an employer.  The jury answered, "Yes" as to both.  The second question asked was whether plaintiffs were employees of Respondent and Fly Low. The jury again answered, "Yes."  The third question asked if Respondent and Fly Low knew or showed reckless disregard for whether the FLSA prohibited their conduct.  Again, the jury answered, "Yes."  The fourth question asked if Respondent and Fly Low failed to pay the minimum wage to the plaintiffs, and again the answer was, "Yes."  There were no time components to any of these questions or answers.

When it came to the amount of the award, the question asked the jury to state the amount, "if any, to award to each Plaintiff as minimum wage damages from April 8, 2011 until July 15, 2014." The jury then listed the amounts due each of the plaintiffs in *Espinoza.*

I could not tell from the jury verdict how the amounts awarded the plaintiffs in *Espinoza* were calculated or whether they embraced a period prior to the death of Respondent's father. The question used the phrase "if any" to describe the amount within a time window that began before December 1, 2012, when Respondent's father died. But I cannot tell from the jury verdict form whether the amounts awarded were limited to the period after December 1, 2012 or included any part of the period before December 1, 2012.

I also read the transcript of Ms. Galardi's testimony during the trial, which is part of Exhibit 4 of the Hearing Exhibits. The only evidence I could identify to relate Respondent to the status of "employer" before her father's death is the same evidence relied on by Claimants here: the annual reports filed with the State of Florida Secretary of State that listed Ms. Galardi as the president, secretary, and treasurer of Fly Low. She told the jury she did not know she was listed as an officer. Did they fail to believe her? I really could not tell from the jury verdict. Since offensive collateral estoppel has a fairness component to it, as I discussed in my Order on the cross-motions for summary disposition, I wanted to hear Respondent's testimony myself before deciding.

I have now heard Respondent's testimony. Based on that testimony, I have decided that it would not be fair to apply the doctrine of offensive collateral estoppel to the period prior to December 1, 2012 and that the evidence otherwise is not sufficient to label her an "employer" prior to that date.

As she had testified in the *Espinoza* trial, Respondent testified in the Final Hearing that she was not aware she had been listed on these Annual Reports. Final Hearing Transcript, p. 187-188. While she acknowledged that as president, secretary, and treasurer of Fly Low she "probably" had the authority and ability to sign checks, *id*., at 234, that testimony was not tied to a date before December 1, 2012, and, in any event, there is no evidence that she signed any checks. And while her father would have fallen into the category of "employer" before his death on December 1, 2012, there is insufficient evidence in this record of Respondent's involvement in the KOD to conclude that she was in a position to change the business model, despite her being listed as president, secretary, and treasurer in the Annual Report. As best I can determine from the evidence, her father was in charge until he died. Exhibit 14 (Deposition Testimony of Dennis Williams), p. 51.

Hence, Claimants' are entitled to a recovery beginning on December 1, 2012.

**Issues No. 3 and 4**

Claimants testified that they were required to pay house fees to KOD before every shift, and 10% of nightly earnings to KOD. They were also required to "tip out" the Disc Jockey (DJ),

house mom, and security.  On average, they each paid $150 per shift in house fees and about $100.00 in tip-outs to the house mom, DJ, and security per shift.

Claimant Griffin testified that the approximate amount of house fees and tip outs (or what she called "kickbacks") that she paid were as follows:

<div align="center">

2012:  $55,000
2013:  $60,000
2014:  $32,500

</div>

Claimant Holmes testified that the approximate amount of house fees and tip outs or "kickbacks" that she paid were the same:

<div align="center">

2012:  $55,000
2013:  $60,000
2014:  $32,500

</div>

Neither Claimant broke down the 2012 figure by month.  Based on the testimony I heard, I will pro-rate 2012.  One-twelfth of $55,000 is $4,583.  Hence, the total amount being claimed by each respondent for "house fees and tip outs" is $4,583 plus $60,000 plus $32,500, or $97,083.

Respondent presented no evidence to refute these amounts. Therefore, I credit this testimony insofar as the amounts are concerned.  The question is whether Florida law permits their recovery.

The full extent of Respondent's argument on the scope of recovery under Article X, Section 24 and Section 448.110 with respect to kickbacks is contained in Respondent's Post-Hearing Brief, Paragraph 20.  She writes that because Article X, Section 24 and Section 448.110 make no reference to "illegal kickbacks," Claimants "should be awarded nothing for illegal kickbacks."

