**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **TERI G. GALARDI,** | **CASE NO.  22-50035-JPS** |
| **Reorganized Debtor.** | |
| **THOMAS T. MCCLENDON, AS LIQUIDATING TRUSTEE OF THE GALARDI CREDITORS TRUST,** | |
| **Movant,** | **CONTESTED MATTER** |
| **v.** | |
| **RASHEEDAH MAYS,** | |
| **Respondent.** | |

**NOTICE OF OBJECTION TO CLAIM**

THOMAS T. MCCLENDON, AS LIQUIDATING TRUSTEE OF THE GALARDI CREDITORS TRUST ("LIQUIDATING TRUSTEE") HAS FILED AN OBJECTION TO YOUR CLAIM IN THIS BANKRUPTCY CASE.

<u>**Your claim may be reduced, modified, or eliminated.**</u> **You should read these documents carefully and discuss them with your attorney, if you have one in this bankruptcy case.** <u>**If you do not have an attorney, you may wish to consult one.**</u>

If you do not want the court to eliminate or change your claim, then you or your attorney shall file with the court a written response to the objection on or before **June 2, 2023.** If you are receiving this notice by mail, you may add 3 days to the response date, in accordance with FRBP 9006(f). The objection or response should be sent to:

> Clerk, U.S. Bankruptcy Court
> Middle District of Georgia
> P.O. Box 1957
> Macon, Georgia 31202
> 478-752-3506

**If a response if filed, a hearing on the objection to your claim shall be held on: June 21, 2023, at 11:00 a.m., in Courtroom A at the U.S. Courthouse, 433 Cherry Street, Macon, Georgia 31201.** *Parties should consult the Court's website (*[www.gamb.uscourts.gov](www.gamb.uscourts.gov)*)*

*concerning whether the hearing will be in-person, telephonic, or virtual. Please refer to Administrative Order #145 for more guidance.*

If you mail your response to the Court for filing, you shall send it early enough so that the court will **receive** the response on or before the response date stated above.

Any response shall also be served on the Liquidating Trustee.

**If you or your attorneys do not take these steps, the court may decide you do not oppose the objection to your claim.**

This notice is sent by the undersigned pursuant to LBR 9004-1.

This 3rd day of May, 2023.

<div style="margin-left: 40%;">

*/s/ Thomas T. McClendon*
Thomas T. McClendon
Georgia Bar. No. 431452
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300
tmcclendon@joneswalden.com
Liquidating Trustee

</div>

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **TERI G. GALARDI,** | **CASE NO.  22-50035-JPS** |
| **Reorganized Debtor.** | |
| **THOMAS T. MCCLENDON, AS LIQUIDATING TRUSTEE OF THE GALARDI CREDITORS TRUST,** | |
| **Movant,** | |
| **v.** | **CONTESTED MATTER** |
| **RASHEEDAH MAYS,** | |
| **Respondent.** | |

**LIQUIDATING TRUSTEE'S OBJECTION TO**
**CLAIM NO. 41 OF RASHEEDAH MAYS**

Thomas T. McClendon, as liquidating trustee of the Galardi Creditors Trust ("Liquidating Trustee"), Liquidating Trustee in the above-captioned case, files this objection ("Objection") to the claim asserted by Rasheedah Mays ("Respondent") and respectfully shows this Court as follows:

**BACKGROUND**

1.      On January 12, 2022 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101 et seq. ("Bankruptcy Code"), in the United States Bankruptcy Court for the Middle District of Georgia, Macon Division ("Court").

2.      On April 14, 2023, the Court entered an Order Confirming the Joint Plan of Reorganization (Doc. No. 410) (the "Confirmation Order").

3.      The Effective Date of the Plan under the Confirmation Order is April 28, 2023.

4.      Pursuant to the Confirmation Order, any objection to a proof of claim classified in Class 8 shall be filed by the Liquidating Trustee on or before the 120th day after the Effective Date.

5.      On March 10, 2022, Ainsworth Dudley on behalf of Rasheedah Mays filed proof of claim number 41, asserting a claim for $686,578.00 as an unsecured claim ("Claim No. 41"). Attached as exhibits to Claim No. 41 were a complaint in *Milner v. Teri Galardi*, 20-cv-23230 (S.D. Fla. 2020), in which Ms. Mays was a named plaintiff, and a Pre-Suit Notification Letter from Astrid Gabbe to Dean Fuchs, as counsel for Fly Low, Inc. and Teri Galardi. Proof of Claim No. 41 is attached as "Exhibit A."

6.      On March 22, 2022, Rasheedah Mays filed proof of claim number 106, asserting the claim for $686,578.00 as an unsecured claim ("Claim No. 106"). Attached as exhibits to Claim No. 106 are a State Bar of Georgia complaint against Mr. Dudley for filing Proof of Claim No. 41 and the same Pre-Suit Notification Letter from Astrid Gabbe to Dean Fuchs, as counsel for Fly Low, Inc. and Teri Galardi. Proof of Claim No. 106 is attached as "Exhibit B."

7.      Both Claim No. 41 and Claim No. 106 were classified in Class 8 of the Plan.

## DISCUSSION

8.       Claim No. 41 is duplicative of Claim No. 106 as in the exact same amount and based on the same pre-suit notification letter.

**WHEREFORE,** the Liquidating Trustee requests the following relief:

(a)  That this Objection be sustained;

(b)  That Claim No. 41 be disallowed; and

(c) That the Court awards the Liquidating Trustee such other and further relief as is just and proper.

Respectfully submitted this 3rd day of May, 2023.

*/s/ Thomas T. McClendon*
Thomas T. McClendon
Georgia Bar. No. 431452
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300
tmcclendon@joneswalden.com
Liquidating Trustee

# Exhibit "A"

**Fill in this information to identify the case:**

Debtor 1    Teri Galardi

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    **Middle District of Georgia**

Case number:  **22–50035**

FILED

**U.S. Bankruptcy Court**
**Middle District of Georgia**

3/10/2022

**Kyle George, Clerk**

Official Form 410
# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

## Part 1:    Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | Rasheedah Mays |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor    Artex |
| **2. Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Rasheedah Mays<br>Name<br><br>4200 Northside Parkway<br>1–200<br>30327<br>Atlanta, GA 30327<br><br>Contact phone ____4046808961____<br>Contact email ____adudleylaw@gmail.com____<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____ | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br><br>Contact phone _____<br>Contact email _____ |
| **4. Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) ____    Filed on ____<br>MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

Official Form 410                          Proof of Claim                          page 1

**Part 2:** Give Information About the Claim as of the Date the Case was Filed

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. **How much is the claim?** | $    686578.00     **Does this amount include interest or other charges?**<br>     ☐ No<br>     ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Violation of Florida Minimum Wage Act and Article X of the Florida Constitution |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>    **Nature of property:**<br>    ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.<br>    ☐ Motor vehicle<br>    ☐ Other. Describe: _____<br><br>    **Basis for perfection:** _____<br><br>    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>    **Value of property:**   $ _____<br>    **Amount of the claim that is secured:**   $ _____<br>    **Amount of the claim that is unsecured:**   $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>    **Amount necessary to cure any default as of the date of the petition:**   $ _____<br><br>    **Annual Interest Rate** (when case was filed) _____ %<br>    ☐ Fixed<br>    ☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410              Proof of Claim              page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | |
| | | ☐ Yes. *Check all that apply:* | Amount entitled to priority |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies    $ _____

\* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐  I am the creditor.

☒  I am the creditor's attorney or authorized agent.

☐  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    3/10/2022

MM / DD / YYYY

/s/  Ainsworth Dudley

Signature

Print the name of the person who is completing and signing this claim:

Name    Ainsworth Dudley

First name    Middle name    Last name

Title    Attorney for Creditor

Company    Dudley Law LLC

Identify the corporate servicer as the company if the authorized agent is a servicer

Address    4200 Northside Parkway, 1–200

Number    Street

Atlanta, GA 30327

City    State    ZIP Code

Contact phone    4046808961    Email    adudleylaw@gmail.com

## **PROOF OF CLAIM**
### ATTACHMENT 1
#### Part 2, Item 7: Claim amount

Creditor worked for Debtor as an entertainer. Debtor (i) misclassified her as an "independent contractor"; (ii) failed to pay her the minimum wage required by the Florida Minimum Wage Act, Florida Code Ann. §448.110 ("FMWA") and Article X Florida Constitution ("Article X"); (iii) made her work for tips paid by Debtor's customers; and (iv) required that she pay various fees and expenses to work each shift in violation of Article X and the FMWA.[1]

Creditor filed a Complaint in the U.S. District Court for the Southern District of Florida, *Angela Milner et al. v. Teri Galardi*, Civil Action No. 20-23230-CIV-CANNON/Otazo-Reye which is pending but has been stayed by the filing of this Bankruptcy petition. A copy of the operative complaint is attached to this Proof of Claim.

The Court, jury and/or Arbitrators have previously determined that Debtor violated the minimum wage provisions of the FLSA, FMWA and/or Article X with respect to her entertainers in the following similar cases and arbitration proceedings: (i) *Espinoza et al v. Fly Low, Inc., and Teri Galardi,* Civil Action File No. 1:14-CV-21244-Goodman (Southern District of Florida, Miami Division); *Bain v. Galardi*, Circuit Court of the Eleventh Judicial District and for Miami-Dade, Florida Case No. 18-29725-CA-01; *Breonna Beck v. Teri Galardi* AAA Case No. 01-17-0006-6372 (2019); *Kenyotta Clay v. Teri Galardi* AAA Case No. 01-17-0006-6369 (2019); *Ashley Delgado v. Teri Galardi* AAA Case No. 01-16-0000-3955 (2019); *Whitney Hairston v. Teri Galardi* AAA Case No. 01-17-0006-6360 (2019); *Jordan Hargraves v. Teri Galardi* AAA Case No. 01-16-0000-3958 (2019); *Krystal Wright v. Teri Galardi* AAA Case No. 01-16-0000-6560 (2019); *Apetsiwa Taylor v. Teri Galardi* AAA Case No.: 01-17-0006-6359 (2019); *Shavonne Moore v. Teri Galardi* AAA Case No. 01-16-0000-6518 (2019); *Espinoza et al. v. Teri Galardi*, No. 18-14371 (11th Cir. 2019)(unpublished); and *Alexis King v. Teri Galardi AAA Case No.:* 01-20-0005-4236 (2021).

