UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

**FILED**
U.S. Bankruptcy Court

AUG 0 3 2023

Middle District of Georgia

In re:                                              CH. 11

·TERI G. GALARDI,                                   CASE NO. 22-50035-JPS

Debtor.                                             Judge James P. Smith

## Creditor Tiffany Thompson (claim #114) Notice of Filing Bar Complaint Against Trustee Mr. McClendon Because He Said He Will Not Pay Me What I am Owed

A copy of the complaint I filed because the trustee has never paid me what the court ordered him to pay.

Date: 7/28/2023

Signature: /s/ Tiffany Thompson

Claim #114

20 Rockdale Street #329
Baintree, MA 02184
soulfulliving2022@gmail.com
857-505-6491

I am a creditor in a bankruptcy case and my claim # is 114.  Mr. McClendon is the trustee holding all the creditor's money for Class 8 claims including mine.  In the confirmed plan he was ordered to pay me 42% of $368,787.84.  My first significant contact with Mr. McClendon was when I recieved an email from him on June 11, 2023.  A copy is included with this complaint claiming I owe some other lawyers in a case in Miami, FL that I never received any money from becuase the case its not over yet.  I also never agreed to pay an hourly rate either.  I could never afford that and would never agree to that.  I never signed anything where I am responsible for hourly fees and certainly never signed anything allowing a lien to be placed on my claim #114 in this bankrupcty case.  How can someone owe attorney fees to 2 Florida lawyers in a bankruptcy case in Macon, Georgia when the case they worked on is not even over yet?

# There is no judgment, settlement or award in the case!

On June 12, 2023 I told Mr. McClendon I don't owe any money in the Florida case to the attorneys and to pay me what he owes me $76,645.  He did not pay me, instead he said several times in past few weeks he is paying ALL MY MONEY to a clerk in Miami, Florida in an interpleader.  His letter states I owe $51,360 to the 2 attorneys in Florida but he has decided to keep all my money $76,645 and he still has not filed the interpleader like he said he would on July 11, 2023 letter.   The only way I can get my money at this time is if I sign the stupid letter he sent me and pay $51,360 that I DO NOT EVEN OWE.  You do not have to be an attorney to know this is wrong!



# STATE BAR OF GEORGIA
## GRIEVANCE
## CONFIDENTIAL

PLEASE TYPE OR PRINT LEGIBLY IN BLACK INK ONLY
DO NOT ALTER THIS FORM

YOUR NAME: __Tiffany Thompson__

MAILING ADDRESS: __29 Wyoming St, Unit 14 , Dorchester, MA 02121__
<br>Street or P.O. Box          City          State          Zip

YOUR EMAIL ADDRESS: __soulfulliving2022@gmail.com__

YOUR PHONE NUMBERS: (H/CELL) __857-505-6491__          (W) __Same__

NAME OF THE ATTORNEY: __Mr. Thomas McClendon as trustee of the Galardi Creditors Trus__
<br>Fill out a separate form for each attorney. Do not list law firms.

ADDRESS OF THE ATTORNEY: __699 Piedmont Ave. NE, Atlanta, GA 30308__

DATE OF FIRST CONTACT WITH ATTORNEY: __5/26/23__     DATE OF LAST CONTACT WITH ATTORNEY: __7/28/23__

DOES THIS ATTORNEY CURRENTLY REPRESENT YOU?  YES ☐  NO ☒     WAS THIS YOUR ATTORNEY? YES ☐ NO ☒

IS YOUR CASE: CRIMINAL ☐  CIVIL ☒     CASE # __22-50035 Middle District of GA Bankruptcy Court__

COUNTY: __Bibb County__          OR FEDERAL DISTRCIT: NORTHERN ☒ MIDDLE ☐ SOUTHERN ☐

CLEARLY DESCRIBE YOUR COMPLAINT AND ATTACH SUPPORTING DOCUMENTS:
__See attached paper for the complaint...__

If more space is needed, please attach other pages. **Please do not write on the back.**

Return to:     **State Bar of Georgia**
**Office of the General Counsel**
**104 Marietta St. NW, Suite 100**
**Atlanta, GA 30303**

"I affirm that I have read and understand the information and instructions.
The information I have provided here is true to the best of my knowledge."
SIGNATURE: _____
DATE: __7/28/2023__

**OPTIONAL: PLEASE PROVIDE THE NAME AND PHONE NUMBER OF SOMEONE WE CAN CONTACT IF WE HAVE DIFFICULTY CONTACTING YOU.**

NAME OF CONTACT PERSON: _____

PHONE NUMBERS OF CONTACT PERSON: (H)_____ (CELL) _____

Revised 07.02.2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 20-23230-CIV-CANNON-OTAZO-REYES

ANGELA MILNER, ET. AL,

        Plaintiffs

v.

TERI GALARDI,

        Defendant

_____/

**NOTICE OF FILING AND ASSERTING AMENDED CHARGING LIEN
BY THE LAW OFFICES OF ASTRID E. GABBE, P.A. AND
AINSWORTHY DUDLEY, ESQ.
FOR ATTORNEYS' FEES AND COSTS**

    **NOTICE IS GIVEN** that The Law Office of Astrid E. Gabbe, P.A. ("AG")

and Ainsworth Dudley, Esq. ("AD") assert an attorneys' charging lien on any judgment,

settlement or award to be entered in the above-captioned proceeding, to Plaintiffs Ameera

Brewer ("Brewer"), Rasheedah Mays ("Mays") and Tiffany Thompson ("Thompson") and on

all money due from defendant on any such judgment, settlement or award, and any and all

assets, property, money or proceeds retained, received or recovered by Brewer, Mays and

Thompson, or any of their assigns in connection with this judgment, settlement or award.

