UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
(MACON DIVISION)


| | | |
|---|---|---|
| IN RE: | ) | CASE NO: 22-50035-JPS |
| | ) | Chapter  11 |
| | ) | |
| TERI G. GALARDI, | ) | Macon, Georgia |
| | ) | |
| | ) | Wednesday, June 21, 2023 |
| Debtor. | ) | |
| | ) | 11:11 a.m. to 11:55 a.m. |


HEARING RE:

LIQUIDATING TRUSTEE'S OBJECTION TO CLAIM OF JOCELYN JOHNSON
WITH RESPONSE;

LIQUIDATING TRUSTEE'S OBJECTION TO CLAIM OF SHAKIR WILLIAMS
WITH RESPONSE;

LIQUIDATING TRUSTEE'S OBJECTION TO CLAIM OF JAMMIE PARKER
WITH RESPONSE


BEFORE THE HONORABLE JAMES P. SMITH,
UNITED STATES BANKRUPTCY JUDGE


<u>APPEARANCES</u>:            SEE PAGE 2


Court Recorder [ECRO]:   Denise Harris


Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES**:


For Debtor:                CHRISTOPHER W. TERRY, ESQ.
                           Boyer Terry
                           348 Cotton Ave., Suite 200
                           Macon, GA 31201
                           478-742-6481


For Astrid Gabbe,          JASON M. ORENSTEIN, ESQ.
Jammie Parker:             Jason M. Orenstein, PC
                           P.O. Box 4086
                           Macon, GA 31208
                           478-743-6300


For Liquidating Trustee: THOMAS MCCLENDON, ESQ.
                           Jones & Walden
                           699 Piedmont Ave. NE
                           Atlanta, GA 30308
                           404-564-9300

1      **Macon, Georgia; Wednesday, June 21, 2023; 11:11 a.m.**

2                    **(Call to Order)**

3          **THE CLERK:**  All rise.

4          **THE COURT:**  Be seated please.

5          All right, good morning, ladies and gentlemen.  We'll

6   call the *Galardi* matter.  This is Chapter 11, Case Number

7   22-50035, and we have some claim objections.

8          Let me have appearances for the record please.

9          **MR. MCCLENDON:**  Good morning, Your Honor.  Tom

10  McClendon as Liquidating Trustee.

11         **THE COURT:**  Okay.

12         **MR. TERRY:**  Chris Terry on behalf of the debtor, Teri

13  Galardi.

14         **THE COURT:**  All right.

15         **MR. ORENSTEIN:**  Jason Orenstein on behalf of Claimant

16  Astrid Gabbe and Jammie Parker.

17         **THE COURT:**  Okay.  All right.  Mr. McClendon, I have

18  read all of this.  Let's take up the Gabbe matter first, okay?

19         **MR. MCCLENDON:**  All right.

20         **THE COURT:**  My understanding is, is that you've got a

21  judgment which includes contingency fees so you've got the

22  damages plus contingencies.  And we've got a proof of claim for

23  the contingency fee and we've got a claim for the entire amount

24  of the judgment.

25         We had a claim for just the damages but that was

1  withdrawn by Mr. Gabbe.  Is it Mr. Gabbe, Mr. Orenstein?

2          **MR. MCCLENDON:**  Mrs. Gabbe.

3          **MR. ORENSTEIN:**  Mrs.

4          **THE COURT:**  Mrs.  Okay.  Which is think was a

5  mistake.

6          It seems to me that the way to resolve this is to

7  object to the judgment claim, the full amount of the judgment

8  claim and ask that it be reduced to the 307 dollar amount,

9  whatever it is.  And that way, you've got a claim for the

10  judgment damages, for the judgment damage plaintiff, and then

11  you've got a claim for the attorney's fees.

12          Doesn't that get you where you want to be?

13          **MR. MCCLENDON:**  It does with one giant caveat which

14  is why I asked Mr. Terry to be in the room today --

15          **THE COURT:**  Okay.

16          **MR. MCCLENDON:**  -- which is that is a secured claim

17  subject to a preference action which is in front of Your Honor.

18  Which I cannot -- I am the liquidating trustee of the unsecured

19  creditors which I cannot object to.

20          **THE COURT:**  I see.

21          **MR. MCCLENDON:**  That -- yes, Your Honor.  And I am

22  trying to get to the same place as Your Honor and I would

23  believe Ms. Gabbe is trying to get to the same place as Your

24  Honor and I -- however we get there, I'm happy with but that is

25  why I had to object to this one.

1          And I will also say, Your Honor, there were three

2   claims of similar type that were filed as contingency claims.

3          **THE COURT:**  Right.

4          **MR. MCCLENDON:**  I asked Ms. Gabbe to withdraw all

5   three.  Two of them; one she withdrew voluntarily, one she

6   didn't respond to and let the order get entered, and then this

7   is the third one.

8          And I believe the concern on this one is that it is

9   now owned by Red Shield Funding which may be an adversarial

10  relationship.  And her concern, and I understand it, is she

11  doesn't want her contingency fee to go to Red Shield

12  Funding -- which I agree with.  And if we can't get to a

13  resolution on the claim, then I would most likely have an

14  adversary proceeding in front of Your Honor to determine the

15  extent, validity and amount of the charging order.  And I do

16  think ...

17         So my proposed resolution was disallow 57, which is

18  her 35 percent, get me down to the hundred present so I have

19  the correct amount of the unsecured pool that I can make pro

20  rata distributions on.  The whole point of today is to get my

21  pool pro rata -- my unsecured pool fixed so I can make my

22  allocations and make distributions.

23         **THE COURT:**  Okay.  Wait, wait, wait, wait, wait.

24         What's the preference adversary proceeding?

25         **MR. MCCLENDON:**  The preference adversary proceeding

1  is on Claim 110 which is the Red -- Alexis King, Red Shield

2  Funding claim.  It was asserted to be in a secured claim.  The

3  last plan amendment that we did went from an unsecured claim to

4  a secured claim on that claim subject to a preference analysis.