With respect to tips, Respondent argued only that the amount of money earned in tips by each Claimant exceeded minimum wages owed and therefore neither Claimant should recover minimum wages. Respondent's Post-Hearing Brief, Paragraphs 22, 24. Respondent, however, presented no cases or regulations that state that tips of the kind involved here can be set off against wages.[2]

I conclude that Florida law permits recovery of these sums.  In addressing minimum wage claims, Florida courts looks to FLSA case law for guidance.  Article X, Section 24(f) ("It is

---

[2] In a footnote, Respondent argues that neither Respondent should receive the benefit of any doubts about what they earned because neither Claimant reported earnings to the Internal Revenue Service.  "Had they followed the law and declared their income, what they warned would be known."  Respondent's Post-Hearing Brief, p. 11, n. 1. Had Respondent followed the law, however, by withholding taxes, taking out social security, and issuing Form 1099s to Claimants, all of the parties would know what the earnings were.  Respondent testified she did not do so. Exhibit 4, Espinoza Trial Transcript, Day 1, p. 58-59.  Therefore, I reject Respondent's footnote suggestion.

intended that case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations.")

I will address the tip set-off argument first. Under 29 C.F.R. § 531.55, "service charges", but not "tips," may be used to satisfy an employer's wage payment obligations under the FLSA. However, for a fee to be a "service charge," it "must be (1) recorded in a company's gross receipts, and (2) distributed by the company to the employee." 29 C.F.R. § 531.55. The evidence showed that Respondent did not keep records of "service charges" or "tips"; hence they cannot be used as a set off. Cf. *Dean v. 1715 Northside Drive, Inc*., 224 F. Supp. 3d 1302, (N.D. Ga. 2016):

> Here, the club did not keep track of amounts paid to the plaintiff for glass-room dances, table dances, stage dances, and floor dances. The plaintiff and other dancers were compensated in cash for these efforts, and the club did not record these earnings in its gross receipts. *Thus, monies collected for these dances were "tips" and cannot be applied to satisfy the defendants' FLSA obligations.*

*Id*. at 1324-25. (Emphasis added.)

As for "kickbacks," under 29 CFR § 531.35, wages must be paid "free and clear":

> "[W]ages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash.

In addition, courts in FLSA cases have required defendants to return tip out fees to entertainers like Claimants. Thus, in *Reich v. Priba Corp*., 890 F. Supp. 586 (N.D. Tex. 1995), the district court ordered the operator of a Cabaret Royale to reimburse entertainers for tip-out fees they were required to pay.

> To fully compensate the entertainers in the amounts required by the FLSA, Cabaret Royale must pay them the full minimum wage for all time worked during the limitations period. In addition, the club must return all tip out fees collected from the entertainers.

*Id*. at 595. In *Reich v. Circle C Invs*., 998 F.2d 324 (5th Cir. 1993), the Secretary of Labor was successful in obtaining a remand where the district court's calculation of back wages failed, among other things, to take into account the tip-outs paid by dancers and waitresses.

In his cross-appeal, the Secretary contends that the district court's calculation of back wages is incorrect because it fails to take into account (1) the "tip-outs" paid by the dancers and waitresses (2) expenditures for costumes and uniforms worn by the dancers, disc jockeys, and waitresses; and (3) fines imposed on employees.

The district court failed to address in its order the Secretary's request for reimbursement of these costs and fines, despite the fact that the Secretary raised this issue during pretrial proceedings, during trial, and in post-trial documents. These costs and fines were specifically included in the compliance officer's back-wage calculation, which the Secretary presented during trial and in his proposed findings of fact and conclusions of law. We remand to the district court for specific findings of fact and conclusions of law on whether reimbursement for these costs and fines should be included in the calculation for back wages and, if so, the proper amount to be included.

The court in *Dean* also required the club to reimburse a fee charged to a dancer amounting to one-tenth of her credit-card tips to the club for services rendered in the VIP rooms.  The club claimed this was a "merchant service fee." The club did not pay a cash wage.  It did not make a disclosure required under 29 U.S.C. § 203(m) to claim a tip credit.  As the *Dean* court noted in citing *Reich*, *supra*, 890 F. Supp. at 596 (which cited 29 C.F.R. § 531.3(d)(2), 531.32(c)), the FLSA does not allow an employer to transfer to its employees the responsibility for the expenses of carrying on an enterprise." Thus, the court held, "the club must return all withheld merchant service fees to the plaintiff." 224 F. Supp. 3d at 1327.