Based on the foregoing decisions, the Debtor is collaterally estopped from relitigating her liability

---

[1] Article X and the FMWA explicitly adopt and incorporate the pertinent portions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. See, *In Re Advisory Opinion To The Attorney General Re: Florida Minimum Wage Amendment*, 880 So.2d 636, 641-42 (Fla. 2004) (the proposed amendment... incorporates a reference to the entire body of law under the FLSA...the amendment includes both the definition of employee, found in section 203 of the FLSA, the exemptions found in section 213 of the FLSA, and any other relevant provision within the FLSA or its implementing regulations."); *Martinez v. Ford Midway*, 59 So.3d 168 (District Court of Appeal, 3rd District, 2011)("...the Florida Statutes expressly adopt the FLSA, as interpreted and implemented by federal law...")(applying FLSA case law as determinative of FMWA requirements); *Anagnos v. Nelson Residence*, 721 Fed. Appx. 901, 903-04 (11th Cir. 2018) ("The Wage Amendment makes plain that employees receive the same protection under state law that they enjoy under the Fair Labor Standards Act. Its subsection (b) gives its "terms 'Employer,' 'Employee' and 'Wage' ... the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations."); *Axel v. Fields Motorcars*, 711 Fed. Appx. 942, 944, n.2 (11th Cir. 2017))(noting that the legal standards applicable as to FLSA minimum wage claims and minimum wage claims brought under Florida law are the precisely the same); *Pollock v. Move4all, Inc.*, 2019 WL 6134566 (M.D. Fla, 2019)("Plaintiff established the necessary elements to prevail on a claim for unpaid minimum wages under the FLSA, and, thus, also under the FMWA."); *Groeschel v. Casey Key Fish House*, 2018 WL 7264407 (M.D. Fla. 2018)(same)..

under the FLSA, FMWA and Article X. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979); *Berry v. Great American Dream*, 2014 WL 5822691 (N.D. Ga. 2014)(applying offensive non-mutual collateral  estoppel against employer of exotic dancers who previously  litigated and lost the  "employment"  issue.); *Jones v. Shac, LLC*, 2019 WL 4246681 (D. Nv. 2019); The arbitration awards are entitled to the same preclusive effect as the judicial proceedings. *Greenblatt v. Drexel* Burnham, 763 F.2d 1352, 1360 (11th Cir. 1985). ("When an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just as determination of a court would be treated."); *Freecham Ltd. v. Atlas Wealth Holdings*, 499 Fed. Appx. 941 (11th Cir. 2011) (arbitral award entitled to preclusive effect).

Creditor is entitled to three types of damages under the FMWA and Article X: (i) unpaid wages; (ii) liquidated damages; and (iii) attorneys' fees and costs. Florida Code Ann. §448.110 ("FMWA") and Article X Florida Constitution ("Article X").

**UNPAID MINIMUM WAGES/UNLAWFUL KICK-BACKS:**

Creditor is owed the following minimum wage per hour annually under Article X and the FMWA:

2009:  $7.25
2010:  $7.25
2011:  $7.31
2012:  $7.67
2013:  $7.79
2014:  $7.93

As part of her wage loss, Creditor also is entitled to reimbursement of the fees and expenses she paid each shift as unlawful "Kick-Backs" to the employer under 29 C.F.R. 531.35, which reads:

> The wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the 'kick-back' is made in cash or in any way other than cash . . . . [T]here would be a violation of the [FLSA] in any work week when the cost . . . by the employee cuts into the minimum or overtime wage required to be paid . . . under the Act.

The House fees, other fees and tip-outs paid by Creditor each shift are unlawful "kick-backs" under the FMWA and Article X and recoverable as part of her wage loss. see *Reich v. Priba Corp*., 890 F.Supp. 586, 595 (N.D.Tex. 1995); *Reich v. Circle C. Investments, Inc.,* 998 F.2d 324, 330 (5th Cir. 1993); *Hart v. Rick's Cabaret International, Inc*., 60 F.Supp. 3d 447, 477 (S.D.N.Y. 2014); *Roger Wilson v. 1400 Northside Drive, Inc*., Civil Action No. 1:15-CV-4453-SCJ, * 21 (N.D.Ga. June 15, 2017); *Hurst v. WBY, Inc*., Civil Action File No. 1:15-CV-3560-MLB, ECF 167 * 14 (N.D.Ga. Dec. 26,

2019); *Smith et al. v. WBY, Inc. et al.*, Civil Action File No. 1:16-CV-4017-MLB, ECF 33 at 8 (N.D.Ga. Nov. 19, 2019).

Creditor maintained no records of the hours worked by Creditor and the amounts p[aid by Creditor as unlawful "kick-backs". Creditor calculates her unpaid wages using her own good faith reasonable estimate of the days and hours she worked, and the amounts she paid to work each shift. Creditor need not submit her own documentary proof to make a claim for her wage loss. An employee may prove her wage loss based on her recollection of time worked if an employer fails to maintain records of the time worked. See *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1047 (2016)(citing *Anderson v. Mt. Clemons Pottery*, 328 U.S. 680, 687-88 (1946). Here, Debtor failed to maintain records as required by law, and her unrefuted recollection is sufficient to establish her wage loss.

The amount of Creditor's wage loss per year is contained in **Attachment 2** and **Attachment 3** (Creditor's Pre-Suit Notice to Debtor).

**LIQUIDATED (DOUBLE) DAMAGES:**

Article X and the FMWA provide for an award of "liquidated damages" in an amount equal to her wage loss. Creditor is entitled to an award of liquidated damages unless Debtor establishes that she acted in good faith and her good faith was objectively reasonable. The issue of good faith is a matter of law to be determined by the Court.

Debtor is collaterally estopped from relitigating the issue of good faith. The U.S. District Court for the Southern District of Florida and the Circuit Court of the Eleventh Judicial Circuit for Miami-Dade already determined that Debtor did not act in good faith in identical claims asserted during the same time period and awarded liquidated damages against Galardi. See *Espinoza v. Galardi et al.*, Civil Action File No. 1:14-CV-21244-Goodman, (S,D.Fla.); *Bain v. Galardi*, Circuit Court of the Eleventh Judicial District and for Miami-Dade, Florida Case No. 18-29725-CA-01. Several AAA arbitrators rendered similar decisions. See *Breonna Beck v. Teri Galardi* AAA Case No. 01-17-0006-6372 (2019); *Kenyotta Clay v. Teri Galardi* AAA Case No. 01-17-0006-6369 (2019); *Ashley Delgado v. Teri Galardi* AAA Case No. 01-16-0000-3955 (2019); *Whitney Hairston v. Teri Galardi* AAA Case No. 01-17-0006-6360 (2019); *Jordan Hargraves v. Teri Galardi* AAA Case No. 01-16-0000-3958 (2019); *Krystal Wright v. Teri Galardi* AAA Case No. 01-16-0000-6560 (2019); *Apetsiwa Taylor v. Teri Galardi* AAA Case No.: 01-17-0006-6359 (2019); *Alexis King v. Teri Galardi AAA Case No.:* 01-20-0005-4236 (2021).

The amount of Creditor's liquidated damages is contained in **Attachment 2.**

**ATTORNEYS' FEES, EXPENSES AND COSTS:**

Article X and the FMWA require the prevailing party to recover a reasonable fee and costs. 29 U.S.C. § 216(b). "[F]ee awards are mandatory for prevailing plaintiffs in FLSA cases." *Picado v. Lafise Corp.*, 2014 WL 4471391 (S.D. Fla. 2014) *citing Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir.

1987)("Section 216 provides for an award of attorney's fees, as opposed to granting the court discretion in awarding such fees, to the prevailing plaintiff in FLSA cases.").

Creditor is entitled to pre-petition and post-petition attorneys' fees and costs.

**POST-JUDGMENT INTEREST:**

Creditor seeks post-judgment and pre-judgment interest to the extent permitted by Florida law.

## PROOF OF CLAIM – RASHEEDAH MAYS
### ATTACHMENT 2
### Part 2, Item 7: Claim amount
### Damage Estimates: Rasheedah Mays

| | |
|---|---|
| Approximate Employment Start Date: | January 2010 |
| Approximate Employment End Date: | July 2014 |
| Good Faith Estimate of Unpaid Wages: | $343,289 |
| Good Faith Estimate of Liquidated Damages: | $343,289 |
| Reasonable Attorneys' Fees and Costs: | |
| Good Faith Estimate of Total Claim: | $686,578 |

The method for calculating Creditor's claim is set forth on the attached Pre-Suit Notice to Debtor. Creditor reserves the right to amend her proof of claim to assert additional damages to the extent that additional facts are established in discovery and to assert additional attorneys' fees and litigation costs incurred in connection with litigation of Creditor's claim.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ANGELA MILNER,                    *
SHAKIR WILLIAMS,                  *
RASHEEDAH MAYS,                   *
AMEERA BREWER,                    *
EBONY MAYFIELD,                   *
JOCELYN JOHNSON,                  *          CIVIL ACTION FILE
JAMMIE PARKER,                    *          NO. 1:20-cv-23230-CMA
MARLEKA WILLIAMS,                 *
TIFFANY THOMPSON,                 *
                                  *
            PLAINTIFFS,           *
                                  *
vs.                               *
                                  *
TERI GALARDI, an individual,      *
                                  *
            DEFENDANT.            *

## PLAINTIFFS' FIRST AMENDED COMPLAINT
## FOR VIOLATING ARTICLE X, SECTION 24 OF THE
## FLORIDA CONSTITUTION AND THE FLORIDA MINIMUM WAGE ACT

NOW COME the above named Plaintiffs, and file this amended complaint against the above named Defendant, respectfully showing the Court the following:

## INTRODUCTION

Defendant Teri Galardi has amassed a financial fortune in the strip club business, by in large part, deception and trickery. Thousands of employees (exotic dancers) across the country have been paying her to work, on average $100-$400 a day. But the scheme does not stop there. Defendant Galardi also steals up to 10% of her employee's earning each day. The 10% illegal tax on earnings must be paid in cash before they leave the

club or else face extremely dire repercussions from her enforcers at the clubs. These illegal club policies, otherwise known as wage theft, is in fact a crime in Miami-Dade County, Florida. Plaintiffs all worked at the King of Diamonds located in Miami, Florida, and each were victims of the crime of wage theft as alleged herein, perpetrated by the Defendant, Mrs. Teri Galardi.