This charging lien claims attorneys' fees and costs due AG and AD for legal services rendered

to Brewer, Mays and Thompson in this proceeding. To date, nothing has been paid to the

undersigned counsel and the total amount due to AG and AD is as follows:

    Ameera Brewer: $117,400.53

    Rasheedah Mays: $96,120.92

    Tiffany Thompson: $51,630.30

Case No. 11-21697-CV
United States District Court, S.D. Florida.

# Bruton v. Carnival Corp.

916 F. Supp. 2d 1262 (S.D. Fla. 2012)
Decided Aug 21, 2012

Case No. 11–21697–CV.

2012-08-21

Bemeva BRUTON, Plaintiff, v. CARNIVAL
CORPORATION, Defendant.

David Charles Appleby, John Heyward Hickey,
Hickey Law Firm, P.A., Miami, FL, Jeffrey
Charles Fox, Greenspoon Marder, P.A., Fort
Lauderdale, FL, Juan Pablo Gonzalez–Sirgo, J.P.
Gonzalez–Sirgo, P.A., Coral Gables, FL, for
Plaintiff. John Michael Magee, Carnival Cruise
Lines, Miami, FL, for Defendant.

EDWIN G. TORRES

1263 *1263

David Charles Appleby, John Heyward Hickey,
Hickey Law Firm, P.A., Miami, FL, Jeffrey
Charles Fox, Greenspoon Marder, P.A., Fort
Lauderdale, FL, Juan Pablo Gonzalez–Sirgo, J.P.
Gonzalez–Sirgo, P.A., Coral Gables, FL, for
Plaintiff. John Michael Magee, Carnival Cruise
Lines, Miami, FL, for Defendant.

## ORDER

**EDWIN G. TORRES, United States Magistrate
Judge.**

This matter is before the Court on two pending
motions filed in this closed case that relate to a
purported charging lien filed by pre-litigation
counsel to Plaintiff, Attorney Jeffrey Fox ("Fox").
First, present counsel for Plaintiff filed a Motion
to Allow Settlement Distribution and to Strike
Charging Lien [D.E. 38], that is fully ripe for

disposition. Fox responded in opposition to that
motion [D.E. 43]. Second, at the same time Fox
filed his own Motion for Attorneys' Fees and
"Notice of Charging Lien" [D.E. 42]. That latter
motion relates to the same issues as the former
motion and seeks to further the argument that Fox
and his law firm are entitled to fees and costs
under a charging lien in this case.

## I. BACKGROUND

A lengthy recitation of all the particular details of
the parties' pending dispute is not necessary, given
the Court's rulings herein. According to Attorney
Fox, he and his firm were retained by Plaintiff in
August 2010 to pursue personal injury claims
against the Defendant. Fox claims that legal work
was undertaken on Plaintiff's behalf from that date
through February 23, 2011, which included review
of medical records, legal research, together with
communications with the client, the client's
doctors, and the Defendant. Significantly,
however, no time was expended by Fox or his firm
in filing any litigation on the client's behalf,
1264 especially not this *1264 federal action. Fox
acknowledges, in fact, that on March 14, 2011,
Fox and his firm were discharged by the Plaintiff
as counsel on her behalf.

Following Fox's discharge, the Plaintiff sought
other counsel to represent her. Attorney Gonzalez–
Sirgo filed this action on May 11, 2011 [D.E. 1].
Plaintiff's present counsel, John Hickey of the
Hickey Law Firm, P.A., filed his appearance as co-
counsel of record for Plaintiff shortly thereafter
[D.E. 9]. The litigation proceeded until it was
successfully settled at mediation on or about

December 23, 2011. Fox and his firm had no involvement in the litigation after March 2011, which consequently means that Fox never filed any appearance in this case as counsel for Plaintiff. For the same reason, Fox did not participate in the mediation that resulted in the settlement of the case.

Importantly, there is no factual dispute that after Fox's discharge he never filed a notice of charging lien in this action, nor did he ever send his client any such notice. Instead, Fox confirms that he had no other contact with the case after his discharge until he received an email from Plaintiff's present counsel on or about May 16, 2012, advising him of the settlement and asking if Fox or his co-counsel intended to claim any entitlement to fees and costs against their former client. Fox then, for the first time, forwarded a written notice of client on or about May 17, 2012. Fox did not file with the Court, however, any such notice of charging lien. The Court, pursuant to the settlement, had already closed the case back in December 2011. The Court then formally dismissed the case with prejudice on May 24, 2012.

Plaintiff then filed the pending motion for approval of distribution and/or motion to strike charging lien, arguing that he had received a charging lien demand from Fox and his firm that should be stricken as untimely and defective. [D.E. 38]. Fox responded in opposition, arguing that his notice was timely since he had not heard of this case at all until counsel communicated with him and, further, that he was entitled to reimbursement of fees and costs incurred in representing the client prior to his discharge. Plaintiff replied, pointing out that former counsel had presented no authority showing that his notice was timely under Florida law or otherwise valid where counsel did not participate in the action and did not contribute to the resolution of the case. Fox filed his own cross-motion for fees [D.E. 42], which was the first time that he filed a notice in this action seeking to effectuate his charging lien.

## II. ANALYSIS

### A. The Court Lacks Jurisdiction

The federal courts are courts of limited jurisdiction. We possess only the power strictly authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The court's jurisdiction cannot be be expanded merely through judicial decree. *Id.* (citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted).