5  They got a judicial lien, it's FIFa equivalent in Florida,

6  within the 90-day period.

7          **THE COURT:**  Okay so --

8          **MR. MCCLENDON:**  At least that's my understanding.

9          **THE COURT:**  So that's Ms. King got the preference.

10         **MR. MCCLENDON:**  Ms. King got the preference, that's

11  correct.

12         **THE COURT:**  Okay.

13         **MR. MCCLENDON:**  And so that is the subject of a

14  preference action that Mr. Terry has filed.

15         **THE COURT:**  All right.  Hold on one second.

16      **(Pause)**

17         Now, is there any problem with the charging lien by

18  Mrs. Gabbe?  Is there any --

19         **MR. MCCLENDON:**  In which way, Your Honor?

20         **THE COURT:**  Is there any independent objection to her

21  charging lien?

22         **MR. MCCLENDON:**  As per the liquidating trustee, I

23  don't -- I don't see a -- I'm gonna have to go back.  I'm going

24  through it.  After this hearing, I'm going through and I'm

25  going to be reviewing every claim, together with the attorney

1    fee claims.  But as of today, I don't see an issue with the

2    charging lien.

3         **THE COURT:**  Okay.  And Mrs. Gabbe has said that under

4    Florida law, she's entitled to assert that claim against the

5    Debtor, the defendant in the lawsuit.

6         **MR. MCCLENDON:**  That's right.

7         **THE COURT:**  You don't dispute that.

8         **MR. MCCLENDON:**  I don't dispute that.

9         **THE COURT:**  Okay, all right.

10        Did she file the proof of claim?  Was the claim filed

11    as secured?

12        **MR. MCCLENDON:**  The claim was not.  And that is

13    another issue, Your Honor.  The claim was not filed as a

14    secured claim.  It was originally an unsecured claim, timely

15    filed on the bar date and all of that.  And then after I filed

16    my objection, she did amend it.  I meant to say that upfront.

17    She amended it to say it's secured.  I'm not sure how she's

18    asserting it's secured.

19        **THE COURT:**  Well she's got a judgment lien.

20        **MR. MCCLENDON:**  Against Ms. King.

21        **THE COURT:**  No, no, no, no.  No, excuse me.

22        Was the big claim filed by who --

23        **MR. MCCLENDON:**  Oh, 110.  So the Red Shield Funding

24    claim, Your Honor.

25        **THE COURT:**  Yeah.  Who filed that?  Ms. King, right?

1          **MR. MCCLENDON:**  Either Ms. King or Red Shield Funding

2    acting on her behalf.

3          **THE COURT:**  Okay.

4          **MR. MCCLENDON:**  I'm not sure which, to be quite

5    candid.

6          **THE COURT:**  Was that claim filed as secured?

7          **MR. MCCLENDON:**  Yes, it was.

8          **THE COURT:**  Okay.  So it's not an amended claim that

9    was originally filed as secured.

10          **MR. MCCLENDON:**  That's correct.

11          **THE COURT:**  Okay.  Well, one way or the other you've

12    got to put in the plan amount for the damages claim and the

13    contingency fee claim, right?

14          **MR. MCCLENDON:**  Uh-huh.

15          **THE COURT:**  Okay.  And under your plan, as I

16    understand it -- and I'm looking at Article 6 -- you don't pay

17    that till the claims are allowed, right?

18          **MR. MCCLENDON:**  That is correct but the -- I do have

19    to reserve --

20          **THE COURT:**  Well I know.

21          **MR. MCCLENDON:**  -- as if it's to be paid, so yes.

22          **THE COURT:**  But the issue is not whether they get a

23    claim or not, it's whether, number one, it's secured; and

24    number two, whether part of it goes to Ms. Gabbe and part of it

25    goes to Ms. King.  But you've still got to reserve the full

1   four hundred and whatever thousand dollars one way or the

2   other, right?

3          **MR. MCCLENDON:**  No.  I have to reserve 135 percent if

4   one of these claims are not disallowed.  So I have a hundred

5   percent claim for Ms. King which is 110.  And I have a

6   35 percent claim for Ms. Gabbe.  And so I would be

7   over-withholding and I will not -- there's no circumstance

8   where I would be paying 135 percent of these claims, is my

9   under --

10         **THE COURT:**  I got --

11         **MR. MCCLENDON:**  So --

12         **THE COURT:**  I got that.

13         **MR. MCCLENDON:**  Okay.  Then I don't understand your

14   question, Your Honor.

15         **THE COURT:**  All right.  Then why can't you object to

16   the big claim and have it asked -- to have it reduced to the

17   judgment damages amount only?

18         **MR. MCCLENDON:**  Because it's a secured claim as of

19   this point.

20         **THE COURT:**  Okay.

21         **MR. MCCLENDON:**  But I still have to reserve -- we did

22   specifically in the plan carve out, I have to reserve for this

23   claim.  Even though it's a secured claim because it might be

24   coming into my unsecured claim pool.  So I do have to reserve

25   for it one way or the other.

1        **THE COURT:**  Okay.  But if you object to it, then it's

2  part of Article 6, isn't it?

3        **MR. MCCLENDON:**  Can I object to a secured claim?  I

4  don't think I have standing to do so.  I think only Mr. Terry

5  has standing to do that.

6        **THE COURT:**  All right.  Mr. Terry, why don't you

7  object to the -- why don't you object to the amount of the

8  claim and point out that the status of whether it's secured or

9  not is in the adversary proceeding?

10        **MR. TERRY:**  We have filed an adversary proceeding.

11        **THE COURT:**  But you haven't objected to the amount of

12  the claim, have you?

13        **MR. TERRY:**  I don't think any basis to object to the

14  amount of the claim.  The only claim that the adversary

15  proceeding pertains to is Claim 110 which is the full amount of

16  the judgment.

17        **THE COURT:**  Yeah.

18        **MR. TERRY:**  The other claim of Ms. Gabbe is for a

19  35 percent interest in that judgment.  Our only claim in the

20  adversary proceeding is that it's not secured.  It was

21  perfected within 90 days of filing.  It should be treated as an

22  unsecured.