Hence, I award each Claimant the amount of $97,083, which was unlawfully charged to them by Respondent in operating the KOD.

**Minimum Wages**

Claimants Griffin and Holmes each claim the following minimum wages.

2012:  $16,567.00
2013:  $16,826.00
2014:  $ 9,278.00

They do not break down the 2012 figure of $16,567.00 by month.  I will pro-rate this figure by one-twelfth, which equals $1,381.  Hence, the total amount of wages being claimed by each Claimant is:  $1,381.00 plus $16,826.00 plus $9,278.00, or a total of $27,485.00.

9

Having hearing the direct and cross examination of both witnesses and heard the testimony of Respondent, who was unable to refute these amounts, I accept the testimony of Claimants and award them each minimum wages of $27,485.00.

Because of my conclusions with respect to liquidated damages above, I also award them liquidated damages in the amount of $27,485.00.

**Arbitration Costs**

Rule 39(d) of the AAA's Employment Arbitration Rules provides in pertinent part that the arbitrator may "grant any relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law." It also provides that the arbitrator "shall, in the award assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party." Rule 43 relates to the administrative fee charged by the Association. Rule 44 relates to the arbitrator's compensation. Rule 45 relates to the expenses of the arbitrator as well as the costs relating to proof and witnesses produced at the direction of the arbitrator. It also provides that unless otherwise agreed by the parties or as provided under applicable law, "the expenses of witnesses for either side shall be borne by the party producing such witnesses."

According to the Claimants' submission, Claimants each paid a filing fee of $300.00 to AAA. Respondent paid a filing fee of $1,900 per claimant and a $750 case management fee. Based on the AAA fee schedule, these costs shall be borne as incurred. In other words, they are not being reallocated.

Claimants seek $347.29 in ground transportation, $768.66 in hotel charges, and $106.79 for a flight for "client." The parties' arbitration agreement does not provide for payment of these expenses, and, applicable law does not provide for reimbursement of these expenses otherwise. They must be borne by Claimants.

Claimants seek reimbursement of $250.00 as the "pro hac vice" fee for the appearance of Claimants' counsel in the Southern District of Florida with respect to a motion to compel arbitration. I do not see where I have the authority to award this amount under Rule 39(d). Claimants must bear this cost. See also *Lane v. Accredited Collection Agency, Inc.,* 2014 WL 1685677, at *10 (M.D. Fla. 2014) ("As other courts have recognized, the *pro hac vice* fee is an expense of counsel, not the client, and is thus not properly recoverable.") quoting *Hernandez v. Motorola Mobility, Inc.,* 2013 WL 4773263, at *5 (S.D. Fla. 2013).

Claimants incurred $450.00 to copy exhibits, and paid court reporter fees in the amounts of $300.00, $1,423.50, and $244.65. I will tax these costs to Respondent under Rule 39(d). See 28 U. S. C §1920(3) and (4) (allowing as taxable costs fees for printing or electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing, and the costs of making copies of materials necessarily obtained for use in the case).

Claimant's counsel also incurred a fee of $130.80 to change a flight because of a change in the hearing date made at the request of Respondent. I changed the hearing date with the understanding that I would award Claimant this cost differential.

Finally, I am assessing the entirely of the Arbitrator's compensation to the Respondent. That amount is $38,940.00 plus $28.80 in costs, for a total of $38,968.80, which includes arbitrator compensation through the completion of this Final Award. Under the Employment Arbitration Rules, Respondent bears this cost. It will not be reallocated.

## Attorneys' Fees

There is no dispute that Claimants are entitled to an award of attorneys' fees. Claimants' counsel has sought fees at an hourly rate of $300.00 per hour. Respondent agrees that this is a reasonable hourly rate.

Claimant submitted a time sheet showing 193 hours of time to arbitrate this matter. Respondent submitted the Declaration of Dean R. Fuchs in response to the amount of attorneys' fees claimed. Mr. Fuchs is not a neutral declarant. He was counsel for Respondent in the *Espinoza* trial. Nonetheless, I have considered his Declaration.