## SUBJECT MATTER JURISDICTION

### 1.

Pursuant to 28 U.S. Code § 1332 the Court has subject matter jurisdiction to adjudicate the Plaintiffs' claims based on complete diversity of the parties and being that the amount in controversy is over seventy five thousand dollars ($75,000). The combined total amount of unliquidated damages are in excess of five hundred thousand dollars ($500,000).

## VENUE

### 2.

Venue is proper in the Southern District of Florida, under 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.

## PARTIES TO THE COMPLAINT

### 3.

Plaintiff ANGELA MILNER (hereinafter collectively referred to as "Plaintiffs") is a resident of the State of Florida and was previously employed by Defendant Galardi

during the applicable limitations period (2009 to 2014) as a dancer-entertainer at the Gentleman's Club known as "King of Diamonds" located at 17800 NE Fifth Avenue, Miami, FL., 33160, by Defendant Galardi.

**4.**

Plaintiff SHAKIR WILLIAMS (hereinafter collectively referred to as "Plaintiffs") is a resident of the State of Florida and was previously employed by Defendant Galardi during the applicable limitations period (2011 to 2014) as dancer-entertainer at the Gentleman's Club known as "King of Diamonds" located at 17800 NE Fifth Avenue, Miami, FL., 33160.

**5.**

Plaintiff RASHEED MAYS (hereinafter collectively referred to as "Plaintiffs") is a resident of the State of Florida and was previously employed by Defendant Galardi during the applicable limitations period  (2010 to 2014) as dancer-entertainer at the Gentleman's Club known as "King of Diamonds" located at 17800 NE Fifth Avenue, Miami, FL., 33160.

**6.**

Plaintiff AMEERA BREWER (hereinafter collectively referred to as "Plaintiffs") is a resident of the State of Florida and was previously employed by Defendant Galardi during the applicable limitations period  (2011 to 2014) as dancer-entertainer at the Gentleman's Club known as "King of Diamonds" located at 17800 NE Fifth Avenue, Miami, FL., 33160.

**7.**

Plaintiff EBONY MAYFIELF (hereinafter collectively referred to as "Plaintiffs")
is a resident of the State of Florida and was previously employed by Defendant Galardi
during the applicable limitations period (2011 to 2014) as dancer-entertainer at the
Gentleman's Club known as "King of Diamonds" located at 17800 NE Fifth Avenue,
Miami, FL., 33160.

**8.**

Plaintiff JOCELYN JOHNSON (hereinafter collectively referred to as "Plaintiffs")
is a resident of the State of Florida and was previously employed by Defendant Galardi
during the applicable limitations period (2011 to 2014) as dancer-entertainer at the
Gentleman's Club known as "King of Diamonds" located at 17800 NE Fifth Avenue,
Miami, FL., 33160.

**9.**

Plaintiff JAMMIE PARKER (hereinafter collectively referred to as "Plaintiffs") is
a resident of the State of South Carolina and was previously employed by Defendant
Galardi during the applicable limitations period (2011 to 2014) as dancer-entertainer at
the Gentleman's Club known as "King of Diamonds" located at 17800 NE Fifth Avenue,
Miami, FL., 33160.

**10.**

Plaintiff MARLEKA WILLIAMS (hereinafter collectively referred to as
"Plaintiffs") is a resident of the State of Tennessee and was previously employed by

Defendant Galardi during the applicable limitations period (2011 to 2014) as dancer-entertainer at the Gentleman's Club known as "King of Diamonds" located at 17800 NE Fifth Avenue, Miami, FL., 33160.

## 11.

Plaintiff TIFFANY THOMPSON (hereinafter collectively referred to as "Plaintiffs") is a resident of the State of California and was previously employed by Defendant Galardi during the applicable limitations period (2011 to 2014) as dancer-entertainer at the Gentleman's Club known as "King of Diamonds" located at 17800 NE Fifth Avenue, Miami, FL., 33160.

## 12.

Defendant Mrs. TERI GALARDI is domiciled in and a resident of the State of Georgia. Defendant Galardi was the CEO and controlling shareholder Fly Low, Inc, dba King of Diamonds.

## 13.

Defendant Mrs. Teri Galardi was served with a copy of the summons and complaint on August 12, 2020 at her personal residence in Butts County, Georgia.

## 14.

All of the named Plaintiffs in this action were previously class members in a certified Rule 23 class action suit, Espinoza et al v. Galardi South Enterprises, Inc., et al, Civil Action File No. 14-cv-21244-Goodman, filed in the United States District Court for the Southern District of Florida on April 8, 2014, which also alleged violations of Article

X, Section 24 of the Florida Constitution and Fl. Stat. 448.110 against the same Defendant Galardi named herein.

### 15.

Those claims were certified as a Rule 23 Class Action on January 11, 2016, in Espinoza, but were dismissed without prejudice on April 10, 2018, when the Court determined that it would not exercise supplemental federal jurisdiction over such claims.

### 16.

The limitations period applicable to the state law claims of the Espinoza class members was therefore tolled on April 8, 2014, and remained tolled until May 10, 2018. 28 U.S.C. Sec. 1367(d); Griffin v. Singletary, 17 F.3d 1356 (11th Cir. 1994); American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); Latman v. Costa Cruise Lines, 758 So.2d 699 (District Court of Appeal of Florida, Division 3, 2000); Kornberg v. Carnival Cruise, 7412d 1332 (11th Cir. 1984); Sacred Health Health Service v Humana Military Healthcare, 2008 WL 2385506 (N.D. Fl. 2008); Raie v. Cheminova, Inc., 336 F.3d 1278, 1282 (11th Cir.2003); Barkley v. Pizza Hut, 2015 WL 5008468 (M.D. Fla. 2015).

### 17.

Defendant Mrs. Teri Galardi (hereinafter "Teri Galardi" or "Defendant Galardi") is a natural person who, although previously resided in the State of Florida between 2008

and 2017, is currently a resident of Butts County located in the State of Georgia, who has a long history of actively attempting to avoid service in matters involving her management and operation of strip clubs under her control and direction.

## 18.

For more than ten (10) years Teri Galardi has frequently and routinely operated, conducted, and engaged in, and carried out a business or business venture in the State of Florida, including owning and/or operating numerous businesses licensed to do business within the State of Florida.

## 19.

True and accurate copies of Annual Reports filed with the Florida Secretary of State showing, for calendar year 2018, Defendant Galardi's positions with various Florida Business entities are attached hereto as **Exhibit "1"**:

| **Date** | **Entity** | **Galardi Position** |
|---|---|---|
| 4/18/18 | 506 Office, LLC | MGR |
| 3/29/18 | 823 Lounge, Inc | PST (President, Secretary, Treasurer) |
| 4/19/18 | Fly Low, Inc. | PST |
| 4/9/18 | Galardi Eagle Lakes, LLC | MGRM |
| 4/18/18 | Jack E. Galardi, LLC | MGRM |
| 4/24/18 | Nick 3 Mind Body S | MGR |
| 3/29/18 | Porgal, Inc | PST |
| 3/29/18 | Sugarmom, LLC | MGRM |

## 20.

During calendar years 2008 to 2018, Defendant Galardi actively served as the President, Secretary, and Treasurer of Fly Low, Inc, dba King of Diamonds.

**21.**

During the time period 2008 until 2014, Defendant Galardi actively managed and directed the terms and conditions of Fly Low, Inc. dba King of Diamonds employees, as more specifically alleged herein. The acceptance by Defendant Galardi of the privilege of operating, conducting, engaging in and carrying on a business or business venture in the State of Florida constituted her appointment of the Secretary of State of Florida to act as her agent, upon whom process in any action arising from her management and direction of Defendant Fly Low may be served.

**22.**

During the pertinent time frame, Defendant Galardi engaged in concerted and related activities for the common business purpose of making money, and have previously admitted, in judicio, the following facts:

a.   Defendant had employees engaged in the handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person (including but not limited to alcoholic beverages and other commodities manufactured/created in States outside of Florida); and

b.   Fly Low, Inc. dba King of Diamonds had an annual gross volume of sales or business done of not less than $500,000.00.

## FACTUAL ALLEGATIONS

**23.**

As of November, 2008, Defendant Galardi and her father, Jack Galardi, and/or the Jack E. Galardi Trust, owned and operated not fewer than six "Gentlemen's Clubs"

located in Florida, Georgia, South Carolina, and Las Vegas, Nevada.

**24.**

Each Galardi-controlled Club was ostensibly owned by a separate shell corporation, for example:

    a.    Fly Low, Inc. (Fl) operated the King of Diamonds in Miami, Fl;

    b.    Bella Mia, Inc. (Fl) operated the Pink Pony in Doral, Fl;

    c.    Funnytime, Inc., operated the Pink Pony in Pompano, FL;

    d.    Trop. Inc. (Ga) operated the Pink Pony in Atlanta, Ga.;

    e.    Pony Tail, Inc. (Ga) operated Club Onyx in Atlanta, Ga.;

    f.    Country Club, Inc. (Ga) operated the Goldrush in Atlanta, Ga.;

    g.    Country Club, Inc., (SC) operated the Masters, in Myrtle Beach, SC; and

    h.    La Fuente, Inc. (Nev) and operated Cheetahs in Las Vegas, Nev.

**25.**

Ownership of all the clubs identified above where beneficially owned by Teri Galardi after the passing of her father Jack Galardi.