With the underlying claims in this litigation now being settled and dismissed, this Court's jurisdiction would ordinarily be extinguished. Any contractual dispute between Fox and Plaintiff, his client, are governed by state law. That dispute gives rise to no claims arising under federal law. And Fox and Plaintiff are all residents of the state of Florida; thus, diversity of jurisdiction is lacking. Accordingly, such dispute(s) would normally be beyond the limited jurisdiction that *1265 this federal court *1265 would have. Florida state court, which does have general jurisdiction over these parties and these claims, would be the appropriate forum to litigate such a dispute, assuming that counsel wished to pursue it and face the defenses and likely counter-claims available in an action at law.

There are narrow exceptions, however, to this general rule. One such exception, the doctrine of ancillary jurisdiction—that has been codified in part through federal statute, 28 U.S.C. § 1367 —"recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* at 378, 114 S.Ct. 1673. Justice Scalia's opinion for the Court in *Kokkonen* described this ancillary jurisdiction as a way "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority,

and effectuate its decrees." *Id.* at 379–80, 114 S.Ct. 1673. The Court, however, emphasized that the doctrine's limits are quite narrow. "[N]o controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." *Id.* (quoting *Fulton Nat'l Bank of Atlanta v. Hozier,* 267 U.S. 276, 280, 45 S.Ct. 261, 69 L.Ed. 609 (1925)).

As other cases have described it, ancillary jurisdiction "rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety," *Jenkins v. Weinshienk,* 670 F.2d 915, 918 (10th Cir.1982), and "may extend to claims having a factual and logical dependence on 'the primary lawsuit.' " *Peacock v. Thomas,* 516 U.S. 349, 355, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) (citations omitted). "The basis of the doctrine of ancillary jurisdiction is the practical need 'to protect legal rights or effectively to resolve an entire, logically entwined lawsuit.' " *Id.* (quoting *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)).

Ancillary jurisdiction is thus not a permissive doctrine; rather, it represents the "constitutional limits of federal judicial power." *Owen Equip.,* 437 U.S. at 371, 98 S.Ct. 2396. Although a district court's exercise of ancillary jurisdiction is discretionary, the court must be cautious in its willingness to expand its jurisdiction. *See, e.g., Foster v. Bd. of Trs. of Butler County Comm. Coll.,* 771 F.Supp. 1118, 1120 (D.Kan.1991).

One well recognized application of this narrow doctrine is the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due the attorneys for work performed in the lawsuit. *See, e.g., Gottlieb v. GC Financial Corp.,* 97 F.Supp.2d 1310 (S.D.Fla.1999) and *Zaklama v. Mount Sinai Medical Center,* 906 F.2d 650 (11th Cir.1990) (both adjudicating post-judgment attorneys' fees

disputes under Florida law charging liens); *see also Rivera–Domenech v. Calves bert Law Offices PSC,* 402 F.3d 246, 250 (1st Cir.2005) ("Courts have rested the exercise of jurisdiction over [attorney-client] fee disputes related to proceedings before them on the doctrine of ancillary jurisdiction."); *Garcia v. Teitler,* 443 F.3d 202, 207–09 (2nd Cir.2006) (federal courts have ancillary jurisdiction to address attorney fee disputes in ongoing criminal cases); *Garrick v. Weaver,* 888 F.2d 687, 690 (10th Cir.1989) (quoting *Jenkins,* 670 F.2d at 918: "It is well established that '[d]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction.' "); *Foster,* 771 F.Supp. at 1120 ("Courts have exercised ancillary jurisdiction over disputes between attorneys and 1266 clients over the proper amount of attorneys' fees due to the attorneys for work performed in the underlying litigation.").

In the context of attorney fee disputes, the exercise of ancillary jurisdiction is particularly appropriate because courts have inherent jurisdiction to supervise the bar and to insure compliance with the reasonableness standard set forth in the attorneys' rules of ethics and professional responsibility. *E.g., Garcia,* 443 F.3d at 207;*Rosquist v. Soo Line R.R.,* 692 F.2d 1107, 1111 (7th Cir.1982); *In re Michaelson,* 511 F.2d 882, 888 (9th Cir.1975); *Broughten v. Voss,* 634 F.2d 880 (5th Cir.1981) ("The basis for exercise of this ancillary jurisdiction is the responsibility of the court to protect its officers ... and the power of the court 'to do full and complete justice.' ") (internal citations omitted).

The supplemental jurisdiction statute, as amended and codified at 28 U.S.C. § 1367, incorporated these concepts of ancillary jurisdiction (plus the related concept of "pendent" jurisdiction) into "supplemental" jurisdiction: "... in any civil action of which the district courts have original jurisdiction, the district courts shall have

supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...."

From this it is clear that had Fox filed a charging lien in this case, after appearing as counsel of record and arising from a dispute that Fox had with Plaintiff as to the payment of fees, then the Court could correctly exercise supplemental jurisdiction over that dispute through a Florida charging lien proceeding. But the dispute here does not fall within that well-established narrow category of available ancillary jurisdiction. Fox concedes that he was never counsel of record in this litigation. He purportedly was retained by Plaintiff under a contingency fee contract but which never resulted in Fox instituting this action, either in state court or in federal court. Fox and his firm were discharged before any litigation ensued.