23        **THE COURT:**  Okay.

24        **MR. TERRY:**  The whole amount of the claim should be

25  kicked back and treated as a Class 8 claim and then they can

1  argue about how it's split up.

2          **THE COURT:**  Okay.  Mr. McClendon, I don't understand

3  why you can't object to the 110 Claim.

4          **MR. MCCLENDON:**  It's a secured claim.

5          **THE COURT:**  I don't care whether it's secured or not.

6  You can still object to the amount.  You're --

7          **MR. MCCLENDON:**  The only -- Your Honor, I don't have

8  any -- I'm the liquidating trustee for the unsecured creditors.

9  That's my issue.

10          **THE COURT:**  Oh.

11          **MR. MCCLENDON:**  I don't -- I don't have the ability

12  to object to the Georgia Tax Department of Revenue's priority

13  tax, I don't have any standing to do so.

14          **THE COURT:**  Okay.

15          **MR. MCCLENDON:**  That's my problem.

16          **THE COURT:**  I got it, I got it.

17          **MR. MCCLENDON:**  Sorry.

18          **MR. TERRY:**  He only has standing as to the Class 8

19  claims.

20          **THE COURT:**  I see.  Thank you.  That's -- sometimes

21  the fog just gets in the way.  I understand exactly what you're

22  saying now.

23          **MR. MCCLENDON:**  It's a lot of fog, Your Honor.

24          **THE COURT:**  Okay all right.  Well and so Mr. Terry,

25  why can't you object to the amount of the secured claim?  You

1   represent the Debtor.

2          **MR. TERRY:**  I can object to the amount of the secured

3   claim.

4          **THE COURT:**  Why can't you say it's a duplicate of one

5   -- of the Gabbe claim?

6          **MR. TERRY:**  The Gabbe claim is part of that.

7          **THE COURT:**  I understand that.  But you can't have it

8   twice.

9          **MR. TERRY:**  Right.

10         **THE COURT:**  Okay.  So why can't you ask me to make it

11  part to Gabbe, part to King?

12         **MR. TERRY:**  Why do I care?

13         **THE COURT:**  Well you've got a fiduciary relationship

14  with all the creditors.

15         **MR. TERRY:**  But if I -- if I -- if Claim 110 is

16  reclassified as Class 8, it's out of my hands.  I don't -- I

17  mean it's gone.  I mean it's clear to me that it is an

18  unsecured claim.  We've spoken to Red Shield Funding.  Red

19  Shield Funding has agreed that they'll be classified as

20  Class 8.  Alexis King as agreed, though Astrid Gabbe has not

21  agreed yet.  If she'll consent, then we can do a consent order

22  on that Claim 10 -- 110, we'll go to Class 8.  Then if Astrid

23  Gabbe's --

24         What is it?  57?  Thirty five percent?

25         -- her proof of Claim 57, which is her 35 percent, if

13

1  that's objected to and kicked out, well then you have the

2  proper amount, she has a claim for her 35 percent from her

3  attorney's lien, and then it's just a matter of Mr. McClendon

4  and Ms. Gabbe determining how that's gonna be paid.

5          **THE COURT:**  Okay, all right.

6          Well, all right.  Let me hear from Mr. Orenstein.

7  What's your thoughts, Mr. Orenstein?

8          **MR. ORENSTEIN:**  Your Honor, I think what's happening

9  is the preference action is pending but I believe that there --

10 it's eminent that there's going to be a deal where Red Shield

11 is going to agree that it's unsecured.  And I don't

12 want -- Ms. Gabbe, my client, doesn't want to be a part of that

13 deal.

14         **THE COURT:**  Why not?

15         **MR. ORENSTEIN:**  Well, because she believes -- she

16 contend -- she opposes the preference action and hasn't filed

17 an answer yet, the deadline hasn't passed, but her intension is

18 to oppose the preference action and she believes it should be a

19 secured claim.

20         **THE COURT:**  Well it is for her.  She's got a charging

21 lien.

22         **MR. ORENSTEIN:**  She believes it's secured as to the

23 Debtor.  In other words, the preference --

24         **THE COURT:**  She hasn't been sued though.

25         **MR. TERRY:**  She is included.

1             **MR. ORENSTEIN:**  She is --

2             **THE COURT:**  Oh, okay.

3             **MR. ORENSTEIN:**  She's a defendant in the preference

4    action.

5             **THE COURT:**  All right.  I keep getting corrected.

6    Thank you.

7             **MR. ORENSTEIN:**  So she's a defendant in the

8    preference action.

9             **THE COURT:**  Okay.

10            **MR. ORENSTEIN:**  And if she's forced to go be -- I

11   guess subordinated to Claim 110, then she's gonna be bound by

12   whatever result is reached --

13            **THE COURT:**  Okay.

14            **MR. ORENSTEIN:**  -- in that preference action and we

15   don't want to do that.

16            **THE COURT:**  Okay.

17            **MR. ORENSTEIN:**  I think -- so my client's position

18   and request would be that this claim objection -- that's

19   pending before the Court that we're here arguing about and

20   talking about -- be handled with the adversary proceeding.  And

21   whatever the outcome -- and I believe there's even -- the

22   Federal Rules even allow for claims objections over amounts to

23   be addressed amidst adversary proceedings as long as it relates

24   to the claim.

25            **THE COURT:**  All right.  So --

1    **MR. ORENSTEIN:**  But that's how I think the best

2  outcome would be.  That way it all can be wrapped up quickly

3  and in one --

4    **THE COURT:**  Okay.  Let me ask a question.

5    It seems -- if the basis of the preference is that

6  the judgment lien was obtained within 90 days, that's a simple

7  get-out-the-calendar-and-count on your fingers.  So --

8    **MR. ORENSTEIN:**  I understand.  I thought the same

9  thing.  But when you look at the -- here's the defense I guess

10  to the adversary -- is that the judgment was obtained outside

11  the 90 days and the writ of execution was outside the 90 days.