According to Claimant's counsel's submission, 18.1 hours of time were incurred in the district court in connection with the motion to compel arbitration. The parties' arbitration agreement provides that each party will bear their own attorneys' fees "except as may be ordered by the arbitrator pursuant to arbitration rules." The AAA's Employment Rules do not expressly provide for recovery of fees incurred to compel arbitration. And Claimants have not cited applicable law that would support the argument that this relief that would have been available to the parties had the matter been heard in court. The fees associated with these time entries must be borne by Claimants.

With respect to the prosecution of the arbitration, Mr. Fuchs complains about the time spent by Claimants' counsel to review the transcript of the *Espinoza* trial. Claimants' counsel recorded 31 hours to review seven days' of transcripts—or about four eight-hour days. Claimants' counsel also had time entries of 1.2 hours to review "A. Adams Depo.," 1.1 hours to review "T. Galardi Trial Transcript," and 3.7 hours to review "Depo transcripts and trial transcripts, Gaeter, Espinoza." The total amount of time for these entries comes to 37 hours. Mr. Fuchs declared under oath that Claimant's counsel sought 31 hours in time for reviewing the Espinoza transcript in a separate arbitration against Respondent brought by a similarly situated claimant, Lygia Simmons.[3] I am not necessarily troubled by the time spent dissecting a transcript for use in related adjudicatory proceedings, particularly in order to make a claim of offensive collateral estoppel. But I am troubled by seeking fees for the same amount of time in

---

[3] Claimants' counsel did not ask for an opportunity to respond to Mr. Fuchs' Declaration. Therefore, I take Mr. Fuchs' statement to be true in this regard.

two separate arbitrations addressing the same issues.  I will allow one-half of this amount of time, or 18.5 hours for this work.

I am also subtracting 0.5 hours for entries relating to a bounced check and "consolidation."

Mr. Fuchs also believes that Claimants' counsel spent an inordinate amount of time on the motions for summary disposition and quibbles about other minor time entries.  I am not going to put Claimants' counsel under a microscope.  Some lawyers might be faster than other lawyers.  Taking into account the rate, I find that the dollars sought for the pre-hearing work are reasonable.  I also find that the dollars sought for time spent on preparing for the hearing, conducting the hearing, and post-hearing briefing are reasonable.

Hence, based on my analysis of the time entries, Claimants' counsel incurred $46,770.00 (155.9 hours times $300 per hour).

In his Declaration, Mr. Fuchs cited *Gordis v. Ocean Drive Limousines, Inc.*, Case No. 12-24358-CV- Case No. 12-24358, 2017 U. S. Dist. LEXIS 53045 (S.D. Fla. Apr. 4, 2017), in which the Magistrate Judge addressed the standards for awarding attorneys' fees under the FLSA.

> The Supreme Court has explained that the starting point for determining what constitutes a "reasonable fee" is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." [*Hensley v. Eckerhart*, 461 U.S. 424 (1983)]. These numbers are then multiplied together, with the resulting monetary figure representing what is known as the "lodestar." *Pennsylvania v. Delaware Valley Citizens' Council II*, 483 U.S. 711, 745, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987). The lodestar can be enhanced or reduced depending on the circumstances presented by each case. *Id.* The overall result obtained by the prevailing party is one consideration that may lead the district court to adjust the fee upward or downward, and a court may "simply reduce the award to account for the limited success" of a party. *Hensley*, 461 U.S. at 434. However, "[t]here is no precise rule or formula for making [such] determinations." *Id.* at 436-37.

*Id.* at *8-9.  In that case, the Magistrate judge found that $350/hour was a reasonable rate for the lead attorney.  The plaintiffs employed four other lawyers.  In total, they spent 886.25 hours on the matter.  The Magistrate Judge determined that this amount of time was reasonable.  When he multiplied the hourly rate times the hours of each lawyer, the total came to $277,905.00.  However, because the plaintiffs sought over $150,000 in unpaid overtime damages, and recovered only $20,000, the Magistrate adjusted the lodestar amount downward by 75% and awarded plaintiffs $69,476.25.

Here, Claimants have been awarded a total of just over $284,000.  Claimants' counsel handled the matter by himself.  His hourly rate is lower ($300) than the rate the Magistrate found

12

reasonable for the lead attorney in *Gordis* ($350).  And while Claimants sought more than what I have awarded, the recoverability of house fees and tip outs and wages before December 1, 2012, was a fairly contested issue, and Claimants still recovered a sizable sum.  Taking into account all of the circumstances of this case, I am enhancing the lodestar amount by 25%.  Thus Claimants are also entitled to an attorney's fee award of $58,462.50 ($46,770.00 plus $11,692.50 representing 20% of $46,770.00).