**26.**

At all times pertinent to this litigation, Galardi South Enterprises Consulting, Inc. (and/or its predecessor, Galardi South Enterprises, Inc.) were Georgia Corporations, through which Defendant Galardi and her agent/servant Dennis Williams operated as the centralized, Galardi-owned management company, which directed all of the subsidiary shell corporations which directly owned the respective clubs.

**27.**

At all pertinent times to this complaint, all of the Galardi-controlled "Gentlemen's Clubs" operated under a common business model initially implemented by Jack Galardi, and known of, approved and enforced by Jack Galardi and his daughter, Defendant Teri Galardi, the legal successor in interest to Jack Galardi.

**28.**

As pertains to Club Dancers, the common business model applicable at all Galardi-controlled strip clubs was as follows:

a. Due to unequal bargaining power, Dancers were forced to sign "independent contractor" agreements at the outset of their employment, and were thereafter classified as "independent contractors" rather than "employees";

b. Dancers received no wages whatsoever from the Clubs for whom they worked; instead, all of their compensation was received directly from Club customers;

c. As to Dancers, the Galardi-controlled clubs paid no Federal or State employer payroll taxes, social security contributions, worker's compensations insurance premiums, or unemployment compensation insuranace;

d. Dancers were forced to pay fees to and on behalf of the Club for the privilege of working at the Club;

e. Dancers were subject to immediate, direct, and pervasive control by the Clubs for whom they worked (including Fly Low - King of Diamonds), and by Jack and Teri Galardi, in the form of oral and written work rules, enforced via pervasive supervision and direction, disciplinary fines, suspensions, and other sanctions;

**29.**

A true and accurate copy of "Galardi South Enterprises Consulting, Inc. And It's Affiliate Clubs Rules of Conduct For Employees And Contractors" specifying thirty two (32) applicable rules, is attached hereto as **Exhibit "2".**

**30.**

On July 31, 2009, a group of eight (8) dancers employed at one of the Galardi-controlled clubs (Club Onyx in Atlanta, Ga), sued Galardi South Enterprises, Inc. d/b/a The Onyx, in the United States District Court For The Northern District of Georgia alleging a claim under the Fair Labor Standards Act, 29 U.S.C. Sec. 206, et. seq., that they had been misclassified by the Club as "independent contractors" (instead of "employees"), and that as a result, had not received from the the Club the federally-mandated minimum wage of $7.25 per hour. *Clincy et al v. Galardi South Enterprises, Inc., d/b/a Club Onxy"*, Civil Action File No. 1:09-cv-02082-RWS (N.D. Ga) ("Clincy")

**31.**

Galardi South Enterprises, Inc., and its successor corporation, Galardi South Enterprises Consulting, Inc., were and continue to be the management companies through which Jack Galardi and his daughter, Defendant Teri Galardi managed the operations of the various strip clubs encompassed under the "Galardi South" umbrella.

**32.**

On August 28, 2009, the *Clincy* Plaintiffs filed a Second Amended Complaint adding certain Defendants, including: Galardi South Enterprises Consulting, Inc., Pony

Tail, Inc., Mike Kap, and Jack Galardi.

**33.**

During the summary judgment briefing in *Clincy*, the Onyx-dancer plaintiffs cited

to numerous prior cases in which Courts had held that exotic dancers were "employees"

and were NOT "independent contractors".

**34.**

For example, on October 14, 2010, the *Clincy* Plaintiffs included the following

passage in their summary judgment brief as stated by one court in this circuit:

> "Arrangements factually similar to the one in this case have
> been tested by federal courts in Texas, Indiana and
> Colorado. See Reich v. Circle C. Investments, Inc., 998
> F.2d 324 (5th Cir.1993) (whether dancer was "employee"
> under FLSA); Reich v. ABC/York–Estes Corp., 1997 WL
> 264379 (N.D.Ill.1997) (whether dance fees were "tips"
> under FLSA); Reich v. Priba Corp., 890 F.Supp. 586
> (N.D.Tex.1995) (whether dancer was "employee" under
> FLSA); Reich v. ABC/York–Estes Corp., 157 F.R.D. 668
> (N.D.Ill.1994) (whether dance fees were "tips" under
> FLSA), rev'd on other *1348 grounds, 64 F.3d 316 (7th
> Cir.1995); Martin v. Priba Corp., 1992 WL 486911
> (N.D.Tex.) (whether dancer was "employee" under
> FLSA); Martin v. Circle C Investments, Inc., 1991 WL
> 338239 (W.D.Tex.); Donovan v. Tavern Talent &
> Placements, Inc., 1986 WL 32746 (D.Colo.) (whether
> "tips" could be used to offset completely the minimum
> wage requirement). Without exception, these courts have
> found an employment relationship and required the
> nightclub to pay its dancers a minimum wage."

quoting, Harrell v. Diamond A Entertainment, Inc, 992 F.Supp. 1343, 1347-48 (M.D. Fl. 1997)

**35.**

Defendant Teri Galardi and her father, Jack Galardi, knew of the holdings in Harrell and the cases cited therein (holding that dancers at "Gentlemen's Clubs" were not "independent contractors", but were instead, as a matter of law, "employees") in or about 1997, the sources of such knowledge being:

    a.    Dennis Williams, a Galardi South Enterprise Consulting, Inc., senior executive tasked with corporate-wide FLSA legal monitoring and compliance;

    b.    news reports in various form of media;

    c.    adult entertainment club trade associations (including but not limited to the "Association of Club Executives" ("ACE"), and the "American Entertainment Association");

    d.    trade publications (including but not limited to "Club Bulletin" Magazine"— www.EDpublications.com);

    e.    legal seminars at adult entertainment conventions;

    f.    information provided by executives employed at non-Galardi affiliated clubs;

    g.    their own legal counsel repeatedly informed them of FLSA liability.

**36.**

On September 7, 2011, relying on Harrell and the cases cited therein, the *Clincy* trial court granted summary judgment in the dancers' favor, holding that, as a matter of law, Club Onyx dancers were "employees" and were NOT "independent contractors" - an outcome of which Defendant Teri Galardi was aware of at the time because she has testified in numerous depositions to this undisputed fact.

**37.**

*Clincy* was ultimately settled in exchange for payment of $1,550,000 in June of
2012.

**38.**

Jack Galardi died on December 1, 2012 at the age of 81, after suffering from poor
heath and repeated hospitalizations during his last few years of life (including the removal
of a lung in 2010).

**39.**

Due to his failing health, during the last few years of his life, Jack Galardi could
no longer care for himself without active assistance, and could not carry out the duties he
previously performed managing and directing the various stip clubs he owned and
controlled.

**40.**

Due to Jack Galardi's declining health, Defendant Teri Galardi lived with and
cared for him during the last few years of his life, and actively assisted him and
participated in the carrying out of the business affairs of the various Galardi-controlled
strip clubs. Due to Mr. Galardi's poor health, he was hard to understand when he spoke,
he could not hear very well, and did not use a cellular phone or email.

**41.**

Based on her direct and extensive involvement in the family business during that
last years of Jack Galardi's life, and based on information provided to her by Dennis
Williams, and other sources, Defendant Teri Galardi was personally aware of the *Clincy*

litigation from its inception, including the adverse summary judgment outcome in 2011, and she was also aware of the previous adverse decisions cited in the *Clincy* summary judgment order not later than April of 2008.

**42.**

Fly Low began doing business as the "King of Diamonds" ("KOD") in November of 2008.

**43.**

In order to assume her management role at KOD Defendant Galardi purchased a home located at 15820 SW 53 Court, Southwest Ranches, Florida, 30216, on or about September 15, 2008 worth in excess of one millions dollars ($1,000,000) for cash.

**44.**

Defendant Galardi was then named President, Secretary and Treasurer of Defendant Fly Low, Inc., since at least 2008, and continued to hold those positions as of 2018. True and accurate copies of Annual Reports filed with the Florid Secretary of State for Defendant Fly Low, Inc., showing Defendant Galardi to be the President, Secretary and Treasurer of Defendant Fly Low from 2008-2018, are submitted herewith as **Exhibit "3"**.

**45.**

Between December 1, 2012 and 2018, Galardi was the sole shareholder of Defendant Fly Low.

**46.**

At all times during the applicable limitations period, Defendant Galardi, willfully

mischaracterized all dancers/entertainers employed at KOD as "independent contractors"

with full knowledge that doing so constituted violations of both Article X, Section 24

of the Florida Constitution ("Section 24") and the Florida Minimum Wage Act, Fl.

St. 441.110 ("FMWA"), as well as the Fair Labor Standards Act, 29 U.S.C. §206 et seq,

resulting in her failure and refusal to pay any wages or compensation to the Plaintiffs.

**47.**

At all times pertinent to this action, Defendant Galardi knew of and approved of

the mischaracterization of KOD dancers as independent contractors, despite her actual

knowledge that this practice constituted a violation of Article X and the FMWA, as well

as the Fair Labor Standards Act.

**48.**

Defendant Galardi then took this misdeed a step further and charged the Plaintiffs

to work each day at the King of Diamonds.

**49.**

The job duties of KOD dancers consisted primarily of dancing on stage during

the stage rotation, and performing personal dances (also called "lap dances" or "private

dances") for customers, and spending time in semi-private rooms.

**50.**

At all times during the applicable limitations period, Defendant Galardi exercised

a great degree of operational and management control over the King of Diamonds operation, including:

  a.  its location, its days of operations;

  b.  its hours of operation;

  c.  its theme and motif;

  d.  selection and acquisition of its furnishings;

  e.  the creation and implementation of club policies, practices, and procedures,

  f.  the hiring and firing of club personnel;

  g.  and the terms and conditions of employment applicable to club employees (Plaintiffs);

  h.  choosing the legal forum to adjudicate legal disputes (many dancers were forced to sign arbitration agreements that included class action waivers).

## 51.

At all times pertinent to this action, Defendant required entertainers to audition in order to be hired; however, an entertainer's physical appearance and not any level of dance, performance, or sales skill determined their suitability to perform at KOD as a dancer. No prior experience or training was required to be hired as a dancer-entertainer.