Under an accepted four-factor test for district courts to apply when determining whether to exercise ancillary jurisdiction, we must consider the following factors: (1) an ancillary matter should arise from the transaction that was the basis of the principal proceeding, during the course of the principal proceedings, or as an integral part of the main proceeding; (2) the federal court should be able to determine the matter without a substantial new fact-finding proceeding; (3) failing to determine the matter should not deprive a party of any important procedural or substantive right; and (4) the matter should be decided if necessary to protect the integrity of the principal proceeding or insure that its disposition is not frustrated. *Jenkins,* 670 F.2d at 918.

Applying this formulation of the necessary elements, Fox's newly-raised demands for reimbursement of fees and costs from Plaintiff woefully fail this test, just as they did in *Jenkins.* First, Fox's fee dispute with Plaintiff is not an integral part of the main proceeding. Fox never appeared as counsel of record in this case. His

firm's and his claims arose directly out of a legal relationship that pre-dated and was terminated prior to the litigation.

Second, the court would be unable to resolve the fee dispute without substantial new fact-finding on the breach of contract issue that involves a factual dispute that pre-dated the filing of this action and that will likely require adjudication of contractual claims, defenses, and counter-claims that are normally outside the scope of this court's subject matter jurisdiction. These extraneous and extra-jurisdictional claims will require substantial discovery and can likely only be resolved after a jury trial. *1267 Hence, because Fox's claim requires a substantial new fact-finding procedure foreign to this action, that normally counsels against the exercise of ancillary jurisdiction.

Third, the court will not deprive the parties of their rights by declining to decide the fee dispute. Fox was never a party to this action in any way. He did not even know it existed until it was over, a fact which utterly belies Fox's claimed entitlement to benefit from this jurisdiction. He can proceed with any contractual claims at law that he may have before a Florida court of general jurisdiction. The discharge of any untimely equitable charging lien in this forum does not dispose or adjudicate any such claim he or his firm may have in any other jurisdiction.

And, finally, we do not find that this fee dispute must be decided here to protect the integrity of the underlying litigation or to insure that its disposition is not frustrated. Resolution of this fee dispute is clearly not necessary to render complete justice to the parties and lawyers who appeared in this lawsuit. As Judge Martinez concluded in the dismissal of the *Travelocity* lawsuit, this action may simply be dismissed pursuant to the stipulated dismissal and all parties who ever had anything to do with the filing or resolution of this case may go hence without day.

Bruton v. Carnival, (No. E. Supp. S.D. Fla. 2012)

Therefore, in the Court's view the doctrine of ancillary jurisdiction cannot possibly apply to the fee claim now raised by Fox, whether or not that fee claim has any merit whatsoever. As the cases described above highlight, ancillary jurisdiction is designed, narrowly, to protect the parties to the litigation itself—not third parties like Fox who are strangers to the litigation. He and his law firm's claim does not have a "factual and logical dependence on the primary lawsuit." *Peacock v. Thomas,* 516 U.S. at 355, 116 S.Ct. 862. Fox was not counsel of record in the "lawsuit properly before the court" and his claims do not arise from "work done in the suit being litigated...." *Garrick v. Weaver,* 888 F.2d at 690 (quoting *Jenkins,* 670 F.2d at 918). His claims clearly do not arise from "work performed in the underlying litigation." *Foster,* 771 F.Supp. at 1120.

In short, Fox has not shown that the Court can or should exercise ancillary jurisdiction over his contractual dispute with his former client. *See also Pay Television of Greater New York, Inc. v. Sheridan,* 766 F.2d 92, 94 (2d Cir.1985) ("The district court's jurisdiction to fix fees stemmed from its power to control the case before it; a case between [plaintiff] and the sellers of the complained of equipment. [Counsel] was not a party to that suit and diversity between him and his client did not enlarge the district court's limited ancillary jurisdiction over the fee dispute."); *Indu Craft, Inc. v. Bank of Baroda,* 1996 WL 556935, *3 (S.D.N.Y. Oct. 1, 1996) (citing *Pay Television,* exercising ancillary jurisdiction over lawyer's fee dispute *except* as to work performed for client on other litigation not before the federal court; "Even assuming the validity of the second retainer agreement, when fixing the amount of the lien on the judgment procured in this action, the court may only consider the hours spent on this action.").

Finally, under the supplemental jurisdiction statute, the Court may "may decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which

it has original jurisdiction, or ... there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(3–4). For the reasons articulated above, and in accordance with the supporting cases we relied upon, the Court finds that supplemental jurisdiction should not be exercised over Fox's claim to fees and costs. To involve a federal court, after the underlying claims have been dismissed,[1268] over a lawyer's fee dispute that is generated from work performed prior to the litigation at issue is an undue extension of the supplemental jurisdiction statute.

## B. The Charging Lien is Defective Under Florida Law

The Court could stop here in its discussion based upon the absence of federal jurisdiction to adjudicate Fox's newly filed charging lien. But, in the interest of completeness, the Court has also reviewed Florida law with respect to the proper extension of charging liens under circumstances like this one. That review has revealed that Florida law also precludes the Court exercising jurisdiction to adjudicate this charging lien.

Florida common law defines a charging lien as a mechanism by which an attorney may enforce her equitable right to have costs and fees owed for legal services secured by the judgment or recovery in a lawsuit. *See Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom,* 428 So.2d 1383, 1384 (Fla.1983); *Flynn v. Sarasota County Pub. Hosp. Bd,* 169 F.Supp.2d 1363, 1368 (M.D.Fla.2001). "No statutes outline the requirements for valid attorney's liens in Florida. Rather case law acts as the sole guide for both attorneys and courts as to these liens." *Daniel Mones, P.A. v. Smith,* 486 So.2d 559, 561 (Fla.1986). All proceedings in Florida to resolve an attorney's charging lien for legal services are equitable in nature. *See Nichols v. Kroelinger,* 46 So.2d 722 (Fla.1950).