12  The FIFa, filed in Florida was inside the 90 days.  So there's

13  a question in my mind -- which I still have not done research

14  in -- I guess I'm foreshadowing what the answer is to the

15  adversary -- that there might be some sort of relation back --

16  relate-back that would apply to prevent the preference action

17  from succeeding.

18    **THE COURT:**  Well good luck.

19    **MR. ORENSTEIN:**  I understand.

20    **THE COURT:**  I don't think I've ever seen that.

21    **MR. ORENSTEIN:**  Basically the bankruptcy was filed in

22  January and the judgment was in September and the FIFa was in

23  October.

24    **THE COURT:**  I mean that's no different -- that no

25  different than the car loan being made on this date and them

1  waiting, you know, within --

2       **MR. ORENSTEIN:**  Well -- applied for a title.  I

3  understand, Your Honor.

4       **THE COURT:**  -- outside the reach-back period.  I

5  mean, I've never seen law that says a judicial lien dates from

6  the date of the original judgment.  It's as a secured --

7       **MR. ORENSTEIN:**  Well perhaps the writ of execution.

8  I guess then there's a question of -- I understand, Your Honor.

9       **THE COURT:**  Okay.  Well I mean, again, Florida law

10  may be different than Georia law so --

11       **MR. ORENSTEIN:**  Fair enough.  In all honesty, Your

12  Honor, I was retained yesterday.  It's a pretty complicated

13  case but I've done my best to --

14       **THE COURT:**  I gotcha.  Thank you.  I appreciate that,

15  Mr. Orenstein.

16       **MR. ORENSTEIN:**  -- to help the Court, you know, look

17  at these issues.

18       **THE COURT:**  Mr. McClendon, Mr. Terry, what's wrong

19  with me just carrying the objection with the preference?

20       **(Pause)**

21       **MR. TERRY:**  Well one, I don't generally see a problem

22  with that.

23       Ms. Gabbe's claim for her 35 percent, for her

24  attorney's fees, she claims she has a perfected lien for that.

25  She has -- she filed -- in postpetition, she submitted an

1  attorney's lien against the judgment amount.

2          As far as the Debtor is concerned, the Debtor is --

3  that claim's not applicable to the Debtor.  That claim was --

4          **THE COURT:**  Wait, wait, wait, wait, wait.  Wait.

5          In -- so she got her charging lien postpetition?

6          **MR. TERRY:**  Uh-huh.

7          **THE COURT:**  But nobody's objected to the claim on

8  that basis.

9          **MR. TERRY:**  That wasn't the basis for her claim.

10         **MR. MCCLENDON:**  And Your Honor, that claim was an

11  unsecured claim until a couple weeks ago.  So nobody had a

12  basis to object on that basis.

13         **THE COURT:**  Okay.  All right.  So in other words,

14  when you -- wait a minute.

15         Okay.  So when you filed your objection, her claims

16  stood as an unsecured claim?

17         **MR. MCCLENDON:**  Yes, Your Honor.

18         **THE COURT:**  Okay.

19         **MR. MCCLENDON:**  57 was an unsecured claim when --

20         **THE COURT:**  Okay.  And then after you filed the

21  objection, she amended her claim to assert the charging lien.

22         **MR. MCCLENDON:**  To assert that it is a secured claim

23  as to Mrs. Galardi.  And I do not understand the basis for

24  asserting that.

25         **THE COURT:**  Okay.  All right.  Then you really need

1    to amend your objection also, don't you?

2         **MR. MCCLENDON:**  I guess so.  I mean unless Your Honor

3    is going to carry that objection to the adversary proceeding,

4    the preference adversary proceeding which --

5         **THE COURT:**  Well that issue is not -- there's no

6    paperwork on that issue.  That's the point I'm making.  So it

7    seems to me that you need to file an amendment to your

8    objection to her claim if there's a basis where you say it's

9    not a claim against the Debtor -- or wait a minute.

10         **MR. MCCLENDON:**  Your Honor, a post-confirmation

11    filing --

12         **THE COURT:**  Yeah.

13         **MR. MCCLENDON:**  -- to amend from unsecured to secured

14    is unusual --

15         **THE COURT:**  Yes.

16         **MR. MCCLENDON:**  -- and not acceptable.  We'll put it

17    that way.

18         **THE COURT:**  Well I agree with that.  I can't think of

19    a legal basis.  It doesn't sound right, that's true.

20         **MR. MCCLENDON:**  Maybe the *Winn-Dixie* case.

21         **THE COURT:**  Okay.  So Mr. Terry, why isn't it your

22    duty to object to the secured status of her claim?

23         **MR. TERRY:**  Well she filed an unsecured claim that

24    was treated under the plan.

25         **THE COURT:**  I understand.

1          **MR. TERRY:**  The plan was confirmed.

2          **THE COURT:**  Okay.

3          **MR. TERRY:**  How is she able to now come in and argue

4    that her claim is now secured?  The plan is res judicata --

5          **THE COURT:**  Well she may not be able to but that --

6          **MR. TERRY:**  I would contend --

7          **THE COURT:**  -- that objection has not been asserted

8    in the court yet, except orally here.

9          **MR. TERRY:**  Certainly.  But I would contend and argue

10   that the plan is res judicata as to her status.

11         **THE COURT:**  Okay.  Then if you want to file an

12   objection on that basis and serve Mr. Orenstein, then we'll

13   consider that.

14         **MR. TERRY:**  Okay.

15         **THE COURT:**  But I'm not going to rule on that issue

16   today when it hadn't been -- it hadn't -- I guess Mr. Orenstein

17   is probably hearing that for the first time.  So that issue is

18   not before me today.

19         The only issue before me today is, I've got a

20   duplicate claim.  That's the only thing before me.  And I can

21   resolve that by just carrying it with the preference action.

22         And the issue of whether or not it's a secured claim

23   at all against -- a claim at all against Ms. Galardi is not

24   before me.

25         **MR. TERRY:**  Correct.

1          **THE COURT:**  I mean you've told me about it but it's

2   not -- it not ripe for my decision today.