**Summary**

The total award of damages to Claimants is as follows.

| Description | Elliandria Griffin | Marquesha Holmes |
|---|---|---|
| Reimbursement of House Fees and Tip-outs | $97,083.00 | $97,083.00 |
| Minimum Wages 2012-2014 | $27,485.00 | $27,485.00 |
| Liquidated Damages | $27,485.00 | $27,485.00 |
| **Total** | **$152,053.00** | **$152,053.00** |

The total award of costs to Claimants is as follows.

| Description | Amount |
|---|---|
| Printing costs | $450.00 |
| Court Reporter Fees | $1,968.15 |
| Flight change fee | $130.80 |
| **Total** | **$2,548.95** |

The Arbitrator's compensation of $38,968.80 shall be borne as incurred by Respondent.

Finally, Claimants are awarded $58,462.50 in attorneys' fees.

DONE AND ORDERED this 21st day of July 2021.

*/s/ John M. Barkett*
John M. Barkett
Arbitrator

13

## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| **TERI G. GALARDI,** | CASE NO.  22-50035-JPS |
| **Reorganized Debtor.** | |
| **THOMAS T. MCCLENDON, AS LIQUIDATING TRUSTEE OF THE GALARDI CREDITORS TRUST,** | |
| **Movant,** | |
| **v.** | CONTESTED MATTER |
| **ELLIANDRIA GRIFFIN,** | |
| **Respondent.** | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this day electronically filed the foregoing *Debtor's Objection to Claim of Elliandria Griffin* (the "Objection") using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of and an accompanying link to the Objection to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing Program:

- **Michael Akemon**   mutepe.akemon@richardslegal.com
- **Ainsworth G Dudley**   adudleylaw@gmail.com
- **Evan Owens Durkovic**   ecfgamb@aldridgepite.com, edurkovic@ecf.courtdrive.com
- **Robert G. Fenimore**   robert.g.fenimore@usdoj.gov, Ustp.region21.mc.ecf@usdoj.gov
- **Will Bussell Geer**   wgeer@rlkglaw.com, notices@nextchapterbk.com; willgeer@ecf.courtdrive.com;2836@notices.nextchapterbk.com;6717577420@filings.docketbird.com;geer.willb117921@notify.bestcase.com;emiller@rlkglaw.com
- **Whitney Warnke Groff**   wgroff@law.ga.gov
- **Elizabeth A. Hardy**   elizabeth.a.hardy@usdoj.gov, Ustp.region21.mc.ecf@usdoj.gov;elizabeth.hardy.collins@usdoj.gov
- **Brian K. Jordan**   ecfgamb@aldridgepite.com, bjordan@ecf.courtdrive.com
- **Christina T. Lanier**   christina.t.lanier@usdoj.gov, southern.taxcivil@usdoj.gov
- **Jonathan Loegel**   jonathan@loegel.com
- **Roy E. Manoll**   kdd@fbglaw.com
- **Louis G. McBryan**   lmcbryan@mcbryanlaw.com, alepage@mcbryanlaw.com
- **Garrett A. Nail**   gnail@pgnlaw.com

- **James D. Silver**   jsilver@kklaw.com, raldama@kklaw.com
- **Ward Stone**   wstone@stoneandbaxter.com, lford@stoneandbaxter.com;
  mcathey@stoneandbaxter.com;dbury@stoneandbaxter.com;lchapman@stoneandbaxter.com;amoses@stoneandbaxter.com
- **Christopher W. Terry**   chris@boyerterry.com, terrycr40028@notify.bestcase.com
- **U.S. Trustee - MAC**   Ustp.region21.mc.ecf@usdoj.gov

I further certify that I served a true and correct copy of the foregoing Objection on all parties referenced below via United States First Class Mail, postage prepaid:

Elliandria Griffin
c/o Astrid Evelyn Gabbe, Esq.
P.O. Box 4216
Hollywood, FL 33083

Elliandria Griffin
6968 Clark Ridge Drive
Apt. 3207
Dallas, TX 75236

This 3rd day of May, 2023.

*/s/ Thomas T. McClendon*
Thomas T. McClendon
Georgia Bar. No. 431452
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300
tmcclendon@joneswalden.com
Liquidating Trustee