## 52.

Defendant Galardi herself, or through authorized agents imposed upon the Plaintiffs a corporate-wide, uniform rules, written guidelines and policies, as well as verbal directives, which governed all aspects of the work to be performed by KOD dancers/entertainers.

**53.**

Defendant Galardi and her agents required KOD dancers to dance on stage according to a stage rotation established by Defendant or her authorized agents, including the disk jockey ("DJ").

**54.**

Defendant, through her authorized agents, placed dancers/entertainers into the stage rotation and were required to dance at the time their name was called. Each stage dance was required to last for a specified number of songs. Entertainers were told how much clothing to remove during each song, i.e., top only during the first song, and then all clothing, save a G-String, during the second song, and fully nude during the third song.

**55.**

Defendant, through her authorized agents, controlled the music played in the club, and dancers/entertainers were not allowed by the Defendant to choose the songs that were played while they danced.

**56.**

Defendant, through her authorized agents set the price of personal dances performed for KOD customers. The price for a personal dance was the same regardless of which entertainer performed the dance. KOD dancers were not allowed to charge a different price than the price established by Defendant, through her agents.   Plaintiffs were not allowed to choose the song that played during personal dances.

**57.**

Pursuant to company practices established by the Defendant, Plaintiffs and other

dancers/entertainers spent time in private rooms with customers. The price paid by Plaintiffs for time in a private room was set by Defendant's authorized agents and was the same regardless of which entertainer was spending time in the private room with a customer(s) or by herself.

**58.**

Defendant's authorized agents required KOD dancers to collect and account for monies received directly from KOD customers, and specified a method for the money to be collected and counted by other KOD employees.

**59.**

Defendant's authorized agents controlled the number of days KOD dancers worked and the times they worked by:

a.    requiring them to work a minimum number of shifts per week (four), including two "slow" days";

b.    charging them larger amounts as "house fees" if they worked fewer than the minimum number of shifts per week; and

c.    and charging them an escalating scale of "house fees" depending on the time they arrived at work, i.e, the later the arrival, the more the "house fee."

**60.**

Defendant, through her authorized agents supervised, regulated, and controlled entertainers' attire and appearance, including prohibiting certain attire/accessories, or insisting that specified attire be worn, and reserving the right to determine the acceptability of dancers' appearance before beginning work.

**61.**

Based on negotiations conducted by Defendant Galardi herself, KOD was sold in July, 2014, for more than six million dollars ($6,000,000).

**62.**

Prior to that time Plaintiffs were routinely required by Defendant's authorized agents to attend meetings at Defendant's business (KOD), for which they receive no compensation whatsoever, on pain of being suspended or otherwise severely disciplined or terminated.

**63.**

Defendant Galardi financed and made all decisions governing all advertising, marketing, and promotional efforts undertaken on behalf of the club, as well as: club location, club hours of operation; club theme-motif, food and beverage selection and inventory, cover charges, house fees paid to the club and handled all legal disputes that were club related.

**64.**

Defendant Galardi, through her agents, controlled virtually every aspect of the Club's operations which were determinative as to the amounts of monies dancers could earn while working at KOD.

**65.**

Defendant Galardi made substantial capital and other investments in KOD's facilities, maintenance, sound system, lights, in addition to payroll, taxes, licenses,

insurance, rent and food and beverage and inventory. Plaintiffs did not contribute money towards maintaining Defendant's club premises or otherwise provide facilities at the club.

**66.**

Despite the fact that Plaintiffs were "employees", they were nonetheless required by Defendant to pay for Club mandated costumes, shoes, accessories, make-up, hair styling, manicures and pedicures, house fees, 10% tax on earnings, late fees and early exit fees.

**67.**

Even taking into account Plaintiff's required investments in the costumes, shoes, accessories, make-up, hair styling, manicures, and pedicures, Defendant's investment in the KOD operation substantially dwarfed Plaintiff's Club-mandated investments.

**68.**

Defendant's authorized agents made all hiring decisions regarding waitstaff, security, entertainer, managerial and all other employees at all Galardi owned night clubs including KOD.

**69.**

Defendant did not permit entertainers to hire other persons to perform their duties for them. The right to dance as an entertainer at KOD was a personal right, and only people hired by Defendant's management staff were allowed to perform at Defendant's clubs.

**70.**

KOD dancers were not permitted to work at non-Galardi-controlled strip clubs; if management learned that a dancer was working at another strip club, the dancer would be severely disciplined the first time and usually terminated the 2nd time.

**71.**

The only source of monies received by Plaintiffs relative to their employment with Defendant came in the form of gratuities received directly from KOD customers, 10% of which they were required to pay to Defendant Galardi every night in cash.

**72.**

Plaintiffs and all other KOD dancers/entertainers were economically dependent on (i) tips paid by customers, making their opportunity for profit or loss a function of how many customers frequented the club (based on Management's marketing, advertising, and promotional decisions), (ii) how much money customers had, (iii) how much they were willing to spend and (iv) how much Defendant or her authorized agents required entertainers to pay in order to work at KOD.

**73.**

Plaintiffs opportunity for profit and loss at KOD did not depend on their management skills, as their jobs did not call for or require any management skills.

**74.**

Numerous KOD dancers, including the Plaintiffs in this case, worked at KOD for lengthy, multi-year periods of time.

**75.**

The services performed by Plaintiffs and all other dancers-entertainers were integral to the success of KOD.

**76.**

Rather than paying wages to Plaintiffs, Defendant instead required KOD Plaintiffs and all other dancers/entertainers to pay *her* for the privilege of working at KOD, with such payments taking the form of:

  a. "house fees" payable upon entering the club in amounts set solely by the Defendant;

  b. a surcharge in an amount set by them (10% tax on their gross daily earnings, which was payable during and after their shifts in cash);

  c. mandatory tip-outs to other Club personnel, including but not limited to the DJ, the House Mom, and to security personnel; and

  d. routinely being fined for work rule infractions.

**77.**

Named Plaintiffs have been subject to a variety of fines and other discipline for work rule infractions during the applicable limitations period.

**78.**

Defendant Galardi failed to create and maintain records reflecting the dates, times, and hours worked by KOD dancers/entertainers.

**79.**

At no time did the Defendant ever include monies received by Dancers from KOD customers in the recorded gross revenues of Fly Low, Inc. dba KOD.

**80.**

Defendant Galardi met with KOD management employees, including but not limited to Terry Elliott shortly after the death of Jack Galardi, to assert her power and to give directives as to how the Club would be operated going forward as the owner of Fly Low, Inc. dba the King of Diamonds.

**81.**

Defendant Galardi toured the Club to assess conditions after her Father's death, and personally decided to remodel the Club, choosing the carpeting, upholstery, and furniture, and ultimately expending three hundred thousand dollars ($300,000) of her own personal funds in connection with the remodeling.

**82.**

Both before and after the death of Jack Galardi, Teri Galardi maintained an office and conducted business at the King of Diamonds facility.

**83.**

After her Father's death, Defendant Galardi was universally considered by the General Managers of all Galardi-controlled Clubs to be their "boss".

**84.**

Importantly, Defendant Galardi made the decision to keep in place all the illegal

employment policies complaint about herein.

**85.**

Defendant Galardi carefully monitored and made inquiries re: sales reports and "girl counts" regarding KOD.

**86.**

Defendant Galardi personally supervised and directed KOD Office Manager Jennifer Saunders.

**87.**

Defendant Galardi gave directions and instructions to Fly Low, Inc. employees Bob Hilton and Steve Ennis.

**88.**

Defendant Galardi personally supervised KOD office employee Mary Albenaz.

**89.**

Defendant Galardi monitored important club events and promotions.

**90.**

Defendant Galardi made the decision to wholesale change of KOD management personnel.

**91.**

In the years 2013-14, Defendant Galardi selected Akinyele Adams to become KOD's General Manager and her authorized agent to act in her place.

**92.**

Defendant Galardi personally ordered the firing of KOD General Manager Liz Cedeno during 2013, as well as other KOD managers months after she installed Akinyele Adams as KOD's general manager and agent. Mr. Adams was given full authority by Defendant Galardi to represent her interests in the club.

**93.**

Defendant Galardi was Adams's boss, and Adams admitted to at least one KOD dancer that he had to do whatever he was told to do by Defendant Galardi.

**94.**

Defendant Galardi was Fly Low VP Steve Ennis's boss—she supervised and directed him.

**95.**

Defendant Galardi–with knowledge of the illegality of the "independent contractor business model"---chose to continue that policy during the last years of Jack Galardi's life and after his death.

**96.**

Defendant Galardi continued the policy of mandatory house fees/tip outs, despite the adverse ruling in *Clincy*.

**97.**

During the last years of Jack Galardi's life, only he or Defendant Teri Galardi possessed the authority to change the "independent contractor" business model

applicable at all Galardi South Enterprise Consulting Inc.'s "affiliated clubs", including the King of Diamonds.

### 98.

Defendant Galardi, with the aid of her attorneys and subordinates, implemented, as a condition of continued employment, a mandatory arbitration policy for KOD dancers in April of 2014.

### 99.

After a KOD dancer was fired for refusing to sign the arbitration policy in April of 2014, and after being threatened with legal action as a result, Defendant Galardi (not Akinyele Adams) ordered that the Dancer be permitted to return to work.

### 100.

Defendant Galardi signed Fly Low, Inc. checks, including paychecks (or authorized others to use her signature stamp to do so), and transferred the KOD payroll function from Atlanta to Miami.

### 101.

Defendant Galardi handled all legal disputes and made decisions regarding settlement of lawsuits against Fly Low, Inc. dba King of Diamonds.

### 102.

As further evidence of Defendant Galardi's operational control, during the course of the *Espinoza* litigation, Defendant Galardi unilaterally made the decision to fraudulently convey Fly Low, Inc, the club KOD and the parcel of land KOD sits on

without ever disclosing the transaction to the Court, her counsel, or Plaintiffs' counsel, Mr. Harlan Miller in 2014.