To impose a charging lien, a court in equity must find: (1) an express or implied contract between the attorney and client; (2) an express or implied

understanding that payment is either contingent upon recovery or will be paid from the recovery; (3) an attempt by the client to avoid paying or a dispute as to the amount of the fee; and, most relevant here, (4) a timely notice of a request for a lien. *E.g., Sinclair,* 428 So.2d at 1385; *Gottlieb,* 97 F.Supp.2d at 1311.

First, the Court finds that under current Florida law a charging lien only applies to legal services rendered in the case that produced the recovery, absent an express contractual provision to the contrary. *Jaye v. Royal Saxon, Inc.,* 687 So.2d 978 (Fla. 4th DCA 1997) ("Fees and charges incurred outside of a suit are not, absent special circumstances, covered by a charging lien."). The court in *Jaye* did state that "special circumstances" could result in a different outcome. But the Court has found no case where that exception has ever been applied, and indeed does not know what special circumstances the court was contemplating.

But even if there are such circumstances available, this is not the case to apply them. A charging lien will not generally attach to anything other than the "tangible fruits" of the lawyer's services. *Correa v. Christensen,* 780 So.2d 220 (Fla. 5th DCA 2001). That means that "[b]y definition, an attorney's charging lien cannot attach to property not involved in the suit and not before the court." *Cole v. Kehoe,* 710 So.2d 705, 706 (Fla. 4th DCA 1998); *see also Franklin & Marbin, P.A. v. Mascola,* 711 So.2d 46, 53 (Fla. 4th DCA 1998) (charging lien proceeding only applies when "identifiable property recovered as a result of the lawyer's labors"); *Litman v. Fine, Jacobson, Schwartz, Nash, Block & England, P.A.,* 517 So.2d 88, 92 (Fla. 3d DCA 1987) ("the lien will attach only to the tangible fruits of the services"). "It is not enough to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien

will attach only to the tangible fruits of the services." *Mitchell v. Coleman,* 868 So.2d 639, 641 (Fla. 2d DCA 2004).

Here, Fox's charging lien cannot attach to property that was not involved in a lawsuit that he or his firm filed. Although his work may have indirectly benefitted the recovery here, sufficient to give rise to a quantum meruit claim (a proposition we assume but do not find), that work does not give rise to an equitable charging lien in an action foreign to him. His claim, to the extent it has any legs at all, must be filed in the ordinary course of a contract action in state court. In other words, his equitable lien never attached to the recovery in this case, because he never filed, worked on, or settled this case. He never even knew about this case until it was over. By definition, therefore, he cannot assert an equitable charging lien.

At best, he has a contractual at law claim for quantum meruit, in accordance with *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz,* 652 So.2d 366, 368 (Fla.1995), a case that he relies on here. But unlike the discharged lawyers in that case who had initiated the action prior to their discharge, *id.* at 367, Fox never filed or ever appeared as counsel of record in this action. An equitable lien is not available to him under those circumstances under Florida law.

Second, Fox's newly-filed charging lien cannot be adjudicated under Florida law because it is grossly untimely. "There are no requirements for perfecting a charging lien beyond timely notice." *Sinclair,* 428 So.2d at 1385. "In order to give timely notice of a charging lien an attorney should either file a notice of lien or otherwise pursue the lien in the original action." *Daniel Mones,* 486 So.2d at 561. In order to be "timely," notice of an attorney's charging lien must be filed "before the lawsuit has been reduced to judgment or dismissed pursuant to settlement." *Brown v. Vermont Mutual Ins. Co.,* 614 So.2d 574, 580 (Fla. 1st DCA 1993); *see also Citizens & Peoples Nat'l Bank of Pensacola v. Futch,* 650 So.2d 1008, 1015 (Fla.

1st DCA 1994) ("The attorney's charging lien must be filed before the case goes to final judgment or is dismissed.").

There is no dispute in this case that Fox did not file or serve any "notice" of his charging lien until *after* he was notified by Plaintiff's counsel that the case had been resolved. As Florida caselaw provides, such a notice does not timely perfect a right to impose an equitable charging lien. To do so, Fox had to serve his notice shortly after his discharge from the case or, at the very least, before the resolution of the case. Instead, Fox served and, then filed, his notice after the case had been closed. It is glaringly untimely.

Moreover, the court has found no case where similar facts were deemed timely for purposes of an equitable charging lien. To the contrary, even the cases that Fox found relevant to this issue underscore the point that Fox's notice is untimely and defective. *See, e.g., In re Summit View, LLC,* 2011 WL 3268367, at *5 (M.D.Fla. Aug. 1, 2011), *aff'd,*472 Fed.Appx. 900 (11th Cir.2012) ( "The confirmation order in the Summit View case was entered on March 17, 2010. At the time of confirmation, Appellant had not given any notice of a charging lien. By its own admission, Appellant asserts that the first mention of a charging lien was made during open court at a status conference on May 26, 2010, over two months after confirmation. Furthermore, Appellant's Notice of Charging Lien was not filed until August 17, 2010. Therefore, according to Appellant's own argument, and admitted facts, the notice was given after the final confirmation order was entered, and therefore, was not timely as to the plan payments."); *Levine v. Gonzalez,* 901 So.2d 969, 973–74 (Fla. 4th DCA 2005) 1270 ("Because [plaintiffs*1270/clients] filed an effectual notice of voluntary dismissal on September 29, 2003, and [law firm] did not file the notice of charging lien until October 1, 2003, the trial court was without jurisdiction to entertain, or enter an order regarding, the motion to foreclose the charging lien filed on November 20,