3          **MR. TERRY:**  Well we hope to submit a consent order

4   any day now that will clarify --

5          **THE COURT:**  Well --

6          **MR. TERRY:**  -- that it is a Class 8 unsecured claim.

7   But the only holdup is Ms. Gabbe.

8          **THE COURT:**  Yeah.  Ms. Gabbe doesn't want to sign

9   that.

10          **MR. TERRY:**  The holder of the claim, who is the

11   holder of the judgment, agrees.  But hopefully we can get that

12   resolved and have it --

13          **THE COURT:**  Okay.

14          **MR. TERRY:**  Otherwise we'll --

15          **THE COURT:**  But what Ms. Gabbe is now saying by her

16   amended claim is that she holds that claim.  Because she's

17   saying that she has a charging lien.  And she has a right under

18   Florida law -- and I'm just telling you what's in the affidavit

19   -- I'm sure you've read it -- she has a right to assert that

20   claim against Ms. Galardi.

21          Now, if there's a problem with the charging -- if her

22   right to assert it against Galardi only arises upon getting the

23   charging lien -- okay?  -- then there's probably a problem with

24   that because she got it postpetition.  And I would agree, on

25   the face of it -- you know I haven't seen briefs or anything --

1   I'm not ruling -- but it certainly seems that if this claim was

2   treated as an unsecured claim in the plan, that's how -- that's

3   res judicata.

4          And I think what needs to happen is, you, as the

5   Debtor's attorney, need to file an objection to the claim,

6   either it being a secured claim or a claim against Ms. Galardi,

7   because it sounds to me like Ms. Gabbe is saying, the only way

8   I get to charge it against the Debtor is if I've got a charging

9   lien.

10         Is that right, Mr. Orenstein?

11         **MR. ORENSTEIN:**  That's right, Your Honor.

12         **THE COURT:**  And if the charging lien is invalid as a

13   violation of the automatic stay, then she doesn't have a right

14   to assert the claim against the Debtor.

15         **MR. TERRY:**  I'm not quite sure how I follow that she

16   has --

17         **THE COURT:**  All right.

18         **MR. TERRY:**  -- has a claim against the Debtor,

19   whether she has a charging lien or not, on a -- well, on a

20   technically secured claim now; that is, in my opinion,

21   certainly an unsecured claim.  Her charging lien only attaches

22   to whatever is paid on that claim, and her percentage --

23   whatever her engagement letter says and her charging lien

24   entitles her to.

25         **THE COURT:**  Okay.

1            **MR. TERRY:**  Are we assuming, for the purposes of this

2    argument, that the underlying claim is fully secured against

3    the Debtor; and therefore, her charging lien -- again, I don't

4    see how that can be asserted against the Debtor in any fashion.

5            **THE COURT:**  Okay.  Then that basis, that claim --

6    that objection to that claim has not been made formally.  So it

7    needs to be made formally.

8            **MR. TERRY:**  Okay.  We can do that.

9            **THE COURT:**  Okay.

10           **MR. TERRY:**  My bigger question is what prevents

11   creditors, post-confirmation, from just, "Let's just start

12   filing claims and amending our claims".  And that seems like

13   it's --

14           **THE COURT:**  Well I can't enter a universal order

15   prohibiting people worldwide from doing that, okay?

16           **MR. TERRY:**  I mean isn't what confirmation of the

17   plan does?

18           **THE COURT:**  Well, and that's why you object to the

19   claim.

20           **MR. TERRY:**  It wasn't in existence.

21           **THE COURT:**  I appreciate that.

22           **MR. TERRY:**  But we'll file an objection.

23           **THE COURT:**  Look.  It's just like if anybody had

24   filed a claim, a new claim after the claims deadline.  And

25   after the plan was confirmed, you'd file an objection to that

1   claim.  You wouldn't just see me on the street and say, "Just

2   don't pay any attention to that one".  You've got to file an

3   objection to it because it's been filed.  They're asserting a

4   legal position in this court.  You've got to file a defense to

5   it or in rejection to it.

6           It sounds to me like you're absolutely right but I'm

7   not going to rule on the basis of just us talking about it

8   today --

9           **MR. TERRY:**  Certainly.

10          **THE COURT:**  -- especially when Ms. Gabbe hadn't been

11  given notice of your position on that, okay?  I mean,

12  Mr. Orenstein can go talk to her and I strongly suspect that

13  you might even get Mr. Orenstein to get Ms. Gabbe to understand

14  that she can't do this, unless he can find some law that says

15  she can.  So --

16          **MR. TERRY:**  Well we filed the adversary proceeding.

17  We think it's clear it's an unsecured claim which would kick

18  her lien against the unsecured claim, not against Ms. Galardi.

19  We're hoping to be able to resolve that quickly.

20          If Mr. Orenstein can explain it to Ms. Gabbe, then we

21  can do a consent order and this will all be satisfied very

22  quickly.

23          **THE COURT:**  Okay.  All right.

24          **MR. MCCLENDON:**  One thing I would like to just

25  address.

1          **THE COURT:**  Yes?

2          **MR. MCCLENDON:**  Is Your Honor okay -- amenable to

3    including all of the -- all of these issues in that adversary

4    proceeding in the preference action?  I think there would be,

5    (a), jurisdiction.  It would wrap it up faster.  And if I have

6    to intervene in the adversary proceeding I can do that.  I

7    think there's already --

8          **THE COURT:**  I think we just let Mr. Terry file an

9    objection --

10         **MR. MCCLENDON:**  Just file a plain old objection.

11         **THE COURT:**  -- and I'll carry them separately.

12         **MR. MCCLENDON:**  Okay.  I just am -- I'm worried about

13   the procedural aspects of a claim objection and a preference

14   action at the same time.  And then I'm going to have to

15   withhold for both of these claims in distributions so I won't

16   be able to pay out as much to the other unsecureds.  But I do

17   understand the concerns so --

18         **THE COURT:**  Well why don't -- why don't -- why don't

19   you file a quick motion to allow, until the objections and the

20   adversary are resolved, to allow you to reserve only for the

21   big claim?

22         **MR. MCCLENDON:**  Okay.