### 103.

On April 8, 2014, a group of KOD dancers sued Defendant Galardi and non-party Fly Low, Inc., in the United States District Court For The Southern District of Florida, asserting claims for minimum wage compensation under the FLSA and under Florida Law, in particular, under Article X, Section 24 of the Florida Constitution. *Espinoza et al v. Fly Low, Inc., and Teri Galardi,* Civil Action File No. 1:14-CV-21244-Goodman.

### 104.

The Florida law and Fair Labor Standards Act claims asserted in *Espinoza* by other KOD dancers against the Defendant in this proceeding shared the legal issues as those presented in this action, to wit, whether Galardi:

    a.  was the "employer" of KOD dancers;

    b.  willfully misclassified KOD dancers as "independent contractors" when, based on clearly established law, KOD dancers should have been treated and paid as "employees";

    c.  failed to pay KOD dancers a single penny in wages; and

    d.  unlawfully forced KOD dancers to pay her "kickbacks" for the privilege of working at KOD.

### 105.

On January 1, 2016, the *Espinoza* court certified Plaintiffs' Florida law claims as a Rule 23 class action. On April 10, 2018, however, the Court elected not to exercise

supplemental jurisdiction over the Florida law claims pursuant to 28 U.S.C. §1367(c),

noting that under 28 §1367(d), the state law claims had been tolled during the pendency

of the lawsuit.

## 106.

On November 28, 2017, the *Espinoza* court denied Defendant Galardi's motion

for summary judgment, which was predicated on the assertion that she was not Plaintiffs'

"employer" and therefore could not be held individually liable under the FLSA.

## 107.

Thereafter, the *Espinoza* Plaintiffs' minimum wage claims were tried to a jury

beginning on June 18, 2018, and concluding on June 26, 2018.

## 108.

Prior to the jury commencing its deliberations, the trial court instructed it on the

applicable law, including a) the "economic realities" test (which governs the

determination as to whether a particular individual is an "employee" or is instead an

"independent contractor"), as well as the concepts of "willfulness", and personal liability.

## 109.

On June 26, 2018, the *Espinoza* jury reached a verdict. More specifically, the

jury was submitted "Special Interrogatories", which resulted in the following

determinations:

a)    Both Fly Low and Galardi were the "employers" of KOD dancers;

b)    KOD dancers were Fly Low's and Galardi's "employees";

c)    Fly Low and Galardi failed to pay KOD dancers the

minimum wage required by law; and

    d)    Fly Low and Galardi acted "willfully" (i.e., "kn[e]w or show[ed] reckless disregard for whether the FLSA prohibited their conduct")

### 110.

Based on these findings, the jury in *Espinoza* awarded the KOD dancers minimum wage and overtime damages totaling $818,236, plus an additional $75,000 to one of the named Plaintiffs for retaliatory firing after the filing of the lawsuit. A true and accurate copy of the verdict form is submitted herewith as **Exhibit "4"**.

### 111.

On September 20, 2018, the *Espinoza* Magistrate Judge Goddman awarded liquidated damages to all Plaintiffs that testified pursuant to the FLSA, and entered final judgment. True and accurate copies are submitted herewith as **Exhibit "5"**.

### 112.

Galardi appealed the final judgment to the Eleventh Circuit Court of Appeals. On May 7, 2019, the Appellate Court affirmed the final judgment against Galardi and sanctioned the Defendant and her counsel for filing a frivolous appeal. **Exhibit "6"**.

### 113.

On September 24, 2018, Arbitrator Michael Kohler granted eight (8) motions for summary judgment on the issue of Teri Galard's status as statutory "employer" of KOD dancers in a proceeding initiated by other KOD dancers based upon offensive non-mutual collateral estoppel. A true and accurate copy of said order is attached hereto as **Exhibit "7"**.

**114.**

On February 26, 2019, Arbitrator Michael Kohler entered final judgment against Defendant Galardi as to the FLSA and Florida law minimum wage claims being pressed by four other former King of Diamonds dancers. A true and accurate of the judgment is submitted herewith as **Exhibit "8".** On April 24, 2019, Arbitrator Kohler entered a final award including attorney's fees. **Exhibit "9".**

**115.**

On July 10, 2020, over the objection of Defendant Galardi, this Court confirmed the arbitral awards attached as Exhibits 8 & 9 without any modification (Case 1:19-cv-25248-MGC)(**Exhibit "10"**).

**116.**

"[T]he judgment [arbitral award] so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered" 9 U.S. Code § 13(c).

**117.**

Under these set of unique circumstances Plaintiffs are each entitled to apply offensive non-mutual collateral estoppel because Defendant Galardi has been found to be an employer and personally liable in the *Espinoza* matter (which was affirmed on appeal by the 11th Circuit) and the above referenced eight (8) arbitration matters that were converted into a federal court judgment by this Court (See also Parklane Hosiery Co.,

Inc. v. Shore, 439 U.S. 322 (1979).[1]

### 118.

Plaintiffs have also each satisfied all conditions precedent to bringing this action,

including with respect to Plaintiffs' claim under the Florida Minimum Wage Act, having

sent written notice of the legal claims not less than 15 days prior to the initiation of this

lawsuit and/or the filing of this pleading, identifying in such notices "the minimum wage

to which [they] claim[ed] entitlement, the actual or estimated work dates and hours for

which payment is sought, and the total amount of alleged unpaid wages through the date

of the notice."

### 119.

As a consequence of Defendant's violations of Plaintiffs' rights under Article X,

Sec.24 of the Florida Constitution and the Florida Minimum Wage Act, Plaintiffs have

suffered lost wages, including being forced to pay illegal kickbacks to or on behalf of the

Defendant all in an amount to be determined at trial.[2]

### COUNT I
### ARTICLE X, SECTION 24 MINIMUM WAGE CLAIMS

### 120.

Plaintiffs repeat and reallege each and every allegation contained in paragraphs

one through one hundred and nine above with the same force and effect as if herein fully

---

[1] Galardi has now been found to be the "employer" of KOD dancers and personally
liable in 8 AAA arbitrations, 1 federal case and 1 appellate case.

[2] (See, Reich v. Priba, 895 F.Supp. 586 (N.D. Tx. 1995)(Club required to reimburse
dancers for costumes forced to wear).

set forth herein.

### 121.

During the November 2004 general election, Florida voters passed Amendment 5 establishing a state minimum wage. 5,198,514 votes (71.25%) were cast in favor of the Amendment, 2,097,151 votes (28.75%) were cast in opposition.

### 122.

The central purpose of the Amendment was to ensure that "All working Floridians are entitled to be paid a minimum wage that is sufficient to provide a decent and healthy life for them and their families..." See, In Re Advisory Opinion To The Attorney General Of Florida Re: Minimum Wage Amendment, 800 So.2d 636 (Fla. 2004); City of Miami Beach v. Florida Retail Federation, Inc, 233 So.3d 1236, (Fla. 3d DCA, 2017).

### 123.

Amendment 5 was later codified as Article X, Sec. 24 of the Florida Constitution. It provides in pertinent part as follows:

e) **ENFORCEMENT. *Persons aggrieved by a violation of this amendment*** may bring a civil action in a court of competent jurisdiction against an Employer or person violating and, ***upon prevailing, shall recover the full amount of any back wages unlawfully withheld plus the same amount as liquidated damages***, and shall be awarded reasonable attorney's fees and costs...Actions to enforce ***this amendment*** shall be subject to a statute of limitations of four years or, in the case of willful violations, five years. Such actions may be brought as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.

**124.**

Defendant's failure and refusal to pay the Plaintiffs any wages whatsoever constitutes a willful violation of Article X, Section 24 of the Florida Constitution.

**125.**

Plaintiffs are therefore entitled to recover the applicable minimum hourly rate specified under Florida law for each hour worked during the applicable limitations period, restitution of fees and fines unlawfully exacted from them by the Defendant, repayment of all sums paid for costumes, shoes, accessories, make-up; hair dressing and all other work expenses foisted on Plaintiffs by the Defendant, plus liquidated damages and attorney's fees and costs of litigation.

## COUNT II
### (in the alternative)
### FLORIDA MINIMUM WAGE ACT (FMWA) MINIMUM WAGE CLAIMS

**126.**

Plaintiffs repeat and reallege each and every allegation contained in paragraphs one through one hundred and nine above with the same force and effect as if herein fully set forth herein.

**127.**

Defendant's failure and refusal to pay the minimum wage required under Fla. Stat. 448.110 to the Plaintiffs constitute a willful violation of FMWA, Fl. Stat. §448.110.

**128.**

Each named Plaintiff has sent presuit notice to the Defendant more than 15 days

prior to the filing of this civil action.

**129.**

Plaintiffs have satisfied all conditions precedent to the filing of this claim.

**130.**

Plaintiffs are therefore entitled to recover the applicable minimum hourly rate specified under Florida law for each hour worked during the applicable limitations period, restitution of fees and fines unlawfully exacted from them by the Defendant, repayment of all sums paid for costumes, shoes, accessories, make-up; hair dressing and all other work expenses foisted on Plaintiffs by the Defendant plus liquidated damages for willful violation and attorney's fees and costs of litigation.

## <u>DEMAND FOR JURY TRIAL</u>

**131.**

Plaintiffs demand a trial by jury on all their claims so triable.

**WHEREFORE,** Plaintiffs respectfully pray that this Court **GRANT** relief as follows:

**a.** as to Count I , Article X, Section 24 of the Florida Constitution, an award to the Plaintiffs for the minimum wage specified under Florida law for all hours worked by the Plaintiffs during the applicable limitations period, as well as restitution of all fees, fines, charges and mandatory tip-out outs paid to the Defendant (or to others on Defendant's behalf) by the Plaintiffs, repayment of all funds Defendant required Plaintiffs to expend for costumes, shoes, accessories, makeup, hair styling, manicures, pedicures and the like. liquidated damages, interest and attorney's fees as provided for under Article X, Section 24 of the Florida Constitution;

**b.** as to Count II, FMWA, in the alternative, an award to the Plaintiffs for the minimum wage specified under Florida law for all hours worked by the Plaintiffs during the applicable limitations period, as well as restitution of all fees, fines, charges and mandatory tip-out outs paid to the Defendant (or to others on Defendant's behalf) by the Plaintiffs, repayment of all funds Defendant required Plaintiffs to expend for costumes, shoes, accessories, makeup, hair styling, manicures, pedicures and the like. liquidated damages, interest and attorney's fees as provided for under the FMWA;

**c.** liquidated damages in amount equal to the amount of damages assessed for willful violations of the Article X or the FMWA;

**d.** an award of attorneys and expenses of litigation;

**e.** trial by jury as to all issues of fact;

**f.** such other and/or further relief as the Court may deem just and necessary.

Respectfully submitted this 29th day of September, 2020.