2003. Additionally, because the charging lien itself was not filed prior to the notice of voluntary dismissal, it was not perfected because '[i]n order to be 'timely,' notice of an attorney's charging lien must be filed 'before the lawsuit has been reduced to judgment or dismissed pursuant to settlement.' ' ") (citations omitted). [1]

> [1] None of the other cases cited by Fox support his position. In *Barry A. Cohen, P.A. v. LaTorre,* 595 So.2d 1076 (Fla. 2d DCA 1992), the plaintiff law firm filed an action for declaratory relief. This is not relevant to the timeliness of a notice of an equitable charging lien in the underlying proceeding. Similarly, *Berryer v. Herts,* 522 So.2d 510 (Fla. 3d DCA 1988), is also irrelevant because that was an action where an attorney brought a counter-suit against his former client for the balance of his fee pursuant to language in a retainer agreement. This is hardly the case here and illustrates, instead, how Fox will have to pursue his and his law firm's legal claims if he wishes to do so.

Fox's argument that his lack of knowledge of this federal action should excuse his failure to timely perfect an equitable charging lien is unpersuasive. It instead reenforces why Fox has no equitable claim. Fox had the obligation to monitor federal or state filings that he should have anticipated in light of the plaintiff's alleged injuries. Had he done so, he could have perfected the lien. Instead, he chose to sit back and wait. That decision resulted in Fox seeking to give notice of a lien after a full settlement of the litigation and on the eve of its ultimate dismissal. The notice is thus untimely under any measure. *See, e.g., Flynn,* 169 F.Supp.2d at 1369 ("After careful consideration, I conclude that the notice of charging lien in this case was untimely, coming as it did well over three months after the Corrected Judgment and over two months after the mediated settlement of all remaining issues and claims.").

## III. CONCLUSION

Bruton v. Carnival Corp., No. 11-21697-CIV, 2012 WL 1627729, at *1 (S.D. Fla. 2012)

For these reasons, neither Federal nor Florida law allow this Court to adjudicate Fox's or his law firm's charging lien. The lien is indeed a nullity and must be stricken, without prejudice of course to Fox pursuing any claims at law that he may before a court of general jurisdiction.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1. Plaintiff's Motion to Allow Settlement Distribution, and Motion to Strike Charging Lien, if any, of Prior Counsel [D.E. 38] is **GRANTED.** Any notice of charging lien served upon Plaintiff or his counsel related to this matter is **STRICKEN** without prejudice to resolution of any at law claims related thereto. Plaintiff's counsel shall distribute all remaining settlement funds in accordance with the settlement reached in this action.

2. Fox's Motion for Attorneys' Fees and Notice of Charging Lien [D.E. 42] is DENIED without prejudice to resolution of any at law claims related thereto. This Court lacks jurisdiction to adjudicate any such claims. The Notice of Charging Lien is STRICKEN and discharged for purposes of this action. This action remains Closed.

 casetext

**Former Attorneys for Plaintiffs**
**Ameera Brewer, Rasheeda Mays & Tiffany**
**Thompson**
Astrid E. Gabbe
/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of foregoing was served via CM/ECF,

email and/or First Class U.S. Mail to the parties on the attached service list as indicated on this

10th day of July 2023.

**Former Attorneys for Plaintiffs**
**Ameera Brewer, Rasheeda Mays & Tiffany**
**Thompson**
Astrid E. Gabbe
/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com

## SERVICE LIST

### *Served via CM/ECF*

howardbrodskyesq@aol.com

### *Served via Email*

Ameera Brewer
ameerabrewer@gmail.com

Rasheedah Mays
rasheedahmays@yahoo.com

# JONES & WALDEN LLC

### ATTORNEYS AT LAW

699 PIEDMONT AVENUE NE
ATLANTA, GA 30308
TELEPHONE (404) 564-9300
FACSIMILE (404) 564-9301
INTERNET www.joneswalden.com

July 11, 2023

*Via U.S. Priority Mail & Email*

Tiffany Thompson
20 Rockdale St. #329
Braintree, MA 02184
soulfulliving2022@gmail.com

Ainsworth G. Dudley
4200 Northside Parkway
Building 1, Suite 200
Atlanta, GA 30327
adudleylaw@gmail.com

Astrid E. Gabbe
PO Box 4216
Hollywood, FL 33083-4216
astridgabbe@gmail.com

> Re:   Teri G. Galardi, 22-50035
>        U.S. Bankruptcy Court, Middle District of Georgia

Dear Ms. Thompson,

As you know, Teri G. Galardi ("Ms. Galardi") filed a bankruptcy case on January 12, 2022, in the Middle District of Georgia (Macon, Georgia). As part of the bankruptcy case, a Committee of Unsecured Creditors (the "Committee") was appointed to represent the interests of all unsecured creditors. After negotiations, the Committee and Ms. Galardi filed a *Joint Plan of Reorganization*, which proposed to make payments of cash and property into a liquidating trust (the "Liquidating Trust") for the benefit of unsecured creditors (the "Plan"). This Plan was approved by the Bankruptcy Court on April 14, 2023. The same order also approved me as the trustee of the Liquidating Trust. The Plan became effective and final on April 28, 2023.

You filed a proof of claim asserting that you were an unsecured creditor of Ms. Galardi in the amount of $368,787.84. Pursuant to the Plan, Ms. Galardi has agreed to fund the Liquidating Trust with approximately $10 million of cash and property. As the Liquidating Trustee, I am tasked with selling the property and, after payment of operating expenses, distributing the funds to unsecured creditors.