23         **THE COURT:**  Because --

24         **MR. MCCLENDON:**  I'll do that.

25         **THE COURT:**  -- one way or the other, that's all

1    you're going to ever have to reserve, it's a timing issue and

2    I --

3          **MR. MCCLENDON:**  But it -- yes, Your Honor.  That is

4    exactly right.  It is a timing issue.

5          **THE COURT:**  There's no objection to the full claim,

6    it's just how do you reserve for it?  And that's a timing

7    issue.  So if you want to file a quick motion and serve it on

8    Ms. King or Red Shield -- whoever that is -- and Mr. Orenstein,

9    I suspect we can get that resolved pretty quick.  Okay?

10          **MR. MCCLENDON:**  All right.

11          **THE COURT:**  Okay?

12          **MR. MCCLENDON:**  Thank you, Your Honor.

13          **THE COURT:**  So what I'll do is I'll continue this

14   hearing for six --

15          When are the answers to the adversary proceeding due,

16   Mr. Terry?

17          **MR. TERRY:**  Served June 1st so 30 days from June 1st.

18          **THE COURT:**  Okay, okay.  Well why don't I -- I'll

19   just continue this objection for 60 days and we'll see where we

20   are in 60 days.

21          **MR. MCCLENDON:**  Your Honor, I would like to point out

22   in the adversary proceeding, we do have a -- I guess a pretrial

23   conference already scheduled --

24          **THE COURT:**  Okay.

25          **MR. MCCLENDON:**  -- for July 31st --

1          **THE COURT:**  All right.

2          **MR. MCCLENDON:**  -- at 2:30.

3          **THE COURT:**  Okay.  Well it seems to me -- I mean, and

4     Mr. Orenstein, you can tell your client this.  We're not going

5     to have more than the judgment amount reserved for.  And I

6     don't know how she could get a claim against the debtor

7     postpetition.  I just don't see how she could do that without

8     it being a stay violation.  And of course under Eleventh

9     Circuit law, that's void ab initio.  Okay?  So it seems like

10    that's where we're going but I'm not going to rule, I'm not

11    going to make a procedural error and rule on something that

12    hadn't been properly noticed out and teed up so that's where

13    we're going though.  Okay.  All right.

14          So we'll continue that one.  All right?  That was

15    easy.

16          All right.  Now, let's talk about the Williams and

17    Johnson and Parker cases.  Where does that stand?

18          **MR. MCCLENDON:**  Your Honor, to address your question,

19    I think it's ready to be heard.  My understanding is

20    (inaudible) --

21          **MR. ORENSTEIN:**  Yeah.

22          **MR. MCCLENDON:**  -- represents Ms. Parker and -- just

23    Ms. Parker.

24          **MR. ORENSTEIN:**  Correct.  I represent Ms. Parker

25    only.

1          **THE COURT:**  Gotcha.  Gotcha, okay.

2          All right.  Well they got a judgment -- I mean excuse

3  me.  Their claims have been dismissed by the district court and

4  that's on appeal to the Eleventh Circuit but the filing of the

5  bankruptcy stayed the appeal process.

6          The automatic stay is supposed to be a shield for the

7  debtor.  It's not supposed to be a club for the debtor, okay?

8  It looks to me like you're trying to use the automatic stay as

9  a club against these people.

10         Why isn't the proper thing to do, for me to enter an

11 order lifting the stay to allow the Claimants to proceed with

12 their appeal?  And if the court of appeals reverses the

13 district court, then they've got a claim.  If the court of

14 appeals affirms, the objection will be sustained.  But I just

15 don't see why it's fair for the Debtor to have stopped the

16 appeal process and then say, "Since they don't have -- since

17 they can't complete the appeal, we've got a final order,"

18 especially when I don't see any Eleventh Circuit law.  I hadn't

19 looked but I'm assuming you have and --

20         **MR. MCCLENDON:**  The only -- the only case -- this is

21 obviously a very procedurally --

22         **THE COURT:**  Yeah.

23         **MR. MCCLENDON:**  -- upside down issue.

24         **THE COURT:**  And it only happens in bank --

25         **MR. MCCLENDON:**  And the only case that I found is

1   that *M.F. Holdings* case, that is the Second Circuit, that

2   addresses the same res judicata, addresses the same weighing,

3   balancing act and disallowed the claim.  So that would be my

4   first response to your argument.

5          The second part of the response to your argument --

6   not to your -- to your question posed to me is, I fully

7   expected that when they got my claim objection -- and I talked

8   -- I talked to Ms. Parker and I said, I don't know -- I've

9   never -- I told her and I will tell you, Your Honor, I've never

10  encountered this procedural issue in my life.  It is one of

11  those that is just like, okay, I'm going to have to hit the

12  books and I'm going to have to hit them hard.  And I didn't

13  know whether I was going to object to these claims or not.  I

14  had no idea.  I knew these were -- I knew these three were out

15  there but --

16         **THE COURT:**  Are they held by Red Shield also?

17         **MR. MCCLENDON:**  No, no Your Honor.  So my

18  understanding these three, until just maybe this moment -- and

19  I am frankly still not sure -- there was a mention of a

20  transfer before Your Honor took the bench.  And I don't know

21  anything about that and I have not seen the docket.  But

22  until --

23         **THE COURT:**  Who mentioned it?

24         **MR. MCCLENDON:**  I don't even have his name.  There

25  was a Chris.

1          **THE COURT:** Oh, oh, I'm sorry.  Is there someone else

2     on the phone?

3          **MR. KOSACHUK:** Yes, Your Honor.  Chris Kosachuk as

4     assignee of Respondent Claimants Johnson and Williams.

5          **THE COURT:** All right.  Will you spell your last name

6     please?

7          **MR. KOSACHUK:** Yes, sir.  K-o-s -- like Sam,

8     -- a-c-h-u-k.

9          **THE COURT:** K-o-s-a-c-h-u-k?

10         **MR. KOSACHUK:** --u-k, correct.

11         **THE COURT:** And pronounce that again for me.