/s/ Astrid E. Gabbe, Esq.
FL Bar #635383
The Law Office of Astrid E. Gabbe, P.A.
P.O. Box 4216
Hollywood, FL, 33083
954-303-9882
Email: astridgabbe@gmail.com

EXHIBIT 3

# LAW OFFICE OF ASTRIDE E. GABBE, P.A
## *Astrid E. Gabbe, Esquire*

P.O Box #4216
Hollywood, FL 33083

Telephone 954-303-9882
email:astridgabbe@gmail.com

May 19, 2020

*Mr. Dean R. Fuchs*
*Schulten Ward Turner & Weiss, LLP*
*260 Peachtree Street, N.W., Suite 2700*
*Atlanta, GA 30303*

SENT VIA EMAIL TO: d.fuchs@swtwlaw.com

  Re:  **Pre-Suit Notice: Rasheedah Mays v. Fly Low, Inc. & Teri Galardi**
      **Pursuant to Florida Code §448.110**

Dear Mr. Fuchs:

  I write to you as you are legal counsel for Fly Low, Inc and Ms. Teri Galardi pursuant to Florida Code Ann. §448.110(6)(a). If incorrect please advise otherwise as soon as practically possible.

  The purpose of my letter is to advise you of certain legal claims which my client intends to initiate against her "employers" (i.e, Fly Low and Ms. Galardi) under the Florida Minimum Wage Act, Florida Code Ann. §448.110 ("FMWA"). Specifically, Ms. May claims that her employers committed willful violations of the Act by failing to pay her minimum wages required under the FMWA, and by extracting unlawful kickbacks and other charges in order to work each day at the King of Diamonds.

  Ms. Mays was employed as a Dancer-Entertainer at the King of Diamonds from 2010 until 2017. She possesses no time records documenting the dates/times that she worked and can therefore offer only an approximation concerning the number of hours and shifts she worked. As you are aware it is your clients' responsibility to keep accurate time records.

  Additionally, Ms. Mays was a rule 23 class member in the case of Espinoza et al v. Galardi et al, No. 1:14-cv-21244 (N.D. Fl), in which FMWA claims are being pressed as a Rule 23 class action. Espinoza was filed on April 8, 2014. Her FMWA claims, therefore, have been "tolled" since that time. Willful violations of the FMWA are subject

to a five-year statute of limitations.   Her best estimate of work history, without the benefit of time records, are as follows:

**2010**
48 weeks x 7.79/hr 6 days a week at 8 hours per shift
Regular hours-2304 x 7.79=**$17,948.16**
Fees 48 weeks x 6 shifts/wk ($50 house fee, $100 10%, $50 housemom, dj security)= 288 x $200=**$57,600 tip outs**

**2011**
48 weeks x 7.79/hr 6 days a week at 8 hours per shift
Regular hours-2304 x 7.79=**$17,948.16**
Fees 48 weeks x 6 shifts/wk ($50 house fee, $100 10%, $50 housemom, dj security)= 288 x $200=**$57,600 tip outs**

**2012**
48 weeks x 7.79/hr 6 days a week at 8 hours per shift
Regular hours-2304 x 7.79=**$17,948.16**
Fees 48 weeks x 6 shifts/wk ($50 house fee, $100 10%, $50 housemom, dj security)= 288 x $200=**$57,600 tip outs**

**2013**
48 weeks x 7.79/hr 6 days a week at 8 hours per shift
Regular hours-2304 x 7.79=**$17,948.16**
Fees 48 weeks x 6 shifts/wk ($50 house fee, $100 10%, $50 housemom, dj security)= 288 x $200=**$57,600 tip outs**

**2014**
26 weeks x 7.93/hr 6 days a week at 8 hours per shift
Regular hours 1248 x 7.93/hr= **$9,896.64**
Fees- 26 weeks x 6 shifts/wk ($50 house fee, $100 10%, $50 housemom, dj security)=156 shifts x $200= **$31,200 tip outs**

**TOTAL WAGES: $81,689.28**

**TOTAL DAMAGES: $343,289.28**

Pursuant to §448.110, your clients are entitled to 15 calendar days in which to resolve this matter by agreement. Should they fail to do so, Ms. Mays will initiate the appropriate legal proceedings.

Sincerely,

*Astrid E. Gabbe, Esq.*

# Exhibit "B"

**Fill in this information to identify the case:**

Debtor 1    Teri Galardi

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    **Middle District of Georgia**

Case number:  **22–50035**

FILED

**U.S. Bankruptcy Court**
**Middle District of Georgia**

3/22/2022

**Kyle George, Clerk**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Rasheedah Mays

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Rasheedah Mays

Name

480 Dasheill Lane
Atlanta, GA 30349

Contact phone _____727–492–9981_____

Contact email
____rasheedahmays@yahoo.com____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

**Where should payments to the creditor be sent?** (if different)

Name

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☒ Yes. Who made the earlier filing?   Mr. Dudley unauthorized attorney that does not represent me

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ 686578.00

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Violation of Florida Minimum Wage Act and Article X of the Florida Constitution

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $ _____

**Amount of the claim that is secured:**  $ _____

**Amount of the claim that is unsecured:**  $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $ _____

**Annual Interest Rate** (when case was filed)  _____ %

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No ☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies

$ _____

* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

### Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    3/22/2022

MM / DD / YYYY

/s/ Rasheedah Mays

Signature

Print the name of the person who is completing and signing this claim:

Name    Rasheedah Mays

First name    Middle name    Last name

Title

Company

Identify the corporate servicer as the company if the authorized agent is a servicer

Address    480 Dasheill Lane

Number   Street

Atlanta, GA 30349

City   State   ZIP Code

Contact phone    727–492–9981    Email   rasheedahmays@yahoo.com

---

# STATE BAR OF GEORGIA

## Office of the General Counsel

104 Marietta Street, N.W. • Suite 100 • Atlanta, Georgia 30303
(404) 527-8720 • (800) 334-6865

### IMPORTANT INFORMATION AND INSTRUCTIONS
### PLEASE READ BEFORE SENDING A GRIEVANCE

**Purpose of Grievance:** All lawyers must comply with ethics rules. These rules describe a lawyer's obligation to clients, the courts and the general public in professional dealings. The purpose of this process is to protect the public by disciplining lawyers who violate the ethics rules. Our office cannot consider complaints against judges acting in a judicial capacity.

**Procedure:** Our office begins an investigation when a grievance form is received. If it appears that there might be a violation, then a copy of the grievance is sent to the lawyer for a response. Once the lawyer responds to your grievance, you will have a chance to review the response and rebut what the attorney said. Do not expect an immediate response from us after we receive your rebuttal. You <u>will</u> receive a letter from our office when we complete our investigation. If the lawyer's conduct appears to violate the ethics rules, we send the grievance file to a member of the Investigative Panel of the State Disciplinary Board. The Panel member will formally investigate the matter and report to the full Investigative Panel for a decision. If no violations were discovered, then your complaint is closed and you will receive a written explanation of the reasons why.

**Please Note:** Please understand that the Office of the General Counsel **<u>cannot represent you, give you any legal advice, change the outcome of a court decision</u>, or <u>recover money for you</u>**. There may be times when you feel that the attorney did not represent you in the best possible way and this resulted in an unfavorable outcome. The State Bar of Georgia cannot discipline an attorney for **faulty legal advice** (malpractice), an **unsuccessful trial strategy** or **ineffective assistance of counsel**. Therefore, if you think that the lawyer did not represent you correctly or adequately, you should consult with another attorney about your rights.

If you feel that your grievance may be the result of **poor communication or a misunderstanding between you and the attorney,** you should have an open talk with the attorney before you file a grievance. If you are having difficulty reaching your attorney, you may wish to call our **Client Assistance Program** at **(404) 527-8759**. If your problem with the lawyer is a **fee dispute**, you may call the **Fee Arbitration Division** of the State Bar at **(404) 527-8750**.

If you wish to file a grievance, please complete the form, sign and date it, make a copy for yourself and **<u> return the original with your original signature to this office</u>**. **If the form is not properly completed, it may be returned for correction.** Be aware that alleging conclusions without explaining facts that support the conclusions will result in either a request for additional information or a dismissal of the grievance.

# PLEASE READ THE INSTRUCTIONS ON THE BACK.

Revised 3.30.2017

**INSTRUCTIONS:**

The State Bar of Georgia is in the process of converting its disciplinary files to electronic media. **All submissions will be scanned into an electronic record.**

The following instructions will allow our office to process your documents in an expedient manner.