This letter details the proposed distributions I am making to you and your attorneys in the next few weeks. **Please know that this is not the only distribution I will be making. I will make additional distributions later.** In this round, I am distributing $5,000,000.00 to creditors pro-rata based on each creditor's percentage of claims out of the total of claims held. Because the total unsecured claims are $24,058,181.15, creditors are receiving a 20.78% distribution. **Again, I will have at least one more distribution in a similar amount and, depending on future events, may have further distributions after that.**

However, as you and I have discussed in email, I do not have a W-9 for your claim. The ones you sent previously show as blank when I open it. A W-9 before I can disburse on your claim.

I have received notice Astrid Gabbe and Ainsworth Dudley filed of an Amended Notice of Charging Lien in the underlying *Moore* case in the Southern District of Florida, Miami Division, and claim a lien on all proceeds due to you. A copy of that lien is enclosed.

The amount to be paid on this claim in this distribution is $76,645. If you and the other two creditors against whom the lien is asserted agree, I will divide up the claim of lien equally among the three claims. Thus, the amounts which I would pay to satisfy the claims of lien are as follows:

| Recipient | Reason | Amount |
|---|---|---|
| Tiffany Thompson | Creditor | $25,015 |
| Ainsworth Dudley and Astrid Gabbe | Claim of Lien | $51,360 |
| Total | | $76,645 |

For the other distributions, the full amount of the distribution payable for this claim would be paid to you. In other words, I expect you will receive as an additional distribution a similar amount to the total distribution in this letter.

I am hopeful you, Mr. Dudley and Ms. Gabbe can reach an agreement. However, if you, Mr. Dudley and Ms. Gabbe are unable to reach an agreement, I will need to file an interpleader in the United States District Court for the Southern District of Florida, Miami Division to determine the dispute between you and Mr. Dudley and Ms. Gabbe. In doing so, I will be entitled to my attorney's fees for doing so from the fund. I am willing to talk further with you on this.

I understand that, if a distribution is made on this claim, you want a check mailed to the address listed above. Permissible methods include a wire transfer, a check mailed to the above address, or a check to be picked up at my office. Payment by wire will incur a wire fee, so the amount actually received may be slightly less than the amount listed above. Please let me know which one you prefer. If wire, I will need wire instructions and a contact to confirm those instructions by phone.

In order to make this distribution (assuming that everything required above is addressed), I would ask that you to execute this letter agreeing to the above distributions. Signature blocks are immediately following my signature. If you choose not to do so, please let me know as well so I can interplead the funds.

If you choose to sign this letter or reach an agreement with Mr. Dudley and Ms. Gabbe, in order to make this distribution, I will need an executed W-9 and a copy of your driver's license or other government-issued identification. I have attached a blank W-9 for your convenience. Please provide this to me as soon as possible. You can email it to bdernus@joneswalden.com or you can mail it to Jones & Walden, LLC, Attn: Blake Dernus, 699 Piedmont Ave, NE, Atlanta, Georgia 30308.

Please let us know if you have any questions. I look forward to your response.

Sincerely,

Thomas T. McClendon, Esq.
Liquidating Trustee

TTM/bd
Enclosure

Agreed to by:

_____
Tiffany Thompson

Agreed to by:                                          Agreed to by:
DUDLEY LAW LLC                                  LAW OFFICE OF ASTRID E. GABBE, P.A.


_____                     _____
By: Ainsworth Dudley                              By: Astrid E. Gabbe, Esq.
Its: _____                                   Its: _____

Tiffany Thompson
godsdaughterspen@gmail.com

**Form W-9**

(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
## Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

Give Form to the requester. Do not send to the IRS.

*Print or type.*
*See Specific Instructions on page 3.*

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶ _____

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

Requester's name and address (optional)

**6** City, state, and ZIP code

**7** List account number(s) here (optional)

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number

☐☐☐ – ☐☐ – ☐☐☐☐

**or**

Employer identification number

☐☐ – ☐☐☐☐☐☐☐

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**   Signature of U.S. person ▶                    Date ▶

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting,* later, for further information.

**Note:** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

• An estate (other than a foreign estate); or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States.

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items.

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 24% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the instructions for Part II for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code,* later, and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships,* earlier.

## What is FATCA Reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code,* later, and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

# Specific Instructions

## Line 1

You must enter one of the following on this line; **do not** leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account (other than an account maintained by a foreign financial institution (FFI)), list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9. If you are providing Form W-9 to an FFI to document a joint account, each holder of the account that is a U.S. person must provide a Form W-9.

a. **Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

Note: ITIN applicant: Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

b. **Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

c. **Partnership, LLC that is not a single-member LLC, C corporation, or S corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

d. **Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

e. **Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

## Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

## Line 3

Check the appropriate box on line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box on line 3.

| IF the entity/person on line 1 is a(n) . . . | THEN check the box for . . . |
|---|---|
| • Corporation | Corporation |
| • Individual<br>• Sole proprietorship, or<br>• Single-member limited liability company (LLC) owned by an individual and disregarded for U.S. federal tax purposes. | Individual/sole proprietor or single-member LLC |
| • LLC treated as a partnership for U.S. federal tax purposes,<br>• LLC that has filed Form 8832 or 2553 to be taxed as a corporation, or<br>• LLC that is disregarded as an entity separate from its owner but the owner is another LLC that is not disregarded for U.S. federal tax purposes. | Limited liability company and enter the appropriate tax classification. (P= Partnership; C= C corporation; or S= S corporation) |
| • Partnership | Partnership |
| • Trust/estate | Trust/estate |

## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space on line 4 any code(s) that may apply to you.