12         **MR. KOSACHUK:** Kosachuk.

13         **THE COURT:** Okay, Kosachuk, okay.

14         **MR. KOSACHUK:** Right.

15         **THE COURT:** All right.  And --

16         **MR. MCCLENDON:** Your Honor, may I ask a question?

17         **THE COURT:** Yes.

18         **MR. MCCLENDON:** Mr. Kosachuk, are you affiliated with

19    Ms. Gabbe?  Are you her paralegal?

20         **MR. KOSACHUK:** I am not -- I am not affiliated with

21    Ms. Gabbe, no.

22         **MR. MCCLENDON:** Have you and I ever talked before?

23         **MR. KOSACHUK:** Yes, we have.

24         **MR. MCCLENDON:** Have we talked about this particular

25    case?

1          **MR. KOSACHUK:**  Yes, we have.

2          **MR. MCCLENDON:**  And you and Ms. Gabbe and I talked

3     about this case and you -- when I said, I referenced you as

4     Ms. Gabbe's paralegal, you did not correct me.  Is that

5     correct?

6          **MR. KOSACHUK:**  I don't recall that.

7          **MR. MCCLENDON:**  But you and Ms. Gabbe called me to

8     discuss these cases and resolving these cases, right?

9          **MR. KOSACHUK:**  Yes, in relation to the claim of

10    Johnson, Williams and Parker.

11         **MR. MCCLENDON:**  Okay.

12         **MR. KOSACHUK:**  Because I have the assignment from

13    Johnson and Williams.

14         **THE COURT:**  All right.

15         **MR. MCCLENDON:**  Your Honor, I'm just going to state

16    for the record, my understanding is this is Ms. Gabbe's

17    paralegal.  He has told me that he is not authorized to

18    practice law and that, I will just state for the record.

19         **THE COURT:**  Okay.

20         **MR. MCCLENDON:**  All right.

21         **THE COURT:**  And in what capacity are you appearing,

22    Mr. Kosachuk?

23         **MR. KOSACHUK:**  I'm appearing on behalf of myself, pro

24    se.  I am not an attorney.  That is correct.  I have not had a

25    chance to retain local counsel but I believe the issue that's

1    before the Court is relatively simple and I think Your Honor

2    has a good understanding of it, and I think Your Honor could

3    probably decide this right now.

4           **THE COURT:**  But wait, wait, wait, wait, wait.

5           **MR. KOSACHUK:**  And --

6           **THE COURT:**  Wait.  What is your relationship?

7           **MR. KOSACHUK:**  I am the assignee of the Claimants

8    Johnson and Williams.

9           **THE COURT:**  Well, I don't have any evidence of that,

10   sir.  There's a procedure for assigning a claim.  There's a

11   rule that says you have to file a notice with the clerk's

12   office; and to my knowledge, that has not been done.  So --

13          **MR. KOSACHUK:**  You are correct, Your Honor, and I

14   haven't had a chance to do that because, as I said, I don't

15   have access to the electronic filing system and therefore I

16   haven't been able to file the notice, I haven't been able to

17   file the assignment.  All of this just happened very recently

18   and therefore I also haven't been able to retain local counsel.

19          **THE COURT:**  Okay.  All right, all right.

20          **MR. KOSACHUK:**  So I'm here now as just sort of a

21   placeholder and if the Court wants to have all that filed, I'll

22   get all that filed.  If the Court prefers me to have local

23   counsel, I'll hire local counsel.

24          **THE COURT:**  Okay.  Mr. Orenstein?

25          **MR. ORENSTEIN:**  Yes, Your Honor.

1          **THE COURT:**  You represent Ms. Parker.

2          **MR. ORENSTEIN:**  I represent Ms. Parker, correct.

3          **THE COURT:**  Do you know anything about the

4    assignment?

5          **MR. ORENSTEIN:**  I just -- I spoke to Mr. Kosachuk

6    this morning and he related to me the very same things I just

7    heard him tell the Court.

8          **THE COURT:**  Have you spoken to Ms. --

9          **MR. ORENSTEIN:**  Up until this morning, I didn't think

10   -- I didn't think there was anyone -- I didn't know what was

11   going to happen to Ms. Johnson or Ms. Williams.

12         **THE COURT:**  But have you talked to Ms. Parker about

13   the alleged assignment?

14         **MR. ORENSTEIN:**  No.

15         **THE COURT:**  Okay, well -- okay.  Well, here's what

16   I'm going to do.

17          I'm going to continue these objections for 60 days.

18   And Mr. Kosachuk, you have a right to file an assignment.  And

19   if you do that, then you have to serve the original

20   claimholders and Ms. Parker can object to your assignment if

21   she so desires.  And if she acknowledges it, then it won't be

22   objected to.

23         **MR. KOSACHUK:**  Your Honor, if I may?  I did not take

24   assignment of Ms. Parker's claim.

25         **THE COURT:**  Oh, you don't have Ms. Parker's claim?

1        **MR. ORENSTEIN:**  That's right.

2        **MR. KOSACHUK:**  No.  Mr. Orenstein represents

3  Ms. Parker and her claim.

4        **THE COURT:**  Okay.  All right, I'm sorry.  All right.

5        **MR. ORENSTEIN:**  He's just here on Johnson and

6  Williams.

7        **THE COURT:**  Okay.  Mr. McClendon?

8        **MR. MCCLENDON:**  Your Honor, I would very much like to

9  get this liquidating trust wrapped up by the end of the year.

10        **THE COURT:**  Well I appreciate that.  Again, I'm

11  just --

12        **MR. MCCLENDON:**  I am not trying to use this as a

13  shield.  And I am not the debtor, for one.

14        **THE COURT:**  I understand that, I understand that.

15        **MR. MCCLENDON:**  But Your Honor, they've had almost

16  two months to file a motion for relief from stay.  They haven't

17  done so.

18        There are jurisdictional questions pending at the

19  Eleventh Circuit that were responded to.  And I think two of

20  the three -- the third one being diversity jurisdiction which I

21  think it was addressed properly -- but the other two, I've had

22  personal experience with the Eleventh Circuit on that very

23  issue for not getting certified -- the certified question

24  certified by the district court and up to the Eleventh Circuit.