- **Submission(s) cannot exceed <u>25</u> pages. If additional documents are needed, our office will contact you.**

- **We DO NOT accept fax copies of the grievance.**

- **DO NOT send CDs, DVDs or flash drives <u>unless requested</u>.**

- **DO NOT send medical records or documents with Social Security numbers.**

- **DO NOT bind (staple or tape) any pages of the grievance.**

- **DO NOT write on the back of pages or use a highlighter.**

- **Use ONLY standard 8 1/2" by 11" paper and do not add post-it notes or tabs to exhibits or supporting documentation.**

- **Do not add irregular sized pages or photographs.**

- **Notify us of any change in your address or telephone number.**

- **Make a copy of your complete grievance for your records before submission to the Office of the General Counsel.**

- **Only list one attorney per grievance form. If additional forms are needed, please contact the Office of the General Counsel.**

<div align="center">

**DO NOT SEND ORIGINAL DOCUMENTS.**
**WE CANNOT BE RESPONSIBLE FOR THEIR SAFE-KEEPING OR RETURN THEM TO YOU.**

</div>

Revised 3.30.2017



# STATE BAR OF GEORGIA
## GRIEVANCE
## CONFIDENTIAL

**PLEASE TYPE OR PRINT LEGIBLY IN BLACK INK ONLY**
**DO NOT ALTER THIS FORM**

**YOUR NAME:** Rasheedah Mays

**MAILING ADDRESS:** 480 Dasheill Lane        Atlanta          GA  30349
<span style="font-size:small">Street or P.O. Box                                    City                                State        Zip</span>

**YOUR EMAIL ADDRESS:** rasheedahmays@yahoo.com

**YOUR PHONE NUMBERS:** (H/CELL) 727-492-9981          (W)

**NAME OF THE ATTORNEY:** Ainsworth Dudley
<span style="font-size:small">Fill out a separate form for each attorney. **Do not list law firms.**</span>

**ADDRESS OF THE ATTORNEY:** 4200 Northside Parkway Bldg 1 Ste 200 Atlanta, GA 30327

DATE OF FIRST CONTACT WITH ATTORNEY: _____ DATE OF LAST CONTACT WITH ATTORNEY: _____

DOES THIS ATTORNEY CURRENTLY REPRESENT YOU?  YES ☐  NO ☒      WAS THIS YOUR ATTORNEY? YES ☐ NO ☒

IS YOUR CASE:  CRIMINAL ☐  CIVIL ☒      CASE # Middle District of Georgia (Macon)Bankruptcy#: 22-50035

COUNTY: Macon                        OR FEDERAL DISTRCIT: NORTHERN ☐ MIDDLE ☒ SOUTHERN ☐

**CLEARLY DESCRIBE YOUR COMPLAINT AND ATTACH SUPPORTING DOCUMENTS:**

Mr. Dudley filed a proof of claim saying he was my attorney. I emailed him asking why did he file

a proof of claim stating that he was my attorney (i have attached a copy of his response email to

me) I have asked for a copy of the contract and it was never sent to me because it does not exist

and he trying to steal my money.

All notices and money are to be sent to Mr. Dudley and he is not my attorney.

If more space is needed, please attach other pages. **Please do not write on the back.**

**Return to:**     **State Bar of Georgia**
                   **Office of the General Counsel**
                   **104 Marietta St. NW, Suite 100**
                   **Atlanta, GA 30303**

"I affirm that I have read and understand the information and instructions. The information I have provided here is true to the best of my knowledge."
**SIGNATURE:** _____
**DATE:** _____ 03/21/2022

***OPTIONAL: PLEASE PROVIDE THE NAME AND PHONE NUMBER OF SOMEONE WE CAN CONTACT IF WE HAVE DIFFICULTY CONTACTING YOU.***

NAME OF CONTACT PERSON: _____

PHONE NUMBERS OF CONTACT PERSON: (H) _____ (CELL) _____

<span style="font-size:small">Revised 07.02.2020</span>

# LAW OFFICE OF ASTRIDE E. GABBE, P.A
## *Astrid E. Gabbe, Esquire*

P.O Box #4216                                           Telephone 954-303-9882
Hollywood, FL 33083                                     email:astridgabbe@gmail.com

May 19, 2020

*Mr. Dean R. Fuchs*
*Schulten Ward Turner & Weiss, LLP*
*260 Peachtree Street, N.W., Suite 2700*
*Atlanta, GA 30303*

SENT VIA EMAIL TO: d.fuchs@swtwlaw.com

Re:   **Pre-Suit Notice: Rasheedah Mays v. Fly Low, Inc. & Teri Galardi
Pursuant to Florida Code §448.110**

Dear Mr. Fuchs:

I write to you as you are legal counsel for Fly Low, Inc and Ms. Teri Galardi pursuant to Florida Code Ann. §448.110(6)(a). If incorrect please advise otherwise as soon as practically possible.

The purpose of my letter is to advise you of certain legal claims which my client intends to initiate against her "employers" (i.e, Fly Low and Ms. Galardi) under the Florida Minimum Wage Act, Florida Code Ann. §448.110 ("FMWA"). Specifically, Ms. May claims that her employers committed willful violations of the Act by failing to pay her minimum wages required under the FMWA, and by extracting unlawful kickbacks and other charges in order to work each day at the King of Diamonds.

Ms. Mays was employed as a Dancer-Entertainer at the King of Diamonds from 2010 until 2017. She possesses no time records documenting the dates/times that she worked and can therefore offer only an approximation concerning the number of hours and shifts she worked. As you are aware it is your clients' responsibility to keep accurate time records.

Additionally, Ms. Mays was a rule 23 class member in the case of Espinoza et al v. Galardi et al, No. 1:14-cv-21244 (N.D. Fl), in which FMWA claims are being pressed as a Rule 23 class action. Espinoza was filed on April 8, 2014. Her FMWA claims, therefore, have been "tolled" since that time. Willful violations of the FMWA are subject

-1-

to a five-year statute of limitations.  Her best estimate of work history, without the benefit of time records, are as follows:

**2010**
48 weeks x 7.79/hr 6 days a week at 8 hours per shift
Regular hours-2304 x 7.79=**$17,948.16**
Fees 48 weeks x 6 shifts/wk ($50 house fee, $100 10%, $50 housemom, dj security)=
288 x $200=**$57,600 tip outs**

**2011**
48 weeks x 7.79/hr 6 days a week at 8 hours per shift
Regular hours-2304 x 7.79=**$17,948.16**
Fees 48 weeks x 6 shifts/wk ($50 house fee, $100 10%, $50 housemom, dj security)=
288 x $200=**$57,600 tip outs**

**2012**
48 weeks x 7.79/hr 6 days a week at 8 hours per shift
Regular hours-2304 x 7.79=**$17,948.16**
Fees 48 weeks x 6 shifts/wk ($50 house fee, $100 10%, $50 housemom, dj security)=
288 x $200=**$57,600 tip outs**

**2013**
48 weeks x 7.79/hr 6 days a week at 8 hours per shift
Regular hours-2304 x 7.79=**$17,948.16**
Fees 48 weeks x 6 shifts/wk ($50 house fee, $100 10%, $50 housemom, dj security)=
288 x $200=**$57,600 tip outs**

**2014**
26 weeks x 7.93/hr 6 days a week at 8 hours per shift
Regular hours 1248 x 7.93/hr= **$9,896.64**
Fees- 26 weeks x 6 shifts/wk ($50 house fee, $100 10%, $50 housemom, dj
security)=156 shifts x $200= **$31,200 tip outs**

**TOTAL WAGES: $81,689.28**

**TOTAL DAMAGES: $343,289.28**

Pursuant to §448.110, your clients are entitled to 15 calendar days in which to resolve this matter by agreement. Should they fail to do so, Ms. Mays will initiate the appropriate legal proceedings.

Sincerely,

*Astrid E. Gabbe, Esq.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **TERI G. GALARDI,** | **CASE NO.  22-50035-JPS** |
| **Reorganized Debtor.** | |
| **THOMAS T. MCCLENDON, AS LIQUIDATING TRUSTEE OF THE GALARDI CREDITORS TRUST,** | |
| **Movant,** | **CONTESTED MATTER** |
| **v.** | |
| **RASHEEDAH MAYS,** | |
| **Respondent.** | |

## CERTIFICATE OF SERVICE

This is to certify that I have on this day electronically filed the foregoing *Debtor's Objection to Claim of Rasheedah Mays* (the "Objection") using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of and an accompanying link to the Objection to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing Program:

- **Michael Akemon**   mutepe.akemon@richardslegal.com
- **Ainsworth G Dudley**   adudleylaw@gmail.com
- **Evan Owens Durkovic**   ecfgamb@aldridgepite.com, edurkovic@ecf.courtdrive.com
- **Robert G. Fenimore**   robert.g.fenimore@usdoj.gov, Ustp.region21.mc.ecf@usdoj.gov
- **Will Bussell Geer**   wgeer@rlkglaw.com, notices@nextchapterbk.com; willgeer@ecf.courtdrive.com;2836@notices.nextchapterbk.com;6717577420@filings.do cketbird.com;geer.willb117921@notify.bestcase.com;emiller@rlkglaw.com
- **Whitney Warnke Groff**   wgroff@law.ga.gov
- **Elizabeth A. Hardy**   elizabeth.a.hardy@usdoj.gov, Ustp.region21.mc.ecf@usdoj.gov; elizabeth.hardy.collins@usdoj.gov
- **Brian K. Jordan**   ecfgamb@aldridgepite.com, bjordan@ecf.courtdrive.com
- **Christina T. Lanier**   christina.t.lanier@usdoj.gov, southern.taxcivil@usdoj.gov
- **Jonathan Loegel**   jonathan@loegel.com
- **Roy E. Manoll**   kdd@fbglaw.com
- **Louis G. McBryan**   lmcbryan@mcbryanlaw.com, alepage@mcbryanlaw.com
- **Garrett A. Nail**   gnail@pgnlaw.com

- **James D. Silver**   jsilver@kklaw.com, raldama@kklaw.com
- **Ward Stone**   wstone@stoneandbaxter.com, lford@stoneandbaxter.com; mcathey@stoneandbaxter.com;dbury@stoneandbaxter.com;lchapman@stoneandbaxter.com;amoses@stoneandbaxter.com
- **Christopher W. Terry**   chris@boyerterry.com, terrycr40028@notify.bestcase.com
- **U.S. Trustee - MAC**   Ustp.region21.mc.ecf@usdoj.gov

I further certify that I served a true and correct copy of the foregoing Objection on all parties referenced below via United States First Class Mail, postage prepaid:

Rasheedah Mays
480 Dasheill Lane
Atlanta, GA 30349

Rasheedah Mays
4200 Northside Parkway
1-200
Atlanta, GA 30327

This 3rd day of May, 2023.

/s/ Thomas T. McClendon
Thomas T. McClendon
Georgia Bar. No. 431452
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300
tmcclendon@joneswalden.com
Liquidating Trustee