**Exempt payee code.**

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—a tax exempt trust under a section 403(b) plan or section 457(g) plan

**Note:** You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

### Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns. If this address differs from the one the requester already has on file, write NEW at the top. If a new address is provided, there is still a chance the old address will be used until the payor changes your address in their records.

### Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN.

If you are a single-member LLC that is disregarded as an entity separate from its owner, enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note:** See *What Name and Number To Give the Requester,* later, for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at *www.SSA.gov.* You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/Businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. Go to *www.irs.gov/Forms* to view, download, or print Form W-7 and/or Form SS-4. Or, you can go to *www.irs.gov/OrderForms* to place an order and have Form W-7 and/or SS-4 mailed to you within 10 business days.

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, 4, or 5 below indicates otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see *Exempt payee code,* earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

Form W-9 (Rev. 10-2018)

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), ABLE accounts (under section 529A), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) other than an account maintained by an FFI | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Two or more U.S. persons (joint account maintained by an FFI) | Each holder of the account |
| 4. Custodial account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 5. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 6. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 7. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 8. Disregarded entity not owned by an individual | The owner |
| 9. A valid trust, estate, or pension trust | Legal entity[4] |
| 10. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 11. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 12. Partnership or multi-member LLC | The partnership |
| 13. A broker or registered nominee | The broker or nominee |
| 14. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 15. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships*, earlier.

*Note: The grantor also must provide a Form W-9 to trustee of trust.

Note: If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records From Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Pub. 5027, Identity Theft Information for Taxpayers.

Victims of identity theft who are experiencing economic harm or a systemic problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at *spam@uce.gov* or report them at *www.ftc.gov/complaint*. You can contact the FTC at *www.ftc.gov/idtheft* or 877-IDTHEFT (877-438-4338). If you have been the victim of identity theft, see *www.IdentityTheft.gov* and Pub. 5027.

Visit *www.irs.gov/IdentityTheft* to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

(P) 404-564-9300 | (F) 404-564-9301 | tmcclendon@joneswalden.com

NOTICE: THE INFORMATION CONTAINED IN THIS ELECTRONIC COMMUNICATION AND ANY DOCUMENTS ATTACHED
HERETO MAY CONTAIN CONFIDENTIAL INFORMATION WHICH IS LEGALLY PRIVILEGED AND IS INTENDED ONLY FOR THE
USE OF THE INDIVIDUAL TO WHOM THE TRANSMISSION IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT,
OR THE PERSON RESPONSIBLE FOR CONVEYING THE INFORMATION TO THE INTENDED RECIPIENT, YOU ARE HEREBY
NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR USE OF ANY INFORMATION CONTAINED IN THIS
TRANSMISSION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE
IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR REPLY BY E-MAIL AND DESTROY THIS TRANSMISSION. THANK
YOU.

**From:** Canda Atiya Imani X <soulfulliving2022@gmail.com>
**Sent:** Friday, July 28, 2023 7:16 AM
**To:** Tom McClendon <tmcclendon@joneswalden.com>
**Subject:** Re: $25,015...???

Also...Please tell me where you get the authority to freeze all my money and give it to someone else?

T.Thompson

On Fri, Jul 28, 2023, 7:04 AM Canda Atiya Imani X <soulfulliving2022@gmail.com> wrote:

MR. MCCLENDON,

YOU HAVE TO SEND ME AT A MINIMUM WHATEVER IS NOT BEING QUESTIONED OR DISPUTED AND THAT IS
$25,015. WHY ARE YOU MAKING ME BEG YOU TO SEND ME MY MONEY?

T. THOMPSON

# M Gmail

Fri, Jul 28, 2023 at 1:02 PM

From: **Tom McClendon** <tmcclendon@joneswalden.com>
Date: Fri, Jul 28, 2023 at 12:34 PM
Subject: RE: $25,015...???
To: Canda Atiya Imani X <soulfulliving2022@gmail.com>

Madam,

Under the Plan and the Liquidating Trust, I am to make distributions on the unsecured claims. For the distributions on this particular claim, I have competing claims that I have to resolve before I can make any distributions.

I am not sending any funds to any individual, including you, any attorneys, or anyone else without one of two things: (1) agreement by all parties (in this case, you and the attorneys making a claim against your distribution) or (2) a court determination of who is entitled to what.

Other creditors have agreed or settled the attorneys fees. You have not. That's certainly your right, but it does mean that I can't disburse on this proof of claims, because I don't have agreement between the individuals making a claim on this distribution. **(If you want to settle this before I file the interpleader, let me know)**.

Faced with that, the best way I know to obtain a court determination of who is entitled to what is to interplead with a court (meaning I send the money to the court) the amounts for the court's determination of who is entitled to what. The Florida lawyer I have engaged has indicated that I should interplead the distribution. The court will make the determination and disburse the funds. I will be asking the court to reimburse me for my costs for doing so from the distribution.

Thomas T. McClendon, Esq.

Partner

Jones & Walden, LLC

699 Piedmont Ave, NE | Atlanta, GA 30308



Tiffany Thompson
89 Wyoming St., #14
Dorchester, Ma
02121

U.S. Bankruptcy Court
Middle District of Georgia
P.O. Box 1957
Macon, Ga. 31202

U.S. POSTAGE
FCM LG ENV
KISSIMMEE, FL
JUL 31, 2023
$0.00
R2305P15C987-26

Retail

RDC 99

3-202

Please