25        I think if you grant a motion for relief from stay,

1  this is what's going to happen.  The jurisdictional question is

2  going to sit there for about -- the one I had was, I believe,

3  nine months, and then the Eleventh Circuit is going to kick out

4  the appeal on the jurisdictional question because it was not

5  certified as a appeal by the district court.  It was not a

6  adjudication of all claims by all parties and therefore it

7  needed to be certified.

8         So I think what's going to happen if the motion for

9  relief from stay is granted, then Your Honor is -- and I am

10 going to have to reserve for this for however long it takes the

11 jurisdictional.  And then we're going to come back and I'm

12 going to be really scratching my head, Your Honor, because

13 you're going to have a district court case that has been stayed

14 by the bankruptcy court -- by the bankruptcy case, excuse me --

15 and then at that point we have I guess a final judgment and

16 then you have to -- you do have to grant the objection.

17        But that's just all -- that's going to all take time.

18 That's why the M.F. Holdings case did say it is a final

19 judgment.  It is -- these are supposed to wrap up and be

20 timely.  And I just -- that's -- that's my concern is we're

21 going to have 700 ... And this is another thing.

22        They amended two of the three claims to double,

23 post-confirmation.  And this is -- I mean I'm with Mr. Terry.

24 Res judicata on the plan.   I guess I've got a claim objection

25 filed.  So Your Honor's procedural concern about the other

1    ones, at least this is the same claim.  But they're playing

2    fast and loose here with these claims.

3            This needs to get wrapped up and I think the way to

4    do that is to grant the claim objection.  It is res judicata.

5    And Mr. Orenstein can -- we can get into that issue.  But if it

6    is res judicata, then it is res judicata unless and until

7    reversed.  And there's the M.F. Holdings cite, a Supreme Court

8    case, that says so.  And so giving them this opportunity to go

9    ahead and basically previewing our whole motion for relief from

10   stay, there's not merits here.

11           **THE COURT:**  Okay well --

12           **MR. MCCLENDON:**  And so that --

13           **THE COURT:**  Wait, wait, wait.

14           I'm not going to step into the shoes of the Eleventh

15   Circuit and rule on the merits of the appeal.  Okay?  I hear

16   what you're saying.  And were I sitting on the Eleventh Circuit

17   I might -- might agree with you but that's not my role here.

18   I --

19           **MR. MCCLENDON:**  Well, it is your role to preview the

20   merits as to the -- that is Eleventh Circuit law, Your Honor.

21           **THE COURT:**  I understand that.

22           Mr. Orenstein, there isn't a response.  The

23   affidavits don't respond to the legal argument that

24   Mr. McClendon is making.  And I haven't read the case, okay?

25   So here's what I'm going to do.

1          Instead of relief from the stay, what I'm going to do

2    is I'm going to give you 20 days to respond to the legal issue

3    here on behalf of Ms. Parker and then I will take that matter

4    under advisement.

5          **MR. ORENSTEIN:**  Thank you, Your Honor.

6          **THE COURT:**  So it just seems to me, the only question

7    as to these claims -- and Mr. Kosachuk, you can get a lawyer

8    and you have the same 20 days to have your lawyer file a

9    response to the legal position that the judgment in the

10   district court is final, even though it's under appeal.  Okay?

11   And for that reason it's res --

12         **MR. KOSACHUK:**  Yes, Your Honor --

13         **THE COURT:**  And it's res judicata.

14         **MR. KOSACHUK:**  And Your Honor, I've actually done the

15   research on that and I can tell the Court --

16         **THE COURT:**  Well I'm not going to --

17         **MR. KOSACHUK:**  -- under the Eleventh Circuit --

18         **THE COURT:**  No, no, no, no; no, no, no.

19   Mr. Kosachuk, you are -- I'm going to let you file something in

20   writing, okay?

21         **MR. KOSACHUK:**  Yes, sir.

22         **THE COURT:**  Okay.  Okay.  And I will take that issue

23   under advisement.  It seems that that's the only issue here,

24   right?  Mr. McClendon?

25         **MR. MCCLENDON:**  Yes.

1          **THE COURT:**  Okay.

2          **MR. MCCLENDON:**  Whether it's binding on appeal.

3          **THE COURT:**  Right.

4          **MR. MCCLENDON:**  And I would -- may I have a -- like

5    seven-day response period?

6          **THE COURT:**  Sure, sure, yeah.

7          **MR. MCCLENDON:**  I'm not looking to hold up anything

8    for sure --

9          **THE COURT:**  I understand, I understand.

10         **MR. MCCLENDON:**  -- but that --

11         **THE COURT:**  Okay, okay.  All right.  So 20 days for

12   the Claimants to file a response to the legal position that the

13   Committee has taken, that the judgment in the district court is

14   a final judgment and subject to res judicata, notwithstanding

15   the fact that there is an appeal pending.

16         And then Mr. McClendon will have seven days to reply.

17   Okay?

18         Mr. Terry, you got any position on this?

19         **MR. TERRY:**  No, Your Honor.

20         **THE COURT:**  Okay.

21      **(Pause)**

22         Okay.  Is there anything else we can do in the

23   *Galardi* case today?

24      **(No audible response)**

25         All right.  It's been very interesting.  So okay.

38

1    Any questions?

2            **MR. MCCLENDON:**  No, Your Honor.

3            **THE COURT:**  All right.

4            **MR. TERRY:**  No, Your Honor.

5            **THE COURT:**  Ms. Thomas, we are in recess until -- or

6    is this it?

7            **THE CLERK:**  This is it.

8            **THE COURT:**  All right.  We are adjourned.  Everyone

9    have a great day.  Thank you.  Gentlemen, you've been very

10   helpful.

11           **THE CLERK:**  All rise.

12        **(Proceeding adjourned at 11:55 a.m.)**

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATION**


     **I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.**


_____          <u>August 18, 2034</u>


TONI HUDSON, TRANSCRIBER